**PUBLIC VERSION**

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

NINESTAR CORPORATION, ZHUHAI
NINESTAR INFORMATION
TECHNOLOGY CO., LTD., ZHUHAI
PANTUM ELECTRONICS CO., LTD.,
ZHUHAI APEX MICROELECTRONICS
CO., LTD., GEEHY SEMICONDUCTOR
CO., LTD., ZHUHAI G&G DIGITAL
TECHNOLOGY CO., LTD., ZHUHAI
SEINE PRINTING TECHNOLOGY CO.,
LTD., and ZHUHAI NINESTAR
MANAGEMENT CO., LTD.

　　　　　　　　　*Plaintiffs*,

　　　v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES CUSTOMS
AND BORDER PROTECTION; FORCED
LABOR ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his official
capacity as the Secretary of the Department
of Homeland Security*; TROY A. MILLER, *in
his official capacity as the Senior Official
Performing the Duties of the Commissioner
for U.S. Customs and Border Protection*; and
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

　　　　　　　　　*Defendants*.

Case No. ___23-182___

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Ninestar Corporation, Zhuhai Ninestar Information Technology Co., Ltd., Zhuhai Pantum Electronics Co., Ltd., Zhuhai Apex Microelectronics Co., Ltd., Geehy Semiconductor Co., Ltd., Zhuhai G&G Digital Technology Co., Ltd., Zhuhai Seine Printing Technology Co., Ltd., and Zhuhai Ninestar Management Co., Ltd. (collectively, "Plaintiffs" or "Ninestar" unless otherwise indicated) complain and allege as follows against Defendant United States of America, Defendant U.S. Department of Homeland Security (DHS), Defendant U.S. Customs and Border Protection (CBP), Defendant Forced Labor Enforcement Task Force (FLETF), Defendant Alejandro Mayorkas, in his official capacity as the Secretary of the Department of Homeland Security, Defendant Troy A. Miller, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection, and Defendant Robert Silvers, in his official capacity as DHS Under Secretary for Office of Strategy, Policy, and Plans and Chair of FLETF (collectively, "Defendants").

## SUMMARY OF THE ACTION

1.    This action challenges the decision of the Forced Labor Enforcement Task Force (FLETF) to take adverse action against Plaintiffs, causing them serious and irreparable economic, contractual, market-based, reputational, and other harm, without offering any explanation or justification whatsoever for said action.   Such arbitrary and capricious conduct violates the Administrative Procedures Act's reasoned decisionmaking requirement and must be set aside.

2.    The Uyghur Forced Labor Prevention Act, Pub. L. No. 117-78, 135 Stat. 1525 (2021) ("UFLPA" or the "Act"), charges FLETF with compiling and maintaining lists of entities that either produce goods using forced labor by persecuted groups in the Xinjiang Uyghur Autonomous Region of China, or that work with the regional government to "recruit, transport, transfer, harbor or receive" such labor out of the Xinjiang Uyghur Autonomous Region.  UFLPA

§ 2(d)(2)(B).  The Act further directs CBP to presume that any goods produced by a listed entity violate 19 U.S.C. § 1307's prohibition on the importation of goods manufactured with forced labor, and must therefore be excluded from the United States.  UFLPA § 3(a).

3.    DHS, as the Chair of FLETF, announces additions to these lists through a press release and notice in the Federal Register.  These announcements provide no explanation of why any particular entity was listed, nor do Defendants otherwise communicate such grounds to the listed entities.  *See Notice Regarding the Uyghur Forced Labor Prevention Act Entity List*, 88 Fed. Reg. 38,080, 38,082 (June 12, 2023) (the "Listing Decision"); *see also* UFLPA § 2(d)(2)(B)(ii).

4.    FLETF has announced that it will entertain requests for removal from the list, but only if an entity can "provide information that demonstrates that the entity no longer meets or does not meet the criteria described in the [Act]" for listing.  88 Fed. Reg. at 38,082.  In other words, Defendants place on the listed entity the burden to prove the negative that its goods are not manufactured with forced labor and/or that it does not cooperate with Xinjiang regional officials to transport or harbor forced laborers, all without having been told the bases for the listing in the first instance.

