**PUBLIC VERSION**

**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD. <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*, <br><br> *Defendants*. | Case No. 23-00182 |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

For the reasons set out in the accompany memorandum of law, Plaintiffs respectfully move this Court under Rule 65(a) of the Rules of the Court of International Trade for a preliminary injunction staying the Listing Decision and preventing Defendants from taking any action against the importation of Plaintiffs' goods predicated on the Listing Decision.

The undersigned counsel contacted counsel for the Defendants by email on August 21, 2023, to inform Defendants of Plaintiffs' intent to file this motion. Undersigned counsel followed up on August 23, 2023, to request consent to this motion. Defendants' counsel responded that "The Government does not consent to being enjoined."

Dated: August 25, 2023

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

**PUBLIC VERSION**

## IN THE UNITED STATES
## COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD. | |
| *Plaintiffs*, | |
| v. | Case No. 23-00182 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*, | |
| *Defendants*. | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

    A.  Statutory and Regulatory Background ........................................................................... 3

    B.  Factual background ....................................................................................................... 5

ARGUMENT .......................................................................................................................... 7

    A.  Ninestar Is Likely To Prevail On The Merits. ............................................................. 8

    B.  Ninestar Has Suffered And Will Continue To Suffer Irreparable Harm. ..................... 12

    C.  The Balance Of Hardships Favor Relief. ................................................................... 15

    D.  A Preliminary Injunction Would Promote The Public Interest. ................................. 16

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alacritech, Inc. v. Intel Corp.*,
  966 F.3d 1367 (Fed. Cir. 2020)....................................................................8

*Am. Signature, Inc. v. United States*,
  598 F.3d 816 (Fed. Cir. 2010)....................................................................16

*Amerijet Int'l, Inc. v. Pistole*,
  753 F.3d 1343 (D.C. Cir. 2014)..................................................................11

*Aqua Prods., Inc. v. Matal*,
  872 F.3d 1290 (Fed. Cir. 2017)..................................................................10

*Bayer HealthCare, LLC v. FDA*,
  942 F. Supp. 2d 17 (D.D.C. 2013)..............................................................11

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962)........................................................................2, 10, 11

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009).......................................................................13

*Canadian Lumber Trade All. v. United States*,
  441 F. Supp. 2d 1259 (Ct. Int'l Trade 2006)..........................................12, 13, 16

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012).....................................................................14

*China Diesel Imports, Inc. v. United States*,
  855 F. Supp. 380 (Ct. Int'l Trade 1994)........................................................8

*Clarke v. Commodities Futures Trading Comm'n*,
  74 F.4th 627 (5th Cir. 2023).......................................................................11

*CPC Int'l, Inc. v. United States*,
  896 F. Supp. 1240 (Ct. Int'l Trade 1995).....................................................12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891.........................................................................................9

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)...................................................................14

*GHS Health Maint. Org., Inc. v. United States*,
    536 F.3d 1293 (Fed. Cir. 2008) ...................................................................9

*Giorgio Foods, Inc. v. United States*,
    804 F. Supp. 2d 1315 (Ct. Int'l Trade 2011) .........................................12

*Invenergy Renewables LLC v. United States*,
    422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ...........................14, 15, 16

*Invenergy Renewables LLC v. United States*,
    476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) .................................1, 15

*Kentucky v. Biden*,
    57 F.4th 545 (6th Cir. 2023) ...................................................................13

*Kwo Lee, Inc. v. United States*,
    24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014) .........................................14

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...................................................................16

*Luokung Tech. Corp. v. Dep't of Def.*,
    538 F. Supp. 3d 174 (D.D.C. 2021) .......................................................12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .......................................................................8, 9, 10

*N. Mariana Islands v. United States*,
    686 F. Supp. 2d 7 (D.D.C. 2009) ...........................................................16

*Nat'l Fed. of Indep. Business v. OSHA*,
    142 S. Ct. 661 (2022) .............................................................................13

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
    715 F.3d 1268 (11th Cir. 2013) .............................................................13

*Pers. Web Techs., LLC v. Apple, Inc.*,
    848 F.3d 987 (Fed. Cir. 2017) ...........................................................2, 9

*Prairie Band of Potawatomi Indians v. Pierce*,
    253 F.3d 1234 (10th Cir. 2001) .............................................................13

*Pub. Citizen, Inc. v. FAA*,
    988 F.2d 186 (D.C. Cir. 1993) ...............................................................8

