UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

_____

|  |  |  |
|---|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Court No. 23-00182 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force, | : | NON-CONFIDENTIAL |
| | : | |
| Defendants. | : | |

_____

## ORDER

Upon reading defendants' motion to dismiss and opposition to plaintiffs' motion for a

preliminary injunction; plaintiffs' responses thereto, and upon consideration of other papers and

proceedings had herein; it is hereby

ORDERED that defendants' motion be, and hereby is, granted; and it is further

ORDERED that plaintiffs' motion for a preliminary injunction is denied; and it is further

ORDERED that this action is dismissed.

_____
GARY S. KATZMANN, JUDGE

Dated: _____, 2023
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                                 :
NINESTAR CORPORATION, ZHUHAI NINESTAR            :
INFORMATION TECHNOLOGY CO., LTD., ZHUHAI         :
PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX        :
MICROELECTRONICS CO., LTD., GEEHY                :
SEMICONDUCTOR CO., LTD., ZHUHAI G&G              :
DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE       :
PRINTING TECHNOLOGY CO., LTD., and ZHUHAI        :
NINESTAR MANAGEMENT CO., LTD.,                   :
                                                 :
                        Plaintiffs,              :
                                                 :    Court No. 23-00182
              v.                                 :
                                                 :
UNITED STATES OF AMERICA; DEPARTMENT OF          :
HOMELAND SECURITY; UNITED STATES                 :
CUSTOMS AND BORDER PROTECTION; FORCED            :
LABOR ENFORCEMENT TASK FORCE;                    :    NON-CONFIDENTIAL
ALEJANDRO MAYORKAS, in his official capacity as  :
the Secretary of the Department of Homeland Security; :
TROY A. MILLER, in his official capacity as the Senior :
Official Performing the Duties of the Commissioner for :
U.S. Customs and Border Protection; and          :
ROBERT SILVERS, in his official capacity as Under :
Secretary for Office of Strategy, Policy, and Plans and :
Chair of the Forced Labor Enforcement Task Force, :
                                                 :
                        Defendants.              :
_____ :

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade, defendants, the United States *et al.*, respectfully request that the Court dismiss this action for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted.  The reasons for our motion are set forth in the accompanying memorandum of law.

WHEREFORE, defendants respectfully request that an order be entered granting defendants' motion to dismiss, denying plaintiffs' motion for a preliminary injunction, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:     /s/ Claudia Burke
        CLAUDIA BURKE
        Deputy Director

        /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Monica P. Triana
        MONICA P. TRIANA
        Senior Trial Counsel

        /s/ Guy Eddon
        GUY EDDON
        Trial Attorney
        Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza – Room 346
        New York, New York 10278
        Tel. (212) 264-9240 or 9230
        *Attorneys for Defendant*

Dated:  October 3, 2023

## UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

_____
                                                                    :
NINESTAR CORPORATION, ZHUHAI NINESTAR          :
INFORMATION TECHNOLOGY CO., LTD., ZHUHAI       :
PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX      :
MICROELECTRONICS CO., LTD., GEEHY              :
SEMICONDUCTOR CO., LTD., ZHUHAI G&G            :
DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE     :
PRINTING TECHNOLOGY CO., LTD., and ZHUHAI      :
NINESTAR MANAGEMENT CO., LTD.,                 :
                                                                    :
                              Plaintiffs,                           :
                                                                    :        Court No. 23-00182
              v.                                                    :
                                                                    :
UNITED STATES OF AMERICA; DEPARTMENT OF        :
HOMELAND SECURITY; UNITED STATES               :
CUSTOMS AND BORDER PROTECTION; FORCED          :
LABOR ENFORCEMENT TASK FORCE;                  :        NON-CONFIDENTIAL
ALEJANDRO MAYORKAS, in his official capacity as :
the Secretary of the Department of Homeland Security; :
TROY A. MILLER, in his official capacity as the Senior :
Official Performing the Duties of the Commissioner for :
U.S. Customs and Border Protection; and        :
ROBERT SILVERS, in his official capacity as Under :
Secretary for Office of Strategy, Policy, and Plans and :
Chair of the Forced Labor Enforcement Task Force, :
                                                                    :
                              Defendants.                           :
_____:

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MONICA P. TRIANA
Senior Trial Counsel

GUY EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230

Date: October 3, 2023          *Attorneys for Defendants*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 2

STATEMENT OF FACTS ............................................................................................... 3

    A. Statutory And Regulatory Framework ...................................................................... 3

        i.    Forced Labor In Xinjiang ..................................................................... 4

        ii.    The FLETF ............................................................................................ 5

        iii.    UFLPA Entity List .............................................................................. 6

        iv.    Enforcement Of The Prohibitions Set Forth In The UFLPA .................... 9

    B. The Addition Of Plaintiffs To The UFLPA Entity List ............................................ 11

        i.    Information Considered By The FLETF In Voting To Add Plaintiffs To The UFLPA Entity List .......................................................................... 12

        ii.    Plaintiffs' Challenge To Their Placement On UFLPA Entity List .......... 12

ARGUMENT .................................................................................................................. 14

I.        THE COMPLAINT SHOULD BE DISMISSED ....................................................... 14

    A. Standard Of Review .................................................................................................. 14

    B. The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1581(i) ..................... 15

    C. Plaintiffs Failed To Exhaust Their Administrative Remedies, Including Seeking Their Removal From The List ................................................................ 19

    D. The Complaint Fails To State A Claim Upon Which Relief Can Be Granted ............. 23

        i.    Neither The UFLPA Nor The APA Requires That Plaintiffs Be Provided An Explanation Beyond The Federal Register Notice ........................... 23

        ii.    The Filing Of The Administrative Record Has Mooted Plaintiffs' Claims ............. 28

II.        INJUNCTIVE RELIEF SHOULD BE DENIED ....................................................... 29

    A. Standard Of Review .................................................................................................. 30

    B. Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claim ........................ 30

C.  Plaintiffs Have Not Irreparably Harmed ......................................................... 31

D.  The Public Interest And Balance Of Hardships Compel
Denial Of Injunctive Relief ............................................................................. 37

CONCLUSION ...................................................................................................... 40

**TABLE OF AUTHORITIES**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
  988 F.2d 146 (D.C. Cir. 1993) ................................................................................... 28

*Aqua Prods., Inc. v. Matal,*
  872 F.3d 1290 (Fed. Cir. 2017) ........................................................................... 26, 31

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) ................................................................................................... 28

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................... 14, 23

*Autoalliance Int'l Inc. v. United States,*
  398 F.Supp.2d 1326 (Ct. Int'l Trade 2005) .............................................................. 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................... 14, 15, 23

*Browning v. Clinton,*
  292 F.3d 235 (D.C. Cir. 2002) ........................................................................... 14, 23

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) ............................................. 25, 26

*Carpenter Tech. v. United States,*
  452 F. Supp. 2d 1344 (Ct. Int'l Trade 2006) ........................................................... 20

*Celsis in Vitro, Inc. v. CellzDirect, Inc.,*
  664 F.3d 922 (Fed. Cir. 2012) ........................................................................... 36, 37

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots v. United States,*
  393 F.Supp.3d 1271 (Ct. Int'l Trade 2019) .............................................................. 32

*Corus Grp. PLC v. Bush,*
  217 F. Supp. 2d 1347 (Ct. Int'l Trade 2002) ........................................................... 33

*CR Indus. v. United States,*
  10 C.I.T. 561 (1986) ................................................................................................ 14

*DeFunis v. Odegaard,*
  416 U.S. 312 (1974) ................................................................................................ 28

*Department of Commerce v. New York,*
  139 S.Ct. 2551 (2019) ............................................................................................. 25

*Fredericks v. United States,*
    125 Fed. Cl.404 (2016)..................................................................21

*Fund for Animals v. Frizzell,*
    530 F.2d 982 (D.C.C. 1975)...........................................................32

*Int'l Labor Rights Fund v. Bush,*
    357 F. Supp. 2d 204 (D.D.C. 2004)................................................18

*Int'l Labor Rights Fund v. United States,*
    391 F. Supp. 2d 1370 (Ct. Intl. Trade 2005) ................................18

*Int'l Union, UMW v. FMSHA,*
    920 F.2d 1075 (D.C. Cir. 1993) ....................................................28

*Invenergy Renewables LLC v. United States*
    422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019)................................36

*Invenergy Renewables LLC v. United States,*
    476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020)..........................13, 31

*J. Conrad LTD v. United States,*
    457 F. Supp. 3d 1365 (Ct. Int'l Trade 2020)................................30

*JCM, Ltd. v. United States,*
    210 F.3d 1357 (Fed. Cir. 2000)....................................................14

*K Mart Corp. v. Cartier, Inc.,*
    485 U.S. 176 (1988)................................................................17, 18

*Kellogg Brown & Root Servs., Inc. v. United States,*
    728 F.3d 1348 (Fed. Cir. 2013).....................................................14

*Kent v. Principi,*
    389 F.3d 1380 (Fed. Cir. 2004).....................................................15

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997)......................................................................30

*McCarthy v. Madigan,*
    503 U.S. 140 (1992).........................................................19, 21, 22

*McKart v. United States,*
    395 U.S. 185 (1969) ......................................................................19

*Motor Vehicle Mfrs. Ass'n v. United States,*        463 U.S. 29
    (1983) ...........................................................................................26

*Munaf v. Geren*,
    553 U.S. 674 (2008)...................................................................................30

*Native Fed'n of Madre De Dios River & Tributaries v. Bozovich Timber Prod., Inc.*,
    31 C.I.T. 585 (2007)..................................................................................18

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
    260 F.3d 1365 (Fed. Cir. 2001)..................................................................28

*Newdow v. Bush*,
    355 F.Supp.2d 265 (D.D.C. 2005).............................................................32

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................................38

*Norcal/Crosetti Foods, Inc. v. United States*,
    963 F.2d 356 (Fed. Cir. 1992)...................................................................15

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
    48 F.Supp.3d 87 (D.D.C. 2014) .................................................................32

*Palladian Partners, Inc. v. United States*,
    783 F.3d 1243 (Fed. Cir. 2015) .................................................................19

*PBGC v. LTV Corp.*,
    496 U.S. 633 (1990)..................................................................................27

