UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Before: Gary S. Katzmann, Judge<br>Case No. 23-00182 |

**PLAINTIFFS' MOTION TO COMPEL THE PRIVATE PRODUCTION OF THE UNREDACTED ADMINISTRATIVE RECORD**

Plaintiffs Ninestar Corporation and affiliates (collectively "Ninestar") respectfully move the Court for an order requiring Defendants to produce privately the unredacted Administrative Record. This case concerns whether Defendants violated the Administrative Procedure Act in adding Plaintiffs to a Uyghur Forced Labor Prevention Act ("UFLPA") Entity List without providing an adequate explanation. The Court has already indicated that its judgment will turn on review of the entire Administrative Record. The Court has also already entered a Protective Order governing the classification and handling of confidential information, and authorizing Ninestar's counsel to access such information for the duration of the case. And the Government, for its part, now argues that its production of the Administrative Record has satisfied any obligation to explain itself. Yet, the Government has failed to provide Ninestar or the Court with the full unredacted Administrative Record. Rather, without any justification, the Government has redacted over 99% of the record. In view of the Court's prior orders and the Government's litigating position, Defendants should be compelled to provide Ninestar's counsel and the Court with the full unredacted Administrative Record.

**BACKGROUND**

In this case, Ninestar challenges the decision of the Forced Labor Enforcement Task Force ("FLETF") to place Ninestar on a list, mandated by the UFLPA, "of entities working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region." Pub. L. No. 117-78, 135 Stat. 1525 § 2(d)(2)(B) (2021). *See* ECF No. 8 at 2–3 (Public Complaint). This action compelled Defendant CBP to apply a presumption that all Ninestar goods are manufactured using forced labor, in turn causing their complete exclusion from the United States. *Id.* at 13–15. Defendants

announced their decision in a press release and the Federal Register, both of which provided no explanation beyond simply restating the statutory description of this list. *Id*. at 11–13.

Ninestar filed suit on August 22, 2023. Anticipating the need to exchange confidential business and governmental information, the Defendants drafted, and Ninestar agreed to (with minor edits), a stipulated Protective Order, which the Court soon entered. ECF No. 18. The Protective Order defines "Confidential Information" to include "information that any party or person is prohibited from releasing publicly pursuant to … applicable statutes, or applicable regulations, or directives from the Government concerning classified or other similarly sensitive information." *Id.* ¶ 1. The parties also agreed "to treat the information contained in the Confidential Information portion of the administrative record as confidential to the extent such information is not otherwise available in the public portion of the administrative record." *Id.* ¶ 3. Ninestar agreed to restrict access to confidential materials to its counsel and limited other persons, all of whom are prohibited from improperly using or disclosing the materials. *Id.* ¶¶ 5–6, 9. Of particular note, the Government insisted, and Ninestar agreed, that in no event would confidential materials be disclosed to Ninestar itself (including to its officers, directors, shareholders, employees, and so forth). *Id.* ¶ 7. Subject to these restrictions, Ninestar's "Counsel shall be permitted to have access to and retain for the duration of this litigation (including any remand and appeals therefrom) all materials released under this Protective Order." *Id.* ¶ 4.

On August 22, 2023, Ninestar moved the Court to enter a preliminary injunction. ECF No. 9. In response, the Government requested a lengthy 41-day extension of time to respond, invoking the burden of gathering and reviewing the Administrative Record from FLETF's seven member agencies. ECF No. 21 at 7–8. The Court recognized that the "APA requires the court to

3

'review the whole record and those parts of it cited by a party' when evaluating agency action," and directed the Government to produce the Administrative Record by October 3, 2023. ECF No. 23 at 2 (quoting 5 U.S.C. § 706).

On October 3, Defendants filed the Administrative Record. Defendants first filed a "Public" Administrative Record. ECF No. 24-1. Despite its earlier protestations of burden, the Public record appears to comprise a single packet of information—including a cover memo, some Ninestar documents, some Chinese government documents, some media reports, and a law enforcement report—provided to each FLETF member agency. We say "appears" because the packet is almost entirely redacted. Specifically, the "Public" Administrative Record comprises a 2 page index and 229 pages of materials, of which 23 pages are unredacted (including 17 exhibit cover pages), 9 are partially redacted (albeit most of them mostly redacted), and 199 are entirely redacted. Pages AR000001–17 are expressly marked "unclassified," yet are mostly redacted without explanation. Pages AR000202–212 are expressly marked "Law Enforcement Sensitive" with a detailed description of that designation, and are entirely redacted, yet none of the other redacted pages bear such a legend. The handful of unredacted pages again parrot the language of the listing statute and add no meaningful detail explaining the specifics of the listing.

