UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Before: Gary S. Katzmann, Judge<br>Case No. 23-00182 |

**PLAINTIFFS' OPPOSITION TO MOTION
FOR THE ENTRY OF AN AMENDED PROTECTIVE ORDER**

Plaintiffs Ninestar Corporation and affiliates (collectively "Ninestar") respectfully oppose

the Government's motion to amend the protective order. ECF No. 34 ("Motion"). The Motion

mashes together two distinct questions: whether portions of the Administrative Record should be produced *publicly or confidentially*, and whether they must be produced *at all*. As set forth in our Motion to Compel, by statute and by Order the Government was already obliged to produce the entire Administrative Record at least privately. It failed to do so. Now, the Government offers that, if the Court amends the protective order to allow it to seal any document it elects to mark as sensitive or official, it will produce more, but yet still not all, of the Administrative Record. Motion 3.

    The Court should reject this compromise. The Government's duty to produce the Administrative Record *at all* is not contingent on the proposed amendment. In suggesting otherwise, the Government seeks the Court's tacit blessing of its initial decision to redact 99% of the record, and its continued refusal to provide the full record. Neither in its Motion nor anywhere else has the Government offered any justification, or sought leave, to produce less than required by statute and the existing protective order.

    The Court should also reject the proposed amendments. The Government downplays its amendments as merely "clarify[ing] the definition of confidential information." Motion 3. That is false. Rather, the proposed revisions would give the Government essentially unreviewable discretion to seal information, placing it beyond Ninestar's review. The existing protective order provides ample protections, while allowing Ninestar and the Court to regulate the over-designation of confidential materials.

I.  **The Motion Confirms that the Government Has No Basis for Failing to Produce the Administrative Record.**

Whether the Government must produce the Administrative Record in full is addressed in Ninestar's Motion to Compel. ECF No. 33.[1] As explained there, by statute and under the existing protective order, Defendants should have already produced the entire record confidentially. Despite being ordered to produce the Administrative Record weeks ago, ECF No. 23 at 2, the Government to this day has offered no justification for filing a 99% redacted record, *see* ECF No. 24-1.

The Government's Motion confirms the lack of any legitimate basis for withholding the record entirely. The Government's offer to "file a confidential version of the record with more portions of the record unredacted," Motion 2–3, confirms that production is not prohibited by law. Nor was the risk of public disclosure a legitimate barrier to production. As the Government admits, it has always understood the protective order to limit materials filed in the confidential Administrative Record to attorneys' eyes only. *Id.* at 3 ("[T]his proposed amendment does not change the material terms of the present protective order … ."); *see also* ECF No. 18 ¶ 3, 7. If the Government was unsure about the order's terms, it had two options: (1) provisionally file the materials in the confidential portion of the Administrative Record, as the protective order

---

[1] The Government characterizes the Motion to Compel as "prematur[e]" and intimates that we filed it improperly. Motion 2. Not so. Our Motion to Compel was fully drafted more than a week ago, but we held off filing it when on October 11 the Government proposed amending the protective order. On Friday, October 13, the Government sought our consent to its motion. After we explained that, on account of the 12-hour time difference, our clients were asleep, the Government agreed to delay until Monday, October 16, so we could consult with our clients. On Sunday, October 15, we informed the Government that we did not consent, and began revising our motion into an opposition to be filed in response to the Government's Motion expected the following day. After Monday and Tuesday came and went without the Government moving, we filed our previously drafted motion Tuesday evening. There was nothing strategic about this; we simply desired to tee up the issue for the Court and Government well in advance of the forthcoming status conference.

contemplates, *see* ECF No. 18 ¶¶ 3, 17; or (2) move the Court for leave to withhold some materials entirely before the due date—as, again, the protective order contemplates, *see id.* ¶ 15. Finding neither option to its liking, the Government elected unilaterally to redact 99% of the record without permission.

