PUBLIC VERSION

IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Case No. 23-182<br><br>**Plaintiffs' Motion to Unseal and Unredact the Administrative Record** |

## PLAINTIFFS' MOTION TO UNSEAL AND UNREDACT THE ADMINISTRATIVE RECORD

Plaintiffs Ninestar Corporation and affiliates (collectively, "Ninestar") respectfully move the Court for an order (1) making public what the Government has filed as the Confidential Administrative Record and (2) unredacting but keeping confidential those portions of the Confidential Record that have to date been withheld even from Ninestar's counsel.

As Ninestar explained in its Complaint, ECF No. 19 ¶¶ 47–56, and again in its Motion for a Preliminary Injunction, ECF No. 20 at 20–23, Defendants' decision to place Ninestar on a list of entities accused of current and ongoing cooperation with the government of the Xinjiang Uyghur Autonomous Region to traffic forced labor has caused Ninestar immediate, grievous, and irreparable harm. To be sure, that harm is in part financial, but the harm is also reputational as Ninestar's existing and prospective business partners, employees, investors, competitors, and industry groups are left with the firm impression that Ninestar is involved in something horrible.

Defendants' handling of the Administrative Record has only compounded this harm. First, by filing the bulk of the record publicly, yet mostly redacted, the Government has given the public the impression that it has hundreds of pages of evidence supporting its Listing Decision and attesting to Ninestar's culpability. Second, by also filing a Confidential Administrative Record, Defendants gave the impression that Ninestar, or at least its lawyers, had access to those materials, raising the question why Ninestar was not seeking to have itself removed from the UFLPA Entity List, and again leaving the impression that Ninestar could not because it was guilty. Third, by redacting most of the Public Administrative Record, and by not, in fact, including unredacted copies of those materials in the Confidential Administrative Record, Defendants deprived Ninestar's counsel from learning the complete bases for the Listing

2

Decision and hamstrung them from making meaningful use of FLETF's published procedure for petitioning for removal from the list.

Pursuant to this Court's order, the Government has now supplied Ninestar's counsel with the bulk of the Administrative Record confidentially.  *See* ECF No. 41.  A partially disclosed DHS memorandum at the beginning of the Confidential Administrative Record summarizes the evidence underlying DHS's recommendation to add Ninestar to the UFLPA Entity List.  *See* AR000005–AR000015.  That evidence can generally be divided into two categories: a confidential informant's allegations relating to Ninestar and labor conditions in Zhuhai generally; and inferences drawn from "open source" material, including media reports, Chinese government documents, and Ninestar's public reports.  [     ]  The balance of the Confidential Administrative Record consists of DHS memoranda and presentations summarizing the allegations against Ninestar, *see* AR000202–AR000219, and FLETF's own standard operating procedure for UFLPA listing decisions, AR000220–AR000228.

While the Court-ordered disclosure of the confidential record to Ninestar's counsel marks some progress, Ninestar remains hobbled in defending itself.  First, Ninestar's counsel cannot share confidential materials with their client, even when those materials were (and, indeed, remain) public documents, and therefore cannot ask direct questions and secure specific evidence to rebut Defendants' misunderstandings and misrepresentations.  Moreover, some key details remain redacted even from Ninestar's counsel, which hinders our ability to fully understand and evaluate Defendants' allegations.[1]  The Government's treatment of the record thus continues to hamper unfairly Ninestar's ability to attack the adequacy of FLETF's secret explanation of its

---

[1] Redactions appear on 17 pages of the Confidential Administrative Record:  AR000004, AR000006, AR000008, AR000010–11, AR000202–AR000210, AR000215–AR000217.

listing decision, as well as to prosecute its forthcoming amended Complaint challenging the legal and factual sufficiency of the evidence underlying the Listing Decision. And, of course, the confidential nature of the record continues to leave the public with the incorrect impression that the United States Government "has the goods" on Ninestar.

For all these reasons, Ninestar respectfully moves the Court to unseal the entire Confidential Administrative Record and, after *in camera* review, to order disclosure of the remaining redacted information to Ninestar's counsel. Defendants oppose the relief requested and will file a response to the motion in accordance with the Rules of the Court.

