**PUBLIC VERSION**

### IN THE UNITED STATES
### COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD. <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*, <br><br> *Defendants*. | Case No. 23-182 |

### PLAINTIFFS' SUPPLEMENTAL BRIEF
### IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ................................................................................................................... 1

I.     NINESTAR IS LIKELY TO SUCCEED ON THE MERITS ............................... 1

       A.     FLETF Exceeded its Statutory Authority by Applying The Wrong Standard
              of Proof.................................................................................................... 2

       B.     FLETF Unlawfully Applied the UFLPA Retroactively. .......................... 6

       C.     The Confidential Administrative Record Still Does Not Provide an
              Adequate, Reasoned Explanation For The Listing Decision. ................. 8

II.    THE OTHER PRELIMINARY-INJUNCTION FACTORS STILL FAVOR RELIEF. ..... 11

       CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Signature, Inc. v. United States*,
  598 F.3d 816 (Fed. Cir. 2010)..................................................................................12

*Aqua Prods., Inc. v. Matal*,
  872 F.3d 1290 (Fed. Cir. 2017)...........................................................................11, 12

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004)..................................................................................7

*Bender v. Clark*,
  744 F.2d 1424 (10th Cir. 1984) ..................................................................................3

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988)....................................................................................................6

*Carr v. United States*,
  560 U.S. 438 (2010)....................................................................................................7

*Cayuga Nation v. United States*,
  594 F. Supp. 3d 64 (D.D.C. 2022) ...........................................................................11

*Charlton v. FTC*,
  543 F.2d 903 (D.C. Cir. 1976) ....................................................................................3

*CS Wind Vietnam Co. v. United States*,
  832 F.3d 1367 (Fed. Cir. 2016).................................................................................10

*DHS v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020)..............................................................................................11

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)....................................................................................................2

*Frederick v. Shinseki*,
  684 F.3d 1263 (Fed. Cir. 2012)...................................................................................7

*Hassoun v. Searls*,
  968 F.3d 190 (2d Cir. 2020)........................................................................................3

*Hicks v. Merit Sys. Prot. Bd.*,
  819 F.3d 1318 (Fed. Cir. 2016)...................................................................................6

*Illinois v. Wardlow*,
    528 U.S. 119 (2000) ..................................................................................2, 3

*Invenergy Renewables LLC v. United States*,
    422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ........................................12

*Invenergy Renewables LLC v. United States*,
    476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) ..........................................9

*Jones ex rel. Jones v. Chater*,
    101 F.3d 509 (7th Cir. 1996) ...................................................................3

*Kashem v. Barr*,
    941 F.3d 358 (9th Cir. 2019) ...................................................................5

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ..............................................................................6, 8

*Lindh v. Murphy*,
    521 U.S. 320 (1997) ..................................................................................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................................9, 11

*In re Nuvasive, Inc.*,
    842 F.3d 1376 (Fed. Cir. 2016) ..............................................................10

*Ortiz v. Principi*,
    274 F.3d 1361 (Fed. Cir. 2001) ................................................................3

*Rodriguez v. Dep't of Veterans Affairs*,
    8 F.4th 1290 (Fed Cir. 2021) ................................................................3, 4

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ................................................................................11

*Terry v. Ohio*,
    392 U.S. 1 (1968) ......................................................................................2

*United States v. Wilson*,
    503 U.S. 329 (1992) ..................................................................................7

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ..................................................................................6

*Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*,
    48 F.4th 1298 (11th Cir. 2022) ................................................................7

**Statutes**

5 U.S.C. § 706(2)(C) ...................................................................................2, 6

18 U.S.C. § 967 .................................................................................................4

19 U.S.C. § 1673b(b)(1)(A) .............................................................................4

19 U.S.C. § 1673d(a)(1) ...................................................................................4

19 U.S.C. § 4681(b) ..........................................................................................5

42 U.S.C. § 3610(c) ..........................................................................................3

49 U.S.C. § 114(h)(3)(A) ..................................................................................5

50 U.S.C. § 216 .................................................................................................4

UFLPA, Pub. L. No. 117-78, 135 Stat. 1525 ........................................ *passim*

