UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE
_____
|   |   |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD., |   |
| Plaintiffs, |   |
| v. | Court No. 23-00182 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force, | NON-CONFIDENTIAL |
| Defendants. |   |
_____

# SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MONICA P. TRIANA
Senior Trial Counsel

GUY EDDON
LUKE MATHERS
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230
*Attorneys for Defendants*

Date: January 3, 2024

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................2

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT ........................................................................................................................5

I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS ..............................5

   A. The FLETF Did Not Exceed Its Statutory Authority In Listing Ninestar ........................6

   B. FLETF Properly Applied The UFLPA ........................................................................12

II. PLAINTIFFS HAVE NOT SATISFIED THE REMAINING PRELIMINARY
INJUNCTION FACTORS ..................................................................................................13

CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of Nat'l Advertisers, Inc. v. F.T.C.*,
  627 F.2d 1151 (D.C. Cir. 1979)......................................................................10

*Bender v. Clark*,
  744 F.2d 1424 (10th Cir. 1984) .....................................................................11

*Changji Esquel Textile Co. v. Raimondo*,
  40 F.4th 716 (D.C. Cir. 2022)..........................................................................8

*Corus Grp. PLC v. Bush*,
  217 F. Supp. 2d 1347 (Ct. Int'l Trade 2002)................................................13

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018)............................................................................................9

*Fed. Express Corp. v. U.S. Dep't of Com.*,
  39 F.4th 756 (D.C. Cir. 2022).........................................................................9

*Frontier-Kemper Constr., Inc. v. OWCP*,
  876 F.3d 683 (4th Cir. 2017).........................................................................12

*Goodloe v. City of New York,*
  136 F. Supp. 3d 283 (E.D.N.Y. 2015)..........................................................12

*Jones ex rel. Jones v. Chater*,
  101 F.3d 509 (7th Cir. 1996).........................................................................11

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012).......................................................................8

*McAndres v. Fleet Bank*,
  989 F.2d 13 (1st Cir. 1993)............................................................................12

*OKKO Bus. PE v. Lew*,
  133 F. Supp. 3d 17 (D.D.C. 2015)............................................................ 7, 8, 11, 12

*Pension Ben. Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990)........................................................................................10

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
  182 F.3d 17 (D.C. Cir. 1999).........................................................................12

*Philips Med. Sys. (Cleveland), Inc. v. Buan*,
  2022 WL 602485 (N.D. Ill. Mar. 1, 2022) ................................................................... 8

*Regan v. Wald*,
  468 U.S. 222 (1984) .................................................................................................... 7

*Rodriguez v. Dep't of Vet. Affairs*,
  8 F.4th 1290 (Fed. Cir. 2021) ........................................................................... 9, 10, 11

*Sea Island Broad. Corp. of S.C. v. FCC*,
  627 F.2d 240 (D.C. Cir. 1980) .................................................................................. 11

*Software Sys. Assocs., Inc. v. Saiki*,
  1993 WL 294782 (D.D.C. June 25, 1993) ................................................................ 10

*Steadman v. S.E.C.*,
  450 U.S. 91 (1981) .................................................................................................... 10

**Statutes**

The Administrative Procedure Act (APA)
  5 U.S.C. §§ 551–559 ............................................................................................. 2, 10

5 U.S.C. § 706(2)(C) ........................................................................................................ 6

50 U.S.C. § 1702 .............................................................................................................. 8

Section 307 of the Tariff Act of 1930
  19 U.S.C. § 1307 ............................................................................................... *passim*

Uyghur Forced Labor Prevention Act (UFLPA),
  Pub. L. No. 117-78 (Dec. 23, 2021) ................................................................. *passim*

**Regulations**

15 C.F.R. § 744.11(b) ...................................................................................................... 8

19 C.F.R. § 12.42(e) ........................................................................................................ 7

**Other Authorities**

Sarah A. Thornton, *Importing Prison Labor Products from the People's Republic of China:
  Re-Examining U.S. Enforcement of Section 307 of the Trade and Tariff Ac*t of,
  1930, 3 Pac. Rim L. & Pol'y J. 437 (1995) ................................................................. 9

167 Cong. Rec. H7804-02 ................................................................................................... 6, 7

Article 36, Data Security Law of the People's Republic of China ............................................ 8

UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE
_____
                                                    :
NINESTAR CORPORATION, ZHUHAI NINESTAR              :
INFORMATION TECHNOLOGY CO., LTD., ZHUHAI           :
PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX          :
MICROELECTRONICS CO., LTD., GEEHY                  :
SEMICONDUCTOR CO., LTD., ZHUHAI G&G                :
DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE         :
PRINTING TECHNOLOGY CO., LTD., and ZHUHAI          :
NINESTAR MANAGEMENT CO., LTD.,                     :
                                                    :
                    Plaintiffs,                     :
                                                    :      Court No. 23-00182
            v.                                      :
                                                    :
UNITED STATES OF AMERICA; DEPARTMENT OF             :
HOMELAND SECURITY; UNITED STATES                   :
CUSTOMS AND BORDER PROTECTION; FORCED              :
LABOR ENFORCEMENT TASK FORCE;                      :
ALEJANDRO MAYORKAS, in his official capacity as    :      NON-CONFIDENTIAL
the Secretary of the Department of Homeland Security; :
TROY A. MILLER, in his official capacity as the Senior :
Official Performing the Duties of the Commissioner for :
U.S. Customs and Border Protection; and            :
ROBERT SILVERS, in his official capacity as Under  :
Secretary for Office of Strategy, Policy, and Plans and :`
                                                    :
                    Defendants.                     :
_____:

**SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendants, United States *et al.*, pursuant to the Court's order dated December 8, 2023, ECF No. 77, respectfully submit this brief in response to the supplemental brief filed by plaintiffs, Ninestar Corporation and seven of its subsidiaries (collectively Ninestar), in support of their motion for a preliminary injunction. We incorporate by reference our initial response to Ninestar's motion for a preliminary injunction. *See* ECF No. 24 (Gov't Br.).

**INTRODUCTION**

Ninestar's first complaint alleged that the Forced Labor Enforcement Task Force (FLETF) violated the notice requirements of the Administrative Procedure Act (APA) when it added Ninestar to the list of entities described in Section 2(d)(2)(B) of the Uyghur Forced Labor Prevention Act (UFLPA), *see* P.L. 117-78 (Dec. 23, 2021). Compl., Count 1. Shortly after Ninestar filed its complaint, defendants filed the administrative record containing the explanation for the FLETF's decision and the supporting evidence. Defendants also opposed Ninestar's initial request for a preliminary injunction on the basis that any claim involving a perceived deficiency in the notice for the decision had been cured by the filing of the record. And even if the Court were to agree with Ninestar's claim, the remedy would involve a remand to allow the FLETF to provide the very same record information to Ninestar that it had already received.

Now, Ninestar has amended its complaint to assert three new claims. In addition to its notice claim, Ninestar alleges that the FLETF's determination lacked substantial evidence (Count II), applied the wrong evidentiary standard (Count III), and was impermissibly retroactive (Count IV). In Ninestar's supplemental brief in support of its motion for a preliminary injunction, Ninestar explicitly limits its additional argument on its likelihood of success on the merits to only three of its four claims (ignoring Count II altogether) and has filed a declaration providing only cursory information (essentially three paragraphs) purporting to satisfy its significant burden to show irreparable harm.

Ninestar still has not justified its request for the extraordinary remedy of a preliminary injunction. For the same reasons we explained in our original opposition, the FLETF provided the necessary notice to Ninestar, and in any event, Ninestar has the FLETF's explanation now, rendering Ninestar's original claim of lack of notice moot. The two additional claims that Ninestar now contends also justify an injunction—that the FLETF's decision is impermissibly

retroactive and applies the wrong evidentiary standard—also lack merit. The FLETF's decision was not impermissibly retroactive, even if past conduct was used to establish current conduct. And the evidentiary standard used by the FLETF was appropriate given the nature and focus of the statutory scheme. Finally, the limited additional allegations of harm asserted by Ninestar are insufficient to justify preliminary relief.

For all of these reasons, injunctive relief is not warranted.

## STATEMENT OF FACTS

Defendants incorporate the statement of facts set forth in its opposition to Ninestar's motion for a preliminary injunction, and recount the following additional facts to supplement this prior statement. *See* Gov't Br. at 4–5.

[redacted]

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

█████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

   ████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

   ██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

4

[Redacted]

## ARGUMENT

## I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS

Ninestar argues in its supplemental motion that it is entitled to a preliminary injunction because the FLETF's decision relied on the wrong evidentiary standard (Count III) and was impermissibly retroactive (Count IV). ECF No. 78 (Pls.' Supp. Br.) at 2–12. Ninestar does not demonstrate a likelihood of success on either of these grounds—the FLETF's reasonable cause standard is consistent with the applicable statutory scheme and used in similar types of proceedings, and the FLETF based its decision on actions occurring after the UFLPA's enactment. Ninestar also continues to argue that it is entitled to preliminary relief because Ninestar did not receive the required notice (Count I). Because we fully addressed this issue in

5

our previous submission, we do not further address it here.

