UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD., | : : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Court No. 23-00182 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force, | : : : : : : : : : : : : : : | PUBLIC |
| Defendants. | : : | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO UNSEAL AND UNREDACT THE ADMINISTRATIVE RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MONICA P. TRIANA
Senior Trial Counsel

GUY EDDON
LUKE MATHERS
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230
*Attorneys for Defendants*

Date:  January 8, 2024

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ....................................................................................................................... 5

    I.    THE PRIVILEGED INFORMATION REDACTED FROM THE
           ADMINISTRATIVE RECORD WOULD REVEAL THE INFORMANT'S
           IDENTITY ................................................................................................................. 5

    II.    DISCLOSING THE ATTORNEYS'- EYES- ONLY DESIGNATED
           INFORMATION IN THE ADMINISTRATIVE RECORD TO NINESTAR
           WOULD IMPAIR LAW-ENFORCEMENT EFFORTS AND IS
           UNNECESSARY TO NINESTAR'S CASE ....................................................... 9

    III.    PUBLIC DISCLOSURE IS UNWARRANTED ............................................... 13

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Butte Cty. v. Chaudhuri*,
887 F.3d 501 (D.C. Cir. 2018) ............................................................................. 12

*D.A. v. Nielsen*,
2018 WL 3158819 (D.N.J. June 28, 2018) ............................................................ 9

*Doe ex rel. Thomas v. Sutter*,
2019 WL 1429626 (S.D. Tex. Mar. 29, 2019) ....................................................... 9

*Goodloe v. City of New York*,
136 F. Supp. 3d 283 (E.D.N.Y. 2015) .......................................................... 4, 6, 7, 8

*In re NTE Connecticut, LLC*,
26 F.4th 980 (D.C. Cir. 2022) ............................................................................... 7

*In re The City of New York*,
607 F.3d 923 (2d Cir. 2010) ....................................................................... 4, 6, 7, 8, 9

*Kappos v. Hyatt*,
566 U.S. 431 (2012) ....................................................................................... 11, 12

*MacNamara v. City of New York*,
249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................................. 9

*Playboy Enters., Inc. v. Dep't of Justice*,
677 F.2d 931 (D.C. Cir. 1982) .............................................................................. 3

*Reese v. Liberty*,
2019 WL 5549219 (D. Me. Oct. 25, 2019) ........................................................... 12

*Roviaro v. United States*,
353 U.S. 53 (1957) ............................................................................................ 4, 6

*Tigue v. U.S. Dep't of Justice*,
312 F.3d 70 (2d Cir. 2002) .................................................................................... 4

*United States v. Russotti*,
746 F.2d 945 (2d Cir. 1984) ................................................................................. 6

*Wagafe v. Trump*,
334 F.R.D. 619 (W.D. Wash. 2020) ...................................................................... 9

**Statutes**

The Administrative Procedure Act ............................................................. 7, 8, 11, 12

UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

———————————————————————————— :
                                                              :
NINESTAR CORPORATION, ZHUHAI NINESTAR        :
INFORMATION TECHNOLOGY CO., LTD., ZHUHAI     :
PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX    :
MICROELECTRONICS CO., LTD., GEEHY            :
SEMICONDUCTOR CO., LTD., ZHUHAI G&G          :
DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE   :
PRINTING TECHNOLOGY CO., LTD., and ZHUHAI    :
NINESTAR MANAGEMENT CO., LTD.,               :
                                                              :
                        Plaintiffs,          :
                                                              :   Court No. 23-00182
              v.                             :
                                                              :
UNITED STATES OF AMERICA; DEPARTMENT OF      :
HOMELAND SECURITY; UNITED STATES             :
CUSTOMS AND BORDER PROTECTION; FORCED        :   PUBLIC
LABOR ENFORCEMENT TASK FORCE;                :
ALEJANDRO MAYORKAS, in his official capacity as :
the Secretary of the Department of Homeland Security; :
TROY A. MILLER, in his official capacity as the Senior :
Official Performing the Duties of the Commissioner for :
U.S. Customs and Border Protection; and      :
ROBERT SILVERS, in his official capacity as Under :
Secretary for Office of Strategy, Policy, and Plans and :
Chair of the Forced Labor Enforcement Task Force, :
                                                              :
                        Defendants.          :
———————————————————————————— :

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**UNSEAL AND UNREDACT THE ADMINISTRATIVE RECORD**

Pursuant to the Court's order dated December 8, 2023, ECF No. 77, defendants, the

United States *et al.*, respectfully oppose plaintiffs' motion to unseal and unredact the administrative

record.

