# EXHIBIT A

UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force, <br><br> Defendants. | Court No. 23-00182 |

## **DECLARATION**

I, Eric Choy, hereby state as follows:

1. I am the Executive Director, Trade Remedy Law Enforcement Directorate (TRLED), Office of Trade (OT), U.S. Customs and Border Protection (CBP), Department of Homeland Security (DHS). The mission of CBP includes enforcement of the customs, trade, immigration, and agriculture laws and regulations of the United States at the border, as well as the enforcement of over 400 other laws on behalf of more than 40 federal

agencies. This mission also includes the administration and enforcement of the laws relating to the importation of merchandise into the United States.

2. The Executive Director of TRLED is the CBP official responsible for overseeing threat assessment units, special investigations, and trade enforcement programs focused on detecting, deterring, and disrupting illicit trade, with special emphasis on forced labor violations, evasion of special tariff cases, and civil penalties.

3. I have held the position of Executive Director, TRLED, since August 2021. Prior to that date, I served as the Deputy Executive Director for TRLED, since October 2019. My office is currently located at 1331 Pennsylvania Avenue, NW, Washington, DC.

4. TRLED consists of four divisions, the Enforcement Operations Division, the Civil Enforcement Division, the National Threat Analysis Division, and the Forced Labor Division (FLD). FLD was established in 2018 following the enactment of the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA). FLD addresses the critical issue of forced labor in the supply chains entering the United States through the development of robust enforcement actions. FLD's focus is to investigate forced labor allegations, develop forced labor cases, analyze evidence for the issuance of specific forced labor enforcement actions, and direct enforcement actions such as detentions, seizures, exclusions, or penalties. FLD is comprised of two branches, the Forced Labor Investigations Branch and the Forced Labor Operations Branch.

5. The effectiveness of CBP's trade enforcement mission largely depends on the use of sensitive investigative techniques and methods that are not known to the general public and the receipt of information from confidential sources. The disclosure of these techniques, methods, and sources would seriously compromise CBP's ability to enforce the customs and trade laws it is charged with implementing and enforcing.

6. As the Executive Director for TRLED, I am familiar with the administration and enforcement of laws regulating the importation of merchandise into the United States. This declaration is based on my personal knowledge, as well as information conveyed to me by my staff and other knowledgeable CBP personnel in the course of my official duties and responsibilities. I am aware that Ninestar Corporation and seven of its affiliates (collectively, "Ninestar"), have filed an action in the United States Court of International Trade, to challenge the determination by the Forced Labor Enforced Task Force (FLETF) to add Ninestar to the list of entities described in section 2(d)(2)(B) of the Uyghur Forced Labor Prevention Act (UFLPA) (hereinafter referred to as the "UFLPA Entity List"). CBP provided the underlying recommendation to add Ninestar to the UFLPA Entity List to the DHS Office of Strategy, Policy, and Plans for presentation to the FLETF member agencies. I have personally reviewed the factual background of this case and appraised the claims of law enforcement privilege, in particular informer's privilege, hereby asserted.

7. I am making this declaration for the purpose of asserting the law enforcement privilege, in particular, the informer's privilege, over certain information that is contained in, and has been redacted from, the following five documents in the government's administrative record:

   a. Memorandum for the FLETF Member Agencies – 23-002: Addition of Ninestar Corporation and its Eight Zhuhai-Based Subsidiaries to the Uyghur Forced Labor Prevention Act Entity List;

   b. Attachment 1 to the Memorandum for the FLETF Member Agencies – UFLPA Entity List Package 23-002;

3

  c. Ninestar Corporation and its Eight Zhuhai-Based Subsidiaries and Facilities: Uyghur Forced Labor Prevention Act – Forced Labor Enforcement TF Entity List Allegation Review Record;

  d. UFLPA Entity List Recommendation: Ninestar Corporation; and

  e. Zhuhai-Based Subsidiaries of Ninestar and Overall Trade Impact.

8. I have personally reviewed the information that has been redacted in the five documents listed above and determined that the information is law enforcement privileged information, the disclosure of which would be contrary to the public interest and would hamper CBP's law enforcement efforts in forced labor enforcement matters.

9. The information subject to the law enforcement privilege, in particular, the informer's privilege, may generally be described as follows: memoranda, documents, and a PowerPoint presentation that reveal or have the reasonable tendency to reveal the identity of the confidential informant and third party sources who have alleged forced labor violations and provided information relating to forced labor violations at Ninestar's facilities to CBP under an assurance of confidentiality.

10. For CBP to effectively enforce forced labor-related laws and assist the FLETF in carrying out its mission pursuant to the UFLPA, it is imperative that parties who provide information to CBP in conjunction with an investigation are able to do so confidentially.  In conducting forced labor-related investigations and inquiries, CBP relies heavily on allegations and information submitted by the public.  In most cases, information relating to forced labor-related investigations is provided to CBP on the condition and assurance that identifying information will be treated as confidential.  Disclosure of the identities of persons or entities that submit allegations, or of information that has the tendency to identify those persons or entities, is likely to threaten CBP's law enforcement efforts by discouraging

4

other current or potential informants or parties from submitting allegations or providing CBP with critical information. If informants are reluctant to make allegations or share information, CBP's ability to secure and develop information critical to its investigations and enforcement efforts would be compromised. This is particularly true in the forced labor context in which much of the information necessary to assess whether merchandise is imported in violation of forced labor laws is located overseas. As such, CBP's reliance on information from third parties is paramount. Moreover, disclosure of confidential informants' identities would allow violators to discover and potentially circumvent CBP's investigative techniques, further jeopardizing CBP's enforcement efforts.

11. Here, disclosure of the redacted information in the five administrative record documents would endanger the informant, potentially subjecting them to harm and retaliation. Further, the release of this information would seriously impair CBP's investigations by discouraging not only this particular informant, but also other potential informants from submitting allegations and furnishing CBP with information on forced labor violations in the future. This, in turn, would significantly weaken CBP's ability to enforce the customs and trade laws it is charged with implementing and enforcing.

12. Thus, withholding the identity of the confidential informant, as well as the information that would tend to reveal the identity of the informant, serves the public interest. Assuring informants that their identities will be protected encourages the public to furnish information to CBP on potential violations of law, which furthers CBP's mission of facilitating legitimate trade and enforcing U.S. customs and trade laws to protect national economic security.

## **CONCLUSION**

13. As set forth herein, the disclosure of information contained in the five documents listed in paragraph 7, which would disclose or reasonably lead to disclosure of the confidential informant's identity, would endanger the safety of the informants in this matter, discourage members of the public from furnishing critical information to CBP, and jeopardize the overall success and effectiveness of CBP's trade enforcement mission.

14. Accordingly, disclosure of the redacted CBP information in the five documents would impair CBP's ability to enforce its customs and trade laws.

15. Therefore, I respectfully assert the law enforcement privilege over CBP information in the five documents described above for the reasons set forth above.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this 8th day of January, 2024.

/s/ ERIC H CHOY
Digitally signed by ERIC H CHOY
Date: 2024.01.08 15:42:07 -05'00'

Eric Choy
Executive Director
Trade Remedy Law Enforcement Directorate
Office of Trade
U.S. Customs and Border Protection