IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Case No. 23-182 |

**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................. ii

ARGUMENT ........................................................................................................................................ 1

I.      FLETF's Low Standard Of Proof Conflicts With The UFLPA .......................................... 1

        A.      Agency fact finding presumptively requires a preponderance standard. ................ 2

        B.      Neither the UFLPA's rebuttable presumption nor CBP's section 307 practice supports FLETF's standard. .................................................................... 3

        C.      The OFAC and BIS lists are not analogous to the UFLPA. ................................... 4

        D.      Foreign affairs deference plays no role here. .......................................................... 5

        E.      The Government's appeal to the UFLPA's "purpose" is meritless. ....................... 6

II.     FLETF Applied The UFLPA Retroactively. ...................................................................... 7

III.    The Government Ignores Ninestar's Arguments Regarding The Inadequacy Of FLETF's Explanation ........................................................................................................ 8

CONCLUSION .................................................................................................................................... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atchison, T. & S.F. Ry. Co. v. United States*,
  284 U.S. 248 (1932) ...................................................................................................7

*City of N.Y. v. Permanent Mission of India to the U.N.*,
  446 F.3d 365 (2d Cir. 2006) .......................................................................................6

*FAG Italia S.p.A v. United States*,
  291 F.3d 806 (Fed. Cir. 2002) ....................................................................................2

*Fed. Express Corp. v. U.S. Dep't of Com.*,
  39 F.4th 756 (D.C. Cir. 2022) .....................................................................................2

*Invenergy Renewables LLC v. United States*,
  422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ..............................................................1

*Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019) ......................................................................................4

*Luna Perez v. Sturgis Pub. Schs.*,
  598 U.S. 142 (2023) ...................................................................................................6

*Michigan v. EPA*,
  576 U.S. 743 (2015) ...................................................................................................8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 43 (1983) .....................................................................................................8

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.*,
  668 F.3d 1067 (9th Cir. 2011) ....................................................................................7

*OKKO Bus. PE v. Lew*,
  133 F. Supp. 3d 17 (D.D.C. 2015) .............................................................................5

*Regan v. Wald*,
  468 U.S. 222 (1984) ...................................................................................................5

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) ................................................................................................5, 6

*Rodriguez v. Dep't of Vet. Affairs*,
  8 F.4th 1290 (Fed. Cir. 2021) .................................................................................2, 4

*Rodriguez v. United States*,
    480 U.S. 522 (1987) ...................................................................................................6

*Russello v. United States*,
    464 U.S. 16 (1983) ..................................................................................................3, 5

*Sea Island Broad. Corp. of S.C. v. FCC*,
    627 F.2d 240 (D.C. Cir. 1980) ...................................................................................2

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) ...................................................................................................3

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ...............................................................................................6

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ...................................................................................................6

*Zhejiang Mach. Imp. & Exp. Corp. v. United States*,
    471 F. Supp. 3d 1313 (Ct. Int'l Trade 2020) .............................................................8

**Statutes & Regulations**

19 C.F.R. § 12.42 ..............................................................................................................3, 4

19 U.S.C. § 1673a(e)(1) .......................................................................................................6

50 U.S.C. § 1701(a) .............................................................................................................4

50 U.S.C. § 1702(c) .............................................................................................................7

50 U.S.C. § 4813(a)(2) .........................................................................................................4

UFLPA, Pub. L. No. 117-78, 135 Stat. 1525 (Dec. 23, 2021) ....................................3, 4, 5

**Other Authorities**

*Threat*, Collins English Dictionary ....................................................................................4

The Government's supplemental opposition offers no basis to withhold preliminary injunctive relief. Ninestar has suffered—and, as demonstrated in Ninestar's supplemental declaration, continues to suffer—irreparable economic, legal, and reputational harm. ECF No. 78-1, ¶¶ 5–9. The Government's failure to follow the law, and the marginal impact to the Government from preliminarily staying the listing, mean the balance of equities and public interest also favor injunctive relief. In such circumstances, the moving party need demonstrate only a "fair" likelihood of success on the merits. *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1280 (Ct. Int'l Trade 2019). Here, however, Ninestar has demonstrated a strong likelihood of prevailing on the three claims supporting this motion: that FLETF exceeded its statutory authority by (1) applying an improperly low standard of proof, (2) enforcing the UFLPA retroactively, and that (3) FLETF's decision is not supported by an adequate, reasoned explanation.[1] The Government hardly contests the latter two arguments, and its responses on the first are unavailing.

