United States Court of International Trade
One Federal Plaza
New York, NY 10278



CHAMBERS OF
Gary S. Katzmann
JUDGE

January 12, 2024

Gordon D. Todd
Sidley Austin, LLP
1501 K Street, N.W.
Washington, D.C. 20005

Monica P. Triana
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
New York, NY 10278

    Re:    <u>Ninestar Corp. v. United States</u>
            Court No.: 23-00182
            Letter Regarding the Hearing on Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion to Unseal and Unredact the Administrative Record

Dear Counselors:

      The hearing scheduled for Thursday, January 18, 2024, at 10 a.m. ET in Courtroom No. 2, <u>see</u> Order, Jan. 3, 2024, ECF No. 84, will address (1) Plaintiffs' Motion for Preliminary Injunction, Aug. 31, 2023, ECF No. 20, as supplemented by additional briefing following the filing of the Amended Complaint, and (2) Plaintiffs' Motion to Unseal and Unredact the Administrative Record, Dec. 4, 2023, ECF No. 60.  The court has previously concluded that Plaintiffs are likely to establish that the court has subject matter jurisdiction over this action.  <u>See</u> <u>Ninestar Corp. v. United States</u>, 47 CIT __, Slip Op. 23-169 (Nov. 30, 2023), ECF No. 58.

      The hearing will be public in part and closed in part.  The first part of the hearing, encompassing introductory remarks by the court, opening statements, and arguments relating to exhaustion, will be public.  <u>See</u> <u>id.</u>  That portion of the argument will be recorded and made available to the public via the court's website.  But due to the issues concerning confidential information in the administrative record that are raised by the parties, the remainder of the hearing will be closed.  <u>See</u> <u>id.</u>

The parties will first be invited to make opening statements of seven (7) minutes each. In the public session of argument, the parties will each have ten (10) minutes to discuss exhaustion followed by two (2) minutes for rebuttal. In the closed session, the parties will each have twenty (20) minutes, followed by five (5) minutes of rebuttal, to discuss the remaining issues in the Motion for Preliminary Injunction. The parties will then each have ten (10) minutes, followed by two (2) minutes of rebuttal, to argue the Motion to Unseal and Unredact the Administrative Record. Additional time may be granted upon request. The parties may propose modifications to the public/confidential nature, structure, timing, and ordering of issues in the hearing, in writing, by Tuesday, January 16, 2024, at 5 p.m. ET.

The court also requests that the parties' presentations on Plaintiffs' Motion for Preliminary Injunction respond to the questions below. Because the questions involving exhaustion do not implicate confidential information in the administrative record, the court proposes that those questions be part of the public portion of the hearing. And because answers to the remainder of the questions are likely to implicate confidential information in the administrative record, the court proposes that discussion of those questions be part of the closed portion of the hearing. These questions should not be construed as suggesting that the court has made any conclusive determinations prior to argument. Ultimately, the court's decision on Plaintiffs' two motions will be published in a public document.

## QUESTIONS FOR THE PUBLIC SESSION

I. **Questions for Plaintiffs Ninestar Corporation et al. ("Ninestar")**

1. Ninestar argues that no "statute or agency rule" requires exhaustion in this case. Pls.' First Reply at 7, Oct. 13, 2023, ECF No. 30. Does 28 U.S.C. § 2637(d) apply to this case? See 28 U.S.C. § 2637(d) ("[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.").

2. Assuming § 2637(d) applies, why is exhaustion not appropriate here? See Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ("Although that statutory injunction is not absolute, it indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies.").

3. The court notes Ninestar's argument about the futility of exhausting remedies. See Pls.' First Reply at 7 n.1. But why is it true that Ninestar could not have supplied the FLETF with any information contradicting the listing decision? As hypotheticals: why could Ninestar not, for example, "submit evidence showing their hiring practices and employment records to demonstrate that they do not engage in such prohibited practices"? Defs.' First Resp. at 22, Oct. 3, 2023, ECF No. 25. Or statements by corporate officers regarding ethical conduct and their opposition to forced labor practices? Put differently, why does a challenge to the listing decision—for the purpose of exhausting remedies—require knowledge of the specific information before the agency?

4.

**II.** **Questions for Defendants the United States et al. ("the Government")**

1. The Government argues that this case requires dismissal "under the doctrine of prudential exhaustion of administrative remedies." Defs.' First Resp. at 19–22. How does the doctrine of prudential exhaustion of administrative remedies square with 28 U.S.C. § 2637(d)? Does § 2637(d) apply here?

2. Assuming § 2637(d) applies, is there case law applying § 2637 that supports the argument that exhaustion is appropriate here, and not "indefinite," "futile," or "inadequate" under circumstances that are comparable to this case? See Pls.' First Reply at 7 n.1.

## QUESTIONS FOR THE CLOSED SESSION

**I.** **Questions for Plaintiffs Ninestar Corporation et al. ("Ninestar")**

Likelihood of Success on the Merits

1. The Government argues that the remedy of remand without vacatur is appropriate here. See Defs.' First Resp. at 27–28. That remedy may cut against the need for preliminary relief that vacates the listing. What is Ninestar's response?

2. Disputing FLETF's burden of proof, Ninestar argues that the Government's analogy to Section 307 is inapposite. See Pls.' Supp. Reply at 3–4, Jan. 10, 2024, ECF No. 89. But is it not the point of the UFLPA to expedite Section 307 enforcement, forego the process of Customs's factual determination that merchandise is subject to Section 307, and shift the burden of proof to the prohibited entities? Why is the comparison of the FLETF's "reasonable cause to believe" standard under the UFLPA to Customs's "reason to believe" standard under Section 307 inapposite?

