**PUBLIC VERSION**

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

NINESTAR CORPORATION, ZHUHAI
NINESTAR INFORMATION
TECHNOLOGY CO., LTD., ZHUHAI
PANTUM ELECTRONICS CO., LTD.,
ZHUHAI APEX MICROELECTRONICS
CO., LTD., GEEHY SEMICONDUCTOR
CO., LTD., ZHUHAI G&G DIGITAL
TECHNOLOGY CO., LTD., ZHUHAI
SEINE PRINTING TECHNOLOGY CO.,
LTD., and ZHUHAI NINESTAR
MANAGEMENT CO., LTD.

*Plaintiffs*,

v.

Case No. 23-182

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES CUSTOMS
AND BORDER PROTECTION; FORCED
LABOR ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his official
capacity as the Secretary of the Department
of Homeland Security*; TROY A. MILLER, *in
his official capacity as the Senior Official
Performing the Duties of the Commissioner
for U.S. Customs and Border Protection*; and
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

*Defendants*.

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION TO UNSEAL AND UNREDACT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

I.      The Informant Privilege Is Inapplicable Or Has Been Overcome. ................................... 2

        A.      The Government has not explained how disclosing most of the redacted information would reveal the informant's identity. ................................................ 2

        B.      The redacted information is critical to FLETF's decision and thus to Ninestar's ability to litigate this case. .................................................................... 3

        C.      Restrictions on use of the redacted information substantially diminish the Government's interest in non-disclosure. ............................................................. 5

II.     The Administrative Record Was Not Properly Filed Under Seal. ...................................... 6

        A.      This issue is governed by the protective order. ........................................................ 6

        B.      Disclosure would not reveal sensitive law enforcement techniques. ...................... 7

            1.     Websites ......................................................................................................... 7

            2.     Internal Agency Documents ......................................................................... 8

CONCLUSION ............................................................................................................................. 8

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
  964 F.2d 159 (2d Cir. 1992)................................................................................................6

*Circus Circus Casinos, Inc. v. NLRB*,
  961 F.3d 469 (D.C. Cir. 2020)..........................................................................................4, 5

*Crawford v. Washington*,
  541 U.S. 36 (2004).................................................................................................................5

*Daido Corp. v. United States*,
  16 C.I.T. 987 (1992) ..........................................................................................................4, 6

*Goodloe v. City of N.Y.*,
  136 F. Supp. 3d 283 (E.D.N.Y. 2015) ..................................................................................2

*In re NTE Conn., LLC*,
  26 F.4th 980 (D.C. Cir. 2022)..............................................................................................4

*Roviaro v. United States*,
  353 U.S. 53 (1957)..........................................................................................................2, 4, 5

*United States v. Barnes*,
  486 F.2d 776 (8th Cir. 1973) ............................................................................................4, 5

*United States v. Russotti*,
  746 F.2d 945 (2d Cir. 1984).................................................................................................5

*United States v. Wilburn*,
  581 F.3d 618 (7th Cir. 2009) ...............................................................................................3

*White v. City of N.Y.*,
  No. 09 Civ. 9901(BSJ)(THK), 2010 WL 2899665 (S.D.N.Y. July 23, 2010) .....................2, 3

**Statutes**

5 U.S.C. § 552(b)(7) .................................................................................................................8

**INTRODUCTION**

After more than six months of litigating this case, Ninestar still does not know the bases for the Government's belief that Ninestar worked with the Xinjiang government to recruit, transport, or harbor Uyghur laborers.  And while Ninestar's lawyers have seen some of the Government's purported justification, other key pieces remain under wraps—who the confidential informant is (a competitor? a disgruntled former employee? a concerned citizen?), when they made their allegations, to when those allegations pertain, exactly what those allegations are, and how, if at all, the Government assessed the informant's credibility.  To punish Ninestar based on such secret evidence, the Government needs a compelling justification.  It has not provided one.