5.    In June 2023, FLETF added Plaintiffs to the UFLPA Entity List.  This decision, announced without any details or explanation, has caused massive and irreparable harm to Plaintiffs' business and reputation.

6.    Because FLETF failed to provide any reasoned explanation for its decision, and because Plaintiffs have no other recourse for learning the grounds on which they were listed or, therefore, to successfully question the listing, the Court should vacate the Listing Decision as arbitrary and capricious agency action.

**PARTIES**

7.      Ninestar Corporation is a company organized and existing under the laws of the People's Republic of China, with a principal office located at Area B, 7th Floor, Building 01, 3883 Zhuhai Avenue, Xiangzhou District, Zhuhai, Guangdong, China.  Ninestar Corporation is engaged in the business of manufacturing and selling printer cartridges.

8.      Zhuhai Ninestar Information Technology Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at 2nd Floor, Building 01; Area A, 1st Floor, Building 02; Building 03; Building 04; Building 05; 1st Floor, 2nd Floor, 4th Floor, Building 06, 3883 Zhuhai Avenue, Xiangzhou District, Zhuhai, Guangdong, China.  Zhuhai Ninestar Information Technology Co., Ltd. is engaged in the business of developing, manufacturing, and selling printer consumables and accessories.  It is a wholly owned subsidiary of Zhuhai Hengqin G&G Technology Co., Ltd., which is a wholly owned subsidiary of Ninestar Corporation.

9.      Zhuhai Pantum Electronics Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at Building 02, Building 06, Building 08, 888 Shengping Avenue, Pingsha Town, Jinwan District, Zhuhai, Guangdong, China.  Zhuhai Pantum Electronics Co., Ltd., is engaged in the business of designing, manufacturing, and selling laser printers, printer consumables, and accessories, and is a wholly owned subsidiary of Ninestar Corporation.

10.     Zhuhai Apex Microelectronics Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at 1st Floor, 2nd Floor, Area A, 3rd Floor, 5th Floor, 6th Floor, 7th Floor, 8th Floor, 9th Floor, Building 01, 83 Guangwan Street, Xiangzhou District, Zhuhai, Guangdong, China.  Zhuhai Apex Microelectronics Co., Ltd. is engaged in the business of designing, manufacturing, and selling chips used in printer

consumables.  Ninestar Corporation is a majority shareholder of Zhuhai Apex Microelectronics Co., Ltd.

11.    Geehy Semiconductor Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at 2nd Floor, Building 1, Creative Valley, 1889 Huandao East Road, Hengqin New District, Zhuhai, Guangdong, China.  Geehy Semiconductor Co., Ltd. is engaged in the business of designing, manufacturing, and selling microcontroller units.  Geehy Semiconductor Co., Ltd. is a wholly owned subsidiary of Zhuhai Apex Microelectronics Co., Ltd.

12.    Zhuhai G&G Digital Technology Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at East side of 3rd Floor, Building 1, 3883 Zhuhai Avenue, Zhuhai, Guangdong, China.  Zhuhai G&G Digital Technology Co., Ltd. is engaged in the business of selling printer consumables.  It is a wholly owned subsidiary of Zhuhai Hengqin G&G Technology Co., Ltd., which is a wholly owned subsidiary of Ninestar Corporation.

13.    Zhuhai Seine Printing Technology Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at No. 16007, 16th Floor, 169 Rongzhu Road, Hengqin New District, Zhuhai, Guangdong, China.  Zhuhai Seine Printing Technology Co., Ltd. is engaged in the business of plant leasing operations.  It is a parent company of Ninestar Corporation.

14.    Zhuhai Ninestar Management Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with a principal office located at Office 920, Building 1, 833 Qinhai East Road, Hengqin New District, Zhuhai, Guangdong, China.  Zhuhai Ninestar

Management Co., Ltd. is engaged in the business of corporate management consultation and intellectual property management, and is a wholly owned subsidiary of Ninestar Corporation.

15.    The Department of Homeland Security is a federal agency headquartered in the District of Columbia with its principal office located at 245 Murray Lane S.W., Washington, D.C. 20528.  Among its duties, DHS leads FLETF.

16.    U.S. Customs and Border Protection is a federal agency headquartered in the District of Columbia with its principal office located at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.  CBP is an agency within DHS.  Among its duties, CBP enforces federal laws regulating the importation of goods into the United States.