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .............................................................13

*Roelofs v. Sec'y of Air Force*,
  628 F.2d 594 (D.C. Cir. 1980) ........................................................................2, 9

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ...............................................................................................9

*In re Section 301 Cases*,
  524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ......................................................8

*Select Specialty Hosp.–Bloomington, Inc. v. Burwell*,
  757 F.3d 308 (D.C. Cir. 2014) ..........................................................................10

*Sierra Club v. U.S. Dep't of Interior*,
  899 F.3d 260 (4th Cir. 2018) ............................................................................11

*TikTok Inc. v. Trump*,
  507 F. Supp. 3d 92 (D.D.C. 2020) ....................................................................14

*Tourus Recs., Inc. v. DEA*,
  259 F.3d 731 (D.C. Cir. 2001) ..........................................................................10

*U.S. Auto Parts Network, Inc. v. United States*,
  319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ....................................................14

*Ultratec, Inc. v. CaptionCall, LLC*,
  872 F.3d 1267 (Fed. Cir. 2017)..........................................................................11

*Wages & White Lion Invs., L.L.C. v. FDA*,
  16 F.4th 1130 (5th Cir. 2021) ...........................................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)............................................................................................7, 15

*Xiaomi Corp. v. Dep't of Def.*,
  No. 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021) ......................11, 12

**Statutes & Regulations**

5 U.S.C. § 702 ............................................................................................................13

5 U.S.C. § 706 ..............................................................................................................8

19 C.F.R. § 12.42(a)–(e) ..............................................................................................3

19 U.S.C. § 1307 ..........................................................................................................3

19 U.S.C. § 4681 ..........................................................................................................3

28 U.S.C. § 1581 ........................................................................................................12

28 U.S.C. § 2643 ................................................................................................12

United States-Mexico-Canada Agreement Implementation Act,
    Pub. L. No. 116-113, 134 Stat. 11 (2020) ...................................................3

Uyghur Forced Labor Prevention Act,
    Pub. L. No. 117-78, 135 Stat. 1525 (2021) .......................................3, 4, 17

**Other Authorities**

CBP, *UFLPA Fiscal Year 2022 Obligation and Implementation Plan* (Oct. 12, 2022).................5

Dep't of Homeland Sec., *DHS to Ban Imports* (June 9, 2023) .......................................6

Exec. Order No. 13,923,
    85 Fed. Reg. 30,587 (May 15, 2020) ........................................................3

*Notice Regarding the Uyghur Forced Labor Prevention Act Entity List*,
    88 Fed. Reg. 38,080 (June 12, 2023) ..................................................6, 10

## INTRODUCTION

Few principles are more central to American governance than transparency and accountability.  In short, when agencies upend settled expectations, impose burdensome regulatory costs, or undercut economic, property, or civil interests, they ought to explain themselves.  This case "present[s] a failure to comply with foundational principles of administrative law," specifically agencies' duty "to act with transparency and to provide adequate, public explanation of agency decisions."  *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1331 (Ct. Int'l Trade 2020).

On June 12, 2023, the Forced Labor Enforcement Task Force (FLETF), an inter-agency task force managed by the Department of Homeland Security, published a notice in the Federal Register adding Plaintiff Ninestar Corporation and several affiliate entities (collectively, Plaintiffs or Ninestar, unless otherwise indicated) to the Uyghur Forced Labor Prevention Act (UFLPA) Entity List (the "Listing Decision").  The Entity List includes, in relevant part, companies "working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region."  And the Listing Decision resulted, immediately and without further investigation, evidence, or other process, in the complete exclusion of Plaintiffs' goods from the United States.  This embargo, if it stands, will cost Plaintiffs [    ] in lost revenues, along with loss of market share, lost contracts, and incalculable harm to Plaintiffs' reputation.

One would think a decision to exclude a company categorically from the United States, impacting [    ] worth of sales and [    ] suppliers and customers, would be objectively supportable.  So too a decision to accuse a business of human trafficking.  And, one would think,

1

some such explanation would be readily forthcoming, both to explain the government's drastic action and to deter other similarly situated wrongdoers.