*Pentax Corp. v. Robison*,
    125 F.3d 1457 (Fed. Cir. 1997)..................................................................14

*Premier Trading, Inc. v. United States*,
    122 F. Supp. 3d 1354 (Ct. Int'l Trade 2016)........................................34, 35

*S. J. Stile Assoc. v. Snyder*,
    646 F.2d 522 (C.C.P.A. 1981)...................................................................32

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998)...................................................................19

*Secured Mail Sols, LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...................................................................15

*Shandong Huarong Gen. Grp. v. United States*,
    122 F. Supp. 2d 143 (Ct. Int'l Trade 2000)........................................*passim*

*Shinyei Corp. of America v. United States*,
    355 F.3d 1297 (Fed. Cir. 2004)..................................................................16

*Silfab Solar, Inc. v. United States*,
 892 F.3d 1340 (Fed. Cir. 2018) ............................................................... 30

*Steel Co. v. Citizens For A Better Environment*,
 523 U.S. 83 (1998) ...................................................................................... 14

*Strait Shipbrokers PTE. LTD v. Blinken*,
 560 F. Supp. 3d 81 (D.D.C. 2021) ................................................ 26, 27, 31

*Tourus Records, Inc. v. Drug Enforcement Admin.*,
 259 F.3d 731 (D.C. Cir. 2001) ................................................................... 26

*Trump v. Hawaii*,
 138 S. Ct. 2392, 201 L. Ed. 2d 775 (2018) ............................................... 30

*U.S. Parole Comm'n v. Geraghty*,
 445 U.S. 388 (1980) .................................................................................... 28

*United Pac. Ins. Co. v. United States*,
 464 F.3d 1325 (Fed. Cir. 2006) ........................................................... 14, 23

*Wally Packaging, Inc. v. United States*,
 578 F. Supp. 1408 (1984) ........................................................................... 14

*Western Oil & Gas Ass'n v. EPA*,
 633 F.2d 803 (9th Cir. 1980) ..................................................................... 28

*Winter v. Natural Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ........................................................................... 30, 32, 37

*Yanko v. United States*,
 869 F.3d 1328 (Fed. Cir. 2017) ................................................................. 15

*Zenith Radio Corp. v. United States*,
 710 F.2d 806 (Fed. Cir. 1983) ............................................................. 32, 35

**Statutes**

19 U.S.C. § 1307 .............................................................................. *passim*

19 U.S.C. § 1499 ................................................................................. 3, 10

19 U.S.C. § 1514 ............................................................................... 10, 16

19 U.S.C. § 4681 ................................................................................... 5, 6

28 U.S.C. § 1581 .............................................................................. *passim*

28 U.S.C. § 2412 ...................................................................................... 13

The Uyghur Forced Labor Prevention Act, P.L. 117-78 (Dec. 23, 2021) ........................ *passim*

The Administrative Procedure Act, 5 U.S.C. § 706 ....................................................... *passim*

**Rules**

USCIT R. 12 ....................................................................................................... 1, 14, 15

**Regulations**

19 C.F.R. Part 151 ....................................................................................................... 3

19 C.F.R. Part 174 .............................................................................................. 10, 16

**Other Authorities**

Executive Order 13923 (May 15, 2020) .............................................................. 5, 6

*Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China,*
Department of Homeland Security (June 17, 2022) ....................................... *passim*

*Uyghur Forced Labor Prevention Act, U.S. Customs and Border Protection Operational Guidance For Importers,*
Department of Homeland Security (June 13, 2022)............................................ 3, 10

*Establishment of the Forced Labor Enforcement Task Force Under Section 741 of the United States-Mexico-Canada Agreement Implementation Act,*
85 Fed. Reg. 30587 (May 15, 2020) ............................................................................ 5

*Notice Regarding the Uyghur Forced Labor Prevention Act Entity List,*
88 Fed. Reg. 38,080 (June 12, 2023) ............................................................... *passim*

*Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List,*
87 Fed. Reg. 47,777 (Aug. 4, 2022)....................................................... 7, 8, 20, 21

UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

_____

| | | |
|---|---|---|
| | : | |
| NINESTAR CORPORATION, ZHUHAI NINESTAR | : | |
| INFORMATION TECHNOLOGY CO., LTD., ZHUHAI | : | |
| PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX | : | |
| MICROELECTRONICS CO., LTD., GEEHY | : | |
| SEMICONDUCTOR CO., LTD., ZHUHAI G&G | : | |
| DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE | : | |
| PRINTING TECHNOLOGY CO., LTD., and ZHUHAI | : | |
| NINESTAR MANAGEMENT CO., LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Court No. 23-00182 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA; DEPARTMENT OF | : | |
| HOMELAND SECURITY; UNITED STATES | : | |
| CUSTOMS AND BORDER PROTECTION; FORCED | : | |
| LABOR ENFORCEMENT TASK FORCE; | : | NON-CONFIDENTIAL |
| ALEJANDRO MAYORKAS, in his official capacity as | : | |
| the Secretary of the Department of Homeland Security; | : | |
| TROY A. MILLER, in his official capacity as the Senior | : | |
| Official Performing the Duties of the Commissioner for | : | |
| U.S. Customs and Border Protection; and | : | |
| ROBERT SILVERS, in his official capacity as Under | : | |
| Secretary for Office of Strategy, Policy, and Plans and | : | |
| Chair of the Forced Labor Enforcement Task Force, | : | |
| | : | |
| Defendants. | : | |

_____:

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Defendants, United States *et al.*, respectfully submit this memorandum in support of their motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade, to dismiss this action for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted, and in opposition to plaintiffs' motion for a preliminary injunction.

## INTRODUCTION

Plaintiffs Ninestar Corporation and seven of its affiliates (collectively Ninestar or plaintiffs)[1] assert that the determination of the Forced Labor Enforcement Task Force (FLETF) to add them to the list of entities described in section 2(d)(2)(B) of the Uyghur Forced Labor Prevention Act (UFLPA), *see* P.L. 117-78 (Dec. 23, 2021), was without a "reasoned explanation" and therefore arbitrary and capricious, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(a).  *See* Compl., ¶ 6.

The Court should dismiss plaintiffs' claims because: (1) the FLETF's decision to add the plaintiffs to the list of entities described in section 2(d)(2)(B) (UFLPA Entity List) is neither an "embargo" nor a "quantitative restriction," and therefore plaintiffs cannot invoke the Court's subject matter jurisdiction under 28 U.S.C. § 1581(i)(1)(C); (2) plaintiffs have failed to exhaust their administrative remedies; (3) the complaint fails to state a claim on which any relief can be granted because neither the UFLPA nor the APA requires an explanation beyond what was included in the Federal Register notice; (4) and even if a reason beyond what was provided in the Federal Register notice was required, plaintiffs now have the explanation through submission of the administrative record, rendering plaintiffs' claim moot.

In the alternative, should the Court reach the merits of plaintiffs' request for a preliminary injunction, that request should be denied.  Plaintiffs are not likely to succeed on the merits because the Federal Register Notice providing the basis for plaintiffs' addition to the

---

[1] Plaintiffs are Ninestar and seven affiliates: Zhuhai Ninestar Information Technology Co. Ltd., Zhuhai Pantum Electronics Co. Ltd., Zhuhai Apex Microelectronics Co., Ltd., Geehy Semiconductor Co., Ltd., Zhuhai G&G Digital Technology Co., Ltd., Zhuhai Seine Printing Technology Co., Ltd., and Zhuhai Ninestar Management Co., Ltd.  In their complaint, plaintiffs claim that one of the entities listed in the Federal Register Notice – Zuhai Pu-Tech Industrial Co., Ltd. – is not affiliated with Ninestar Corporation and is therefore not a party to this action. Compl., ¶ 39.

UFLPA Entity List was sufficient to satisfy the requirements of the APA and, therefore, the determination was not arbitrary, capricious, or an abuse of discretion. Moreover, plaintiffs will not suffer irreparable injury as a result of being added to the list, and the public interest and the balance of the hardships weigh heavily against Ninestar.

## STATEMENT OF FACTS

### A. Statutory And Regulatory Framework

Section 307 of the Tariff Act of 1930 prohibits the importation of all "goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in any foreign country by . . . forced labor . . . ." 19 U.S.C. § 1307. Forced labor is defined by section 307 as "all work or service . . . exacted from any person under the menace of any penalty . . . and for which the worker does not offer . . . [themselves] voluntarily." *Id.*[2] The UFLPA was enacted in December 2021, "to strengthen the prohibition against the importation of goods made with forced labor, including by ensuring that the Government of the People's Republic of China [(PRC)] does not undermine the effective enforcement of section 307 of the Tariff Act of 1930 (19 U.S.C. 1307)." *See* UFLPA, Section 1(1) (Statement of Policy). Specifically, it was enacted "[t]o ensure that goods made with forced labor in the Xinjiang Uyghur Autonomous Region [(Xinjiang)] of the [PRC] . . . do not enter the United States market . . . ." (UFLPA, Preamble). As set forth more fully below, the UFLPA requires U.S. Customs and Border Protection (CBP) to apply a rebuttable presumption that any goods "mined, produced, or manufactured," in whole or in part, from Xinjiang or produced by an entity named on the UFLPA Entity List, are

---

[2] It should be noted that while CBP has promulgated regulations implementing 19 U.S.C. § 1307 (*i.e.*, 19 C.F.R. § 12.42-12.45), for purposes of UFLPA enforcement, shipments are subject to examination under 19 U.S.C. § 1499 and 19 C.F.R. Part 151. *See Uyghur Forced Labor Prevention Act, U.S. Customs and Border Protection Operational Guidance For Importers,* Department of Homeland Security (June 13, 2022), at 7-9 (*CBP Operational Guidance*).

prohibited under 19 U.S.C. § 1307 and are not allowed into the United States.  UFLPA, Section 3.