On October 3, Defendants also filed a "Confidential" Administrative Record. ECF No. 25-1. While Ninestar's counsel cannot disclose, consistent with the Protective Order, what *is* in the Confidential Administrative Record, we can state authoritatively what is *not*—namely, the unredacted versions of *any* of the materials contained in the Public Administrative Record. Neither the public nor the private Administrative Record includes a justification for the redactions or a non-confidential description of the withheld information. *Cf.* 28 U.S.C. § 2635(d)(2).

Along with the Administrative Record, Defendants also filed a Motion to Dismiss. As relevant here, the Government argues for dismissal on the grounds that Ninestar failed to exhaust its Administrative Remedies. ECF No. 24 at 32–35. Specifically, Defendants point to FLETF's announcement that it will entertain requests for removal where a listed entity provides "information that demonstrates that the entity no longer meets or does not meet the criteria described in the applicable clause [*i.e.*, clause (i), (ii), (iv), or (v)) of Section 2(d)(2)(B)] of the UFLPA." *Id.* at 33 (citing 87 Fed. Reg. 47,778). Of course, Ninestar cannot make any such showing without first learning the bases for the listing decision. To satisfy this test, Plaintiffs would have to "prove the negative" that none of the eight listed entities engaged in any of the myriad conduct encompassed in UFLPA § 2(d)(2)(B)'s capacious scope. Defendants argue that "the mere fact that plaintiffs may have lacked *all* the details of the administrative record does not excuse their failure to exhaust the available administrative remedies." *Id.* at 35 (emphasis added). And, Defendants continue, "plaintiffs have now received the administrative record and therefore know the bases upon which FLETF added them to the UFLPA Entity List." *Id.*

Throughout their motion, Defendants repeatedly invoke their handful of curated unredacted excerpts. For example, Defendants argue that no additional disclosure was necessary because the listing decision was made based on information received from a "confidential source." *Id.* at 37–38. The existence of the source is disclosed but all relevant details are redacted, preventing Ninestar's counsel from testing whether, for example, this "confidential informant" was a commercial competitor. This information, the government asserts, was corroborated by Chinese government documents, Ninestar's own documents, and media reports. *Id.* at 25. These supposedly corroborating documents, including presumably public materials such as media reports and Ninestar's own documents, are all redacted.

5

Defendants argue that no further explanation is necessary because Ninestar has not pled that FLETF's listing decision was "'contrary to the evidence in the administrative record.'" *Id.* at 39. No matter that Plaintiffs *cannot* mount such a challenge to a secret record. Then, Defendants argue that their filing of the Administrative Record has mooted Ninestar's claim. *Id.* at 41. Their filing, they claim, "substantiates the basis for plaintiffs' addition to the UFLPA Entity List," showing that "the United States received information that plaintiffs worked with the government of Xinjiang to 'recruit, transport, transfer, harbor, or receive Uyghurs' out of Xinjiang and that those Uyghurs worked in Ninestar's Zhuhai facilities." *Id.* at 42. This again merely parrots the requirements for inclusion on the list in the first instance, and supplies no insight into any substantive allegations that Ninestar could set out to disprove.

On October 16, the Court set a status conference for October 24 and a preliminary-injunction hearing for November 2, and ordered the parties to file any motions concerning the Administrative Record or judicial protective order by October 20, 2023. ECF No. 32. This Motion follows.

## ARGUMENT

Defendants should be ordered to disclose the full Administrative Record to Ninestar's counsel confidentially. First, disclosure is required by the Court's rules and prior orders. Second, requiring disclosure is well within the Court's discretion and is appropriate in the interests of justice and judicial economy.

**I.     Defendants Are Required to Disclose the Full Administrative Record to Ninestar's Litigation Counsel.**

As an initial matter, this Court's rules and prior orders require full disclosure of the Administrative Record to Ninestar's litigation counsel.

6

Disputes before this Court routinely involve agency decision-making and confidential information. Accordingly, the U.S. Code directs that in any such action the Government shall, within 40 days of service of the Complaint, transmit a copy of the Administrative Record to the clerk. 28 U.S.C. § 2635(d)(1). Moreover, any confidential information in the Administrative Record must be transmitted under seal. *Id.* § 2635(d)(2). The Government must "include a nonconfidential description of the nature of the material being transmitted." *Id.* The court may then "make such [confidential] material available under such terms and conditions as the court may order." *Id.*

The Court has already exercised its discretion to permit the limited dissemination of confidential materials for purposes of this litigation. Specifically, the Protective Order directs what information shall be deemed confidential, including materials designated as such in the Administrative Record and classified or other similarly sensitive information. ECF 18 ¶¶ 1, 3. The Protective Order then tightly restricts the dissemination and use of confidential information. *Id*. ¶¶ 5–7, 9, 12–14. But subject to these restrictions, the Protective Order entered by the Court permits Ninestar's counsel access to confidential information for the duration of the litigation. *Id.* ¶ 4. Consistent with Title 28 and the Protective Order, the Court ordered Defendants to file the Administrative Record, without exception, on October 3, 2023. ECF No. 23. The Government failed to do so.