For the reasons detailed in our Motion to Compel, and in light of the concessions in the Government's Motion, the Court should order the Government to privately produce the unredacted Administrative Record.

### II. The Government's Proposed Amendments to the Protective Order are Unnecessary, Unjustified, and Unfair.

Whether the Government must produce materials at all is a fundamentally different question than how those materials should be treated. The Motion seeks to amend the protective order's definition of "confidential information" to include (at least) any document marked "law enforcement sensitive" or "for official use only." ECF No. 34-2 ¶ 1. The Government sells this as merely "clarify[ing]" the definition, Motion 3, but that cannot be so. For one thing, the Government generally does not file aimless motions. For another, if it were indeed merely a clarification, the Government should have already filed the unredacted Administrative Record confidentially. It has not.

In truth, the Government is seeking to expand the protective order substantively.[2] To do so, the Government must justify its request. In the American judicial system, "[t]here is a strong presumption in favor of access to documents filed with a court." *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1359 (Fed. Cir. 2020). To expand the class of information filed under seal, the Government "must provide a strong justification to overcome the presumption of public access."

---

[2] Ninestar opposes only the proposed amendment to paragraph 1. The amendments to paragraphs 5 and 7 simply restate existing provisions.

*DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021).

The Government falls well short of that high bar.  The Government asserts a single interest: protecting confidential sources.  Motion 2–3.  Ninestar does not dispute the Government's interest, or even that some record information may meet it.  Rather, Ninestar objects to the Government's effort to sweep under the rug anything and everything labeled "for official use only" or "law enforcement sensitive."  That drastic expansion of the protective order should be rejected for two reasons.

*First*, despite bearing the burden on the Motion, *DePuy*, 990 F.3d at 1369, the Government makes no effort to tailor its proposed amendment to its asserted interest.  Nowhere has the Government explained why any particular document or set of documents in the 208 wholly or partially redacted pages must be sealed to avoid jeopardizing confidential sources.  Nor has the Government proposed any middle ground—say, partial redactions to documents in the public record, an approach DHS uses regularly for "law enforcement sensitive" information.[3]  The Government's all-or-nothing approach runs counter to the strong presumption of public access to court documents.

The Court should not assume that simply stamping a document "for official use only" or "law enforcement sensitive" suffices to rebut the strong presumption of public access.  The Government—again despite carrying the burden on this matter—has provided no explanation of how those designations are generally used in the federal government, let alone how and why they

---

[3] *See, e.g.*, DHS Inspector Gen., *Secret Service and ICE Did Not Always Adhere to Statute and Policies Governing Use of Cell-Site Simulators (REDACTED)* (Feb. 23, 2023), https://tinyurl.com/2ws5p4du; DHS Inspector Gen., *CBP Did Not Effectively Conduct International Mail Screening or Implement the STOP Act (REDACTED)* (Sept. 25, 2023), https://tinyurl.com/yuu3hj9t.

were used here.  As it turns out, those designations are defined so capaciously that they effectively mean nothing.

Take "for official use only" or "FOUO."  According to DHS guidelines, FOUO applies to any "unclassified" but "sensitive" information whose treatment is not governed by "statute or regulation."  DHS, *Safeguarding Sensitive But Unclassified (For Official Use Only) Information* 1 (Jan. 6, 2005), https://tinyurl.com/6y9r8yeu.  A common definition of "sensitive information," the guidelines admit, "does not exist within the federal government." *Id.* at 4.  Instead, within DHS, the FOUO designation is used for any of eleven broad categories of information—everything from reports of "facility infrastructure or security vulnerabilities" to certain "banking and financial" records to "[i]nformation that could be sold for profit." *Id.* at 4–5.  Such information, the guidelines are clear, is not even necessarily "exempt from disclosure under … the Freedom of Information Act." *Id.* at 4.  What's more, "*[a]ny* DHS employee, detailee, or contractor can designate" information in the eleven enumerated categories as FOUO, and any "superviso[r] or manage[r]" can "designate *other* information" as FOUO. *Id.* at 6 (emphasis added).  In short, the FOUO designation says little about what lies underneath the Government's black boxes.[4]