## I. The Court Should Unseal The Administrative Record.

Under the Court's Amended Protective Order ("APO"), Ninestar's counsel may view "Confidential Information," but Ninestar itself may not. ECF No. 40 ¶¶ 5–7. "Confidential Information" includes: "information that any party or person is prohibited from releasing publicly pursuant to … applicable statutes, or applicable regulations, or directives from the Government concerning classified or other similarly sensitive information"; and "law enforcement sensitive information or other similarly sensitive government information, including information designated as 'for official use only.'" *Id.* At the October 24 status conference, counsel for the Government assured the Court and Plaintiffs that a document does not fall into the latter category solely because it is stamped "law enforcement sensitive" or "for official use only." October 24, 2023 Status Hearing, Recording at 18:08–18:16 (Ms. Triana: "We're not intending to give ourselves the capability of … broadly identifying everything as confidential."); *see also id.* at 10:51–11:00. Rather, as the APO contemplates, either party may ask the Court to determine that information marked confidential is "not entitled to such designation status and protection from disclosure." APO ¶ 17. The designating party—here, the Government—bears

the burden of "demonstrat[ing] that the designation is proper." *Id.* Ninestar, through its counsel, respectfully submits that the entirety of the Confidential Administrative Record as presently filed, ECF No. 41, should be unsealed because the documents therein are not properly designated as Confidential Information.

### A. Pages AR000006–AR000219 Are Not "Law Enforcement Sensitive."

Ninestar understands the Government to be claiming that pages AR000006–AR000219 fall within the "law enforcement sensitive" category of "Confidential Information." *See* APO ¶ 1(3); ECF No. 24-1 (redactions marked "LES"). The Government has conceded that a document does not fall within this category solely because it is stamped "law enforcement sensitive." October 24, 2023 Status Hearing, *supra*. The APO does not define "law enforcement sensitive," and there does not appear to be a settled government definition of the term. *See* ECF No. 37 at 6–7. "Law enforcement sensitive" is best understood, however, to be coextensive with the category of law-enforcement information exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)(7). *See, e.g.*, AR000202 (description of "Law Enforcement Sensitive" parallels language of § 552(b)(7)); McCormick on Evidence § 108(B), Westlaw (database updated July 2022).

To satisfy that exemption, the Government must show that disclosure:

(A)  could reasonably be expected to interfere with enforcement proceedings,
(B)  would deprive a person of a right to a fair trial or an impartial adjudication,
(C)  could reasonably be expected to constitute an unwarranted invasion of personal privacy,
(D)  could reasonably be expected to disclose the identity of a confidential source …, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,

    (E)    would disclose techniques and procedures for law enforcement investigations or prosecutions … if such disclosure could reasonably be expected to risk circumvention of the law, or

    (F)    could reasonably be expected to endanger the life or physical safety of any individual[.]  § 552(b)(7).

Unsealing the Administrative Record risks none of these harms. Several of the enumerated harms are plainly inapplicable. Disclosure will not "interfere with enforcement proceedings," § 552(b)(7)(A), as the only enforcement "proceedings" to which these records pertain ended months ago when FLETF unilaterally added Ninestar to the UFLPA Entity List. Nor will disclosure deprive anyone of a "fair trial" or "impartial adjudication," § 552(b)(7)(B); if anything, it is the *withholding* of information that hampers Ninestar's ability to mount a defense. Nor would disclosure cause an "invasion of personal privacy," § 552(b)(7)(C), or "endanger the life or physical safety of any individual," § 552(b)(7)(F), because the records at issue do not disclose the identity of anyone.

As for the risk that disclosure would reveal "the identity of a confidential source," § 552(b)(7)(D), the Government's redactions, which Ninestar does not contest for purposes of public disclosure, eliminate that possibility. *See* ECF No. 43. And because this case does not involve a "criminal" or "national security" investigation, information disclosed by the confidential source is not protected. *See* § 552(b)(7)(D). The UFLPA targets forced labor, not foreign security threats. Finally, unsealing the Administrative Record would not "disclose techniques and procedures for law enforcement investigations" that could "risk circumvention of the law," § 552(b)(7)(E), because the law enforcement techniques used by FLETF here—speaking with a confidential informant and mining public records—are hardly a secret. *See Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 273 (D.D.C. 2016) ("[T]he purpose of Exemption 7(E) is to prevent the public from learning about the existence of confidential law

enforcement techniques, not to prevent it from learning about the use of already-disclosed law enforcement techniques."); *ACLU of Mich. v. FBI*, 734 F.3d 460, 464 n.3 (6th Cir. 2013) ("[I]ntelligence agencies … routinely rely on public and open-source information … .").

For the Court's convenience, the table below provides a brief document-by-document explanation of the basis for disclosure.

[TABLE REDACTED]

B.     **FLETF's Standard Operating Procedure is Not Confidential Information.**

The remainder of the Confidential Administrative Record consists of FLETF's standard operating procedure for the UFLPA Entity List. AR000220–AR000228. It is difficult to see how these procedures could qualify as Confidential Information under the APO. The Government has identified no "statutes," "regulations," or "directives from the Government concerning classified or similarly sensitive information" that would prohibit disclosure. APO ¶ 1(2). Indeed, if a member of the public submitted a request for this document, FLETF would likely have to provide it. *See* § 557(b) (listing records exempt from FOIA requests, none of which shield agency operating procedures).