**Other Authorities**

Exec. Order No. 13,923, 85 Fed. Reg. 30,587 (May 15, 2020) ........................5

Ninestar respectfully submits this supplemental brief in support of its pending motion for a preliminary injunction.[1]  When we first moved, the irreparable harm suffered by Ninestar was already palpable: millions lost; business partners disillusioned; reputation in tatters.  None of that has changed, except for the worse.  What has changed, however, is our understanding of why.  When we first filed, we had to guess at the bases for the Government's listing decision, on account of its failure to publish any meaningful explanation for its actions.  Now, however, we have seen most of the Administrative Record (confidentially at least) and know that in fact there are no valid bases for the listing decision.  Rather, Defendants strung together unsupportable inferences, based on irrelevant evidence, gathered in excess of their legal authority, and bound only by a loose, self-prescribed standard of proof.  And, even today, Defendants still have not met their burden to provide a legally sufficient rationale.  For all the reasons set forth in this and our prior briefing, Ninestar is likely to succeed on the merits, are suffering irreparably injury, and the balance of harms and public interests support preliminary injunctive relief.

## ARGUMENT

## I.    NINESTAR IS LIKELY TO SUCCEED ON THE MERITS

Ninestar's original Complaint challenged the Government's failure to provide an adequate and reasoned public statement.  ECF No. 19 ¶¶ 57–62.  They still have not.  The Amended Complaint additionally challenges the listing decision as unsupported by substantial evidence and in excess of statutory authority.  ECF No. 69 ¶¶ 69–79.  The former claim is beyond the scope of this motion, as it requires extensive parsing, and in some respects, correcting, of the record.  Ninestar instead seeks preliminary injunctive relief on its statutory claims, *id.* Counts III–IV, and

---

[1] This brief supplements our pending briefing, ECF Nos. 20 & 30, which remains before the court and addresses persuasively most of the points at issue in this motion.

its claim that the Government has failed to offer an adequate, reasoned explanation, *id.* Count I. Ninestar is likely to succeed on the merits of each.

### A.  FLETF Exceeded its Statutory Authority by Applying The Wrong Standard of Proof.

Agency action "must always be grounded in a valid grant of authority from Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000).  The APA therefore directs courts to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. §706(2)(C).  FLETF exceeded its authority by applying an absurdly low standard of proof that appears nowhere in the UFLPA and ignoring the required preponderance of the evidence standard.

The UFLPA authorizes FLETF, in relevant part, to list entities that are "working with the government of [XUAR] to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of [XUAR]."  Pub. L. No. 117-78, § 2(d)(2)(B)(ii), 135 Stat. 1525, 1527.  FLETF did not find that Ninestar is "working with" the XUAR government.  Rather, applying its confidential "Standard Operating Procedures," AR000220–28, FLETF "found that there was reasonable cause to believe, based on specific and articulable information," that Ninestar did so.  AR000002.  In other words, FLETF did not require proof beyond a reasonable doubt; did not require a preponderance of the evidence; nor did it even require a plurality of the evidence.  Rather, FLETF determined unilaterally that it can prohibit an entity's goods from entering this country based no nothing more than an articulable suspicion, akin to the meager showing that allows police officers to conduct brief investigatory stops based on little more than a hunch.  *See Terry v. Ohio*, 392 U.S. 1, 27 (1968).  The statute does not support that untenable result.  Rather, under the UFLPA listing requires a preponderance of the evidence. FLETF exceeded its statutory authority by listing Ninestar based on far less.  *See Illinois v.*

2

*Wardlow*, 528 U.S. 119, 123 (2000) ("reasonable suspicion" requires "considerably less than preponderance of the evidence").