### A. The FLETF Did Not Exceed Its Statutory Authority In Listing Ninestar

Ninestar argues that the FLETF acted in excess of statutory authority under 5 U.S.C. § 706(2)(C) by applying an incorrect evidentiary standard in listing Ninestar. Pls.' Supp. Br. at 2–6. The FLETF made its determination based on the standard of ███████████ ████████████████████████████████████████ ████████████████████████ AR221. This standard is consistent with the UFLPA and section 307 of the Tariff Act, which prohibits the importation of merchandise produced with forced labor, and is akin to standards applied in similar contexts such as the Department of Commerce's Bureau of Industry Security (BIS) listing decisions and the Department of the Treasury's Office of Foreign Assets Control (OFAC) listing decisions.

The UFLPA is directed to foreign relations with China and designed to strengthen section 307's existing prohibition on the entry of goods made with forced labor. Lawmakers described it as "critical to showing that we are putting human rights at the center of our foreign and economic policy." 167 Cong. Rec. H7804-02, H7806 (remarks of Rep. Meeks). To implement this objective, Congress instructed the FLETF to develop an enforcement strategy that includes, among other things, a list of entities working with the government of Xinjiang to receive forced laborers, Uyghurs, or other persecuted minorities from Xinjiang. UFLPA, Section 2(d)(2)(B)(ii). The UFLPA's centerpiece is a presumption that merchandise made in Xinjiang or by a listed entity is prohibited from entry, unless rebutted by clear and convincing evidence that the merchandise was not produced using forced labor. UFLPA, Section 3; *see* 167 Cong. Rec. H7804-02, H7808 (remarks of Rep. Smith).

The FLETF's reasonable cause standard is consistent with this statutory scheme. "Matters of strategy and tactics relating to the conduct of foreign policy 'are so exclusively

entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 28 (D.D.C. 2015) (quoting *Regan v. Wald*, 468 U.S. 222, 242 (1984)). And Congress did not specify a particular burden of proof in the UFLPA for the FLETF's choice to list entities. UFLPA, Section 2. Rather, Section 3 evidences Congress' desire to place the ultimate burden not on the Government but rather on the party claiming that forced labor was not used. Using a higher burden than reasonable cause at the listing stage—particularly a preponderance of the evidence standard—would undermine this key aspect of the UFLPA's framework. That is, it would allow entities to have their goods enter the United States without a showing by clear and convincing evidence that their goods were not produced using forced labor, even where there is reasonable cause to believe such conduct is occurring.

The FLETF's reasonable cause standard is also consistent with section 307. Under that section, U.S. Customs and Border Protection has long withheld release of certain merchandise based on "reasonabl[e], but not conclusive[]" evidence of forced labor. 19 C.F.R. § 12.42(e). As this Court has recognized, Congress enacted the UFLPA against the backdrop of section 307, and the UFLPA explicitly ties itself to section 307. Accordingly, it is consistent with the FLETF's implementation of the UFLPA to choose a standard nearly identical to the standard employed under section 307 to issue withhold-release orders (WROs).

Additionally, the FLETF's reasonable cause standard comports with the standards used in analogous contexts. For example, OFAC maintains lists of "specially designated" entities that are listed ("designated") as funding drug trafficking or terrorism, among other things. Such designations can result in the freezing or seizure of assets. Like the UFLPA, the statutes governing OFAC's designations do not recite a particular burden of proof. *See, e.g.*, 50 U.S.C.

7

§ 1702. Numerous federal courts have upheld OFAC designations based on a "reason to believe" standard. *See, e.g.*, *Kadi v. Geithner*, 42 F. Supp. 3d 1, 12 (D.D.C. 2012) (upholding a listing determination that was based on OFAC's "reason to believe" certain facts); *OKKO Bus. PE*, 133 F. Supp. 3d at 20 (same). Additionally, though not subject to APA review, the BIS Entity List includes entities that are made subject to export restrictions for foreign policy reasons (including in connection with forced labor practices) under a "reasonable cause to believe … based on specific and articulable facts" standard, 15 C.F.R. § 744.11(b). *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 725 (D.C. Cir. 2022). Thus, the FLETF's chosen standard is consistent not only with the UFLPA and section 307, but also with longstanding agency practice in closely analogous foreign-relations contexts.