## INTRODUCTION

Plaintiffs, Ninestar and seven of its subsidiaries (collectively, Ninestar), ask the Court to unseal and unredact portions of the administrative record, ECF No. 60 (Mot.).  The portions of the record that the Government continues to protect are either protected by the informer's privilege or are law-enforcement sensitive, and their disclosure would harm the Government's law-enforcement efforts.

First, Ninestar asks the Court to unredact portions of the record that would reveal to Ninestar's counsel the identity of the confidential informant who provided to the Forced Labor Enforcement Task Force (FLETF) information concerning Ninestar's exploitation of Uyghur labor.  These redacted portions of the record are protected by the informer's privilege, their release would threaten retaliation against the informant, and Ninestar provides only conclusory reasons why its counsel must know the informant's identity to litigate this record-review case.  Moreover, the Court can address whatever nonconclusory concerns Ninestar might have through *in camera* review.[1]  Ninestar's motion should therefore be denied as to this information.

Second, Ninestar asks the Court to unseal (that is, to remove the "attorneys' eyes only" designation under the Amended Protective Order[2]) the remainder of the administrative record, making it available to the public.  In response to Ninestar's asserted need to access this information, the United States is willing to share much of this sensitive information with Ninestar itself, but continues to maintain that this information should not be shared with the

---

[1]  The highly sensitive, fully unredacted administrative record was provided to the Court *in camera* on October 30, 2023.  ECF No. 46.

[2]  The Amended Protective Order refers to such information as "Confidential Information."  ECF No. 40 at ¶ 1.  We use the phrase "attorneys' eyes only" to conform to the relevant cases (which predominately use that phrase) and to distinguish such information from the law-enforcement-sensitive information that the Government is nevertheless willing to confidentially share with Ninestar itself.

public.  Indeed, Ninestar presents no compelling argument as to why public disclosure, as opposed to confidential disclosure, is necessary.  Accordingly, as to the portions of the record that have not been redacted on the basis of the informer's privilege and are not listed in the table appended at Attachment A, the United States requests that the Court order them "unsealed" such that they remain nonpublic but Ninestar itself may review them.

For the remaining amount of sensitive information that the United States believes should still be designated as attorneys' eyes only—namely, information from (1) sources over which the Chinese government exercises control and (2) internal agency documents—that designation appropriately balances the Government's concerns that disclosure to Ninestar itself (beyond its counsel) would undermine future investigations by providing a roadmap for evading detection and cause sources to dry up, with Ninestar's legitimate interest in litigating this case.  Ninestar again fails to provide a nonconclusory reason why Ninestar itself, whom the FLETF found reasonable cause to believe was working with the government of Xinjiang, needs this sensitive information.  The Court should therefore deny Ninestar's motion as it relates to these two categories of information.

## <u>STANDARD OF REVIEW</u>

At the outset, Ninestar cites the wrong legal standard.  *See* Mot. at 5–6 (citing the Freedom of Information Act (FOIA)).  This is not a FOIA case.  It is a proceeding reviewed under the Administrative Procedure Act (APA), on an administrative record, the contents of which typically, by their very nature, do not include privileged information.  This proceeding is slightly unusual because of the extremely sensitive investigatory nature of some of the information included.  Still, the FOIA standard on which Ninestar relies is irrelevant.  Even if it were a *de novo* review, to borrow from that case law, the "issues in discovery proceedings and the issues in the context of a FOIA action are quite different.  That for one reason or another a

document may be exempt from discovery does not mean that it will be exempt from a demand under FOIA." *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931, 936 (D.C. Cir. 1982).  As is relevant here, unlike with FOIA, "decisions as to discovery are usually based on a balancing of the relative need of the parties, and standards vary according to the kind of litigation involved." *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 n.1 (2d Cir. 2002) (Sotomayor, J.) (citation omitted).