## ARGUMENT

**I.     FLETF's Low Standard Of Proof Conflicts With The UFLPA.**

FLETF exceeded its statutory authority by listing Ninestar based on a mere "reasonable cause to believe." The UFLPA requires more. The UFLPA is best read to impose a preponderance standard in light of the presumption that such a standard applies to fact finding, the significant

---

[1] We do not, as the Government suggests (at 2), "ignor[e]" Count II. That claim requires a detailed parsing of the record more suitable for Ninestar's forthcoming motion for judgment. A party need not argue all its claims in support of preliminary injunctive relief.

1

consequences of listing, and the Act's deliberative listing process.  *See* Supp. Br., ECF No. 78, I.A.  The Government's contrary arguments lack merit.[2]

### A. Agency fact finding presumptively requires a preponderance standard.

The Government seeks (at 9–11) to cabin the presumption in favor of a preponderance standard to formal adjudications and certain agency proceedings.  Both attempts fail.

The argument (at 10) that because listing decisions are not formal adjudications under the APA, FLETF was "free to select a burden of proof," is a red herring.  The Government concedes (at 10) that, regardless of what the APA requires, FLETF cannot ignore "procedural requirements" found in the UFLPA, its "governing statut[e]."  *See Rodriguez v. Dep't of Vet. Affairs*, 8 F.4th 1290, 1301 (Fed. Cir. 2021) (requiring preponderance in informal adjudication where governing statute required agency to "determine" facts); *see also FAG Italia S.p.A v. United States*, 291 F.3d 806, 816 (Fed. Cir. 2002) (lack of "express [statutory] proscription" does not "allo[w] an agency to ignore" "implied" statutory proscription).  And as explained in our supplemental brief, when read against the "well-established principle that preponderance of the evidence is the minimal appropriate burden of proof in administrative proceedings," the UFLPA authorizes listing only if FLETF concludes that it is "likely, i.e., more likely than not," that the statutory requirements are met.  *See Rodriguez*, 8 F.4th at 1298, 1300–01.

That "well-established principle" is not limited to the "disciplinary" and "benefits" contexts that the Government says (at 10–11) involve "different interests."  Whether a job termination, *Rodriguez*, 8 F.4th at 1293, radio license revocation, *Sea Island Broad. Corp. of S.C.*

---

[2] In a footnote (at 9 n.1), the Government says that Ninestar must show a "plain overstep" by FLETF.  If that were true, the Government wouldn't have buried it below the line.  As the Government's own case says, that heightened standard applies only to "nonstatutory review," not "routine" APA claims like the one presented here.  *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763–65 (D.C. Cir. 2022).

2

*v. FCC*, 627 F.2d 240, 240 (D.C. Cir. 1980), or embargo, these adjudications all involve an agency taking "action against an individual based on predicate facts," *Rodriguez*, 8 F.4th at 1300. In such situations, "the traditional principle" is that the agency "must find those facts; absent clear authority to the contrary, it is not enough for an agency to conclude merely that a reasonable person could make such a finding." *Id.*

> **B.     Neither the UFLPA's rebuttable presumption nor CBP's section 307 practice supports FLETF's standard.**

The Government argues (at 7) that FLETF's "reasonable cause" standard mirrors the UFLPA's clear and convincing evidence standard. This conflates the showing required to overcome the UFLPA's rebuttable presumption with the standard applicable to establishing the presumption in the first instance. That the UFLPA shifts the burden to an entity *after* listing says nothing about the standard required for listing itself. *Cf. Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (Title VII burden "shifts" to defendant only after plaintiff proves prima facie case by "preponderance of the evidence"). Far from supporting FLETF's view, UFLPA § 3 confirms that Congress knows how to specify heightened or relaxed burdens of proof, and did not do so for § 2(d)(2)(B)(ii). *See Russello v. United States*, 464 U.S. 16, 23 (1983). Indeed, the difficulty of rebutting the presumption and severe cost of failing to do so suggest that the initial listing decision must be based on more than FLETF's hunch.

The Government is also wrong (at 7) that FLETF's standard finds support in section 307. FLETF's "reasonable cause to believe" standard does parallel section 307, but not as the Government claims.