3. Ninestar argues that the Government has implemented the UFLPA "retroactively." Pls.' Supp. Br. at 6, Dec. 15, 2023, ECF No. 79. Why do the Government's actions here constitute retroactivity? The listing decision and presumptive embargo went into effect after the passage of the UFLPA, and there is no contention that the import prohibition in this case is somehow backdated to before the UFLPA.

    a. Ninestar also argues that the UFLPA specified evidence of entities "working"—in the present tense—with the XUAR government. Pls.' Supp. Br. at 6. Why is that a retroactivity argument and not just an arbitrary-and-capricious argument that the agency ignored a congressional directive by considering stale evidence? See id. at 10–11 (making this argument in the arbitrary and capricious context).

    b. How recent does the evidence of unlawful conduct need to be in order to satisfy your legal position on retroactivity?

  c. As a hypothetical that does not suggest any information in the record: Would evidence of conduct in recent years, coupled with evidence that there has been no change in circumstances, be sufficient for establishing a continuing violation? Cf. N. Plains Res. Council, Inc. v. Surface Transp. Bd., 668 F.3d 1067, 1086 (9th Cir. 2011) (agency's reliance on ten-year-old data, without "any scientific studies or testimony in the record" that the data was substantially the same ten years later, was arbitrary and capricious).

Irreparable Harm

4. Challenging the irreparable harm prong, the Government argues that Ninestar has not provided enough evidence to show how "'losses of sales will impact its overall financial position,'" especially considering that Ninestar "appears to be a global entity with sales in other regions." Defs.' First Resp. at 35 (quoting Shandong Huarong General Corp. v. United States, 24 CIT 1286, 1290, 122 F. Supp. 2d 143, 146 (2000)). What is Ninestar's response?

5. Ninestar argues that "[i]n numerous fields, courts recognize that irreparable harm may routinely flow from the defendant's conduct." Pls.' First Reply at 18–19 (citing examples from First Amendment law, environmental law, and patent law). Is there is a level of reputational harm associated with a UFLPA listing that would not constitute irreparable harm? Or is the argument that there need not be a limiting principle in UFLPA cases?

6. The Government argues that the procedural harm in Invenergy Renewables LLC v. United States was irreparable because the deprivation of the right to comment on agency rulemaking could not be cured through the ability to comment after the withdrawal was in effect. See 43 CIT __, __, 422 F. Supp. 3d 1255, 1290 (2019). Why is the procedural harm here not curable?

7. What authorities best support your overall argument?

8. Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

II. **Questions for Defendants the United States et al. ("the Government")**

Likelihood of Success on the Merits

1. Whether remand without vacatur is appropriate depends on "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n, 988 F.2d 146, 151 (D.C. Cir. 1993); see also Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs., 260 F.3d 1365, 1380 (Fed. Cir. 2001). Are those circumstances met here?

2. The Federal Circuit has held: "There may be exceptional circumstances in which a lower burden of proof than preponderance of the evidence could legitimately be

      applied. . . . But those circumstances would be rare and would typically require an explicit directive to use a burden of proof lower than preponderance in order to justify departing from the traditional standard." Rodriguez v. Dep't of Veterans Affs., 8 F.4th 1290, 1301 (Fed. Cir. 2021). What is Defendants' response? Is there such "explicit directive" in this case?

3. Ninestar argues that foreign affairs–related deference does not apply to the question of whether FLETF's burden of proof is statutorily authorized because "[c]ourts do not defer to the Executive on 'pure question[s] of statutory construction,' even of a foreign-affairs law." Pls. Supp. Reply at 6 (quoting Republic of Austria v. Altmann, 541 U.S. 677, 701 (2004)). What is Defendants' response?

4. Ninestar argues that "the APA and UFLPA require a public explanation" that goes beyond the Federal Register notice. Pls.' Supp. Br. at 8. What is Defendants' response?

5. Did Defendants respond to Ninestar's satisfactory-evidence argument about the third-party agency action? See Pls.' Supp. Br. at 9–10. Is there record evidence for the proposition that the actions of "a third-party agency" constituted action taken by "the government of the XUAR"? See AR000001–02.

Irreparable Harm

6. How does the Government distinguish the analysis of irreparable harm in Xiaomi Corp. v. Department of Defense from this case? See No. CV 21-280 (RC), 2021 WL 950144, at *8–11 (D.D.C. Mar. 12, 2021) (finding "irreparable reputational harm and severe unrecoverable economic injuries" after the plaintiff was designated a Communist Chinese military company and faced securities restrictions as a result).

7. Responding to the Government's argument that a finding of irreparable reputational injury here would apply to every UFLPA case, Ninestar argues that "[i]n numerous fields, courts recognize that irreparable harm may routinely from the defendant's conduct." Pls.' First Reply at 18–19 (citing examples from First Amendment law, environmental law, and patent law). What is the Government's response?

8. "[W]hen a plaintiff's alleged damages are unrecoverable, such as here, due to the sovereign immunity enjoyed by Defendants, courts have recognized that unrecoverable economic loss can indeed constitute irreparable harm." Xiaomi Corp., 2021 WL 950144, at *10 (collecting cases). Does the Government agree? If so, have Plaintiffs still failed to establish sufficiently significant economic harm?

9. What authorities best support your overall argument?

10. Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

Sincerely,

*/s/ Gary S. Katzmann*
Gary S. Katzmann
Judge