The Government's claim of informant privilege fails as to most of the redacted information because, despite having had two opportunities to carry its burden, the Government has provided only barebones assertions that disclosure would reveal the informant's identity.  Even for evidence that legitimately would uncloak the informant, Ninestar's need for the information overcomes the privilege because the informant's allegations are the only possible direct evidence supporting FLETF's decision.

The Government's bid to keep the rest of the record under seal similarly fails.  By wrongly shifting to the standard for law-enforcement privilege, the Government seeks to inject into the inquiry its interest in non-disclosure.  But neither the privilege standard nor naked appeals to the Government's interests are relevant.  On this issue, the sole question before the Court is whether the Government properly designated the Administrative Record as "law enforcement sensitive" under the Amended Protective Order ("APO").  It did not.

1

**ARGUMENT**

**I.      The Informant Privilege Is Inapplicable Or Has Been Overcome.**

The parties agree that asserting informant privilege requires the Government to first show that disclosure would reveal the informant's identity; even if so, disclosure is required if Ninestar's need for the information outweighs the Government's interest in non-disclosure.  *See* Mot. 15; Resp. 4, 6–7.  For much of the redacted material, the Government has failed to make even the initial, threshold showing.  For the remainder, the privilege is overcome by Ninestar's need for this critical information, especially because reasonable limitations on counsel's use of that information minimize the Government's countervailing concerns.  The Government's arguments to the contrary are unavailing.

**A.      The Government has not explained how disclosing most of the redacted information would reveal the informant's identity.**

"[W]here the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged."  *Roviaro v. United States*, 353 U.S. 53, 60 (1957).  Conclusory assertions are not enough; the Government must "demonstrat[e] *why*" information would disclose the informant's identity.  *White v. City of N.Y.*, No. 09 Civ. 9901(BSJ)(THK), 2010 WL 2899665, at *4 (S.D.N.Y. July 23, 2010) (emphasis added); *see also Goodloe v. City of N.Y.*, 136 F. Supp. 3d 283, 297–98 (E.D.N.Y. 2015) (concluding certain information would not "tend to expose the CI's identity," despite city attorney's contrary assertion in affidavit).

For every redaction other than the name of the informant, the Government has failed to make this threshold showing.  It baldly asserts (at 6) that the redacted information, including "the substance of the informant's statements and the specific dates involved," would identify the informant.  Its only support for that assertion, paragraph 13 of the Choy declaration, itself consists

2

only of *ipse dixit*. That is not, and cannot be, enough to satisfy the Government's burden. *White*, 2010 WL 2899665, at \*4.

Nor is it obvious how disclosure of much of the redacted information would reveal the informant's identify. Consider the dates of CBP's meetings with the informant. *See* AR203–09. True, disclosing meeting dates will *sometimes* reveal an informant's identity—say, if the informant performed drug buys with a criminal defendant who could "search his memory and recall to whom he had sold drugs on that day." *United States v. Wilburn*, 581 F.3d 618, 624 (7th Cir. 2009). But sometimes is not always or even usually; meeting dates are not intrinsically identifying. This case is the perfect example: How could revealing the dates of [      ] meetings with the informant possibly allow counsel to piece together the informant's identity? *See, e.g.*, [      ] Even if there were a plausible explanation, the Government has not offered it.

The Government's failure goes beyond meeting dates. Without any explanation as to how disclosure would tend to reveal the informant's identity, the Government has redacted numerous other pieces of information that plainly are not the identity of the informant. *See, e.g.*, [      ] Despite two opportunities to carry its burden on this threshold step, the Government still offers only perfunctory assertions.

Accordingly, we respectfully urge the Court to review the redacted information *in camera*. For any information that would not tend to reveal the informant's identity, the Court should order disclosure without even reaching the parties' competing interests.

B.      **The redacted information is critical to FLETF's decision and thus to Ninestar's ability to litigate this case.**

Even for information that would reveal the informant's identity, "the privilege must give way" if disclosure is "essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60–61. Or, as this Court has put it, disclosure is required when the identifying information is "the linchpin"

3

of the agency's decision. *Daido Corp. v. United States*, 16 C.I.T. 987, 994 (1992). That is "almost always" the case when the informant was a "witness to the offense charged." *United States v. Barnes*, 486 F.2d 776, 778–79 (8th Cir. 1973).