17.    The Forced Labor Enforcement Task Force is a task force comprising representatives from seven federal agencies.  FLETF was established by Congress in the United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11 (2020). *See* 19 U.S.C. § 4681(a).  On information and belief, FLETF primarily holds meetings and conducts its business in the District of Columbia.  Among its duties, FLETF monitors the enforcement of the federal prohibition on importation of goods made with forced labor.

18.    Secretary Alejandro Mayorkas is sued solely in his official capacity as Secretary of DHS.  In that capacity, Secretary Mayorkas has the ultimate responsibility for the activities of DHS and CBP, including the actions complained of herein.  Secretary Mayorkas maintains an office at 245 Murray Lane S.W., Washington, D.C. 20528.

19.    Troy A. Miller is sued solely in his official capacity as the Senior Official Performing the Duties of the Commissioner for CBP.  In that capacity, Mr. Miller is responsible for the activities of CBP, including the actions complained of herein.  Mr. Miller maintains an office at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

20.     Robert Silvers is sued solely in his official capacity as DHS Under Secretary for Office of Strategy, Policy, and Plans and Chair of FLETF.  In that capacity, Under Secretary Silvers is responsible for the activities of FLETF, including the actions complained of herein. Under Secretary Silvers maintains an office at 245 Murray Lane S.W., Washington, D.C. 20528.

21.     The United States of America is amenable to service through the Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Department of Justice. C.I.T. R. 4(h).

## JURISDICTION AND VENUE

22.     This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 702–706, and the UFLPA, Pub. L. No. 117-78, 135 Stat. 1525 (2021).

23.     This Court has jurisdiction under 28 U.S.C. § 1581(i).

## LEGAL BACKGROUND

24.     Since the enactment of the Tariff Act of 1930, Pub. L. No. 71-361, 46 Stat. 590, federal law has prohibited importation of any goods or merchandise produced wholly or in part in any foreign country by forced labor.  19 U.S.C. § 1307.

25.     As part of the United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11 (2020), Congress directed the President to establish FLETF to monitor the Nation's enforcement of the prohibition on importation of goods made by forced labor set forth in 19 U.S.C. § 1307.  *See* 19 U.S.C. § 4681(a).  The President established FLETF by executive order on May 15, 2020.  Exec. Order No. 13,923, 85 Fed. Reg. 30,587.

26.     FLETF is chaired by the Secretary of DHS, and includes representatives from six other agencies: the Department of State, the Department of the Treasury, the Department of Justice, the Department of Labor, the Office of the United States Trade Representative, and the

Department of Commerce.  The Secretary of DHS later delegated his authority as chair of FLETF

to the DHS Under Secretary for Office of Strategy, Policy, and Plans.

27.     In December 2021, Congress passed and the President signed into law the Uyghur

Forced Labor Prevention Act, Pub. L. No. 117-78, 135 Stat. 1525 (2021).  The Act aims to

strengthen § 1307 by curtailing the importation of goods linked to forced labor of Uyghurs,

Kazakhs, Tibetans, and members of other persecuted groups in the People's Republic of China,

and especially in the Xinjiang Uyghur Autonomous Region.  UFLPA §§ 1–2.  The Act announces

the policy of the United States "to lead the international community in ending forced labor

practices wherever such practices occur through all means available to the United States

Government" and to combat human trafficking around the globe.  *Id.* § 1.

28.     The Act requires FLETF, after soliciting comments and holding a public hearing,

to develop a strategy "to prevent the importation into the United States of goods mined, produced,

or manufactured wholly or in part with forced labor in the People's Republic of China."  UFLPA

§ 2(a)–(c).

29.     As part of that strategy, FLETF must develop and regularly update:

    i.    a list of entities in the Xinjiang Uyghur Autonomous Region that mine, produce, or manufacture wholly or in part any goods, wares, articles and merchandise with forced labor;

    ii.    a list of entities working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region;

    iii.    a list of entities that exported any products mined, produced, or manufactured by any entity on the preceding two lists from the People's Republic of China into the United States; and

    iv.    a list of facilities and entities, including the Xinjiang Production and Construction Corps, that source material from the Xinjiang Uyghur Autonomous Region or from persons working with the government of the Xinjiang Uyghur Autonomous Region or the Xinjiang Production

and Construction Corps for purposes of the "poverty alleviation" program or the "pairing-assistance" program or any other government labor scheme that uses forced labor.  UFLPA § 2(d)(2)(B)(i)–(v), (e)(2).