Not so in this case. To the contrary, FLETF's notice in the federal register contains not a single word of justification. Nor did FLETF or any of its member agencies offer any such explanation privately to any of the Plaintiffs. To this day, Defendants have neither explained their conduct nor made any effort to engage Plaintiffs as to their manufacturing, labor, or supply chain practices. Plaintiffs had no notice, advance or otherwise, and learned only from public sources reporting on the Federal Register notice, that their goods had been immediately and completely barred from the United States. Such consequential yet unexplained decision-making is by any measure arbitrary, capricious, and unlawful. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–68 (1962).

The Administrative Procedure Act requires reasoned decision-making in part to compel administrators to examine closely their decisions that may adversely affect the public. *See Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 599–600 (D.C. Cir. 1980). So too, reasoned decision-making facilitates judicial review of agency action. *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017). Here, Defendants' failure to engage in reasoned decision-making has frustrated both purposes. In fact, the only recourse Ninestar has been offered is an invitation to attempt to make a showing rebutting the government's secret allegations by proving the negative that its goods are all manufactured lawfully. That stands administrative law on its head. Plaintiffs have no presence in the Xinjiang Uyghur Autonomous Region and have no notion of what led to their listing as having transported or harbored persons from Xinjiang. Without some reasoned decision, the proffered recourse is a null set. Accordingly, Ninestar brings this action to vacate the Listing Decision as arbitrary and capricious and to enjoin its implementation.

## BACKGROUND

### A.     Statutory and Regulatory Background

Section 307 of the Tariff Act of 1930 prohibits the importation of all "goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in any foreign country by convict labor or/and forced labor or/and indentured labor under penal sanctions."  19 U.S.C. § 1307.  Section 307 is administered by Defendant U.S. Customs and Border Protection (CBP).  Where CBP suspects goods were produced using forced labor it must investigate and, if the evidence supports that suspicion, instruct Port Directors not to release them.  *See* 19 C.F.R. § 12.42(a)–(e).  Such goods will then be treated "as an importation prohibited by section 307," unless and until "the importer establishes by satisfactory evidence that the merchandise was not mined, produced, or manufactured in any part" with forced labor.  *Id.* § 12.42(g); *see also id.* §§ 12.43–.44.

The President established FLETF in 2020, as required by the United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11 (2020). *See* 19 U.S.C. § 4681(a); Exec. Order No. 13,923, 85 Fed. Reg. 30,587 (May 15, 2020).  FLETF is chaired by the DHS Secretary and includes representatives from six other agencies: the Office of the United States Trade Representative and the Departments of State, Treasury, Justice, Labor, and Commerce.  The DHS Secretary delegated his authority as chair of FLETF to the Under Secretary for Office of Strategy, Policy, and Plans.

In December 2021, Congress passed and the President signed into law the Uyghur Forced Labor Prevention Act, Pub. L. No. 117-78, 135 Stat. 1525 (2021).  The UFLPA builds on the enforcement framework of Section 307.  As relevant here, the UFLPA first directs FLETF to create and regularly update several lists of entities and products: (1) "a list of entities in the Xinjiang Uyghur Autonomous Region that mine, produce, or manufacture wholly or in part any goods,

wares, articles and merchandise with forced labor"; (2) "a list of entities working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region"; (3) a list of entities that exported any "products mined, produced, or manufactured" by any entity on the preceding two lists "from the People's Republic of China into the United States"; and (4) a list of facilities and entities "that source material from the Xinjiang Uyghur Autonomous Region or from persons working with the government of the Xinjiang Uyghur Autonomous Region or the Xinjiang Production and Construction Corps for purposes" of certain Chinese government initiatives known to use forced labor.   UFLPA § 2(d)(2)(B)(i)–(v), (e)(2).

As to any entity placed on one of these lists, CBP presumes that any goods, wares, articles, or merchandise produced by that entity were manufactured by forced labor in violation of Section 307 and "are not entitled to entry at any of the ports of the United States."  UFLPA § 3(a).  A listed entity can rebut this presumption only by proving to CBP with "clear and convincing evidence" that the "good, ware, article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor" *and also* proving to the satisfaction of the Commissioner that the importer of record has fully complied with FLETF supply chain guidance and cooperated fully with the Commissioner's informational requests.  UFLPA § 3(b).