### i.     Forced Labor In Xinjiang

China's use of widespread state-sponsored forced labor as part of a genocide against predominantly Muslim Uyghurs and other ethnic and religious minority groups in Xinjiang is well-documented.  *See Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China*, Department of Homeland Security (June 17, 2022) (*FLETF Strategy*),[3] at 6-7, 10-12.  According to the State Department's 2021 *Trafficking in Persons Report*,[4] cited in the *FLETF Strategy*:

> Over the last four years, the [PRC] . . . has carried out a mass detention and political indoctrination campaign against Uyghurs, who are predominantly Muslim, and members of other ethnic and religious minority groups in . . . Xinjiang . . . , a large region in western China.  The courageous voices of survivors, their family members abroad, researchers, and international advocacy groups have thoroughly documented the PRC's discriminatory use of surveillance technologies and trumped-up administrative and criminal charges to abduct and detain more than one million Muslims, including Uyghurs, ethnic Hui, ethnic Kazakhs, ethnic Kyrgyz, ethnic Tajiks, and ethnic Uzbeks, in as many as 1,200 state-run internment camps throughout Xinjiang.  Detention in these camps is intended to erase ethnic and religious identities under the pretext of "vocational training."  Forced labor is a central tactic used for this repression.
>
> In Xinjiang, the government is the trafficker.  Authorities use threats of physical violence, forcible drug intake, physical and sexual abuse, and torture to force detainees to work in adjacent or off-site factories or worksites producing [many different products] . . . .

---

[3]  This document was prepared by the FLETF in accordance with a directive under section 2(c) of the UFLPA.  It is available at https://www.dhs.gov/uflpa-strategy.

[4] *Available at*, https://www.state.gov/reports/2021-trafficking-in-persons-report/

2021 *Trafficking In Persons Report*, at 47.

China's genocidal campaign includes trafficking Uyghurs out of Xinjiang.  As part of that campaign, the PRC government implemented several different labor programs.  One such program was known as a "poverty alleviation" program; it involved the transfer of ethnic minority detainees to other locations within Xinjiang as well as other provinces throughout the PRC.  *Id.*; *FLETF Strategy*, at 10-11, 18-20.  As part of the program, companies and local governments – as well as recruitment intermediaries – receive a subsidy for forcing these individuals to work in manufacturing.  2021 *Trafficking in Persons Report*, at 47; *FLETF Strategy*, at 19-20.  According to one NGO report, between 2017 and 2019, approximately 80,000 ethnic minority workers were transferred out of Xinjiang to work in factories in other provinces in the PRC, specifically eastern Chinese provinces, under a government policy known as "Xinjiang Aid."  *See* 2021 *Trafficking In Persons Report,* at 177; *FLETF Strategy*, at 10-11, 20.  Work as part of the labor transfer programs is not voluntary.  *FLETF Strategy*, at 21.  It results from pervasive intimidation and threats by the government, including the threat of detention.  *Id.*  And, workers are the subject of constant surveillance.  *Id.*

ii.      **The FLETF**

The FLETF is an inter-agency task force created pursuant to section 741 of the United States – Mexico – Canada Agreement Implementation Act, and Executive Order 13923.  It is tasked with "monitor[ing] United States enforcement of the prohibition under section 307 of the Tariff Act of 1930 (19 U.S.C. 1307)."  *See* 19 U.S.C. § 4681; Exec. Order 13923, *Establishment of the Forced Labor Enforcement Task Force Under Section 741 of the United States-Mexico-Canada Agreement Implementation Act,* 85 Fed. Reg. 30,587 (May 15, 2020).  The FLETF is chaired by the Department of Homeland Security (DHS) and comprises seven member agencies:

DHS, the U.S. Trade Representative (USTR), and the Departments of Justice, Labor, State, Treasury, and Commerce.[5]  *See* 19 U.S.C. § 4681; Exec. Order 13923.  In addition to the seven member agencies, there are also six observer agencies that are part of the FLETF: the Departments of Energy and Agriculture, the U.S. Agency for International Development, the National Security Council, CBP, and U.S. Immigration and Customs Enforcement Homeland Security Investigations.  *See Notice Regarding the Uyghur Forced Labor Prevention Act Entity List,* 88 Fed. Reg. 38,080, 38,081 (June 12, 2023).

> ### iii.   UFLPA Entity List

Pursuant to the UFLPA, the FLETF is tasked with developing a "strategy for supporting enforcement of Section 307 of the Tariff Act" to prevent the importation of goods made with forced labor in the PRC.  UFLPA, Section 2(c); *FLETF Strategy.*  As part of this *FLETF Strategy*, the UFLPA requires the FLETF to create and update the UFLPA Entity List, a list of entities that meet any of the following four separate statutory criteria:

> (i) a list of entities in the Xinjiang Uyghur Autonomous Region that mine, produce, or manufacture wholly or in part any goods, wares, articles and merchandise with forced labor;
>
> (ii) a list of entities working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region;
>
> (iii) . . .[6]

---

[5]  DHS, as the FLETF Chair, has the authority to invite representatives from other agencies to participate.  Exec. Order 13923; 88 Fed. Reg. 38,081.  The Department of Commerce was invited to be a member by the FLETF Chair.  88 Fed. Reg. 38,081, fn. 1.

[6]  Subsection (iii) of Section 2(d)(2)(B) addresses "a list of *products* mined, produced, or manufactured wholly or in part by entities on the list required by clause (i) or (ii)" and therefore is not part of the UFLPA Entity List. *Id.* (emphasis added).

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

(iv) a list of entities that exported products described in clause (iii) from the People's Republic of China into the United States;

(v) a list of facilities and entities, including the Xinjiang Production and Construction Corps, that source material from the Xinjiang Uyghur Autonomous Region or from persons working with the government of the Xinjiang Uyghur Autonomous Region or the Xinjiang Production and Construction Corps for purposes of the "poverty alleviation" program or the "pairing-assistance" program or any other government labor scheme that uses forced labor;

UFLPA, Section 2(d)(2)(B). The entities that the FLETF identifies as satisfying these statutory criteria are placed on what is known as the UFLPA Entity List. *See FLETF Strategy,* at 22-25; *Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777, 47,778 (Aug. 4, 2022).

The UFLPA requires the FLETF to update the UFLPA Entity List at least annually, *UFLPA*, Section 2(e)(2), but provides no specific procedural requirements. To that end, the FLETF established Standard Operating Procedures (SOP) to carry out the responsibility of updating the UFLPA Entity List. { ████████████████████████████████████ ████████████████████████████████████ ████████████████████ } AR000221. At any time, a FLETF member agency can recommend to the FLETF that an entity be added to the list. 87 Fed. Reg. 47,778; 88 Fed. Reg. 38,081-82; *see* AR000222. { ████████████████████ ████████████████████████████████████ ████████████████ } AR000222. { ████████ ████████████████████████████████████ ██████████ } *Id.* { ████████████████████ ███████████████ } *Id.* Upon review of the recommendation, the decision to

7

add an entity is made by majority vote of the FLETF member agencies.  87 Fed. Reg. 47,778; 88 Fed. Reg. 38,081-83; AR000222-24.  Additions to the UFLPA Entity List are posted on the FLETF website, *see* https://www.dhs.gov/uflpa-entity-list, and a notice is then published in the Federal Register.  *See* 88 Fed. Reg. 38,082-83.  The notice includes the statutory sub-list under which the entity is being added to notify the public of the basis for the addition.  *Id*.

The statute is silent on procedures for making requests to be removed from the list.  However, the FLETF has promulgated and published in the Federal Register guidelines governing removal requests, which are directed to the FLETF chair.  87 Fed. Reg. 47,778; 88 Fed. Reg. 38,082.  The Federal Register notice provides the following detailed instructions with respect to any such submission:

> In the removal request, the entity (or its designated representative) should provide information that demonstrates that the entity no longer meets or does not meet the criteria described in the applicable clause ((i), (ii), (iv), or (v)) of section 2(d)(B) of the UFLPA.  The FLETF Chair will refer all such removal requests and supporting information to FLETF member agencies.  Upon receipt of the removal request, the FLETF Chair or the Chair's designated representative may contact the entity on behalf of the FLETF regarding questions on the removal request and may request additional information.  Following review of the removal request by the FLETF member agencies, the decision to remove an entity from the UFLPA Entity List will be made by majority vote of the FLETF member agencies.

*Id*.  After an entity submits a request for removal from the UFLPA Entity List, the entity can ask for a meeting with the FLETF.  *Id*.  After review of the removal request, the FLETF may accept the request for a meeting and, if so, the meeting will take place before the FLETF votes on the request for removal from the UFLPA Entity List.  *Id*.  While the FLETF's decision as to the removal request is not appealable to the FLETF, an entity is free to submit a new removal request if it is accompanied by new information.  *Id*.; *see also* AR000224-25.

###### iv.      Enforcement Of The Prohibitions Set Forth In The UFLPA

If an entity is placed on the UFLPA Entity List, the rebuttable presumption in section 3 of

the UFLPA applies to importation of goods or merchandise produced by that entity.

Specifically, section 3(a) requires CBP to apply a rebuttable presumption that any goods "mined,

produced, or manufactured," in whole or in part, from Xinjiang or produced by an entity named

on the UFLPA Entity List are prohibited under 19 U.S.C. § 1307 and "are not entitled to entry."

Section 3 provides, in relevant part (this is an excerpt of the public law):

**SEC. 3.   REBUTTABLE PRESUMPTION THAT IMPORT PROHIBITION APPLIES TO GOODS MINED, PRODUCED, OR MANUFACTURED IN THE XINJIANG UYGHUR AUTONOMOUS REGION OR BY CERTAIN ENTITIES.**

(a) IN GENERAL.—The Commissioner of U.S. Customs and Border Protection shall, except as provided by subsection (b), apply a presumption that, with respect to any goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in the Xinjiang Uyghur Autonomous Region of the People's Republic of China or produced by an entity on a list required by clause (i), (ii), (iv) or (v) of section 2(d)(2)(B)—

(1) the importation of such goods, wares, articles, and merchandise is prohibited under section 307 of the Tariff Act of 1930 (19 U.S.C. 1307); and

(2) such goods, wares, articles, and merchandise are not entitled to entry at any of the ports of the United States.

(b) EXCEPTIONS.—The Commissioner shall apply the presumption under subsection (a) unless the Commissioner determines—

(1) that the importer of record has—

(A) fully complied with the guidance described in section 2(d)(6) and any regulations issued to implement that guidance; and

(B) completely and substantively responded to all inquiries for information submitted by the Commissioner to ascertain whether the goods were mined, produced, or manufactured wholly or in part with forced labor; and

(2) by clear and convincing evidence, that the good, ware, article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor.