The Government has offered no justification for withholding the Administrative Record. Ninestar is unaware of any indication that the Government has complied with its obligation to provide the Court with the unredacted Administrative Record in full or to provide the required description for any information deemed confidential. 28 U.S.C. § 2635(d)(2). The Protective Order makes clear that it does not "supersed[e] existing independent statutory, law enforcement,

national security, or regulatory obligations," ECF No. 18 ¶ 11, but the Government has provided no explanation for its redactions and withholdings.[1]  To the contrary, some documents are expressly marked "unclassified," ECF 24-1 at 8–11, and the vast majority bear no designation whatsoever.  Some documents in the Administrative Record are stamped "confidential" or "Law Enforcement," but even assuming those designations are justified, the Government should have provisionally treated the documents as "Confidential Information" under the Protective Order and produced them under seal.  *See* ECF No. 18 ¶ 17 ("Material designated as Confidential Information prior to any [challenge of that designation] shall be treated as such by the parties until further order of the Court has determined or ordered otherwise.").

To be clear, Ninestar reserves the right to challenge whether a produced document bearing the "law enforcement" designation or any other is properly treated as "Confidential Information" under the Protective Order.  *See* ECF No. 18 ¶¶ 16–17; *see also In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) ("There is a strong presumption in favor of a common law right of public access to court proceedings.").  But for purposes of this motion, the likelihood of any such dispute is beside the point.  Under the governing statutes and this Court's orders, the Government was obliged to produce the entire Administrative Record, publicly or privately.  Neither § 2635(d) nor the Protective Order provides for a further category of information which the Government may unilaterally and without explanation withhold.

In its Motion to Dismiss, the Government repeatedly cites the District of Columbia's decision in *Strait Shipbrokers PTE. LTD v. Blinken*, 560 F. Supp. 3d 81 (D.D.C. 2021), rejecting a plaintiff's attempt to compel production of the administrative record supporting his placement

---

[1] Indeed, in negotiating amendments to the protective order, the Government has indicated that it *can* produce the information but is only willing to do so only confidentially.  That offer makes clear that there is no legal barrier to the Government's private production of the record.

by the U.S. Department of Treasury's Office of Foreign Asset Control on its Specially Designated Nationals list. The statute at issue there, however, specifically authorizes federal courts to review confidential materials in the administrative record *in camera* and to render judgment without disclosing those materials to the listed party. *See* 50 U.S.C. § 1702(c); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003). The UFLPA contains no such provision. Similarly, some statutes exempt listing and similar decisions from the APA entirely. *See, e.g.*, 50 U.S.C. § 4821(a) ("[T]he functions exercised under this subchapter shall not be subject to sections 551, 553 through 559, and 701 through 706 of title 5."). Again, the UFLPA contains no such exception.

At bottom, this Court's governing statutes and prior orders require the Government to provide the Administrative Record to Ninestar's counsel unredacted and in full.

## II. The Court Should Exercise its Discretion to Require Disclosure of the Full Administrative Record to Ninestar's Litigation Counsel.

Even if the disclosure of the full Administrative Record was not already required—which it is—the Court independently retains and should exercise its discretion to require the full disclosure of the Administrative Record.

As an initial matter, there can be no dispute that the Court retains such authority. In the stipulated Protective Order, the Government agreed that "[a]ny party may petition the Court, on reasonable notice to all other parties, for a modification of the terms of this Protective Order. The Court shall have continuing jurisdiction to modify, amend, enforce, interpret, or rescind any or all provisions of this Protective Order, notwithstanding the final termination or conclusion of this case." ECF 18 ¶ 15. The Protective Order thus reflects and memorializes the Court's statutory discretion to disclose confidential information. *See* 28 U.S.C. § 2635(d)(2); *see also*

*USX Corp. v. United States*, 11 C.I.T. 419, 420 (1987); *W. Coast Indus., Inc. v. United States*, 3 C.I.T. 73, 74 (1982).