The "law enforcement sensitive" designation is equally nebulous.  For starters, the Government has not provided, and we were unable to locate, any Government guidance on this designation.  (Though the above-cited guidelines suggests "law enforcement sensitive" may be interchangeable with FOUO.  *See id.* at 4.)  It is possible—though the Government has not

---

[4] If there were any doubt about whether "for official use only" documents necessarily require confidential treatment, one only need look at the first five pages of the public Administrative Record, which are marked "for official use only," yet produced without redaction.  ECF No. 24-1 at AR000001–05.

explained—that "law enforcement sensitive" is coextensive with the Freedom of Information Act exemption for law-enforcement records. *See* McCormick on Evidence § 108(B) (8th ed., Westlaw July 2022 update). If so, to shield the information from public disclosure the Government must demonstrate both that the documents were "compiled for law enforcement purposes" and that disclosure would cause one of the enumerated harms. *FBI v. Abramson*, 456 U.S. 615, 622 (1982) (quoting 5 U.S.C. § 552(b)(7)). For both elements, the Government's say-so alone is not enough. *See Parker v. U.S. DOJ. Exec. Off. for U.S. Att'ys*, 852 F. Supp. 2d 1, 11 (D.D.C. 2012) (holding "conclusory statements" of law enforcement purpose are "not sufficient"); *DOJ v. Landano*, 508 U.S. 165, 171, 181 (1993) (rejecting presumption that informant communicating with law enforcement is a "confidential source"). Whether or not FOIA principles are relevant, our point is simply that intoning "law enforcement sensitive"—whatever that means—cannot alone overcome the strong presumption of public access to judicial proceedings.

*Second*, accepting the proposed amendments would make the Government the final arbiter of confidentiality, restricting Ninestar from seeing a shred of the Government's explanation for the listing decision. All of the redacted materials have apparently been designated "law enforcement sensitive" or "for official use only." *See* ECF No. 24-1. If, as the Government requests, anything so designated is categorically deemed Confidential Information, *see* ECF No. 34-2 ¶ 1, Ninestar's counsel will be hamstrung in their ability to challenge whether such materials should properly be withheld from the public, including Ninestar. Whatever the Government's interest in secrecy, it "does not extend to quashing suits that Congress has authorized the Judiciary to entertain—and that the Judiciary has a virtually unflagging duty to

resolve." *United States v. Zubaydah*, 595 U.S. 195, 256 (2022) (Gorsuch, J., dissenting) (quotation marks omitted).

## CONCLUSION

Stepping back, it is difficult to see the Government's Motion as anything other than another bid for delay and distraction, particularly when read against the history of the protective order. The Government itself drafted the existing consent protective order. Ninestar agreed to nearly all of the Government's terms, except its proposed protection for any information restricted by "directives from the Government." After several rounds of negotiation over this term, the Government proposed, and Ninestar accepted, the existing definition of confidential information, including "information that any party or person is prohibited from releasing publicly pursuant to contracts, applicable statutes, or applicable regulations, or directives from the Government concerning classified or other similarly sensitive information." ECF No. 18 ¶ 1, cl. 2. That should amply capture the Government's legitimate concerns. Now—weeks after the parties reached a compromise on this very issue, and despite the Government knowing from the outset that the record may contain "law enforcement sensitive" materials, ECF No. 21 at 8—the Government, with a few conclusory sentences in justification, seeks to expand that definition to foreclose Ninestar's remedies under the protective order.

It is time to end the Government's strategy of delay and obfuscation, driven seemingly by a dogged determination never to release any information that might allow Ninestar to participate meaningfully in FLETF's much ballyhooed delisting process, *see* ECF No. 24 at 32–35. The Court should deny the Motion and order the Government to produce the Administrative Record.

Dated: October 23, 2023

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*