Unlike the documents discussed above, these pages have not been marked "law enforcement sensitive," so we do not understand the Government to claim that this procedure is somehow a law-enforcement record. *Id.* ¶ 1(3). Each page bears the "for official use only" designation, *see id.*, but as Ninestar has previously explained, that term is "defined so capaciously that [it] effectively mean[s] nothing," ECF No. 37 at 6. And the Government has conceded that stamping a document "for official use only" does not suffice to bring it within the APO's definition of Confidential Information. October 24, 2023 Status Hearing, *supra*; *see also* ECF No. 24-1 at AR000001–05 (documents marked "for official use only" but disclosed

publicly). At bottom, Ninestar's counsel can only guess as to why the Government seeks to keep FLETF's listing procedure under wraps. Whether the Government can carry its burden of justifying the withholding remains to be seen. APO ¶ 17.

II.  **The Court Should Review the Redacted Information *In Camera* and Order the Government to Unredact Any Information Unprotected by the Informant Privilege.**

Ninestar also respectfully requests that the Court review the remaining redacted information *in camera*, then order the Government to disclose any unprivileged information. *See* 28 U.S.C. § 2635(d)(2). In its quite perfunctory privilege log, the Government's asserts that the redactions are justified by the informant privilege. ECF No. 43; *see also* October 24, 2023 Status Hearing, Recording at 11:44–12:05 (Ms. Triana noting withheld information is subject to informant, not law-enforcement-sensitive, privilege). As the party claiming privilege, the Government bears the burden of demonstrating that the informant privilege applies. *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1301 (Fed. Cir. 2016); *CSC Sugar LLC v. United States*, 317 F. Supp. 1334, 1345 (Ct. Int'l Trade 2018).

The informant privilege allows the Government to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege is subject to two important limits: First, "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Id.* at 60. Second, the privilege gives way to "fundamental requirements of fairness" when disclosure is "essential to a fair determination of a cause." *Id.* at 60–61.

The Government's redactions likely exceed both of these limits. For one thing, some of the apparently redacted information is highly unlikely to reveal the informant's identity. The Government, for example, has redacted [    ] are unlikely to divulge the informant's identity.

8

*Cf. United States v. Wilburn*, 581 F.3d 618, 624 (7th Cir. 2009) [     ].  The same may be true of other redacted information, and Ninestar respectfully urges the Court to hold the Government to its burden of demonstrating that disclosure would allow a reader to piece together the informant's identity.

In any event, "fundamental requirements of fairness" warrant disclosing the informant's identify to Ninestar (or at least to its counsel).  *Roviaro*, 353 U.S. at 60.  FLETF's case was largely circumstantial—a cobbling together of dubious inferences from [     ].  That evidence, moreover, is long-past stale.  FLETF listed Ninestar in June 2023, but [     ].  The *only* direct, potentially recent evidence supporting FLETF's case is the informant's allegations.  [     ].  It is therefore "essential" to Ninestar's defense that it be able to assess both the informant's credibility—which necessarily includes the informant's identity—and the timeliness of its allegations.  *See Roviaro*, 353 U.S. at 64 (holding disclosure of the informant's identity was warranted where the informant was the defendant's "one material witness").

Furthermore, the Government's interest in non-disclosure is reduced substantially by the terms of the APO.  At this stage, Ninestar seeks disclosure of the redacted material only to its counsel, a "safeguard" that militates in favor of disclosure.  *Daido Corp. v. United States*, 16 C.I.T. 987, 994–95 (1992).

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court (1) order that the Confidential Administrative Record be unsealed; and (2) examine the currently redacted material *in camera* and order the Government to disclose to Ninestar's counsel any information not protected by the informant privilege.

Dated: December 4, 2023

    Respectfully submitted,

    */s/ Gordon D. Todd*

    MICHAEL E. MURPHY
    GORDON D. TODD
    MICHAEL E. BORDEN
    CODY M. AKINS
    SIDLEY AUSTIN LLP

    1501 K Street, N.W.
    Washington, D.C. 20005
    (202) 736-8760
    gtodd@sidley.com

    *Counsel for Plaintiffs*

**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>       *Plaintiffs*,<br><br> v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>       *Defendants*. | Case No. 23-182<br><br>**Proposed Order Granting Plaintiffs' Motion to Unseal and Unredact the Administrative Record** |

  Plaintiffs' motion to unseal and unredact the Administrative Record, ECF No. 60, is

**GRANTED**.  It is hereby:

2

**ORDERED** that Defendants shall publicly file the Administrative Record within 3 days of this Order.

The Court is already in possession of the fully unredacted record and will conduct an *in camera* review of the redacted material.  The Court will order Defendants to produce in the Confidential Administrative Record any redacted material that is not protected by the informant privilege.

Dated: _____

   New York, New York

                                                   _____
                                                   Gary S. Katzmann, Judge