In the absence of a contrary statutory directive, preponderance of the evidence is the "minimal appropriate" standard of proof in "administrative proceedings." *Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1301 (Fed Cir. 2021); *accord Hassoun v. Searls*, 968 F.3d 190, 202 (2d Cir. 2020) ("The 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings." (quoting *Sea Island Broad. Corp. of S.C. v. FCC*, 627 F.2d 240, 243 (D.C. Cir. 1980))); *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) (expressing "no doubt" that the "default" preponderance standard applied even though the statute did not "prescribe a standard of proof"); *Bender v. Clark*, 744 F.2d 1424, 1429 (10th Cir. 1984) (describing the preponderance standard as "the *traditional* standard of proof"). The familiar preponderance standard permits the decisionmaker to make a factual finding only if "the existence of [that] fact is more probable than its nonexistence." *Ortiz v. Principi*, 274 F.3d 1361, 1365 (Fed. Cir. 2001).

This standard is appropriate in view of the significant consequences at stake. Whether in the administrative or judicial context, *see Charlton v. FTC*, 543 F.2d 903, 908 (D.C. Cir. 1976), Congress does not ordinarily impose liability for conduct that *might* have occurred, *see Rodriguez*, 8 F.4th at 1300. Rather, Congress uses low standards of proof like "reasonable cause" to trigger events that might eventually lead to liability. Congress has, for example, directed the Department of Housing and Urban Development to recommend that the Attorney General file suit if it "has reasonable cause to believe that a respondent has breached a conciliation agreement." 42 U.S.C. § 3610(c). Or, closer to home here, Congress permitted starting an antidumping inquiry based on a mere "reasonable basis to believe or suspect" that imports are being sold below fair value. 19 U.S.C. § 1673b(b)(1)(A). But for a final determination of dumping—with its attendant duties—

3

all tolerance of mights and maybes drops away.  *See id.* § 1673d(a)(1).  Here, a UFLPA listing does far more than kick off further investigation; rather, FLETF gets to be judge, jury, and executioner.  With the stroke of a pen, FLETF can, as it did here, embargo hundreds of millions of dollars of goods.  It would be passing strange for Congress to have authorized imposing such drastic consequences on mere "reasonable cause."

Congress has also on occasion endorsed a lower standard of proof when circumstances warranted urgency.  The Secretary of the Treasury can, for example, prohibit the transportation of property "where there are satisfactory reasons to believe" that it is intended for "insurgents," 50 U.S.C. § 216, and the President may "withhold clearance from or to any vessel … whenever there is reasonable cause to believe" the vessel is carrying military supplies to a foreign belligerent, 18 U.S.C. § 967.

The UFLPA is nothing like these statutes.  Rather than calling for quick or inchoate decisions, Congress gave FLETF 180 days to develop a "comprehensive" assessment of forced labor programs in China—an assessment that includes the entity list.  UFLPA § 2(d)–(e)(1); *cf. Rodriguez*, 8 F.4th at 1298 (statute's command to "determin[e]" a fact implies a preponderance standard).  Nor is FLETF required to act hastily in updating the entity list; the UFLPA requires only "annua[l]" updates.  § 2(e)(2).  Congress, moreover, indicated that FLETF would have access to numerous sources of information in making listing determinations—"nongovernmental organizations," "private sector entities," the "Director of National Intelligence," and the "Department of Commerce," are all at FLETF's disposal, *id.* §§ 2(d)(7), 2(e), not to mention FLETF's access to numerous federal agencies through its own membership, *see* 19 U.S.C. § 4681(b); Exec. Order No. 13,923, 85 Fed. Reg. 30,587 (May 15, 2020).  In short, nothing about

the UFLPA suggests listing decisions would inherently require deviating from the usual preponderance standard.