Moreover, there is a strong justification for the FLETF's standard: it is extremely difficult for the FLETF to obtain information from or about Chinese individuals or entities. For example, Article 36 of China's "Data Security Law" "requires review by the Supreme People's Court before a Chinese individual or organization may provide data in response to requests 'made by foreign judicial or law enforcement authorities.'" *Philips Med. Sys. (Cleveland), Inc. v. Buan*, 2022 WL 602485, at *6 (N.D. Ill. Mar. 1, 2022). In other words, the Chinese government must sign off on all information obtained from China, which limits the availability of reliable information. Additionally, the Chinese government's control over available information has for decades challenged the United States' ability to enforce section 307. According to an academic review, in response to the United States' efforts to exclude merchandise produced through Chinese prison labor, the Chinese government has used a number of tactics, including a "web of agents, shippers, suppliers, and sub-contractors" to "easily hide a product's point of origin," not to mention "alternate product and prison names" and "strictly limited" access to facilities. Sarah

A. Thornton, *Importing Prison Labor Products from the People's Republic of China: Re-Examining U.S. Enforcement of Section 307 of the Trade and Tariff Act of 1930*, 3 Pac. Rim L. & Pol'y J. 437, 450–51 (1995). This type of conduct continues today. Indeed, as previously noted,

███████████████████████████████████████████

████████████████████████████████

A threshold higher than reasonable cause would undermine the effectiveness of the UFLPA given that significant information about a listed entity's actions often may be unavailable to the FLETF. It would essentially require the FLETF to "rule out" a listed entity's "explanation for suspicious facts," *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018), even though the FLETF may often lack a realistic ability to do so. The application of a reasonable cause standard thus best promotes the purposes of the UFLPA.

Ninestar challenges the FLETF's reasonable cause standard, arguing that "absent a statute to the contrary," "preponderance of the evidence is the minimal appropriate burden of proof in administrative proceedings." Pls.' Supp. Br. at 2–6 (quoting *Rodriguez v. Dep't of Vet. Affairs*, 8 F.4th 1290, 1301 (Fed. Cir. 2021)).[1] Ninestar is wrong.

Preponderance of the evidence is the standard applicable for formal agency adjudications. *See Steadman v. S.E.C.*, 450 U.S. 91, 102 (1981). "Administrative action pursuant to the APA is either adjudication or rulemaking." *Ass'n of Nat'l Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151, 1160 (D.C. Cir. 1979). "Formal adjudication is governed by section 554 of the APA and arises

---

[1] Ninestar actually claims that the FLETF "exceeded its statutory authority" in adopting its reasonable cause standard, Pls.' Supp. Br. at 2, but for agency action to be *ultra vires*, the "overstep must be 'plain on the record and on the face of the [statute.]'" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) (citation omitted) (describing such a challenge as "essentially a Hail Mary pass"). For the reasons noted, including that the statute does not specify any burden of proof much less a preponderance standard, there was no such plain overstep here.

in 'every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing.' Section 554 incorporates the procedural requirements of sections 556 and 557 and affords parties to a formal adjudication the right to present evidence and to conduct cross-examination," among other things. *Id.* By contrast, "informal adjudication occurs when an agency determines the rights or liabilities of a party in a proceeding to which [section] 554 does not apply." *Id.* at 1161 n.17. Because no statute requires the FLETF's listing decisions to be made "on the record after opportunity for an agency hearing," such decisions are considered (at most) informal adjudications under the APA.

This distinction, which Ninestar glosses over, is crucial. "While it may be true that the APA incorporates a 'preponderance of the evidence' standard for formal agency hearings," that standard does not automatically apply to "informal agency adjudications, which are not subject to the procedural safeguards of § 556 of the APA." *Software Sys. Assocs., Inc. v. Saiki*, 1993 WL 294782, at *5 (D.D.C. June 25, 1993) (citation omitted). And "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA" or governing statutes. *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990); *cf. Rodriguez*, 8 F.4th at 1298 (preponderance standard had a basis in the governing statute's use of the verb "determine[]"). That the APA lacks a requirement that informal adjudications be resolved based on the preponderance of the evidence thus means that the FLETF is free to select a burden of proof appropriate under the circumstances. The FLETF acted appropriately here given the UFLPA's text and purpose and the similar standards applicable to analogous agency determinations.