The standard governing the disclosure of law-enforcement-sensitive information in litigation asks (1) whether the information at issue is privileged; (2) whether the party seeking the information has demonstrated a compelling need for it that outweighs the public interest against disclosure; and (3) even if the Court determines after *in camera* review that no privilege applies, whether reasonable limitations on disclosure, such as an attorneys'-eyes-only designation, are appropriate in light of the parties' competing interests.  *In re The City of New York*, 607 F.3d 923, 948–49 (2d Cir. 2010).

The informer's privilege is a form of the law-enforcement privilege (which ultimately derives from Executive privilege), and protects from disclosure in litigation any information that could reveal the identity of a confidential informant.  *Roviaro v. United States*, 353 U.S. 53, 59–60 (1957); *In re The City of New York*, 607 F.3d at 941; *Goodloe v. City of New York*, 136 F. Supp. 3d 283, 295 (E.D.N.Y. 2015).  The privilege exists because disclosing "highly sensitive" information that would identify an informant may compromise the informant's safety, which "in turn would likely have a chilling effect upon the willingness of other individuals to aid in investigations and prosecutions as confidential informants going forward."  *Goodloe*, 136 F. Supp. 3d at 301.

## ARGUMENT

For the reasons explained below, the information in the administrative record about the informant has properly been redacted pursuant to the informer's privilege and Ninestar lacks a compelling need for its counsel to see it.  With respect to the information in the administrative record that is law-enforcement sensitive, an attorneys'-eyes-only designation for the two identified categories of information appropriately balances Ninestar's interests with the Government's interests against disclosure, and for the rest of the information Ninestar has failed to identify any compelling reason why that information needs to be disclosed beyond Ninestar.

## I.   THE PRIVILEGED INFORMATION REDACTED FROM THE ADMINISTRATIVE RECORD WOULD REVEAL THE INFORMANT'S IDENTITY

The information that the Government redacted from the administrative record was designed to protect the identity of the government informant who supplied confidential information pertinent to the FLETF's listing decision.  That information is properly protected by the informer's privilege, and Ninestar proffers only conclusory reasons why its counsel needs to know the informant's identity.  Moreover, the Court can satisfy itself that Ninestar's need for the information does not outweigh the Government's interests against disclosure through *in camera* review.

Revealing the identity of the government's informant could cause significant harm. Mr. Eric Choy, Executive Director of U.S. Customs and Border Protection's (CBP's) Trade Remedy Law Enforcement Directorate, expressed concern that disclosure of the information at issue would adversely impact both the informant's safety and the success of future law enforcement investigations, based on his and his office's experience "conducting forced labor-related investigations and inquiries," which rely "heavily on allegations and information submitted by the public."  Ex. A, Choy Declaration ¶¶ 6, 10.  In Mr. Choy's experience,

disclosure "of the identities of persons or entities that submit allegations, or of information that has the tendency to identify those person or entities, is likely to threaten CBP's law enforcement efforts by discouraging other current or potential informants or parties" from providing law-enforcement agencies like the FLETF and CBP "with critical information." *Id.* ¶ 10. Such a chilling effect compromises efforts to investigate forced labor, a context in which "much of the information" at issue "is located overseas." *Id.* Additionally, identifying the informant in question "would endanger" the informant, subject the informant to possible "harm and retaliation," and further discourage "other potential informants" from coming forward. *Id.* ¶ 11.

The information that the Government redacted from the confidential administrative record would identify the informant in question. Choy Declaration ¶ 13. Accordingly, the information that the Government redacted from the confidential administrative record is protected from disclosure under the informer's privilege. *See Roviaro*, 353 U.S. at 59–60; *In re The City of New York*, 607 F.3d at 941; *Goodloe*, 136 F. Supp. 3d at 295. This includes not only the informant's identity but also information from which the informant's identity can be deduced, such as the substance of the informant's statements and the specific dates involved. *Goodloe*, 136 F. Supp. 3d at 295 (concluding that the informer's privilege protected the "substance of any [informant] statements" and "the dates of any [informant] statements," among other information, as disclosing such information "would compromise the [informant's] safety and the continuing availability of confidential-informant-based investigations, both of which are important public interests that the law-enforcement privilege is meant to protect.").