Under 19 C.F.R. § 12.42, a section 307 enforcement action proceeds in several stages, each with its own standard of proof: First, the Government initiates an "investigation" when there is "reason to believe" goods were made with forced labor. § 12.42(a)–(d). Second, during that

3

investigation the Commissioner may order port directors to *temporarily* "withhold release" of merchandise "pending [further] instructions," when the "information available reasonably but not conclusively indicates" the goods were made with forced labor. § 12.42(e). Third, the Commissioner "determines" that the merchandise is subject to section 307, and publishes a finding to that effect. § 12.42(f). An importer may avoid exclusion if it can "establis[h] by satisfactory evidence that the merchandise was not" made with forced labor. § 12.42(g).

Contrary to the Government's argument (at 7), FLETF's "reasonable cause to believe" standard is "nearly identical" to the standard used in the *first* step of this process—sufficient only to initiate an investigation when there is "reason to believe" that goods were made with forced labor. Yet FLETF employs that meager showing not just to initiate an investigation or even temporarily detain merchandise, but rather to impose an absolute and unilateral, burden-shifting embargo—the sort of decision that requires a full "determin[ation]" under section 307. § 12.42(f); *see Rodriguez*, 8 F.4th at 1298 (statute's command to "determin[e]" a fact requires preponderance standard). Far from supporting FLETF's decision, comparison to section 307 shows how bankrupt it is. *See* ECF No. 58, Slip Op. 23-169, at 17 (noting "Congress's intention to create a coherent statutory scheme" between UFLPA and section 307).

C. **The OFAC and BIS lists are not analogous to the UFLPA.**

The Government contends (at 7–8) that FLETF's "reasonable cause" standard is appropriate because it matches the standards used for the Office of Foreign Assets Control and Bureau of Industry Security lists. But the Government ignores a critical distinction between those statutory schemes and the UFLPA. The OFAC and BIS statutes authorize listing based on "threat" findings. 50 U.S.C. § 1701(a); *id.* § 4813(a)(2). Such inherently predictive findings often warrant a lower standard of proof. *See Kashem v. Barr*, 941 F.3d 358, 381 (9th Cir. 2019); *Threat*, Collins English Dictionary ("threat" connotes "something bad *might* happen" (emphasis added)).

4

Listing decisions under the UFLPA, by contrast, are not triggered by a mere "threat"—a term that is absent from § 2(d)(2)(B) of the Act. Rather, Congress subjected listing decisions to a deliberative process involving careful collaboration among various stakeholders. *See* Supp. Br. 4–5. And just one paragraph prior to the entity list provisions, Congress *did* tell FLETF to identify "threats." *See* § 2(d)(1)(A) (directing FLETF to identify "threats … that could lead to importation" of goods made with forced labor). "Had Congress intended" to authorize threat-based judgments for the entity list, "it presumably would have done so expressly, as it did in the immediately" preceding paragraph. *Russello*, 464 U.S. at 23. The UFLPA, unlike the OFAC and BIS statutes, requires finding that an entity is engaging in specified conduct—not that it poses a threat to engage in such conduct. That difference warrants a different standard of proof.

> **D.     Foreign affairs deference plays no role here.**

Asserting (at 7, 11) that FLETF operates "in the sensitive context of foreign relations," the Government remarkably contends that FLETF's choice of a standard of proof is "largely immune from judicial" review. Both the premise and conclusion are wrong.

FLETF's role under the UFLPA is not to manage foreign affairs but to enforce a trade restriction. *See* UFLPA §§ 2(c)–(d), 3(a) (entity list is part of "importation" control). FLETF's trade-focused directive stands in contrast to the Secretary of State's statutory duty to address forced labor through international "diplomacy." § 4(a)–(b). And it stands in contrast to the plainly foreign-affairs matters presented in the cases cited by the Government. *See Regan v. Wald*, 468 U.S. 222, 226, 242 (1984) (President's judgment regarding "emergency created by Cuban attempts to destabilize [foreign] governments"); *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 28 (D.D.C. 2015) (OFAC's judgment about deterring business with foreign sanctions targets). FLETF's decision involved trade, not foreign relations.

Nor, in any event, need the Court accept FLETF's standard of proof. Courts do not defer to the Executive on "pure question[s] of statutory construction," even of a foreign-affairs law. *Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) (citation omitted) (declining deference to Executive's construction of Foreign Sovereign Immunity Act); *see also City of N.Y. v. Permanent Mission of India to the U.N.*, 446 F.3d 365, 376 & n.17 (2d Cir. 2006), *aff'd*, 551 U.S. 193 (2007) ("conventional methods of statutory interpretation" prevailed over Executive's view in foreign-affairs case). The UFLPA's standard of proof for listing decisions is just such a question, so FLETF's view "merit[s] no special deference." *Altmann*, 541 U.S. at 701.