Contrary to the Government's assertion (at 7), the redacted information *is* critical to Ninestar's claims. [     ] Those propositions are "the linchpin" of FLETF's decision. *See Daido Corp.*, 16 C.I.T. at 994. Without them, FLETF is left only with evidence [     ] Accordingly, the informant's credibility, its precise allegations, and the dates of those allegations are central to Ninestar's claim that FLETF's decision lacked substantial evidence.

The Government is wrong in suggesting (at 7) that because this is an APA case, credibility is irrelevant. An agency's "witness credibility determinations are not immune from judicial scrutiny." *Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 484 (D.C. Cir. 2020) (vacating agency decision that lacked substantial evidence because of flawed credibility finding). So while courts do not review witness credibility "de novo," *In re NTE Conn., LLC*, 26 F.4th 980, 989 n.3 (D.C. Cir. 2022), "review is not a rubber stamp" either, *Circus Circus*, 961 F.3d at 484. Nor does credibility review necessarily require evidence beyond the Administrative Record. For example, it would be apparent on the face of the record that allegations from a commercial competitor may be biased, or it may be clear that because of the informant's relationship with Ninestar (or lack thereof), it has no way of knowing about Ninestar's supposed use of a "dispatch agency." Faced with such obvious flaws, the Court would be well within the bounds of the APA to review both FLETF's credibility determination and whether it "reasonably explained" that determination. *Id.*

The Government is also wrong (at 7) that "credibility" is a "generic concer[n]" that cannot be used to overcome a privilege claim. The Government's only support for that assertion, *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984), held only that "the credibility of the witness

who reports an informant's declarations"—not the informant himself—was too generic a concern

to justify disclosure.  Indeed, *Russotti* had no occasion to opine on challenges to the informant's

own credibility because the informant's allegations were not before the jury; the trial court had

stricken the "testimony concerning what the informants had said."  *Id.*  And in cases like *Russotti*,

where the informants were not "key witnesses to any of the alleged offenses," *id.*, their credibility

is understandably irrelevant.

   But this case is not *Russotti*.  Here, the hearsay of a confidential informant is the *only* direct

evidence against Ninestar—something that seldom occurs in criminal trials because of the

Confrontation Clause, *see Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).  In cases like this

one, the informant's credibility is plainly "essential to a fair determination."  *Roviaro*, 353 U.S. at

60; *see also Barnes*, 486 F.2d at 778–79.

   **C.    Restrictions on use of the redacted information substantially diminish the
          Government's interest in non-disclosure.**

   As this Court has recognized, the availability of "safeguard[s]" on access to and use of

privileged information weakens the Government's claim of informant privilege.  *Daido Corp.*, 16

C.I.T. at 994–95.  That rule makes good sense.  The goals the informant privilege serves—

"protecting informants from retaliation and encouraging witnesses to come forward," Resp. 7—

are still upheld when counsel is permitted to "learn the identity of an informer under an obligation

as an officer of the court not to disclose that identity to the client or others."  *Chase Manhattan*

*Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 164 (2d Cir. 1992).

   The Government's only response is to imply in a parenthetical (at 8) that either Ninestar's

counsel or the Court would "inadvertent[ly] disclos[e]" this sensitive information.  As to the

former, Ninestar's counsel take their obligations as officers of the Court seriously, and the

Government has no basis to suggest otherwise.  As to the latter, to the extent the Government is

concerned about electronic filing mishaps, this Court's Administrative Order 21-01 regarding "highly sensitive documents" already provides procedures for handling of materials so sensitive they cannot be electronically filed.  The Government does not—because it cannot—explain why this well-established process would be insufficient to protect its interests.

In light of these or other limitations on the disclosure of the redacted information, the Government's minimal interest in non-disclosure is handily overcome by Ninestar's (counsel's) need for this critical information.