(Collectively, the "UFLPA Entity List").

30.     As to any entity on the UFLPA Entity List, the Act directs CBP to "apply a presumption" that importation of "any goods, wares, articles, and merchandise . . . produced by an entity on [the] list" is prohibited under § 1307 and that such items are not entitled to entry at any of the ports of the United States.  UFLPA § 3(a).

31.     For a listed entity, CBP must apply this presumption unless the CBP Commissioner concludes that the importer of record has fully complied with FLETF supply chain "guidance," has cooperated fully with all CBP inquiries, and has proven—"by clear and convincing evidence"—that the goods were not produced in whole or in part by forced labor.  UFLPA § 3(b).

32.     According to CBP, the UFLPA's presumption "exponentially increases the scope and volume of goods subject to examination and enforcement at ports of entry . . . under 19 U.S.C. § 1307."  CBP, *UFLPA Fiscal Year 2022 Obligation and Implementation Plan* 2 (Oct. 12, 2022).[1]

## FACTUAL ALLEGATIONS

**Plaintiffs' Business**

33.     Ninestar Corporation, a listed company on the Shenzhen Stock Exchange, ranks among the 500 largest businesses in China by revenue, and is the world's fourth largest laser printer developer and manufacturer.  Its products include laser printers, integrated circuit chips, and printer consumables such as toner and inkjet cartridges.

---

[1] https://www.dhs.gov/sites/default/files/2022-12/CBP%20-%20Uyghur%20Forced%20Labor%20Prevention%20Act%20-%20Fiscal%20Year%202022%20Obligation%20and%20Implementation%20Plan.pdf

34.     Ninestar Corporation and the other Plaintiffs manufacture and sell, or support the manufacture and sale of, products directly and indirectly to numerous United States-based customers.  Those customers include wholesalers who resell Ninestar products to consumers and equipment manufacturers who integrate Ninestar components into their own products.

35.     Through its U.S.-based business partners and customers, Plaintiffs contribute to [     ] of products being imported into the United States each year.  For example, from July 2022 to June 2023:

i.      Plaintiff Ninestar Corporation caused approximately [     ] of printer cartridges to be imported into the United States.  Ninestar Corporation also manufactures components used by other printer manufacturers that export directly to the United States.

ii.     Plaintiff Zhuhai Ninestar Information Technology Co., Ltd. caused approximately [     ] of printer consumables and accessories to be imported into the United States.

iii.    Plaintiff Zhuhai Pantum Electronics Co., Ltd. caused approximately [     ] of printers, printer consumables, and accessories to be imported into the United States.

iv.     Plaintiff Zhuhai Apex Microelectronics Co., Ltd. caused approximately [     ] of chips used in printer consumables to be imported into the United States. Zhuhai Apex Microelectronics Co., Ltd. is also a manufacturer of spare parts used by other manufacturers that export directly to the United States.

v.      Plaintiff Geehy Semiconductor Co., Ltd. caused approximately [     ] of microcontroller units to be imported into the United States.    Geehy

Semiconductor Co., Ltd. is also a manufacturer of spare parts used by other manufacturers that export directly to the United States.

36.     The remaining three plaintiffs—Zhuhai G&G Digital Technology Co., Ltd.; Zhuhai Seine Printing Technology Co., Ltd.; and Zhuhai Ninestar Management Co., Ltd.—are not engaged in the business of mining, production, or manufacturing of goods, wares, articles, or merchandise, but provide support services to other Ninestar companies.

37.     Prior to June 2023, CBP has never suggested that any of Plaintiffs' products violated 19 U.S.C. § 1307, and Plaintiffs therefore have never had difficulties demonstrating to CBP that their products could lawfully be imported into the United States.