UFLPA-listed entities are subject to unique burdens.  Ordinarily, CBP will refuse entry to goods pursuant to Section 307 only after first investigating those goods, but the UFLPA requires CBP to refuse entry without investigating the goods' production or manufacture.  Likewise, while Section 307 normally applies to particular goods, the UFLPA applies automatically to all of a listed entity's goods.   Next, an importer may overcome a Section 307 prohibition by presenting

4

"satisfactory evidence" that particular goods are not produced with forced labor; a UFLPA-listed entity, however, can overcome the UFLPA's adverse presumption only through a combination of "clear and convincing evidence" and adherence to additional agency guidance and procedures and demands.  It is thus by design that the UFLPA "exponentially increases the scope and volume of goods subject to examination and enforcement at ports of entry" under Section 307.  CBP, *UFLPA Fiscal Year 2022 Obligation and Implementation Plan* 2 (Oct. 12, 2022).[1]

### B.    Factual background

Ninestar Corporation, based in the southern coastal city of Zhuhai, China, is the world's fourth largest developer and manufacturer of printers and printer-related goods.  Ninestar and its subsidiaries are in the business of developing, manufacturing, and selling printers, printer consumables, and integrated circuit chips to customers around the globe, and support those same activities.  Cheng Decl. ¶ 5.

Ninestar's United States customer base is particularly strong.  In past years, Ninestar companies exported [       ] of crates of products to the United States.  Cheng Decl. ¶ 6.  Those products are sold to both wholesalers who interface with printing customers and equipment manufacturers who integrate the components produced by Ninestar into their own products.  U.S.-based customers have ordered [       ] of dollars' worth of Ninestar companies' products in the past years.  Cheng Decl. ¶ 6.  And for many years, Ninestar had very few issues exporting its products to the United States.  Cheng Decl. ¶8.

But on June 9, 2023, DHS announced the addition of Ninestar and "eight of its Zhuhai-based subsidiaries" to the UFLPA Entity List.  Dep't of Homeland Sec., *DHS to Ban Imports* (June

---

[1]    https://www.dhs.gov/sites/default/files/2022-12/CBP%20-%20Uyghur%20Forced%20Labor%20Prevention%20Act%20-%20Fiscal%20Year%202022%20Obligation%20and%20Implementation%20Plan.pdf

9, 2023).[2]  That decision took effect three days later upon publication of an updated UFLPA Entity List in the Federal Register.  *Notice Regarding the Uyghur Forced Labor Prevention Act Entity List*, 88 Fed. Reg. 38,080, 38,082 (June 12, 2023).  FLETF accused Ninestar of "working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang."  *Id.*  CBP is now obligated to presume that any goods associated with any listed Ninestar entity are prohibited from importation under Section 307 as the product of forced labor.

At no point has FLETF or any other agency explained the basis for the Listing Decision publicly or to Plaintiffs.  The Federal Register publication provides no elaboration of why FLETF accused Plaintiffs of conspiring with the Xinjiang government to perpetuate human trafficking.  Nor does any government press release or other public statement.  And FLETF certainly never explained itself to Plaintiffs.  Cheng Decl. ¶ 11.  Indeed, Plaintiffs did not even know that they had been listed until they became aware of DHS's press release.

The Listing Decision's impact on Ninestar's business has been—and will continue to be— catastrophic.  Cheng Decl. ¶¶ 20–21.  Because of the listing, none of Plaintiffs' good may be imported into the United States.  Cheng Decl. ¶ 10.  As a result, many of Plaintiffs' U.S. customers have already cancelled purchase orders—a loss of revenue to the tune of approximately [     ] in just two short months.  Cheng Decl. ¶¶23, 29, 33, 40, 46.  Nor is there any sign of those losses stopping.  Several U.S.-based Ninestar customers have announced that they will turn to other suppliers because of the Listing Decision, costing [     ] of dollars each year.  Cheng Decl. ¶¶ 23, 24, 29.  And while the Listing Decision on its face applies only to U.S. imports, its effects stretch

---

[2]  https://www.dhs.gov/news/2023/06/09/dhs-ban-imports-two-additional-prc-based-companies-part-its-enforcement-uyghur.  One of the listed entities, Zhuhai Pu-Tech Industrial Co., Ltd., is not in fact affiliated with Ninestar Corporation.

far beyond this Nation's shores.  Cheng Decl. ¶¶ 35, 42–43, 48.  Already, European trade groups are pointing opportunistically to the Listing Decision in calling on regulators to ban Ninestar products from the EU.  Cheng Decl. ¶ 15.  Ninestar's Chinese customers, meanwhile, have terminated sales agreements out of fear that any product with a Ninestar component would be barred from the United States market.  Cheng Decl. ¶ 42.