UFLPA, Section 3.

Mere inclusion on the UFPLA Entity List does not, therefore, mean that an entity's goods will be prohibited from entry. Rather, as explained below, when shipments of goods produced in Xinjiang or by a listed entity arrive at a United States port, the importer has the opportunity to rebut the presumption and demonstrate to CBP its shipment's admissibility. CBP implements the rebuttable presumption requirement of the UFLPA through its authority under 19 U.S.C. § 1499 and under implementing regulations to take several types of enforcement actions. Such enforcement actions occur when an importer presents its goods for entry into the United States.

If an enforcement action takes place, CBP will notify the importer of the action, in accordance with the relevant customs laws. *See Uyghur Forced Labor Prevention Act, U.S. Customs and Border Protection Operational Guidance For Importers,* Department of Homeland Security (June 13, 2022), at 7-9 (*CBP Operational Guidance*).[7] More specifically, if an importer attempts to import goods manufactured in whole or in part by a listed entity, CBP may elect to detain, and then either exclude or seize the merchandise. *Id.* Should CBP detain the merchandise, the importer will have the opportunity to establish that an exception to the presumption applies – *i.e.*, it can rebut the statutory presumption and demonstrate the shipment's admissibility. *See id;* UFLPA, Section 3(b). Should CBP exclude the merchandise, the importer may again challenge this decision via a protest pursuant to 19 U.S.C. § 1514(a)(4) and 19 C.F.R. Part 174, by submitting information to overcome the presumption. *See CBP Operational Guidance*, at 7-8.

To find that the presumption is rebutted under the statute, the CBP commissioner must determine:

---

[7] *Available at*, https://www.cbp.gov/document/guidance/uflpa-operational-guidance-importers.

> (1) that the importer of record has—
>> (A) *fully complied with the guidance* described in section 2(d)(6) [of the UFLPA] and any regulations issued to implement that guidance; and
>> (B) completely and substantively responded to all inquiries for information submitted by the Commissioner to ascertain whether the goods were mined, produced, or manufactured wholly or in part with forced labor; and
>
> (2) by *clear and convincing evidence*, that the good, ware, article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor.

UFLPA, Section 3(b) (emphasis added).  If the importer is successful in this showing, the goods will be permitted to enter the United States.

Pursuant to section 2(d)(6) of the UFLPA, the *FLETF Strategy* details the administrative mechanism and the types of evidence necessary for an importer to obtain an exception from the CBP Commissioner to the UFLPA's presumption with respect to a specific entry.  *FLETF Strategy*, at 40-51.  This process of rebutting the presumption with respect to a specific entry is separate and distinct from a request to the FLETF for removal from the UFLPA Entity List.  Although plaintiffs assert that certain enforcement actions have already been taken against Ninestar's merchandise, Compl., ¶ 48, no importer of Ninestar's merchandise has attempted to rebut the presumption.

**B.     The Addition Of Plaintiffs To The UFLPA Entity List**

On June 9, 2023, the FLETF announced that it was adding plaintiffs to the UFLPA Entity List.  On June 12, 2023, the decision was published in the Federal Register.  88 Fed. Reg. 38,080-83.  Specifically, the Federal Register notice indicated that Ninestar Corporation and its affiliated entities were being added to the UFLPA Entity List because they were deemed to have been "working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang," which is the standard under section 2(d)(2)(B)(ii) of the UFLPA.  *Id.*

at 38,082.  Plaintiffs have not requested removal from the UFLPA Entity list using the

procedures set forth in the Federal Register and described above.  *See supra* at 7-8.

### i.  Information Considered By The FLETF In Voting To Add Plaintiffs To The UFLPA Entity List

The FLETF member agencies each received a package, submitted by DHS,

recommending the addition of Ninestar and its affiliated entities to the UFLPA Entity List.

AR0001-212.  The information supporting the addition of plaintiffs to the UFLPA Entity List

was provided to, and reviewed by, representatives of each of the member agencies.  As

summarized in the cover memorandum from DHS to the member agencies:

> The information in Package 23-002 demonstrates that Ninestar has
> worked with the government of the Xinjiang Uyghur Autonomous
> Region through a third-party agency to recruit, transport, transfer,
> and receive Uyghur laborers out of the Xinjiang Uyghur
> Autonomous Region to work in its manufacturing facilities in the
> city of Zhuhai, located in the Guangdong Province.  Package 23-
> 002 references an allegation [  ], PRC government documents,
> Ninestar's company documents, and media reports that corroborate
> that Ninestar is participating in the PRC government's "poverty
> alleviation" programs transferring laborers from "remote and
> underdeveloped areas" to its facilities. This information reasonably
> indicates that these workers from the Xinjiang Uyghur
> Autonomous Region were coerced to enter state-sponsored labor
> transfer programs and are unable to leave voluntarily once they
> begin working in the facilities, which are thousands of miles away
> from their hometowns in the Xinjiang Uyghur Autonomous
> Region.

AR0001.

### ii.  Plaintiffs' Challenge To Notice Of Their Placement On UFLPA Entity List

On August 22, 2023, approximately two months after being placed on the UFLPA Entity

List, plaintiffs filed their complaint, invoking this Court's jurisdiction under 28 U.S.C. § 1581(i).

Compl., ¶ 23.  In their complaint, plaintiffs claim that they were not given a "reasoned

explanation," as to why they were placed on the UFLPA Entity List and that they "have no other recourse for learning the grounds on which they were listed." *Id.*, ¶ 6.  They seek the following relief:

    (1) Declaring that Defendants have acted in an arbitrary and capricious manner in violation of the APA by failing to provide a reasoned explanation for the Listing Decision;

    (2) Vacating FLETF's determination to add Plaintiffs to the UFLPA Entity List and remanding to FLETF for such further action as is lawful and appropriate consistent with the APA and other applicable laws;

    (3) Enjoining DHS and CBP from enforcing the UFLPA's adverse importation presumption against Plaintiffs;

    (5) (sic) Awarding Plaintiffs' their attorneys' fees, expert witness fees, and all other reasonable expenses incurred in pursuit of this Action under 28 U.S.C. § 2412; and

    (6) Awarding such other relief as the Court deems just and proper.

Compl., Prayer for Relief.

In addition, plaintiffs filed a motion for a preliminary injunction asking this Court to stay the listing decision and prevent CBP "from taking any action against importation of Plaintiffs' goods predicated on the" addition of plaintiffs to the UFLPA Entity List.  Pls.' Mot. for Preliminary Inj. at 17.  Plaintiffs assert that the "FLETF's decision to add [them] . . . to the UFLPA Entity List without supplying a reasoned justification of any sort constitutes arbitrary and capricious final agency action in violation of the [APA]."  *Id.* at 8.  Thus, plaintiffs are pursuing "a single claim, that Defendants violated the APA when they added Plaintiffs to a UFLPA list without providing *any* 'adequate, public explanation.'"  Pls.' Resp. to Mot. for Extension of Time at 2-3 (quoting *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1331 (Ct. Int'l Trade 2020); and citing Compl., ¶¶ 57-62) (emphasis in original).

<u>**ARGUMENT**</u>

## I. THE COMPLAINT SHOULD BE DISMISSED

### A. Standard Of Review

The Court's determination of its subject matter jurisdiction is a threshold inquiry. *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998); *CR Indus. v. United States*, 10 C.I.T. 561, 562 (1986) ("It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the burden of proof."). Whether to grant a motion to dismiss for lack of jurisdiction is a question of law. *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000). Where jurisdiction is challenged pursuant to Rule 12(b)(1), the burden rests on the plaintiff to establish the basis for jurisdiction. *Pentax Corp. v. Robison*, 125 F.3d 1457, 1462 (Fed. Cir. 1997), *modified, in part*, 135 F.3d 760 (Fed. Cir. 1998); *see also Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (1984) (noting that "[w]hen the Court's jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists").

A motion to dismiss for failure to state a claim is appropriate when a plaintiff's allegations do not entitle it to a remedy. *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006). The motion "tests the legal sufficiency of a complaint," *see Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is required when a complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant," *see Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013) (citation omitted), but need

14

not accept legal conclusions contained in the same allegations.  *See Twombly*, 550 U.S. at 555.

Nor is this Court bound to "accept as true allegations that contradict matters properly subject to

judicial notice or by exhibit" in ruling on a 12(b)(6) motion.  *Secured Mail Sols. LLC v.*

*Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotations and citations

omitted).

Interpretations of governing legal authorities, such as statutes and regulations, involve

questions of law.  *See Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (interpretation of a

statute or regulation is a question of law) (citation omitted); *see also Yanko v. United States*, 869

F.3d 1328, 1331 (Fed. Cir. 2017) (treating as a "pure legal issue of statutory interpretation" a

claim based on interpretation of statutory provision and related executive order).  Such issues are

appropriately resolved under Rule 12(b)(6).  *See, e.g., Yanko*, 869 F.3d at 1331 (citation

omitted).

**B.  The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1581(i)**

This case should be dismissed pursuant to Rule 12(b)(1) because the Court does not have

subject matter jurisdiction over the plaintiffs' claim.  Plaintiffs state broadly that their action

arises under the APA and invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1581(i) to

challenge their addition to the UFLPA Entity List.  Compl., ¶¶ 22-23.

"Federal courts have limited jurisdiction."  *Autoalliance Int'l Inc. v. United States*, 398 F.

Supp. 2d 1326, 1335 (Ct. Int'l Trade 2005) (quoting *Norcal/Crosetti Foods, Inc. v. United States*,

963 F.2d 356, 358 (Fed. Cir. 1992)).  The exclusive jurisdiction of the Court of International

Trade is defined by 28 U.S.C. § 1581.  Section 1581 provides jurisdiction for the Court to hear a

variety of matters, including challenges to CBP's decisions on protests, and challenges to the

Department of Commerce's administrative decisions. *See, e.g.,* 28 U.S.C. § 1581(a), (c).[8]  The Court may hear claims arising under the APA, but *only* pursuant to the court's so-called "residual" jurisdiction under subsection 1581(i). *Shinyei Corp. of America v United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004) ("The APA is not a jurisdictional statute and does not give an independent basis for finding jurisdiction in the Court of International Trade.") (citations and quotation marks omitted).