The Court should exercise this discretion for several reasons. First, as noted, the Government has made no effort to justify its redactions. Nor, based on the smattering of unredacted materials, does most of the record seem to be properly withheld. The Government's own cover memo is expressly labeled "Unclassified." ECF 24-1 at AR000008–22. A handful of pages are marked "Law Enforcement Sensitive," "for official use only," or "Business Confidential," *id.* at AR000207–17, but most pages bear no such designation.[2] By the Government's own description, these pages include media reports, publications of the Chinese government, and Ninestar's own documents, none of which warrants withholding. *Id.* at 6.[3]

Second, to the extent the Government is concerned that the withheld materials are sensitive, the Protective Order already addresses that need. Classified or similarly sensitive information will be treated as confidential in the litigation. ECF No. 18 ¶ 3. To the extent the Government is concerned—legitimately or not—that confidential materials will be disclosed to Ninestar employees or other Chinese nationals, the Protective Order again already addresses that. Ninestar has agreed that its counsel will not disclose Confidential Information to anyone outside a tightly drawn circle, including Ninestar itself. *Id.* ¶ 7. And the Government has offered no

---

[2] Having already produced several unredacted pages of a document designated "for official use only," the Government has seemingly conceded that such a designation, standing alone, provides no basis for treating a document as confidential—let alone withholding it entirely.

[3] Interestingly, one of the few unredacted pages in the record states that while the FLEFT member agencies voted unanimously to add Ninestar Corporation to the Entity List, the Department of Justice abstained from the decision to also list the additional affiliates. *See* ECF No. 24-1 at 7. This suggests that the redacted evidence does not fully support the listing decision.

reason to question the undersigned counsels' commitment to their duty to the Court.  In short, the Protective Order already covers any legitimate concerns the Government may have.

Third, without additional disclosure this proceeding becomes a mockery.  The Government has already taken the ironic position that Ninestar's claims should be dismissed for failure to exhaust its remedies by disproving to FLETF the Government's secret evidence of Ninestar's guilt.  Now, the Government adds the equally absurd argument that Ninestar's claims have been mooted by the Governments' production of 199 pages of black boxes, 17 exhibit cover sheets, and a handful of restatements of the statutory standard.  *See* ECF No. 24 at 32–35, 41–42.

The law, however, requires more than a reassuring "trust us" from the Government. Even where the Government relies on judicial review of the record to satisfy its obligation to provide a meaningful explanation of its decision-making, the record must actually be disclosed. *W. Coast Indus.*, 3 C.I.T. at 74.  Here, the Government asserts that the record is sufficient to alert Ninestar and the Court as to the bases for the listing decision.  But the scant details concerning allegations from a "confidential informant," who may be a competitor located anywhere in the world, the conduct of an unidentified third party, and references to a "poverty alleviation" program, leave Ninestar with nothing to go on to clear its name in Court or before FLETF. Contrary to the Government's characterizations, Ninestar would like to take advantage of FLETF's delisting procedures, or alternatively to add a claim here that the listing decision is contrary to the evidence.  *Cf.* ECF No. 24 at 32–35, 39.  But without disclosure of the record to its counsel, those opportunities are null sets.

## CONCLUSION

For the foregoing reasons, the Court should require disclosure of the full Administrative Record to Ninestar's litigation counsel to allow Ninestar a full and fair opportunity to defend itself.

Dated: October 17, 2023

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

NINESTAR CORPORATION, ZHUHAI
NINESTAR INFORMATION
TECHNOLOGY CO., LTD., ZHUHAI
PANTUM ELECTRONICS CO., LTD.,
ZHUHAI APEX MICROELECTRONICS
CO., LTD., GEEHY SEMICONDUCTOR
CO., LTD., ZHUHAI G&G DIGITAL
TECHNOLOGY CO., LTD., ZHUHAI
SEINE PRINTING TECHNOLOGY CO.,
LTD., and ZHUHAI NINESTAR
MANAGEMENT CO., LTD.

*Plaintiffs*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES CUSTOMS
AND BORDER PROTECTION; FORCED
LABOR ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his official
capacity as the Secretary of the Department
of Homeland Security*; TROY A. MILLER, *in
his official capacity as the Senior Official
Performing the Duties of the Commissioner
for U.S. Customs and Border Protection*; and
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

*Defendants*.

</td><td>

Before: Gary S. Katzmann, Judge
Case No. 23-00182

</td></tr>
</table>

## ORDER

Plaintiffs' Motion to Compel the Private Production of the Unredacted Administrative

Record, ECF No. 33, is **GRANTED**. It is hereby **ORDERED** that Defendants file a confidential

administrative record containing unredacted copies of the all documents in the current, public administrative record, ECF No. 24-1, by October ___, 2023.

Issued this ____ day of _____, 2023

                                                        _____
                                                        Gary S. Katzmann, Judge