Comparing the UFLPA's deliberative mandate to another listing regime permitting a lower standard of proof illustrates the point.  Congress has directed the TSA to establish procedures to "identify individuals … who may be a threat to civil aviation or national security."  49 U.S.C. § 114(h)(3)(A).  TSA identifies such individuals using the government's "No Fly List"—a list of persons the government has "reasonable suspicion to believe" pose a threat of terrorism.  *Kashem v. Barr*, 941 F.3d 358, 365–66 (9th Cir. 2019).  In upholding TSA's reliance on a list compiled under this standard, the Ninth Circuit emphasized that the statute required identifying individuals who merely "may be a threat."  *Id.* at 381 (quoting § 114(h)(3)(A)).  By telling TSA to act on the basis of *threats*, Congress accepted an increased risk of errors to decrease risks to civilian aviation. *Id.*

Not so here.  Congress could have crafted a more aggressive statute, tasking FLETF with compiling "a list of entities [suspected of] working with" or "a list of entities [that may be] working with" or "a list of entities [reasonably believed to be] working with" the XUAR government.  But it did not.  Each listing directive obliges FLETF to determine whether the entity is engaging or has engaged in specific conduct involving forced labor—not whether the entity might be doing or might have done those things.  *See* UFLPA § 2(d)(2)(B)(i) (requiring "a list of entities in the" XUAR "that mine, produce, or manufacture" certain goods); *id.* § 2(d)(2)(B)(ii) (requiring "a list of entities working with" the XUAR government); § 2(d)(2)(B)(iv) (requiring "a list of entities that exported" certain products); § 2(d)(2)(B)(v) (requiring "a list of facilities or entities" that "source material" from the XUAR or certain persons).  In empowering itself to act otherwise, FLETF violated the "core" principal of administrative law that an agency may not "rewrite" a

statute "to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). FLETF's error renders the listing decision unlawful on its own terms, 5 U.S.C. § 706(2)(C), and bolsters Ninestar's claim that the decision—when analyzed under the proper standard of proof—is not supported by substantial evidence.

**B.      FLETF Unlawfully Applied the UFLPA Retroactively.**

FLETF based its decision to list Ninestar on alleged conduct that preceded the UFLPA. Because the UFLPA does not apply retroactively, FLETF exceeded its statutory authority. *See* 5 U.S.C. § 706(2)(C). "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see also Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1321 (Fed. Cir. 2016) (Courts "will construe a statute to avoid retroactivity unless there is clear evidence that Congress intended otherwise."). The presumption against retroactivity "finds expression in several provisions of our Constitution," and acts as a bulwark against legislative efforts to "sweep away settled expectations" or "to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).

The UFLPA nowhere supplies the sort of clear statement required to apply its § 2(d)(2)(B)(ii) listing authority—and the punitive sanctions listing brings—to conduct that preceded the UFLPA. *Cf. Lindh v. Murphy,* 521 U.S. 320, 328–29 n.4 (1997) (retroactivity permitted only with "statutory language … so clear that it could sustain only one interpretation"). Quite the opposite, § 2(d)(2)(B)(ii) is phrased in the present tense: The listed entity must be "working" with the XUAR government to recruit, transport, transfer, harbor or receive the laborers. "Congress' use of a verb tense is significant in construing statutes," particularly when the interpreter is seeking "to ascertain a statute's temporal reach." *United States v. Wilson,* 503

6

U.S. 329, 333 (1992); *see Carr v. United States*, 560 U.S. 438, 448 (2010) (holding the present-tense word "travels" did not apply to pre-enactment travel).  The UFLPA itself shows that Congress knows how to use verb tenses meaningfully.  *See, e.g.*, § 2(d)(2)(B)(iv) (establishing list of entities that "exported" prohibited products); *see also Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) (the use of disparate terms "in close proximity" suggests "that a different meaning should be assigned to each").  Here, the choice of the present participle "working" "is used to signal present and continuing action."  *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022); *see also Frederick v. Shinseki*, 684 F.3d 1263, 1270 (Fed. Cir. 2012) (explaining present tense terms include future but not past tense). These textual clues, combined with the strong presumption against retroactivity, make clear that the UFLPA does not authorize FLETF to sanction conduct that occurred before the Act became effective.

FLETF ignored this limit on its authority.  The unredacted Administrative Record includes no evidence of covered conduct at the time of the listing decision in June 2023.  Accordingly, FLETF's own factual conclusions are generally phrased in the past tense.  *See, e.g.*, AR000001 (concluding that the information shared with the constituent agencies "demonstrates that Ninestar *has worked* with the government of the Xinjiang Uyghur Autonomous Region through a third-party agency to recruit transport, transfer, and receive Uyghur laborers"); [     ] (all emphases added).