By the same token, the FLETF's listing determinations are dissimilar to disciplinary, benefits, and other hearings into which courts have imported the preponderance standard, even

10

though they are more informal in nature. *See* Pls.' Supp. Br. at 3–4. These hearings concern very different interests and contemplate the submission of evidence by both sides for a decisionmaker to weigh. *Cf. Rodriguez*, 8 F.4th at 1295–96; *Sea Island Broad. Corp. of S.C. v. FCC,* 627 F.2d 240, 243 (D.C. Cir. 1980); *Bender v. Clark*, 744 F.2d 1424, 1429 (10th Cir. 1984); *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996). These cited examples are thus the types of "proceedings" that would typically require the higher burden of proof that Ninestar argues should apply here. *Rodriguez*, 8 F.4th at 1301.

Moreover, Ninestar overlooks that *Rodriguez* carves out certain agency determinations from the preponderance standard. As that decision recognizes, there "may be exceptional circumstances in which a lower burden of proof than preponderance of the evidence could legitimately be applied." *Rodriguez*, 8 F.4th at 1301. While *Rodriguez* stated that exceptions to the preponderance standard "would typically require an explicit directive to use a [lesser] burden of proof," *id.*, this is a circumstance where such an exception properly applies. As noted, here the operative statute is not silent but instead expressly directs a burden shifting regime. Moreover, the FLETF's determination was made in the sensitive context of foreign relations, which is "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference," *OKKO Bus. PE*, 133 F. Supp. 3d at 28 (citation omitted); section 307 and other analogous agency actions utilize a similar standard; listed foreign entities like Ninestar lack constitutional protections, *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999); and reliable information from China is difficult to obtain. These considerations all confirm that the FLETF's application of a reasonable cause standard was not in excess of statutory authority.

11

## B. FLETF Properly Applied The UFLPA

Ninestar also alleges that the FLETF retroactively applied the UFLPA. Pls.' Supp. Br. at 6–8. This is not the case.

To begin, certain information bearing on this issue is contained in the Administrative Record but has been redacted on the basis of the Informant Privilege (including the specific timing of the information provided by the confidential source) because the specific dates in question would tend to identify that source. *See Goodloe v. City of New York*, 136 F. Supp. 3d 283, 293–96 (E.D.N.Y. 2015). The Court can review this redacted information *in camera* to assess Ninestar's retroactivity claim.

To the extent any other evidence in the record pre-dates the UFLPA's enactment, that information does not render the FLETF's decision impermissibly retroactive. There are no retroactivity concerns where, as here, past conduct is merely being used to establish a current violation. *Frontier-Kemper Constr., Inc. v. OWCP*, 876 F.3d 683 (4th Cir. 2017); *McAndres v. Fleet Bank*, 989 F.2d 13, 16 (1st Cir. 1993). Ninestar's challenge therefore goes to the merits of the FLETF's determination—whether the past conduct at issue reasonably suggested a current violation—and not its purported retroactivity. On these bases, Ninestar's arguments with respect to retroactivity have no merit, and Ninestar is not likely to succeed on this claim.

## II. PLAINTIFFS HAVE NOT SATISFIED THE REMAINING PRELIMINARY INJUNCTION FACTORS

With respect to the remaining preliminary injunction factors, in particular irreparable harm and the balance of the equities, Ninestar offers very little that is new. Pls.' Supp. Br. at 12. Ninestar entirely omits any discussion of the balance of harms and offers just a few additional paragraphs in a declaration (discussing Ninestar's declining stock price and the loss of "valuable seal" of industry approval) to support its allegation of irreparable harm. ECF No. 78-1. This

Court has held over and over that threat of "economic injury" does not constitute irreparable harm, *Corus Grp. PLC v. Bush,* 217 F. Supp. 2d 1347, 1355 (Ct. Int'l Trade 2002). For the reasons noted in our prior brief, Ninestar has failed to allege anything more here, and its supplemental brief does not fix that deficiency.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss this action or, in the alternative, ask the Court to deny Ninestar's motion for a preliminary injunction.

        Respectfully submitted,

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General
        Civil Division

        PATRICIA M. McCARTHY
        Director

By:    /s/ Claudia Burke
        CLAUDIA BURKE
        Deputy Director

        /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Monica P. Triana
        MONICA P. TRIANA
        Senior Trial Counsel

        /s/ Guy Eddon
        GUY EDDON
        LUKE MATHERS
        Trial Attorneys
        Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza – Room 346
        New York, New York 10278
        Tel. (212) 264-9240 or 9230

Date: January 3, 2024         *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I, Monica P. Triana, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in further opposition to plaintiffs' motion for a preliminary injunction, dated January 3, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,598 words.

/s/ Monica P. Triana
MONICA P. TRIANA