Where, as here, information squarely falls within the informer's privilege, the burden shifts to Ninestar "to defeat the 'strong presumption against lifting the privilege.'" *Id.* at 299 (quoting *In re The City of New York*, 607 F.3d at 945). But on Ninestar's side of the ledger is

only speculation.  Ninestar asserts that learning the informant's identity could allow its counsel to attack the informant's "credibility" or the information's "stale[ness]."  Mot. at 16.  However, Ninestar's generic concerns are present in every case where a confidential informant's identity is withheld as privileged.  *See United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984) ("If regularly countenanced," such a generic argument "would erode the privilege.").  There is nothing unique to this case that would make the redacted information critical to Ninestar's claims.  In fact, given the limited nature of the Court's review in this APA case, the opposite is true.  *See, e.g.*, *In re NTE Connecticut, LLC*, 26 F.4th 980, 989 n.3 (D.C. Cir. 2022) (under the APA, the Court does not "mak[e] what are effectively de novo evidentiary determinations about the credibility or weight of the evidence").  Moreover, Ninestar's counsel does not need to know the date of the informant's information to still be able to present other, current information demonstrating that Ninestar does not work with the government of Xinjiang to recruit, transport, transfer, harbor, or receive Uyghurs or other persecuted groups out of Xinjiang.  Ninestar has thus failed to establish a compelling need for its counsel to learn the informant's identity through unredacting the administrative record.

But even if Ninestar had shown such a legitimate need for the information, that need would still be outweighed by the Government's competing interests against disclosure.  Even in *de novo* civil actions in which a plaintiff has shown a compelling need—that is, where information that would identify an informant is determined to be central to the plaintiff's case— courts have declined to order the disclosure of such information.  *See, e.g.*, *Goodloe*, 136 F. Supp. 3d at 301–02 (collecting cases).  This is so because the public interest in protecting informants from retaliation and encouraging witnesses to come forward to law-enforcement agencies has typically been determined to outweigh a plaintiff's interest in obtaining "highly

sensitive" information identifying an informant for its own needs in litigation.  *Id.* at 302.  This principle holds true here.  As noted, there is strong reason to believe that disclosure of information identifying the informant would endanger the informant and discourage future informants from coming forward to the FLETF.  Choy Declaration ¶ 11.  Thus, the Court should deny Ninestar's request to unredact the record for its counsel, particularly given Ninestar's minimal (at best) need for the redacted information in this record-review case.  *Goodloe*, 136 F. Supp. 3d at 303 (explaining that an attorneys'-eyes-only designation was not appropriate due to the highly sensitive nature of information tending to disclose an informant's identity); *In re The City of New York*, 607 F.3d at 936–37 (attorneys'-eyes-only designations in this context are insufficient because the consequences of inadvertent disclosure are severe, it can be difficult to determine whether inadvertent disclosure has occurred, and the source of an inadvertent disclosure can be difficult to identify).

Finally, to the extent that the Court is concerned that nondisclosure would "hobble[]" or "hamper" Ninestar's ability to prosecute this APA action in some way, Mot. at 3–4, or that the redactions are overbroad, *see id.* at 15, the Court can satisfy itself through its own review of the unredacted record that this is not the case and that the government has strong countervailing concerns about disclosing the redacted information.  *See Goodloe*, 136 F. Supp. 3d at 303 (recounting that *in camera* review of privileged materials "did not reveal any information tending to support" the plaintiff's theory).  We encourage the Court to undertake such an *in camera* review if it has any such concerns.

## II.   DISCLOSING THE ATTORNEYS'-EYES-ONLY DESIGNATED INFORMATION IN THE ADMINISTRATIVE RECORD TO NINESTAR WOULD IMPAIR LAW-ENFORCEMENT EFFORTS AND IS UNNECESSARY TO NINESTAR'S CASE

Ninestar seeks to "unseal" and have available all of the remaining information in the record not only to its counsel but also to Ninestar itself.  In response to Ninestar's asserted need for this information, the Government is willing to make available to Ninestar—but not the public—a significant amount of this information.  In particular, the Government is willing to provide to Ninestar itself a significant portion of the record, specifically the unredacted portions not listed in the table appended at Attachment A.  Thus, Ninestar's concerns about its ability to litigate this case should be significantly abated.  It will have access to much of the information that the FLETF considered.