### E. The Government's appeal to the UFLPA's "purpose" is meritless.

The Government asserts (at 8–9) that because it is difficult to get information from China, FLETF properly used a standard of proof that "best promotes" the UFLPA's "purposes."[3] But "[i]t is quite mistaken to assume … that any interpretation of a law that does more to advance a statute's putative goal must be the law." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (cleaned up). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987).

Congress presumably knew that obtaining information from China was difficult, yet it chose not to provide for a reasonable-suspicion standard despite "know[ing] how to [do] just that." *Trump v. Hawaii*, 138 S. Ct. 2392, 2413 (2018); *see, e.g.*, 19 U.S.C. § 1673a(e)(1). FLETF may wish Congress had written a different statute. But it has no power to "rewrite" the UFLPA "to suit

---

[3] As we will discuss in our motions to correct the record and for judgment, FLETF's investigation was half-hearted, not hampered by Chinese law.

6

its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).

## II. FLETF Applied The UFLPA Retroactively.

The Government does not dispute that the UFLPA applies only prospectively. Its factual conclusions phrased in the past tense thus do not establish a UFLPA violation. *See* Supp. Br. 7.

Instead, the Government claims (at 12) that the evidence in the Administrative Record "is merely being used to establish a current violation." But the stale dossier that is the sum of the administrative record "furnishes no adequate criterion of present requirements." *Atchison, T. & S.F. Ry. Co. v. United States*, 284 U.S. 248, 261 (1932); *see also N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1086 (9th Cir. 2011) (agency's reliance on stale administrative record is arbitrary and capricious). The evidence in the record pertains to alleged conduct in 2018–2021, *see* Supp. Br. 7–8, and the government offers no linkage or other basis for concluding that conduct occurring years earlier also occurred in June 2023 when the listing decision was rendered, or even in June 2022 when the UFLPA became effective.

Rather, the Government points only to the still-redacted portions of the Administrative Record. But that fixes the problem only if the redacted information *itself* shows a current violation; a 2023 interview that merely relays old information cannot save the Government's stale record. And in any event, as we previously explained, the UFLPA does not contain the type of statutory language that authorizes courts to render judgments based on secret evidence. *See* ECF No. 33 at 9 (contrasting UFLPA with the IEEPA, 50 U.S.C. § 1702(c)).

Ultimately, the Government's attempt to recharacterize the record as establishing a current violation is a last-ditch effort to salvage a listing decision that improperly applied the UFLPA retroactively. The record cannot support that recharacterization, and this Court should not allow it.

7

### III. The Government Ignores Ninestar's Arguments Regarding The Inadequacy Of FLETF's Explanation.

The Government says (at 5–6) that its prior brief "fully addressed" Ninestar's arguments regarding the inadequacy of FLETF's explanation. That cannot be true; several of our arguments address deficiencies in the Administrative Record that was filed *after* the Government's prior brief. *See* Supp. Br. 9–11. The Government thus does not dispute that the confidential record "fail[s] to provide the 'satisfactory explanation' required under the APA." *Id.* at 9 (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

One of the reasons for that (uncontested) conclusion has become particularly salient: The Government's lawyers now say (at 12) that FLETF's decision was not retroactive because it used "past conduct … to establish a current violation." But *FLETF* said *nothing* to justify its use of stale evidence, and "courts may not accept appellate counsel's post hoc rationalizations for agency action," *State Farm*, 463 U.S. at 50; *accord Zhejiang Mach. Imp. & Exp. Corp. v. United States*, 471 F. Supp. 3d 1313, 1331–32 (Ct. Int'l Trade 2020) (rejecting "post hoc rationalization" where agency "did not note" why it took particular action). Accepting the Government's belated retroactivity argument would "contradic[t] the foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015).

### CONCLUSION

This Court should issue a preliminary injunction staying the listing decision and preventing the Government from taking action against importation of Ninestar's goods predicated on the listing decision.

8

Dated: January 10, 2024

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this supplemental reply brief complies with the Court's Scheduling Order, ECF No. 77, because it contains 2,497 words, as determined by the word count feature of the word-processing system used to prepare the brief, excluding the parts exempted by Chambers Procedure 2(B)(1)(c).

*/s/ Gordon D. Todd*
Gordon D. Todd