**II.     The Administrative Record Was Not Properly Filed Under Seal.**

**A.     This issue is governed by the protective order.**

In our motion, we argued that "the entirety of the Confidential Administrative Record as presently filed, ECF No. 41, should be unsealed *because the documents therein are not properly designated as Confidential Information* [under the APO]."  Mot. 5 (emphasis added).  Specifically, because the information is not "law enforcement sensitive" as that term appears in the APO, which we defined by reference to the Freedom of Information Act, the Government improperly designated it as confidential.  *See id.* 4–7.

The Government ignores these arguments entirely.  It does not offer a competing definition for "law enforcement sensitive," does not suggest the disputed materials satisfy Ninestar's definition, and does not even say *why* it disregards the protective order that it proposed.  *See* ECF No. 34.  Instead, the Government proposes (at 3–4) standards governing "discovery" and "privileg[e]."  But it does not explain why those standards are relevant to the confidentiality of information *that has already been produced*.  They are not.  Rather, the Court entered the APO— which expressly does "not" address "claims of privilege"—to govern the only issue presented in this part of Ninestar's motion: the proper "designation," "handling, safeguarding, and disposal of Confidential Information."  APO preface, ¶ 16.

6

Much of the Government's argument rests on its sleight of hand.  Citing the standard for law-enforcement-sensitive privilege, the Government spends two pages (10–11) and much of the Brzozowski Declaration (¶¶ 7–18) discussing its interest in keeping its evidence secret.  But interest balancing is irrelevant to the purely legal question of whether the materials satisfy the definition of "law enforcement sensitive" information under the protective order.

**B.      Disclosure would not reveal sensitive law enforcement techniques.**

Under the proper standard, the question is simply whether the material is "law enforcement sensitive."  The Government having failed to offer a contrary interpretation, it is uncontested that information falls into that category if it "disclose[s] techniques and procedures for law enforcement investigations … [such that] disclosure could reasonably be expected to risk circumvention of the law."  Mot. 5–6 (quoting 5 U.S.C. § 552(b)(7)).[1]  Neither the public websites nor the internal agency documents in the AR satisfy that standard.

**1.      Websites**

The Government concedes (at 10) that it is "well-known" that "law-enforcement agencies review publicly available information."  Instead, it claims that disclosure of [      ]  Whether the Government is referring to [      ] its argument is flawed.

Suppose the Government means that disclosure would cause [      ]  Alternatively, suppose the Government means that disclosure of the [      ]  If so, the problem is that—by the Government's own admission (at 10)—[      ]  It is not "disclosure" that would facilitate future "circumvention of the law"; it is the fact that, according to the Government, *all* [      ]

---

[1] The Government's brief cannot be read to assert that any of the other disclosure risks in § 552(b)(7) apply.

### 2.      Internal Agency Documents

The Government also contends (at 11) that disclosing internal agency documents would "provide a roadmap" for avoiding listing by revealing "FLETF's sources, methods, and significant insights into how it conducts investigations." But the investigative strategies FLETF used in these internal documents are hardly revelatory. As even the public record shows, *e.g.*, AR4, FLETF mined publicly accessible websites for references to Xinjiang, Uyghurs, and poverty alleviation—terms which appear in the very text of the UFLPA—and worked with a confidential informant. In other words, wrongdoers already know the (quite obvious) "roadmap" the Government fears disclosing: Don't openly talk about your illegal labor practices.

### CONCLUSION

This Court should (1) examine the currently redacted material *in camera* and order the Government to disclose to Ninestar's counsel any information not protected by the informant privilege; and (2) hold that the Administrative Record was improperly designated as "Confidential Information," and order it be unsealed.

Dated: January 15, 2024

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the Court's Order granting leave to file this reply, ECF No. 90, because it contains 2,500 words, as determined by the word count feature of the word-processing system used to prepare the brief, excluding the parts exempted by Chambers Procedure 2(B)(1)(c).

/s/ Gordon D. Todd
Gordon D. Todd