**The FLETF Listing**

38.     On June 9, 2023, FLETF announced that it would add "Ninestar Corporation and its eight Zhuhai-based subsidiaries" to the UFLPA Entity List "for working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or member of other persecuted groups out of Xinjiang." The Listing Decision took effect three days later, when DHS, on behalf of FLETF, published an updated UFLPA Entity List in the Federal Register. *See* Listing Decision*, supra*.

39.     The Listing Decision listed eight purported "Zhuhai-based subsidiaries": "Zhuhai Ninestar Information Technology Co. Ltd., Zhuhai Pantum Electronics Co. Ltd., Zhuhai Apex Microelectronics Co., Ltd., Geehy Semiconductor Co., Ltd., Zhuhai Pu-Tech Industrial Co., Ltd., Zhuhai G&G Digital Technology Co., Ltd., Zhuhai Seine Printing Technology Co., Ltd., and Zhuhai Ninestar Management Co., Ltd." 88 Fed. Reg. at 38,082. One of these, Zhuhai Pu-Tech Industrial Co., Ltd., is not affiliated with Ninestar Corporation and is therefore not a party to this action.

11

40.     The Listing Decision was the only notice any Plaintiff received concerning this action.  The Listing Decision provides no explanation as to why any particular entity was added to the UFLPA Entity List.  And, FLETF provided no explanation to Plaintiffs, publicly or otherwise, for its decision to add Ninestar and its affiliates to the Entity List and by extension to exclude them and their goods entirely from the United States.

41.     Neither FLETF nor any other component of the United States government gave Plaintiffs notice that they would be added to the UFLPA Entity List.  Nor did DHS, CBP, FLETF, or any other federal agency conduct any public hearing, reported investigation, or adjudication regarding Plaintiffs and their labor practices prior to the listing, nor did FLETF make any inquiry directly of Plaintiffs prior to doing so.

42.     Rather, Ninestar first learned of the listing through public reporting after the listing was published in a DHS press release.

43.     The UFLPA Entity List does identify which of the statutorily-mandated lists each listed entity appears on.  Plaintiffs have been added to a list of entities purportedly "working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region."

44.     The inclusion of Plaintiffs on the UFLPA Entity List, automatically and without any intervening action or cause, requires CBP to presume that any good produced in whole or in part by any Plaintiff was made using forced labor and, therefore, is prohibited from entry into the United States.  The listing thus constitutes final agency action which adversely affects and aggrieves Plaintiffs.

45.     Plaintiffs are unaware of any facts relating to their respective businesses or otherwise supporting such an allegation.  Without learning the bases upon which Defendants added Plaintiffs to the UFLPA Entity List, Plaintiffs are unable meaningfully to seek removal from the list or otherwise challenge this final agency action.

46.     Nor are Plaintiffs able to seek relief under the APA challenging the action as contrary to the evidence in the administrative record, as Plaintiffs know neither the bases for the charge, nor the contents of the record.  After filing, Plaintiffs will seek the record and, when appropriate, seek additional relief.

**Injuries Caused by the FLETF Listing**

47.     Since FLETF's decision to add Plaintiffs to the UFLPA Entity List, Plaintiffs have suffered significant, irreparable harm to their businesses and reputation.

48.     By virtue of the listing, Plaintiffs' goods are automatically presumed to have been manufactured using forced labor (notwithstanding that the Listing Decision alleges transportation of protected persons, not the use of forced labor) and, therefore, cannot be imported into the United States directly or indirectly.  Any such goods will be—and are already being—detained by CBP at U.S. ports of entry, unable to be brought to market and sold.  Plaintiffs are aware of at least [     ] shipments that have been excluded by CBP on the basis of the Listing Decision.

49.     Plaintiffs are actively losing business relationships.  For example, one of the largest United States-based customers of Ninestar, Kentucky-based Lexmark, announced that it had "stopped shipments" from Ninestar and would "replace Ninestar as a supplier globally."  Lexmark International, Inc., *Lexmark Issues Statement on Supply Chain* (June 2023).[2]

---

[2] https://newsroom.lexmark.com/statement_June_2023.

13

50.    In total, Plaintiffs' U.S. customers have already cancelled approximately [      ] worth of purchase orders because of the Listing Decision.  Customers have also notified Plaintiffs that they have or are actively trying to transfer their orders for Plaintiffs' products to other suppliers.  Plaintiffs' anticipate that, if the ban on importing their products is not rescinded, they stand to lose [      ] in revenue from U.S. customers over the next year.