To make matters worse, the Listing Decision smears Ninestar's reputation with its business partners and customers, and with the consumer public more broadly.  Cheng Decl. ¶¶ 12, 14.  The gravity of the unexplained accusations against Ninestar cannot be overstated; by effectively labeling Ninestar a co-conspirator in mass human trafficking, FLETF has left a stain on Ninestar's public image that will take years to wash away, even after Plaintiffs clear their names.  And that reputational injury is already having a real-world impact.  *See, e.g.*, Cheng Decl. ¶ 17.  Because FLETF provided no support for its accusations, printer industry participants have simply assumed that FLETF's allegations are true—treating Ninestar as guilty until proven innocent, and amplifying and expanding those allegations.  Cheng Decl. ¶ 14.  Those groups have, in turn, called for even broader bans on Ninestar goods and even taken steps to expel one of Ninestar Corporation's subsidiaries as a member.  Cheng Decl. ¶ 16.

## ARGUMENT

In weighing whether to grant preliminary injunctive relief, the Court must consider (1) whether the movant "is likely to succeed on the merits," (2) whether the movant is "likely to suffer irreparable harm in the absence of preliminary relief," (3) whether the "balance of equities tips in [the movant's] favor," and (4) whether "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "The Court of Appeals for the Federal Circuit has historically applied a sliding scale approach.  Under the sliding scale approach, the greater the potential harm to the plaintiff, the lesser the burden on Plaintiffs to make the required showing of

likelihood of success on the merits." *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1362 (Ct. Int'l Trade 2021) (internal quotation marks and citations omitted).

### A.      Ninestar Is Likely To Prevail On The Merits.

FLETF's decision to add Plaintiffs to the UFLPA Entity List without supplying a reasoned justification of any sort constitutes arbitrary and capricious final agency action in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706; *see China Diesel Imports, Inc. v. United States*, 855 F. Supp. 380, 385 (Ct. Int'l Trade 1994) (decision to list entity is final agency action subject to APA review). As such, the Listing Decision must be vacated. Ninestar is likely to succeed on the merits of that challenge.

It is well established that when an agency acts, it must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines*, 371 U.S. at 168). An agency's explanation will not be satisfactory where, for example, "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* Each of these failures to provide a satisfactory explanation is arbitrary and capricious and thus unlawful. *See id.*; *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). The APA requires courts to "set aside agency action" where the agency has failed to offer the necessary "satisfactory explanation." 5 U.S.C. § 706(2)(A); *e.g.*, *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1373 (Fed. Cir. 2020).

The requirement that an agency explain itself facilitates judicial review. "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative

agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). "In order to allow effective judicial review, the agency is obligated to provide an administrative record showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions." *Pers. Web Techs.*, 848 F.3d at 992 (cleaned up). And, an agency must provide these reasons and explanations at the time it makes its decision; post hoc justifications will not do. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907–08 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)); *GHS Health Maint. Org., Inc. v. United States*, 536 F.3d 1293, 1302 (Fed. Cir. 2008) ("It is not our place to compensate for any deficiencies that may exist with the agency's proffered explanations. We are only to evaluate the agency's stated rationales, not supply our own.").

This reason-giving requirement also prompts government agencies to act with rigor and reflection. "The simple but fundamental requirement that an agency or official set forth its reasons [is] a requirement that is essential to the integrity of the Administrative process, for it tends to require the agency to focus on the values served by its decision, hence releasing the clutch of unconscious preference and irrelevant prejudice." *Roelofs*, 628 F.2d at 599–600 (cleaned up). The process of setting forth its reasons enables an agency to scrutinize its decision and thereby improves the quality and accuracy of agency decision-making. Or, less charitably, regulators are more likely to take care and abide by the law when they know someone is watching.

The Listing Decision is arbitrary and capricious and should be vacated because FLETF not only failed to provide a "satisfactory explanation" for adding Plaintiffs to the UFLPA Entity List, it failed to provide *any* explanation. *State Farm*, 463 U.S. at 43. On June 12, FLETF simply posted a revised list in the Federal Register, including for the first time "Ninestar Corporation and its eight Zhuhai-based subsidiaries." 88 Fed. Reg. at 38,082. Yet the Federal Register Notice

never acknowledged—let alone explained—that FLETF was adding Ninestar to the UFLPA Entity List or why.  Indeed, the bulk of the one-page Preamble is devoted to explaining what the Entity List itself is.  *Id.* at 38,081.  The Preamble offers no evidence that formed the basis for its Listing Decision, identifies no factual findings with respect to Plaintiffs (or any other listed entity), and does not explain its reasoning for deciding to list Plaintiffs.  And FLETF has not even attempted to make up for this deficiency in its Federal Register notice by, for example, publishing an explanatory document on its website or even communicating grounds for its Listing Decision directly to Plaintiffs.