Plaintiffs' complaint does not identify which subsection of 1581(i) they are relying upon, but in their preliminary injunction papers, plaintiffs invoke § 1581(i)(1)(C).  *See* Pls.' Mot. for Preliminary Inj. at 12, n.3 ("this case falls squarely within the Court's exclusive jurisdiction over any case relating to an embargo of goods imported into the United States.").  However, neither this subsection of 1581(i), nor any other, provides the Court with jurisdiction to review plaintiffs' placement on the UFLPA Entity List.  A claimant properly invokes this Court's jurisdiction under subsection 1581(i)(1)(C) where the law provides for "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i)(1)(C).  Here, the plaintiffs' addition to the UFLPA Entity List does not create an "embargo," nor does it constitute a "quantitative restriction" on the amount of plaintiffs' goods that may enter the United States.  Placement on the list may, at some later date, result in a decision by CBP to exclude merchandise, but plaintiffs insist they are not challenging any such decision.

---

[8] Any importer of record whose goods are subject to the UFLPA rebuttable presumption as a result of the plaintiffs' addition to the UFLPA Entity List can protest, under 19 U.S.C. § 1514(a)(4) and 19 C.F.R. Part 174, any exclusion of their merchandise and submit evidence to CBP that its goods are admissible.  If that protest is denied, the importer can file a complaint challenging that protest denial under 29 U.S.C. § 1581(a).

An embargo, by its common meaning, is "[a] prohibition; a ban." *American Heritage Dictionary*, Fourth Ed. (2000). The Supreme Court has explained that "the ordinary meaning of 'embargo,' and the meaning that Congress apparently adopted in the statutory language 'embargoes or other quantitative restrictions,' is a governmentally imposed quantitative restriction – of zero – on the importation of merchandise." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 185 (1988). Likewise, the term "quantitative" is defined as "1a. Expressed or expressible as a quantity. b. Of, relating to, or susceptible of measurement." *American Heritage Dictionary*, Fourth Ed. (2000). Thus, both terms require an express numerical limit on the amount of merchandise that may be imported.

The FLETF's determination that plaintiffs meet the statutory criteria for placement on the UFLPA Entity List, pursuant to section 2(d)(2)(B)(ii) of the UFLPA, does not impose any such numerical limit. Rather, under the UFLPA, plaintiffs' placement on the list requires CBP to apply a rebuttable presumption that the importation of plaintiffs' goods is prohibited under 19 U.S.C. § 1307. Indeed, the UFLPA statute directs the CBP Commissioner to apply the rebuttable presumption to all "goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in the Xinjiang Uyghur Autonomous Region of the People's Republic of China," or produced by an entity on the UFLPA Entity List. UFLPA Section 3; *see also, CBP Guidance* at 4.

A rebuttable presumption is, as reflected by its plain meaning, rebuttable. Specifically, if CBP takes an enforcement action, *e.g.*, detention, exclusion, or seizure of the merchandise, at the time an importer tries to make entry, the importer for any of Ninestar's merchandise may then rebut the presumption by establishing that an exception applies. To do so, the importer must follow the procedures set forth in sections 3(b) and 2(d)(6) of the UFLPA, as well as the *FLETF*

*Strategy* at 40-51. Alternatively, the importer can avoid the presumption by providing evidence indicating that the rebuttable presumption should not have been applied in the first place, either because the goods did not originate from Xinjiang or because they were not produced by an entity on the UFLPA Entity List.

Because importers can overcome or avoid the UFLPA's rebuttable presumption, and the statute and regulations provide the necessary administrative mechanisms to do so, *see supra*, the presumption does not meet the definition of "embargo" as construed by the Supreme Court in *K Mart*, 485 U.S. at 185, or otherwise impose any quantitative restriction on the quantity of plaintiffs' goods that may be imported.[9] To the contrary, the UFLPA is strictly *qualitative* – examining solely whether entities meet the factual criteria set forth by the UFLPA to determine whether an entity should be added to the UFLPA Entity List. The rebuttable presumption that subsequently arises from placement on the list is not expressible as a quantitative restriction because it is not susceptible to measurement. Accordingly, because there is no embargo or other quantitative restriction on the importation of plaintiffs' goods, the Court lacks jurisdiction to review plaintiffs' claim under 28 U.S.C. § 1581(i)(1)(C).

---

[9] While some cases have presumed claims arising under 19 U.S.C. § 1307 (section 307 of the Tariff Act of 1930) fall within the Court's residual jurisdiction under 28 U.S.C. § 1581(i)(1)(C), those cases are not applicable here because they do not address the rebuttable presumption created by the UFLPA. *See, e.g., Int'l Labor Rights Fund v. Bush*, 357 F. Supp. 2d 204 (D.D.C. 2004); *Int'l Labor Rights Fund v. United States*, 391 F. Supp. 2d 1370 (Ct. Intl. Trade 2005); *Native Fed'n of Madre De Dios River & Tributaries v. Bozovich Timber Prod., Inc.*, 31 C.I.T. 585, 595 (2007). Here, in contrast to section 307, which declares that "the importation [of products made with forced labor] is hereby prohibited," the UFLPA directs that "[t]he Commissioner of U.S. Customs and Border Protection shall … apply a presumption" that goods made in connection with forced labor practices are prohibited from entry unless that presumption is overcome "by clear and convincing evidence, that the good, ware, article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor." UFLPA Sec. 3.

### C. Plaintiffs Failed To Exhaust Their Administrative Remedies, Including Seeking Their Removal From The List

This case is also subject to dismissal under the doctrine of prudential exhaustion of administrative remedies.  Plaintiffs request a judgment "[v]acating FLETF's determination to add Plaintiffs to the UFLPA Entity List," among other relief.  Compl., Prayer For Relief ¶ (2).  But the plaintiffs have available a remedy to avoid those consequences:  the FLETF provides plaintiffs with administrative procedures for removal from the UFLPA Entity List.  Plaintiffs, however, have not yet attempted to avail themselves of this remedy.  In other words, plaintiffs have failed to exhaust their administrative remedies, and their complaint should be dismissed as a result.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law."  *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)).  "It provides that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  *Id.* (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998)).

The doctrine of exhaustion encompasses two distinct sub-doctrines: (1) statutory exhaustion and (2) prudential exhaustion.  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds*.  Prudential exhaustion is a matter of judicial discretion, in which the court considers the "twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *Id.* at 145.  Under this doctrine, the Court may decline to adjudicate a plaintiff's claims after "balanc[ing] the interest of the [plaintiff] . . . in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  *Id.* at 146.

This form of non-jurisdictional exhaustion is particularly appropriate in the trade context because it allows the agencies represented on the FLETF to apply their knowledge and expertise to any request for relief in the first instance. *See Carpenter Tech. v. United States*, 452 F. Supp. 2d 1344, 1374-75 (Ct. Int'l Trade 2006) (noting that applying the non-jurisdictional administrative exhaustion doctrine "allows the agency to apply its expertise, rectify administrative mistakes, and compile a record adequate for judicial review — advancing the twin purposes of protecting administrative agency authority and promoting judicial efficiency").

Foremost among the available administrative remedies under the UFLPA is the option for an entity placed on the UFLPA Entity List to petition the FLETF to be removed from the list. 87 Fed. Reg. 47,778. This request should include "information that demonstrates that the entity no longer meets or does not meet the criteria described in the applicable clause . . . of the UFLPA." *Id*. In its review of a request for removal, the FLETF may contact the entity to ask questions that will aid in its determination. *Id.* In addition to submitting a written request for removal, the administrative procedures also provide that a listed entity may request a meeting with the FLETF. *Id.* If an entity makes a removal request, a decision, in writing, will be provided by the Chair of the FLETF. *Id*.

The plaintiffs have not made a request for removal from the UFLPA Entity List. Plaintiffs certainly do not suggest that they are unaware of their available administrative remedies or that pursuing such remedies would involve an unreasonable timeframe. To the contrary, plaintiffs acknowledge that "FLETF has announced that it will entertain requests for removal from the list, but only if an entity can 'provide information that demonstrates that the entity no longer meets or does not meet the criteria described in the [Act]' for listing." Compl. ¶ 4. Because the FLETF provides the plaintiffs with administrative avenues to seek removal

from the UFLPA Entity List, *see* 87 Fed. Reg. 47,778 and 88 Fed. Reg. 38,080, but plaintiffs chose not to pursue those remedies, this Court should decline to impose its own remedy and instead require that plaintiffs first avail themselves of the administrative process set forth by the FLETF in the Federal Register notice.

Courts generally consider "three broad sets of circumstances" when deciding whether to require prudential exhaustion. *McCarthy*, 503 U.S. at 146; *see also Fredericks*, 125 Fed. Cl. at 411-12. First, courts consider whether "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action," such as "an unreasonable or indefinite timeframe for administrative action." *McCarthy*, 503 U.S. at 146; *see also Fredericks*, 125 Fed. Cl. at 412. Second, courts consider whether "an administrative remedy may be inadequate because of some doubt as to whether the agency [is] empowered to grant effective relief." *McCarthy*, 503 U.S. at 147 (quotation marks omitted); *see also Fredericks*, 125 Fed. Cl. at 412. Third, courts consider whether "an administrative remedy may be inadequate [because] the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy*, 503 U.S. at 148; *see also Fredericks*, 125 Fed. Cl. at 412.