In fact, FLETF's case against Ninestar appears to rest entirely on alleged conduct from *before* the UFLPA took effect.  *See* UFLPA §§ 2(e), 3(e).  The informant's accusations, for example, center on [     ]  Aside from the informant, FLETF relies on [     ]  FLETF also cites several documents that mention [     ]  And at no point does the record identify a factual basis for

7

concluding that these efforts were ongoing when UFLPA became law, nor a year later when FLETF issued the listing decision.  In short, all of the allegations concern conduct that preceded the UFLPA and in many cases would have occurred many years before the UFLPA.

FLETF's allegations therefore run headlong into "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf*, 511 U.S. at 265 (quotation marks omitted).  The UFLPA has no clear statement authorizing FLETF to apply the listing process (and the consequent embargo) to sanction conduct that preceded UFLPA.  But that is exactly what FLETF did to Ninestar.  Employing a record that predates the UFLPA and accusing Ninestar of conduct that by all accounts ceased before UFLPA, FLETF has applied the UFLPA retroactively.  As a matter of law, FLETF is barred from doing so.

### C.   The Confidential Administrative Record Still Does Not Provide an Adequate, Reasoned Explanation For The Listing Decision.

As we explained previously, Ninestar is also likely to succeed on the merits of its claim that FLETF's action is arbitrary and capricious because it failed to articulate a satisfactory explanation for the listing decision.  *See* ECF No. 20 at 16–19; ECF No. 30 at 13–19.  The subsequent filing of the mostly unredacted Administrative Record does not change that.

First, the APA and UFLPA require a *public* explanation.  We have already explained why the APA does so.  *See* ECF No. 30 at 15–16 (citing *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1346 (Ct. Int'l Trade 2020), and *AFGE Local 3599 v. EEOC*, 920 F.3d 794, 799 (Fed. Cir. 2019)).  Congress intended the UFLPA to "prevent, publicly denounce, and end human trafficking," UFLPA § 1(4)—a campaign to shame wrongdoers into compliance that can succeed only if the explanation of wrongdoing is public.  Moreover, the statute promises a "rebuttable" presumption, but the odds of rebutting secret charges are nil without a public explanation.  It cannot be that the only way to see FLETF's explanation, and thus the only way to

8

pursue delisting or rebutting the import prohibition, is to sue the agency to secure the administrative record. *See Invenergy*, 476 F. Supp. 3d at 1347 ("Requiring that the parties litigate a final agency decision in order to gain knowledge of and access to the agency's rationale wastes judicial resources and delays corrective agency action that would otherwise be addressed by the agency in the first instance."). The Government's public disclosures, whether originally or subsequently through a mostly redacted record, fall far short of this obligation.

Even if a confidential record could count, the Government's efforts here still fail to provide the "satisfactory explanation" required under the APA. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action is arbitrary and capricious if it fails to articulate "a rational connection between the facts found and the choice made." *Id.* (quotation marks omitted). Put differently, as the Federal Circuit has held, to provide an adequate explanation the agency must "reasonably tie" its decision "to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016).

FLETF fell short of this requirement in numerous respects. While Ninestar will detail each of those errors in its motion for judgment, for present purposes we focus on just two.

Consider first FLETF's conclusion about *who* Ninestar allegedly cooperated with to violate the UFLPA. FLETF found that Ninestar worked "with the government of the XUAR" to receive Uyghur laborers based on evidence in DHS "Package 23-002 demonstrat[ing]" that Ninestar recruited Uyghur laborers "through a third-party agency" that in turn worked with the XUAR government. AR000001–02; *see also* AR000006 [     ]. Yet FLETF never explained whether— or, if so, why—it decided to equate "a third-party agency" with "the government of the XUAR." Nor can the court "reasonably discern" such a link. *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382