As to the information that the Government is *not* willing to make available to Ninestar—namely, information from (1) sources over which the PRC exerts control and (2) internal agency documents—the Government has already produced it to Ninestar's counsel under an attorneys'-eyes-only designation.  Accordingly, the Court need only assess whether an attorneys'-eyes-only designation under the Amended Protective Order appropriately balances Ninestar's and the Government's competing interests.  *In re The City of New York*, 607 F.3d at 949.  Indeed, courts often order attorneys'-eyes-only production of law-enforcement-sensitive information even when the information is not protected by the law-enforcement privilege.  *See, e.g.*, *Wagafe v. Trump*, 334 F.R.D. 619, 625 (W.D. Wash. 2020); *MacNamara v. City of New York*, 249 F.R.D. 70, 94 (S.D.N.Y. 2008); *D.A. v. Nielsen*, 2018 WL 3158819, at *8 (D.N.J. June 28, 2018); *Doe ex rel. Thomas v. Sutter*, 2019 WL 1429626, at *2–*3 (S.D. Tex. Mar. 29, 2019).  Here, the attorneys'-eyes-only designation accommodates both the Government's legitimate and well-founded concerns that disclosure to Ninestar could impede "the ability of a law enforcement agency to

9

conduct future investigations," *In re The City of New York*, 607 F.3d at 948 (citation omitted), and Ninestar's concerns regarding its ability to effectively litigate its case.

The Government has a strong interest in keeping the attorneys'-eyes-only information for the two categories of identified information. With respect to information from sources over which the PRC government exercises control,[3] as Christa Brzozowski, Acting Assistant Secretary for Trade and Economic Security at the Department of Homeland Security explains, disclosing information identifying the FLETF's sources, particularly ██████████████ ████████████████████████████████████████████████████ Ex. B, Brzozowski Declaration ¶¶ 9–11.  This is because the PRC government ████████████ ███████████████████████████ *Id.* ¶¶ 10–11.  Moreover, Chinese law requires "companies to assist and support state-sponsored intelligence activities."  *Id.* ¶ 16.  Thus, by revealing to Ninestar ████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████ *Id.* ¶¶ 10–11.  In other words, what is sensitive is not the well-known fact that law-enforcement agencies review publicly available information, Mot. at 6, but rather ██████████████ █████████████████████████ This is a real concern:  ███████████████████ ██████████████████████████████████████████████████████ █████████████████ AR8.  The same holds true for ████████████████████ ██████████████████████████████████████████████████████

---

[3] This category includes information contained in AR6–16, 82, 84–85, 116–127, 129–147, 149–155, 157–161, 163–167, and 188–201.  Ex. B, Brzozowski Declaration ¶¶ 10–12; Attachment A.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

The Government has a similarly strong interest in preventing the dissemination of sensitive internal agency documents.[4]  As Ms. Brzozowski explains, this information, if disclosed to Ninestar, would "reveal the FLETF's sources, methods, and significant insights into how it conducts investigations.  It would also reveal the FLETF's judgments and decision-making, including the facts and evidence the FLETF or its members deem credible and relevant when making UFLPA Entity List determinations."  Brzozowski Declaration ¶ 9.  And because Ninestar is obligated under Chinese law to "assist and support state-sponsored intelligence activities," *id.* ¶ 16, dissemination to the PRC government and other companies can be expected. "Accordingly, and particularly when taken as a whole, disclosure of this information would allow the PRC government and corporations that engage in forced labor practices to evade FLETF investigations"—it would, in short, provide a roadmap for Chinese companies to avoid being listed.  *Id.* ¶ 9.

In the face of these weighty Government interests, Ninestar briefly asserts that if access to information is limited only to its counsel, then counsel "cannot ask direct questions [of Ninestar] and secure specific evidence to rebut Defendants' misunderstandings and misrepresentations."  Mot. at 3.  This unsupported assertion is insufficient to justify de-designating such sensitive information.