51.    [      ]

52.    The potential harm is not limited to the United States.  In light of the Listing Decision, the leader of a trade group for European businesses in the printing and printing consumables industry has called for European distributors to "quickly distance themselves from Ninestar to avoid being associated with forced labor."  ETIRA, *ETIRA Shocked that Ninestar is Found Engaged in Forced Labor, Asks EU Regulators to Act* (June 12, 2023).[3]  Customers in Europe and the People's Republic of China have cancelled about [      ] in orders as a direct result of the Listing Decision.  Customers in Canada and Japan have announced that they will no longer cooperate with Ninestar.

53.    The Listing Decision has also tarnished and continues to tarnish Ninestar's reputation.  FLETF has effectively accused Plaintiffs of aiding and abetting human trafficking, which harms Plaintiffs in the eyes of their investors and business partners, and of the consuming public.  Even after Plaintiffs clear their name, this taint will persist.

54.    Despite the fact that the Listing Decision provided no basis whatsoever for the listing, customers and industry analysts have taken the announcement alone as proof positive of Ninestar's liability.  Indeed, Plaintiffs are deemed guilty until proven innocent.

---

[3] https://www.etira.org/posts/etira-shocked-that-ninestar-is-found-engaged-in-forced-labor-asks-eu-regulators-to-act/.

55.     Ninestar's commercial competitors have every incentive to repeat and amplify the unadorned and unexplained allegation in the Listing Decision directly and through trade groups, to their own commercial benefit.

56.     Because of the Listing Decision, several American printing-industry trade associations have cut off their relationships with Plaintiffs.  *See, e.g.*, Business Tech. Ass'n, *Ninestar, Lexmark & the Business Technology Association* (July 25, 2023).[4]  In addition, [      ]

## CLAIM FOR RELIEF

### COUNT I—5 U.S.C. § 706(2)(A)
### (ARBITRARY AND CAPRICIOUS AGENCY ACTION)

57.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 56 as if set forth fully herein.

58.     Plaintiffs are adversely affected by the Listing Decision because it has terminated their ability to sell and ship goods directly or indirectly to United States-based customers.  *See* 5 U.S.C. § 702.

59.     The Listing Decision constitutes "final agency action," 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and "the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted).  Indeed, without further action by Plaintiffs seeking to satisfy an onerous standing for discretionary relief from a different agency, Plaintiffs goods are today completely barred from the United States.

---

[4] https://businesstechnologyassociation.growthzoneapp.com/news/Details/ninestar-lexmark-the-business-technology-association-a-message-to-all-bta-members-176918.

60.    The APA requires courts to hold unlawful and set aside agency action, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).

61.    "The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."  *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that an agency acts unlawfully when it fails to "articulate a satisfactory explanation for its action").

62.    The Listing Decision is arbitrary and capricious because FLETF not only failed to provide an adequate explanation, it failed to provide *any* explanation, for adding Plaintiffs to the UFLPA Entity List.  *See Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) ("[A]n agency must explain why it decides any question the way it does.  That obligation means that the agency must 'articulate a satisfactory explanation' of its reasoning; it may not simply provide a conclusion." (citations omitted)); *Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) ("A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action."); *Clarke v. CFTC*, 74 F.4th 627, 641 (5th Cir. 2023) (holding agency action arbitrary and capricious "for the obvious reason that it gives no explanation whatsoever").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter a Judgment:

(1)    Declaring that Defendants have acted in an arbitrary and capricious manner in violation of the APA by failing to provide a reasoned explanation for the Listing Decision;

(2)    Vacating FLETF's determination to add Plaintiffs to the UFLPA Entity List and remanding to FLETF for such further action as is lawful and appropriate consistent with the APA and other applicable laws;

(3)    Enjoining DHS and CBP from enforcing the UFLPA's adverse importation presumption against Plaintiffs;

(5)    Awarding Plaintiffs their attorneys' fees, expert witness fees, and all other reasonable expenses incurred in pursuit of this Action under 28 U.S.C. § 2412; and

(6)    Awarding such other relief as the Court deems just and proper.

Dated: August 22, 2023

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*