FLETF's failure to provide any kind of explanation whatsoever for its conduct is textbook arbitrary and capricious agency conduct.  *See Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) ("[A]n agency must explain why it decides any question the way it does.  That obligation means that the agency must 'articulate a satisfactory explanation' of its reasoning; it may not simply provide a conclusion." (citations omitted)); *Tourus Recs., Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) ("A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action."); *Select Specialty Hosp.–Bloomington, Inc. v. Burwell*, 757 F.3d 308, 312 (D.C. Cir. 2014) ("There are cases where an agency's failure to state its reasoning or to adopt an intelligible decisional standard is so glaring that we can declare with confidence that the agency action was arbitrary and capricious.  This is one of them." (quotation marks omitted)).

Courts routinely vacate agency actions where, as here, the agency failed to provide a meaningful (or, indeed, any) explanation.  In *Burlington Truck Lines*, for example, the Supreme Court invalidated as arbitrary and capricious the Interstate Commerce Commission's grant of a certificate of convenience and necessity where the ICC made "no findings and no analysis … to

justify the choice made, no indication of the basis on which the Commission exercised its expert discretion." 371 U.S. at 167. Lower courts have followed suit, vacating unexplained actions ranging from the Patent Trial and Appeal Board, *Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267, 1274–75 (Fed. Cir. 2017) (vacating unexplained denial of request to supplement the record), to the TSA, *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1346 (D.C. Cir. 2014) (vacating conclusory denial of an aircraft operator's application for alternate security procedures; "by saying too little, TSA has provided no basis upon which we can conclude that its denials were the product of reasoned decisionmaking" (cleaned up)), to the FDA, *Bayer HealthCare, LLC v. FDA*, 942 F. Supp. 2d 17, 25 (D.D.C. 2013) (vacating drug approvals where the "record is devoid of any explanation at all"), to the National Park Service, *Sierra Club v. U.S. Dep't of Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (vacating right-of-way permit decision "not accompanied by any explanation, let alone a satisfactory one"), to, most recently, the Commodity Futures Trading Commission, *Clarke v. CFTC*, 74 F.4th 627, 641 (5th Cir. 2023) (preliminarily enjoining recission of a no-action letter "for the obvious reason that it gives no explanation whatsoever"). Government sanctions lists are not exempt from this basic rule of administrative law. *See, e.g.*, *Xiaomi Corp. v. Dep't of Def.*, No. 21-280 (RC), 2021 WL 950144, at *4–5 (D.D.C. Mar. 12, 2021) (vacating decision to add Chinese company to sanctions list because of "conclusory" explanation).

The same result obtains here. Defendants added Ninestar to the UFLPA Entity List, blocking importation of any and all Ninestar goods, without a word of justification. Because FLETF failed to explain its decision at all, that final agency action must be vacated. Ninestar is therefore likely to succeed on the merits.

**B.      Ninestar Has Suffered And Will Continue To Suffer Irreparable Harm.**

As a result of the Listing Decision, Ninestar has suffered substantial, irreparable injuries. Absent preliminary injunctive relief, those harms will continue to accumulate without any possibility of later redress.

*First*, the Listing Decision has dealt, and will continue to deal, a serious blow to Plaintiffs' revenues.  Already, Plaintiffs have lost approximately [      ] as a result of cancellations by U.S. customers.  If it is not rescinded, the Listing Decision will cause Plaintiffs to lose [      ] in the first year alone.  Financial injuries of that magnitude cannot be brushed aside.  *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 192–93 (D.D.C. 2021) (finding irreparable harm from similar financial injuries caused by government listing decision); *Xiaomi Corp.*, 2021 WL 950144, at *11 (same).