None of the considerations of prudential exhaustion favors plaintiffs, let alone the balance of these factors. Plaintiffs do not allege that administratively petitioning the FLETF for removal from the UFLPA Entity List would "occasion undue prejudice to subsequent assertion of a court action," including, for example "an unreasonable or indefinite timeframe for administrative action." *McCarthy*, 503 U.S. at 146. Likewise, plaintiffs do not allege, nor could they, that the FLETF, the administrative body that placed them on the UFLPA Entity List, somehow might lack the power "to grant effective relief." *Id.* at 147. Finally, the plaintiffs also do not allege that pursuing administrative removal would be futile because the FLETF is "shown

to be biased or has otherwise predetermined the issue before it." *Id.* at 148. Plaintiffs contend only that "[w]ithout learning the bases upon which Defendants added Plaintiffs to the UFLPA Entity List, Plaintiffs are unable meaningfully to seek removal from the list or otherwise challenge this final agency action." Compl., ¶ 45. The Federal Register, however, makes clear that the plaintiffs were placed on the list because they are "working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang." 88 Fed. Reg. 38,080, 38,082. Certainly, plaintiffs are best positioned to know their recruitment practices and the makeup of their labor force, and to seek removal from the list by providing evidence to the FLETF that they are not working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang. For example, plaintiffs could submit evidence showing their hiring practices and employment records to demonstrate that they do not engage in such prohibited practices.

Plaintiffs contend they bear the "burden to prove the negative that [their] goods are not manufactured with forced labor and/or that [they] do[] not cooperate with Xinjiang regional officials to transport or harbor forced laborers, all without having been told the bases for the[ir] listing in the first instance." Compl., ¶ 4. The mere fact that plaintiffs may have lacked all of the details of the administrative record does not excuse their failure to exhaust the available administrative remedies. In any event, plaintiffs have now received the administrative record and therefore know the bases upon which the FLETF added them to the UFLPA Entity List.

Accordingly, because the plaintiffs failed to pursue administrative remedies that could have provided them with the very remedy they seek in this case, the Court should decline to exercise its discretion to review plaintiffs' claims at this juncture.

### D.  The Complaint Fails To State A Claim Upon Which Relief Can Be Granted

Even if the Court were to conclude that jurisdiction is available under 28 U.S.C.

§ 1581(i), the Court should dismiss plaintiffs' claims for failure to state a claim on which relief

can be granted.

### i.    Neither The UFLPA Nor The APA Requires That Plaintiffs Be Provided An Explanation Beyond The Federal Register Notice

Plaintiffs' claim that they are entitled to an "adequate" or "reasoned" explanation for

their addition to the UFLPA Entity List, Compl., ¶ 62 and Prayer for Relief, ¶ (1), should be

dismissed for failure to state a claim upon which relief can be granted because the Federal

Register notice provided the basis for the FLETF's decision and nothing more is required under

the UFLPA or the APA.

A motion to dismiss for failure to state a claim is appropriate when a plaintiff's

allegations do not entitle it to a remedy.  *See United Pac. Ins. Co.*, 464 F.3d at 1327.  The motion

"tests the legal sufficiency of a complaint," *see Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action.  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Dismissal is required when a complaint fails

to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 570).  Dismissal is required here for several reasons.

*First,* the UFLPA only requires notice of plaintiffs' addition to the UFLPA Entity List,

and the basis for that decision, through publication in the Federal Register.  *See FLETF Strategy*,

at 22 (stating only that the UFLPA Entity List and any updates will be published in the Federal

Register).  The UFLPA does not require that the FLETF provide an entity being added to the

UFLPA Entity List with advance notice or any "explanation or justification" for its listing

decision.  Compl., ¶ 1.  The FLETF's obligation was satisfied.  *See* Compl., ¶ 38; 88 Fed. Reg.

38,082.  On June 12, 2023, FLETF officially published the notice of the listing decision in the

Federal Register.  88 Fed. Reg. 38,082.  In the Federal Register notice, the FLETF provided

plaintiffs with the grounds for their addition to the UFLPA Entity List – that they "work[ed] with

the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or

Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of" Xinjiang.  *Id.*; *see*

Compl., ¶ 43.  In addition, though not required, prior to issuance of the Federal Register notice,

the FLETF posted the notice for public inspection through the Federal Register,[10] and published

the updates to the UFLPA Entity List on the FLETF website as well.[11]  No further information is

required under the UFLPA.

There is a sound reason why the UFLPA does not contain any broader disclosure

requirements.  The Government is entitled to rely on privileged information, including

confidential sources and other law enforcement sensitive material, to make listing decisions.

Indeed, the receipt of information from a confidential source served as the basis for the FLETF's

decision to add plaintiffs to the UFLPA Entity List.  The imprudent release of information,

particularly if it could identify confidential sources, could prove dangerous to those sources.  In

the PRC, there are only a few individuals or entities in a position to know and share information

about government-run labor programs.  Because the PRC employs pervasive surveillance that

can combine with seemingly innocuous information to lead to the identification of sources, the

United States must take particular care to preserve any information that could reveal source

identity.  Revealing a source could prove extraordinarily dangerous to that source, potentially

subjecting that source to retribution.  For these reasons, any disclosure requires significant

---

[10] *Available at*, https://www.federalregister.gov/public-inspection/2023/06/09.
[11] *Available at*, https://www.dhs.gov/news/2023/06/09/dhs-ban-imports-two-additional-prc-based-companies-part-its-enforcement-uyghur.

scrutiny and extreme care.  Accordingly, the UFLPA does not mandate the release of the evidence with a listing decision to protect confidential sources and other sensitive law-enforcement techniques.

*Second*, the APA similarly does not require that the FLETF provide any information in connection with its listing decision beyond what was provided in the Federal Register.  Under the APA, "an agency must 'disclose the basis' of its action."  *Dep't of Commerce v. New York,* 139 S.Ct. 2551, 2573 (2019) (*quoting Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) (quotation marks omitted)).  As noted, the FLETF provided the grounds upon which it based its decision in the Federal Register Notice.  The FLETF determined that plaintiffs "work[ed] with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of" Xinjiang.  88 Fed. Reg. 38,082.  Here, the Federal Register notice's specification of the basis for the FLETF's action adequately informed plaintiffs of the basis for their listing and also provided sufficient information for the plaintiffs to request removal from the list.  To be removed, for example, plaintiffs must submit information indicating that they are not working with the Xinjiang government to recruit or receive either forced labor or Uyghurs or members of other persecuted groups from Xinjiang.

*Third*, even if the Federal Register notice were not sufficient on its own, the APA still does not require the agency to provide all of the relevant information at the time of its determination.  *See*, *e.g.*, *Strait Shipbrokers PTE. LTD v. Blinken*, 560 F. Supp. 3d 81 (D.D.C. 2021).  Under the APA, if the merits or substance of an agency's decision is challenged, the Court should affirm a decision so long as there is a "'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co*,

463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 246 (1962));

*see also Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) ("[T]he agency must

articulate a satisfactory explanation of its reasoning.") (quotation marks omitted).  Here, the

administrative record shows a "rational connection between the facts found and the choice

made" by the FLETF.

Notably, plaintiffs do not contend that the action at issue is "contrary to the evidence in

the administrative record"; rather, plaintiffs claim only that they are entitled to an "adequate

explanation" at the time of the listing decision.  Compl., ¶ 46, 62.  For this reason, the cases cited

by plaintiff are inapposite.  For example, plaintiffs cite *Tourus Records, Inc. v. Drug

Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001), Compl. ¶ 62, where the court stated

that a "fundamental requirement of administrative law is that an agency set forth its reasons for

decision; an agency's failure to do so constitutes arbitrary and capricious agency action."  *Id.*

(quotation marks omitted).  That case, however, concerned a substantive challenge to the

adequacy of the record evidence.  *Id.* at 737-38.  Nothing in that case, or any of the other cases

that plaintiffs' invoke, requires the type of disclosure that plaintiffs seek at the time of the listing

decision.

The decision in *Strait Shipbrokers* is instructive.  In that case, plaintiffs were placed on

the Specially Designated Nationals (SDN) list by the U.S. Department of the Treasury's Office

of Foreign Asset Control (OFAC).  560 F. Supp. 3d at 85.  Placement on the list resulted in

limited ability to conduct business with United States entities.  *Id.* at 85-86.  At the time of their

listing the company and its executive officer were notified by press release and Federal Register

notice of their addition to the list.  *Id.* at 88.  The public notice, like here, stated only the

conclusion of the agency's decision, *i.e.*, that the plaintiff had "knowingly engaged in a

significant transaction for the purchase, acquisition, sale, transport, or marketing of petroleum products from Iran." *Id.* Plaintiff similarly argued that the designation was unexplained, but further argued that the decision was not supported by the record. *Id.* at 93. In denying plaintiff's motion for a preliminary injunction, that court considered not just the press release and the Federal Register notice, but communications plaintiffs had with OFAC months after the listing decision. *Id.* at 88-89; 94. The court declined to even address whether the initial notice was sufficient under the APA other than to say:

> Plaintiffs do not support their assertion that defendants must do more at the time of designation than (1) provide the authority for the designations and (2) generally describe the conduct that prompted the designations. Put another way, defendants need not immediately turn over the entire administrative record on or around the date of designation.

*Id.* at 94. The court further noted that plaintiffs were provided additional information and were given the opportunity to engage with the state department subsequent to the listing decision. The additional information was considered when the court denied the preliminary injunction, finding that plaintiff's substantive APA challenge was not likely to succeed. *Id.* at 94-96.

Finally, and in any event, the relief plaintiffs have requested should be rejected. Even if a further explanation were required at the time of the listing decision, the appropriate relief for such a procedural error under the Administrative Procedure Act would not be to vacate the FLETF's decision. Rather, the appropriate relief would be to remand the matter back to the FLETF to correct the procedural error. *See, e.g., PBGC v. LTV Corp.*, 496 U.S. 633, 654 (1990); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993); *Int'l Union, UMW v. Federal Mine Safety and Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1990); *Western Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980). The Court of Appeals for the Federal Circuit has explicitly stated that "[a]n inadequately supported rule . . . need not

necessarily be vacated" but can stay in place during a remand to the agency to elaborate on its reasoning. *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1380 (Fed. Cir. 2001), (quoting *Allied-Signal*, 988 F.2d at 150, 151). Accordingly, even if the Court were to find merit in plaintiffs' claims, at most it should remand the case to the agency without vacatur.