9

(Fed. Cir. 2016).   Maybe FLETF (wrongly) interpreted the statutory phrase "works with government of the XUAR" to include cooperating through an intermediary.[2]   *But see CS Wind*, 832 F.3d at 1377 ("If Commerce has a different statutory interpretation, it should articulate and justify it on remand.").   Or perhaps FLETF concluded that the "third-party" was an arm of the XUAR government.   *But see id.* at 1379 (holding agency explanation "not satisfactory" where it was "not clear in making [relevant] distinctions").   Or, perhaps the Government can surmise plausible explanations for FLETF's logical leap.   None of that speculation matters.   Neither courts nor litigants may "supply a reasoned basis for the agency's action that the agency itself has not given."   *State Farm*, 463 U.S. at 43 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).   And on this point, the record is all "conclusion" and no "reasoning."   *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017).

Consider next FLETF's conclusion about *when* this cooperation allegedly occurred. Assume *arguendo* that FLETF had found that Ninestar "works" (present tense) with the XUAR government to receive forced labor.[3]   *See* AR000002.   FLETF says it reached that conclusion based on evidence demonstrating that Ninestar "has worked" with the XUAR government. AR000001.   But for the reasons we have explained, neither pre-enactment conduct nor conduct that has ceased by the time of FLETF's vote is a proper basis for listing under UFLPA § 2(d)(2)(B)(ii), *see supra* I.B, and it is textbook administrative law that an agency's decision

---

[2] Nothing in the Administrative Record indicates that this was FLETF's rationale, and its decision therefore cannot now be justified on that basis now.   But if the Court disagrees or the Government argues otherwise, Ninestar reserves the right to explain why such an interpretation of the UFLPA is improper.
[3] While the record is unclear on this point, the only other possibility is that FLETF concluded that Ninestar "worked" (past tense) with the XUAR government to recruit forced labor.   *See, e.g.*, AR000004.   If this is indeed what FLETF concluded, then the listing decision was *ultra vires*, *see supra* I.B, and thus any explanatory failures are beside the point.

cannot "rel[y] on factors which Congress has not intended it to consider," *State Farm*, 463 U.S. at 43. True, giving FLETF the benefit of the doubt, one might guess the agency reasoned that past conduct predicts present conduct. But *FLETF* neither said so nor explained that leap, and no amount of post hoc rationalization can backfill FLETF's failures. "An agency must defend its actions based on the reasons it gave when it acted." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020); *see also Cayuga Nation v. United States*, 594 F. Supp. 3d 64, 75 (D.D.C. 2022) (vacating agency action that "did not even attempt to link" consideration of improper factors to statutory requirements). FLETF "simply provide[d] a conclusion"; that is not enough. *Aqua Prods.*, 872 F.3d at 1325.

## II.    THE OTHER PRELIMINARY-INJUNCTION FACTORS STILL FAVOR RELIEF.

As Ninestar has previously explained, the listing decision has inflicted substantial and irreparable harms to Ninestar's finances, business relationships, and reputation—the kinds of harm one would expect to result from being embargoed and branded a human trafficker. *See* ECF No. 20 at 20–22. Those injuries, including grievous financial harm to [     ], have only gotten worse in the intervening months. *See* Suppl. Cheng Decl. ¶ 5–9. Meanwhile, the balance of equities still "tips decidedly" in Ninestar's favor because any hardship an injunction would cause the Government is a "direct result" of FLETF's failure to follow the APA. *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1290, 1293 (Ct. Int'l Trade 2019). Finally, the public interest still favors an injunction because it would "ensur[e] that [FLETF] compl[ies] with the law, and interpret[s] and appl[ies] trade statutes uniformly and fairly." *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010).

**CONCLUSION**

This Court should issue a preliminary injunction staying the listing decision and preventing the Government from taking any action against the importation of Ninestar's goods predicated on the listing decision.

Dated: December 15, 2023

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this supplemental brief complies with the Court's Scheduling Order, ECF No. 77, because it contains 3,743 words, as determined by the word count feature of the word-processing system used to prepare the brief, excluding the parts exempted by Chambers Procedure 2(B)(1)(c).

*/s/ Gordon D. Todd*
Gordon D. Todd