---

[4]  This category includes information contained in AR 6–16, 202–209, 210–212, and 213–219.  Brzozowski Declaration ¶¶ 12–15; Attachment A.

As an initial matter, "[u]nder the APA, judicial review of an agency decision is typically limited to the administrative record," which in this case does not include any rebuttal evidence (despite the FLETF affording Ninestar with an administrative process in which to provide such information—a process that Ninestar has declined to pursue). *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012). In fact, "there is no blanket obligation for an agency to allow the submission of rebuttal evidence *at all*" in informal adjudications. *Butte Cty. v. Chaudhuri*, 887 F.3d 501, 506 (D.C. Cir. 2018) (emphasis added). Even if the purported need for rebuttal evidence could be a sufficient justification in an APA record-review action, Ninestar knows better than anyone its operations, its workforce, and the conditions on the ground in the PRC. Ninestar can provide its counsel with information that would tend to negate the FLETF's conclusion—if any such information exists. *See, e.g.*, *Reese v. Liberty*, 2019 WL 5549219, at *5 (D. Me. Oct. 25, 2019) (concluding that the plaintiff in an excessive-force case had "not demonstrated a compelling need to obtain or view" sensitive internal prison policies designated attorneys' eyes only "to participate meaningfully in his case," given that plaintiff's counsel could consult with the plaintiff "about his recollection of what transpired").

Additionally, Ninestar fails to explain in a nonconclusory fashion how its counsel is unable to intelligently scrutinize the FLETF's decision without Ninestar's input. Ninestar's counsel used attorneys'-eyes-only information to support its arguments in its supplemental preliminary-injunction brief. *See* ECF No. 78. Furthermore, as explained above, Ninestar will now have access to much of the record, leaving only a limited amount of information that remains attorneys' eyes only. Ninestar's interests thus do not outweigh the Government's interests against disclosure so as to justify de-designation.

Accordingly, the Court should deny Ninestar's motion to "unseal"—that is, the Court should reject Ninestar's request to de-designate law-enforcement-sensitive information with respect to the limited information that is still in dispute that is listed in Attachment A.

## III.   PUBLIC DISCLOSURE IS UNWARRANTED

Finally, the Court should also decline to make any of the information at issue available to the public.  Disclosure of the record to the public would hamper the FLETF's law-enforcement efforts by providing the public the sources that the FLETF considers and thus a handbook for evading detection.  *See In re Copley Press, Inc.*, 518 F.3d 1022, 1029 (9th Cir. 2008) (concluding that public disclosure was not warranted because it could endanger people).  Moreover, Ninestar has failed to demonstrate a compelling need for this sensitive information to be disclosed beyond Ninestar.  Ninestar briefly suggests that the public record implies that the Government "has the goods" on Ninestar.  Mot. at 4.  But that implication is not relevant for assessing the informer's privilege or whether the protected information is law-enforcement sensitive.  And Ninestar cites no authority holding that a litigant's interest in rehabilitating its reputation overrides the Government's interest in protecting law-enforcement-sensitive information from public disclosure.  Again, Ninestar remains free to provide evidence to the FLETF through its de-listing procedure—or to the public, for that matter—demonstrating that Ninestar does not work with the government of Xinjiang to recruit, transport, transfer, harbor, or receive Uyghurs or other persecuted groups out of Xinjiang.  It has not done so.  Public disclosure of any of the information at issue is thus unwarranted.

13

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiffs' motion to unseal and unredact.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:     <u>/s/ Claudia Burke</u>
CLAUDIA BURKE
Deputy Director

<u>/s/ Justin R. Miller</u>
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

<u>/s/ Monica P. Triana</u>
MONICA P. TRIANA
Senior Trial Counsel

<u>/s/ Guy Eddon</u>
GUY EDDON
LUKE MATHERS
Trial Attorneys
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230
*Attorneys for Defendants*

Date:  January 8, 2024

**ATTACHMENT A**





## **CERTIFICATE OF COMPLIANCE**

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in opposition to plaintiffs' motion to unseal and unredact, dated January 8, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,633 words.

/s/ GUY EDDON
GUY EDDON