Nor can they be redressed later.  As this Court has recognized, financial injuries inflicted by the federal government cannot be recovered in an action for damages if "the United States, and the agencies thereof, are cloaked in sovereign immunity." *Canadian Lumber Trade All. v. United States*, 441 F. Supp. 2d 1259, 1265 (Ct. Int'l Trade 2006); *see also CPC Int'l, Inc. v. United States*, 896 F. Supp. 1240, 1245 (Ct. Int'l Trade 1995) (holding monetary losses irreparable because "the United States would have no legal obligation to compensate" the plaintiff for those losses).[3]  This

---

[3] To be sure, 28 U.S.C. § 2643(a) provides that this Court "may enter a money judgment … against the United States in any civil action commenced under section 1581."  And, this case falls squarely within the Court's exclusive jurisdiction over any case relating to an embargo of goods imported into the United States.  *See* 28 U.S.C. § 1581(i)(1)(C).  The Government has argued, however, that "the Court of International Trade is not permitted to issue money judgments in section 1581(i) cases" because "a plaintiff in a section 1581(i) case must generally rely upon the waiver of sovereign immunity provided by the APA."  *Giorgio Foods, Inc. v. United States*, 804 F. Supp. 2d 1315, 1323–24 (Ct. Int'l Trade 2011), *aff'd*, 785 F.3d 595 (Fed. Cir. 2015).  Plaintiffs are unaware of any authority dispositively resolving this question.  For present purposes, and without prejudice, Plaintiffs accept the Government's view.

follows from the simple principle that if a "forward-looking monetary award" is not "viable"—for whatever reason—then that award necessarily cannot remedy past financial harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (holding district court erred in failing to consider whether defendant's impending insolvency made plaintiffs' financial injuries irreparable). And because the APA does not permit claims for damages, *see* 5 U.S.C. § 702, monetary harms in APA actions are necessarily irreparable. *Canadian Lumber*, 441 F. Supp. 2d at 1259. This Court joins a chorus of others in recognizing as much. *See, e.g.*, *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023); *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1251 (10th Cir. 2001); *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013); *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009), *rev'd on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012); *see also Nat'l Fed. of Indep. Business v. OSHA*, 142 S. Ct. 661, 666 (2022) (identifying "billions of dollars in unrecoverable compliance costs" as a reason for granting equitable relief in challenge to federal agency action).

*Second*, the Listing Decision has interfered with Ninestar's opportunity to build fruitful business relationships with new United States customers. In the months prior to the Listing Decision, Ninestar had invested significant time and resources cultivating new business in the United States market. Cheng Decl. ¶ 34. And, those efforts seemed to have been effective, with multiple prospective new customers on the horizon. Cheng Decl. ¶ 34. But the Listing Decision has put those relationships on ice, and they may never be recovered. Cheng Decl. ¶ 34. A "loss of business opportunities" is a "valid ground[] for finding irreparable harm," and is a particularly powerful ground when the Defendants' action hampered a plaintiff's attempts to "build[] the

brand, expand[] the customer base, and establish[] one's reputation and leadership in the market." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930–31 (Fed. Cir. 2012); *see also TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 113 (D.D.C. 2020) (finding irreparable harm where government listing decision "ero[ded] TikTok's attractiveness as a commercial partner"). That is precisely the irreparable harm inflicted on Plaintiffs by the Listing Decision.

*Third*, the Listing Decision has irreparably tarnished Ninestar's reputation and goodwill, both in the printing industry and in the business world more broadly. Based solely on FLETF's unlawful and unexplained Listing Decision, branding the company as a mass human trafficker, many of Ninestar's customers and business partners simply assume that Ninestar must be guilty. Plaintiffs' business relationships will take years to recover from that taint, even after they clear their names. As both the Federal Circuit and this Court have repeatedly recognized, that kind of "damage to reputation" and "loss of goodwill" are paradigmatic irreparable injuries. *Celsis In Vitro, Inc.*, 664 F.3d at 930; *accord Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); *U.S. Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303, 1307 (Ct. Int'l Trade 2018); *Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1328 (Ct. Int'l Trade 2014).