> ### ii.  The Filing Of The Administrative Record Has Mooted Plaintiffs' Claims

Even if plaintiffs were entitled to a more robust explanation for their inclusion on the UFLPA Entity List than they received in the Federal Register, their claim is now moot because the explanation is available to them through the administrative record. Mootness occurs when a previously justiciable dispute no longer presents adverse legal interests. *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (mootness inquiry depends on whether the controversy continues to "touch[ ] the legal relations of parties having adverse legal interests" in the outcome of the case). "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Plaintiffs' sole claim is that they were not provided with a "reasoned explanation" for their addition to the UFLPA Entity List. *See* Compl., ¶ 6, Prayer for Relief, ¶ (1). Plaintiffs were placed on the UFLPA Entity List, and were thereafter notified, through the FLETF's press release and later through the Federal Register Notice, that they would be added to the "list of entities working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang." 88 Fed. Reg. 38,082; UFLPA, Section 2(d)(2)(B)(ii). That is, plaintiffs were placed

on the UFLPA Entity List based on factual evidence that plaintiffs worked with the Xinjiang government to "recruit, transport, transfer, harbor or receive forced labor or Uyghurs" or members of other persecuted groups out of Xinjiang.  UFLPA, Section 2(d)(2)(B)(ii).

The administrative record substantiates the basis for plaintiffs' addition to the UFLPA Entity List.  According to evidence in the record, the United States received information that plaintiffs worked with the government of Xinjiang to "recruit, transport, transfer harbor or receive" Uyghurs out of Xinjiang and that those Uyghurs worked in Ninestar's Zhuhai facilities.  The information originated from a confidential source, but was confirmed through "government documents, Ninestar's company documents, and media reports."  AR0001.  These sources "corroborate[d] that Ninestar is participating in the PRC government's 'poverty alleviation' programs transferring laborers from 'remote and underdeveloped areas' to its facilities."  *Id.*

Because plaintiffs' sole claim is that the decision of the FLETF to add the plaintiffs to the UFLPA Entity List was not accompanied by a "reasoned explanation."  Plaintiffs have now received that explanation.  Their claim is therefore moot.

## II.  INJUNCTIVE RELIEF SHOULD BE DENIED

Even if the Court determines it possesses jurisdiction, it should deny plaintiffs' request for injunctive relief, which asks the Court to "vacate the Listing Decision as arbitrary and capricious and to enjoin its implementation."  Pls.' Mot. for Preliminary Inj. at 2.  Plaintiffs base their claim on a purported failure to provide a reason for the FLETF's determination to add plaintiffs to the UFLPA Entity List.  For the reasons explained above, as well as the additional reasons detailed below, plaintiffs are not entitled to the requested relief.

### A.  Standard Of Review

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*,

520 U.S. 968, 972 (1997) (emphasis in original) (citations and quotation marks omitted).  A

preliminary injunction is "never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*,

555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  To obtain a

preliminary injunction, a party must establish each of four elements: "(1) likelihood of success

on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing

in favor of relief, and (4) that the injunction serves the public interest."  *Silfab Solar, Inc. v.

United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing *Winter*, 555 U.S. at 20).

     If a plaintiff "fails to prove any one of these factors, its motion must fail."  *Shandong

Huarong Gen. Grp. v. United States*, 122 F. Supp. 2d 143, 145 (Ct. Int'l Trade 2000); *see also

Winter*, 555 U.S. at 24-33 (denying injunctive relief based on public interest in national security,

without considering the other three factors); *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018)

(citing *Winter* and declining to address other preliminary injunction factors when the plaintiff

failed to establish a likelihood of success on the merits); *J. Conrad LTD v. United States*, 457 F.

Supp. 3d 1365, 1381 (Ct. Int'l Trade 2020) (citing *Winter* and declining to address other

preliminary injunction factors when the plaintiff failed to establish irreparable harm).

     As explained below, all four factors weigh strongly against plaintiffs' request for

injunctive relief.

### B.  Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claim

     As a threshold matter, plaintiffs are not likely to succeed on the merits of their claim.

Even if this matter is not dismissed, the request for injunctive relief should be denied because the

FLETF followed the proper procedure in adding plaintiffs to the UFPLA Entity List.  Plaintiffs

argue only that the lack of a reasoned explanation for the determination, beyond what is reflected

in the Federal Register notice, violates the APA.  Pls.' Resp. to EOT 2-3 (quoting *Invenergy

Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1331 (Ct. Int'l Trade 2020); and citing

*Compl.*, ¶¶ 57-62).  As stated previously, neither the statute nor the APA requires an explanation beyond what was included in the Federal Register Notice.  However, even if this Court disagrees, more is not required at the time of the listing.  Although the government "must 'articulate a satisfactory explanation' of its reasoning," *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017), the APA does not require the immediate release of the complete rationale for the decision at the time of its determination.  *See Strait Shipbrokers* 560 F. Supp. 3d at 94; *supra* at 29.  Therefore, the lack of a more robust explanation for the FLETF's listing decision either at the time of the listing, or shortly thereafter, does not, itself, constitute a violation of the APA.  It does not make the listing decision either "arbitrary [or] . . . capricious," Compl. ¶ 1, particularly where, as here, more facts were subsequently provided.  *See* AR0001-228.

Accordingly, plaintiffs are not likely to succeed on the merits of their claim.

### C.  Plaintiffs Have Not Been Irreparably Harmed

Plaintiffs allege that they have been irreparably harmed by the FLETF's decision to add them to the UFLPA Entity List.  Pls.' Mot. for Preliminary Inj. at 12-15.  Specifically, plaintiffs claim that the listing has caused harm to their businesses and reputation that cannot be remedied at a later time.  *Id.*  However, plaintiffs have failed to establish that injunctive relief now is necessary to avoid irreparable harm.

A plaintiff seeking an injunction bears an "extremely heavy burden" to establish irreparable injury.  *Shandong Huarong General Corp. v. U.S.*, 122 F. Supp. 2d 143, 146 (Ct. Int'l Trade 2000) (citations omitted).  Critically, "irreparable harm may not be speculative, . . . or determined by surmise."  *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States*, 393 F. Supp. 3d 1271, 1276 (Ct. Int'l Trade 2019) (citations omitted).  As the Federal Circuit has explained: "[a] preliminary injunction will not issue simply

to prevent a mere possibility of injury, even where prospective injury is great.  A presently existing, actual threat must be shown." *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) (quoting *S. J. Stile Assoc. Ltd. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)).  Thus, courts must deny a preliminary injunction unless the movant demonstrates "that irreparable injury is *likely* in the absence of an injunction."  *Winter*, 555 U.S. at 22 (citations omitted) (emphasis in original).

As a threshold matter, a two-month delay in seeking a preliminary injunction may, in itself, be grounds to deny the request "because such delay implies a lack of urgency and irreparable harm."  *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90-91 (D.D.C. 2014) (quoting *Newdow v. Bush,* 355 F.Supp.2d 265, 292 (D.D.C.2005)); *see Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C.Cir.1975) (finding that a delay of forty-four days prior to seeking injunctive relief was "inexcusable," and "bolstered" the "conclusion that an injunction should not issue").  Plaintiffs were aware of the listing decision since June 9, 2023, the date of the publication on the FLETF's website, and filed a motion for a preliminary injunction more than 70 days later.  Certainly, plaintiffs were aware of the financial and reputational harms they allege prior to August 22, 2023.  This is a strong indication that any such harm is not irreparable.

Even if the delay, alone, were not sufficient to establish that the alleged harm is not irreparable, none of the specific harm plaintiff asserts meets the applicable standard.  Plaintiffs primarily claim that they are suffering monetary harm as a result of being placed on the UFLPA Entity List.  In support of that claim, plaintiffs provide a declaration from Yiling Cheng, the Director of Enterprise Planning Department at Ninestar Corporation.  Declaration of Yiling Cheng (Cheng Decl.) at ¶ 2.  This Court, however, has repeatedly declined to find irreparable

harm based merely on claims of some financial losses.  *See, e.g., Corus Grp. PLC v. Bush,* 217 F. Supp. 2d 1347, 1355 (Ct. Int'l Trade 2002) (threat of "economic injury" does not constitute irreparable harm).  In *Corus,* for example, despite testimony that "sound business principles would require [the company] to close the plant rather than operate at a loss," the Court concluded that the plaintiff had failed to establish irreparable harm because there was no evidence the plant was "in danger of imminent closure." *Id.; see also Shandong Huarong*, 122 F. Supp. 2d at 147 (holding that the plaintiff did not meet its burden because the affidavits submitted were not supported by evidence "indicating exactly how and when these lost sales would force it out of business." (citations and quotation marks omitted)).

In addition, this Court has found that self-serving affidavits are often insufficient to establish irreparable harm.  In *Shandong Huarong*, for example, the Court concluded that the plaintiff failed to establish irreparable harm when it submitted an affidavit from its "major" customer in the United States stating that it would cancel all existing and future orders if cash deposits were required.  *Shandong Huarong*, 122 F. Supp. 2d at 146-47.  The Court held that "affidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction." *Id.* (citations and quotation marks omitted).  In *Premier Trading, Inc. v. United States*, 144 F. Supp. 3d 1354, 1359 (Ct. Int'l Trade 2016), this Court similarly noted in plaintiff's challenge to an enhanced bonding requirement, that "a single affidavit from a manager '[w]ithout more, . . . may be considered weak evidence unlikely to justify a preliminary injunction.'" *Id.* (internal citations and quotation marks omitted).  The *Premier Trading* court further noted that "plaintiff does not include any financial statements to prove" the conclusory assertions made in the declaration.  *Id.*

Claims of irreparable financial injury require an analysis of the business as a whole, as well as supporting evidence to establish how the purported losses effect the overall business. The Court in *Shandong Huarong* noted, for example, that the plaintiff was not "wholly committed to manufacturing subject merchandise for export to the United States" and had "failed] to demonstrate how the loss of its 'major' customer w[ould] adversely affect its total sales outlook in light of the availability of alternative consumer markets." *Shandong Huarong*, 122 F. Supp. 2d at 146-47. Plaintiffs' assertions are similarly deficient.