*Finally*, as this Court has recognized, "failure to comply with APA procedural requirements … itself causes irreparable harm because 'the damage done by [the Agency's] violation of the APA cannot be fully cured by later remedial action.'" *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1290 (Ct. Int'l Trade 2019) (quoting *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 18 (D.D.C. 2009)). The APA's requirement that agencies adequately explain their actions serves both to facilitate adequate judicial review and to ensure thoughtful, deliberative decision-making. *See supra* at 8–9; *Invenergy*, 422 F. Supp. 3d at 1290–

91 (observing that notice-and-comment rulemaking similarly ensures "meaningful judicial review" and "consider[ation] of other views").  "If the court were to issue a decision on the merits ordering [FLETF] to [adequately explain itself] without first issuing a PI," the Listing Decision would inflict serious financial and reputational harm on Ninestar without any guarantee that FLETF had a reasonable basis for its decision.  *Invenergy*, 422 F. Supp. 3d at 1291.  That "procedural harm is irreparable, and thus merits preliminary injunctive relief."  *Id.*

### C.    The Balance Of Hardships Favor Relief.

Next, in assessing a request for preliminary injunctive relief, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (internal quotation marks omitted).  Here, the magnitude of the hardships are far greater for Ninestar than for the government and therefore favor injunctive relief.

As discussed, Ninestar is already suffering substantial and irreparable harm as a result of the Listing Decision.  The significant economic losses (most notably, loss of access to the U.S. market) cannot be compensated because the Defendants enjoy sovereign immunity.  To make matters worse, the Listing Decision continues to diminish Ninestar's reputation, both in the United States and abroad.  And Ninestar has also suffered an irreparable procedural injury.  An injunction is necessary to mitigate these ongoing harms.

The government, by contrast, would suffer no remotely comparable hardship if this Court issues an injunction.  To be sure, having to explain the basis for its Listing Decision would "increase the administrative burden on the Government."  *Invenergy*, 422 F. Supp. 3d at 1292.  But "[t]he APA mandates such a burden."  *Id.*  Where "[a]ny harms suffered by the Government … are a direct result of [the agency's] failure to follow the APA," then "[t]he balance of equities … tips decidedly in favor of the Plaintiffs."  *Id.* at 1293; *see also Canadian Lumber*, 441 F. Supp. 2d.

15

at 1267 (explaining that "only hardship to the defendant that is not an inseparable part of the plaintiff's right is cognizable" in the balance-of-hardships analysis).

**D.     A Preliminary Injunction Would Promote The Public Interest.**

Finally, an injunction preventing the government from continuing to apply its procedurally and substantively flawed Listing Decision is in the public interest.  Simply put, "[t]he public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly."  *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010).  Indeed, the APA was adopted to serve and advance the public interest by compelling agencies to explain publicly the actions they are taking.  The public interest would be disserved by allowing agencies to avoid that obligation.  *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.  To the contrary, there is a substantial public interest in having government agencies abide by the federal laws that govern their existence and operation." (internal quotation marks and citations omitted)); *N. Mariana Islands*, 686 F. Supp. 2d at 21 ("The public interest is served when administrative agencies comply with … the APA.").  Here, the injunction would further the public's interest in "process and fidelity to law."  *Invenergy*, 422 F. Supp. 3d at 1294.

Moreover, an injunction would vindicate the purposes of the UFLPA.  *See Canadian Lumber*, 441 F. Supp. 2d at 1267 ("In balancing the public interest, courts have traditionally looked to the underlying statutory purposes at issue.").  The UFLPA's overarching goals include "strengthen[ing] the prohibition against importation of goods made with forced labor," "ending forced labor practices wherever such practices occur," and "address[ing] gross violations of human rights in the Xinjiang Uyghur Autonomous Region." ULFPA § 1(1), (2), (6).  Those purposes are frustrated both by listing entities with no involvement with forced labor or the Xinjiang region,

and by failing to explain publicly legitimate grounds for listings and their ensuing consequences. FLETF's "trust us" approach to administering the UFLPA negates the Act's mechanism for deterring forced labor and improving the conditions in the Xinjiang region. An injunction would help reinstate the Act's deterrents and incentives.

## CONCLUSION

This Court should issue a preliminary injunction staying the Listing Decision and preventing Defendants from taking any action against the importation of Plaintiffs' goods predicated on the Listing Decision.

Dated: August 25, 2023

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

**PUBLIC VERSION**

**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD. | |
| *Plaintiffs*, | |
| v. | Case No. 23-182 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*, | **Proposed Order Granting Preliminary Injunction** |
| *Defendants*. | |

Plaintiffs' motion for a preliminary injunction (ECF No. __) is **GRANTED**.  It is hereby **ORDERED** that Defendants are thereby enjoined from implementing or enforcing the Forced Labor Enforcement Task Force's listing of Plaintiffs and the resulting restrictions.

Issued this _____ day of _____, 2023.


_____

Judge of the United States Court of International Trade