Here, the Cheng Declaration does not establish that that the plaintiffs would be irreparably harmed absent an injunction. The only support plaintiffs provide to establish financial harm, as in *Premier*, is a single, self-serving, affidavit of a company official, without any factual or evidentiary support, claiming that plaintiffs have and will continue to suffer a loss of sales and revenue. Specifically, the Cheng Declaration states, among other things, that:

- Over the next year Ninestar "risks losses" of [  ] in U.S. sales and [  ] globally. Cheng Decl. ¶ 20.
- Ninestar's single customer in the United States canceled its outstanding orders worth [  ], and intends to replace Ninestar globally, which could cost in excess of [  ] in the next year. *Id.* at ¶¶ 23-24.
- Some of the Ninestar affiliated entities also have had orders cancelled and suffered losses in sales, with the annual sales of some entities reduced to zero, *see e.g., id.* at ¶¶ 28, 29, 40, 46.
- Some of the Ninestar affiliated entities have identified projected losses in U.S. sales over the course of the next year. *See e.g., id.* at ¶¶ 36; 41.
- Based on the listing decision, customers outside the U.S. could cancel their contracts because of an inability to re-sell in the United States, *see e.g., id.* at ¶¶ 42, 49; and
- One of the Ninestar affiliated entities has lost future supply agreements that were being negotiated. *Id.* at ¶ 32.

34

In addition to failing to support any of these allegations with company financial documents, plaintiffs, like the plaintiff in *Shandong Huarong,* neither assert nor provide any "evidence demonstrating how [the affected sales] . . . fit within [their] total sales figures; nor how the losses of these sales will impact [their] overall financial position." *Shangdong Huaraong*, 122 F. Supp. 2d at 146. Moreover, plaintiffs have not asserted, much less established, either that these sales and revenue are necessary to the continuation of the company, such that they would be required to file for bankruptcy if unable to maintain sales to the United States, or that their businesses were "fundamentally alter[ed]" in any way by their placement on the UFLPA Entity List. *Corus*, 217 F. Supp. 2d at 1354. Like the plaintiff in *Shangdong Huarong*, plaintiffs are "not wholly committed to manufacturing subject merchandise for export to the United States." *Shangdong Huarong*, 122 F. Supp. 2d at 146. Indeed, Ninestar appears to be a global entity with sales in other regions. Therefore, plaintiffs' claims of financial loss are not sufficient to establish that, without an injunction, they will suffer irreparable harm.

Moreover, plaintiffs' assertion that the "Listing Decision has interfered with Ninestar's Opportunity to build fruitful business relationships," Pls.' Mot. for Preliminary Inj. at 13, is likewise insufficient to satisfy the requisite standard. As stated above, "[a] preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great." *Zenith,* 710 F.2d at 809. The financial ramifications (even if supported), and potential inability to build fruitful business relationships, do not establish irreparable harm or the need for a preliminary injunction.

Plaintiffs further argue that there has been a harm to their reputation by being placed on the UFLPA Entity List. Pls.' Mot. for Preliminary Inj. at 14. Although reputational loss or loss of goodwill may, in certain circumstances, support a claim of irreparable harm, *Celsis in Vitro,*

*Inc. v. CellzDirect, Inc.,* 664 F.3d 922, 930 (Fed. Cir. 2012), it cannot do so in this case. Because placement on the UFLPA Entity List could arguably cause some reputational damage in every case, that fact alone cannot support preliminary relief. In order to prove irreparable harm, plaintiffs must establish that, "absent a preliminary injunction," they will suffer *irreparable* reputational damage. *Celsis,* 664 F.3d at 930. Plaintiffs have neither asserted nor explained how interim relief pending a final determination would prevent future reputational harm. Indeed, plaintiffs' claim merely seeks notice of the reasons for their listing; providing that notice would not alleviate any asserted reputational harm. Moreover, plaintiffs' assertions of reputational harm are conclusory, and plaintiffs have not submitted any evidence showing that "many of Ninestar's customers and business partners simply assume that Ninestar must be guilty." Pls.' Mot. for Preliminary Inj. at 14; *see* Cheng Decl. ¶ 14.

Finally, quoting this Court's decision in *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1290 (Ct. Int'l Trade 2019), plaintiffs assert that failure to comply with procedural requirements causes irreparable harm "because 'the damage done by [the Agency's] violation of the APA cannot be fully cured by later remedial action." Pls.' Mot. for Preliminary Inj. at 14. But the facts of *Invenergy* are not analogous to the present circumstances.

In *Invenergy*, plaintiffs (importers, purchasers and consumers of solar panels) claimed a violation of the APA when USTR failed to follow notice and comment procedures in issuing a withdrawal of an exclusion to certain safeguard duties protecting the domestic solar panel industry. *Id.* at 1263-64. Sometime after the safeguards were put in place, USTR issued an exclusion to these safeguards. *Id.* Shortly thereafter, USTR attempted to withdraw the exclusion, but this time without engaging in statutorily mandated notice and comment procedures. *Id.* at 1264. Plaintiffs moved for an injunction seeking to maintain the status quo

(the exclusion from the safeguard duties) while they challenged the withdrawal on procedural grounds.  *Id.*  That court noted that "[p]ermitting the submission of views [*i.e.,* during the notice and comment period] after the effective date of a regulation [or in that case the withdrawal] is no substitute for the right of interested persons to make their views known to the agency in time to influence the rule making process in a meaningful way."  *Id.* at 1290 (internal quotation marks omitted).  In other words, deprivation of the opportunity to influence the process through notice and comment *before* the withdrawal of the exclusion irreparably harmed plaintiff because it could not be cured through the ability to comment after the withdrawal was in effect.

By contrast, plaintiffs here do not contend – nor can they – that placement on the UFPLA Entity List cannot be cured if not for interim relief.  They merely plead lack of notice and reiterate the same arguments for irreparable harm stated above – that this "procedural error" caused "serious financial and reputational harm," Pls.' Mot. for Preliminary Inj. at 15.  Plaintiffs' specific claim that the FLETF plaintiff violated the APA by not providing additional explanation for its listing decision is not the cause of the financial or reputational harm.  For the reasons noted above, these asserted harms do not support plaintiffs' claim that they will be irreparably harmed "absent a preliminary injunction."  *Celsis,* 664 F.3d at 930.

### D.  The Public Interest and Balance of Hardships Compel Denial Of Injunctive Relief

Finally, plaintiffs fail to show that their request for a preliminary injunction is supported by the balance of hardships and the public interest, *see Winter*, 555 U.S. at 33, factors that "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, these factors also weigh in favor of denying the injunction in this case.

The Supreme Court has instructed that courts "should pay particular regard for the public consequences" when "employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at

24 (citations and quotation marks omitted).  Indeed, in *Winter*, the Supreme Court reversed the lower court, concluding that, even if petitioners were likely to succeed on the merits and had shown irreparable harm, the public interest and balance of equities weighed decisively against injunctive relief.  *Id.* at 23-31.  The Court held that "the balance of equities and consideration of the public interest . . . are pertinent in assessing the propriety of any injunctive relief," as "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."  *Id.* at 32 (citation omitted).

Turning to these factors, the public interest weighs strongly in favor of denying the injunction as there is a strong public interest in ensuring that goods made with forced labor are not permitted entry into the United States.  And this public interest far outweighs plaintiffs' assertions of harm.  As set forth above, Section 307 of the Tariff Act of 1930 prohibits the importation of all "goods, wares, articles, and merchandise mined, produced or manufactured wholly or in part in any foreign country by . . . forced labor."  19 U.S.C. § 1307.  Along the same lines, the UFLPA was recently enacted "to strengthen the prohibition against the importation of goods made with forced labor."  *See* UFLPA, Section 1(1).  Congress chose to strengthen the prohibition by presuming that all goods produced in Xinjiang or by certain entities, including those using government labor transfer programs to receive members of persecuted groups from Xinjiang, are prohibited from entry.  *See* UFLPA, Sections 2(d)(2)(B), 3(a).

The *FLETF Strategy*, which the FLETF prepared under the UFLPA, specifically identifies the human rights abuses that have taken place in Xinjiang:

> The United States condemns the PRC's violations and abuses of human rights in Xinjiang. The PRC government engages in genocide and crimes against humanity against predominantly Muslim Uyghurs and members of other ethnic and religious minority groups in Xinjiang. Crimes against humanity include imprisonment, torture, forced sterilization, and persecution,

THIS PAGE CONTAINS CONFIDENTIAL INFORMATION

> including through forced labor and the imposition of draconian
> restrictions on the freedom of religion or belief, expression, and
> movement. Congress enacted the UFLPA to highlight these
> abhorrent practices, combat the PRC's systematic use of forced
> labor in Xinjiang, and prevent goods produced in whole or in part
> by this repressive system from entering the United States.

*FLETF Strategy*, at 6-7 (citations omitted).  The UFLPA directs the FLETF to do exactly what it did here, to prepare a list of entities "working with the government of . . . .[Xinjiang] to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgys, or members of other persecuted groups out of [Xinjiang] . . . ."  UFLPA, Section 2(d)(2)(B)(ii).  The FLETF did so following its Standard Operating Procedures, by determining that there is {████████████ ███████████████████████████████████} AR000221, that the criteria set forth in the statute were satisfied.  There is, therefore, a strong public and Government interest in ensuring that the prohibitions in section 307 and the UFLPA are enforced.

Finally, the balance of the hardships weighs strongly against any injunctive relief.  Any monetary or reputational harm to the plaintiffs, which resulted from their (correct) inclusion on the UFLPA Entity List, must be weighed against the entry of merchandise that the United States has reason to believe is the product of forced labor.  Balancing that concern against the plaintiffs' asserted financial and reputation harm weighs heavily against imposition of an injunction here.

\* \* \*

Because plaintiffs fail to establish any of the factors which would support entry of a preliminary injunction, plaintiffs' motion should be denied.

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss this action or, in the alternative, ask the Court to deny plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:   /s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Monica P. Triana
MONICA P. TRIANA
Senior Trial Counsel

/s/ Guy Eddon
GUY EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230

Date: October 3, 2023      *Attorneys for Defendants*

40

## **CERTIFICATE OF COMPLIANCE**

I, Monica P. Triana, an attorney in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the Government's memorandum in support of defendants' motion to dismiss and in opposition to

plaintiffs' motion for a preliminary injunction, dated October 3, 2023, relying upon the word

count feature of the word processing program used to prepare the memorandum, certify that this

memorandum complies with the word count limitation under the Court's chambers procedures,

and contains 12,352 words.


/s/ Monica P. Triana
MONICA P. TRIANA