**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>                      *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>                      *Defendants*. | Case No. 23-182 |

**PLAINTIFFS' POST-HEARING SUPPLEMENTAL BRIEF**

# TABLE OF CONTENTS

I. The Government's Exhaustion Defense Fails..................................................................... 1

    A. The APA authorizes immediate judicial review. ..................................................... 1

    B. In any event, exhaustion would not be appropriate. .............................................. 2

II. The Government's Arguments Against A Preponderance Standard Are Unavailing......... 3

    A. The Government conflated statutory and constitutional questions......................... 3

    B. The OFAC and BIS standards are irrelevant. ......................................................... 4

    C. The section 307 regulations point toward a preponderance standard. .................... 5

CONCLUSION............................................................................................................................. 7

Pursuant to the Court's invitation, Plaintiffs respectfully submit this supplemental brief addressing two matters discussed at the hearing: exhaustion and the appropriate standard of proof.

## I. The Government's Exhaustion Defense Fails.

### A. The APA authorizes immediate judicial review.

"[W]ith respect to actions brought under the APA," exhaustion "is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 153–54 (1993); *accord Martinez v. United States*, 333 F.3d 1295, 1305 (Fed Cir. 2003). This simple rule governs here: this case arises under the APA; the UFLPA provides no administrative remedy for a listing decision; and FLETF's scheme is neither required nor stays the listing, AR224–25. The APA thus precludes any exhaustion requirement. *Darby*, 509 U.S. at 154. Section 2637(d) says nothing contrary. It is expressly "discretionary," not mandatory, *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013); under *Darby*, that is the end of the matter.

That no authority confronts the interplay between *Darby* and §2637(d) is not surprising. Most cases in this Court are "action[s] commenced under" trade statutes, 28 U.S.C. §1581(a)–(h), not "actions brought under the APA," *Darby*, 509 U.S. at 153. Some trade actions borrow the APA's standard of review, 28 U.S.C. §2640(e), and others its notice-and-comment rule, *e.g.*, *Gold E. Paper (Jiangsu) Co. v. United States*, 37 C.I.T. 873, 881–82 (2013). But none "arise under" the APA's cause of action, 5 U.S.C. §702, which is what matters under *Darby*, 509 U.S. at 146. Accordingly, *Carpenter Technology Corp. v. United States*, 30 C.I.T. 1373 (2006), the lone case cited by the Government, is inapposite. *Carpenter* was an antidumping case brought under 19 U.S.C. §1516a, not an APA case brought under §702. Because this case is an APA action, the APA precludes exhaustion, including under §2637(d).

1

### B. In any event, exhaustion would not be appropriate.

Even absent *Darby*, exhaustion would be inappropriate here for three reasons. *First*, Ninestar did not have "timely access to the confidential administrative record." *Gerber Food (Yunnan) Co. v. United States*, 33 C.I.T. 186, 193 (2009). Requiring exhaustion of a claim "before the facts support it" is "necessarily speculative, illogical, and useless." *Mid Continent Steel & Wire, Inc. v. United States*, 219 F. Supp. 3d 1326, 1337 (C.I.T. 2017). This case proves the point: Without the confidential record, Ninestar could not have known that FLETF based its decision on a [    ], years-old evidence, and a yet-to-be-named "third-party" agency. *See* ECF No. 101 at 15–31. Nor could Ninestar have guessed that FLETF stitched together its patchy record with an unlawfully low standard of proof. FLETF's delisting process provides no mechanism for obtaining the confidential record, and the Government's resistance here teaches that FLETF surely would not have disclosed its record voluntarily. This Court does not demand exhaustion in such circumstances. *Mid Continent*, 219 F. Supp. 3d at 1337.

*Second*, FLETF's delisting process lacks "any time frame for … completing [its] deliberation." *B-West Imps., Inc. v. United States*, 19 C.I.T. 303, 306 (1995). Nor could the Government provide such a limit at the hearing. Ninestar cannot be expected to—and certainly is not required to—suffer the devastating consequences of an embargo indefinitely. *Fieldston Clothes, Inc. v. United States*, 19 C.I.T. 1181, 1185 (1995).

*Third*, submitting a delisting petition to FLETF "would have been futile." *Gerber*, 33 C.I.T. at 193. FLETF will delist an entity only if the entity proves that [    ] the listing criteria are met. AR221. Put differently, the entity—without knowing why it was listed—must convince

FLETF *beyond a reasonable doubt* that it should be delisted. Unsurprisingly, no entity has accomplished that Herculean feat.[1]

Suppose that Ninestar submitted to FLETF a sworn declaration stating that it does not work with the Xinjiang government to recruit, traffic, or harbor Uyghur laborers, along with corroborating employment records. Still, FLETF would have the supposedly credible informant's contrary allegations. The evidence would be in equipoise—far short of the showing FLETF requires. Ninestar need not undergo that pointless process.

## II. The Government's Arguments Against A Preponderance Standard Are Unavailing.

### A. The Government conflated statutory and constitutional questions.

The Government argued at the hearing that the proper standard of proof varies with the interests at stake. That argument, however, pertains to *constitutionally* required standards of proof, which can indeed vary with the interests involved. *See Al-Bihani v. Obama*, 590 F.3d 866, 876–78 (D.C. Cir. 2010). It says nothing about *statutorily* required standards of proof, which apply in all cases arising under the statute. Ninestar's argument has always been that the UFLPA, not the Constitution, requires a preponderance of the evidence for listing. *E.g.*, ECF No. 78 at 2.

The UFLPA must be interpreted against the background rule that preponderance of the evidence "is the traditional standard in civil and administrative proceedings." *Steadman v. SEC*, 450 U.S. 91, 101 n.21 (1981). Any lower standard could nonsensically require a deciding official to find against a person "even though the deciding official did not personally agree with that conclusion." *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1300 (Fed Cir. 2021). Thus,

---

[1] We know that no delisting petition has succeeded because the current entity list includes every entity ever added. *See* 88 Fed. Reg. 85,899, 85,901 (Dec. 11, 2023); *cf.* Chen & Northrop, *Washington's Xinjiang Fix*, The Wire: China (Dec. 31, 2023), http://tinyurl.com/5a8rjk7c ("Only five [attempts to overcome the UFLPA's rebuttable presumption] have ever been submitted, according to CBP, and none of them have been successful.").

"absent clear authority to the contrary," a statute that directs an agency to take action "based on predicate facts" imposes at least a preponderance standard. *Id.* Divergence from this rule is "rare" and "typically require[s] an explicit directive to use a lower burden of proof." *Id.* at 1301.

The Government admitted during argument that the UFLPA contains no such "explicit directive." Congress, to be sure, could have written a statute that explicitly authorized making these findings under a lower standard of proof. It has done so elsewhere. *See* ECF No. 78 at 3–4. But it did not do so in the UFLPA. FLETF thus erred by applying a standard of proof meaningfully lower than what the UFLPA authorizes.

### B. The OFAC and BIS standards are irrelevant.

The Government also argued that *Rodriguez*'s presumption has been overcome because the OFAC and BIS lists employ the lower "reasonable cause" standard. But importing the standard from those two distinct statutory schemes has no basis in the UFLPA's text or legislative history.

The UFLPA's text differs materially from the OFAC and BIS statutes. Those laws authorize listing based on "threat" findings. 50 U.S.C. §1701(a); *id.* §4813(a)(2). Such findings are inherently predictive and thus accommodate a lower standard of proof. *See Kashem v. Barr*, 941 F.3d 358, 381 (9th Cir. 2019); *Threat*, Collins English Dictionary ("threat" connotes "something bad *might* happen" (emphasis added)). The UFLPA, in contrast, directs FLETF to undertake "[a] comprehensive description and evaluation"—not a prediction—in populating the entity lists. UFLPA §2(d)(2). Congress then defined with exacting specificity the particular factual predicates necessary for a listing and ensuing embargo. *E.g.*, *id.* §2(d)(2)(B)(ii). It would be particularly odd to construe such detail as also authorizing findings based only on a vague and amorphous "reasonable cause to believe."

The Government's argument finds no purchase in the UFLPA's legislative history, which lacks any suggestion that the UFLPA tacitly imports the standard of proof used in the OFAC or

4

BIS statutes. Congress knows how to incorporate the evidentiary standards used in its previous enactments. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). But Congress gave no indication, whether in text or legislative history, that it made such a choice here.

### C. The section 307 regulations point toward a preponderance standard.

The Government's only remaining argument in support of FLETF's meager standard of proof is that it matches the standard CBP uses to issue withhold-release orders (WRO) when enforcing section 307. Not only is the Government's analogy flawed; the CBP regulations implementing section 307 reinforce that final listing decisions require a preponderance of the evidence.

As we have explained, ECF No. 88 at 3–4, FLETF has applied a standard for its listing decisions similar to the standard that CBP uses for initiating its section 307 investigation. CBP may open an investigation when it "has reason to believe" that an import has been produced by forced labor, and may "withhold release of any such merchandise pending instructions from the Commissioner" at the conclusion of such investigation. *See* 19 C.F.R. §12.42(a)–(e). If CBP then "determine[s]" that the merchandise is in fact subject to section 307, the Government shall "publish a finding to that effect." *Id*. §12.42(f)–(g). That final finding and determination requires a preponderance of the evidence. *See Rodriguez*, 8 F.4th at 1298 (statute's command to "determin[e]" a fact requires preponderance).

A UFLPA listing is no mere investigation, but rather imposes a full and final embargo. In that respect it does not mirror the preliminary inquiries and investigatory stops authorized under §12.42(a)–(e) to which Defendants point. Rather, a UFLPA listing equates to a final section 307 determination and finding. *See id*. §12.42(f)–(g) (if CBP "determine[s]" that merchandise is subject to section 307, the merchandise is embargoed "unless the importer establishes" that the

merchandise was not produced by forced labor); *see also* 65 Fed. Reg. 45,873, 45,874 (July 26, 2000) (noting a "finding" is "a more formal Customs action with a higher burden of proof than simple Customs detention of merchandise based on reasonable suspicion").

Listing differs from CBP's initial investigations and WROs in another critical way: like a section 307 "finding," a UFLPA listing marks the end of the agency's process and formally shifts the burden to the importer. A WRO, by contrast, authorizes CBP to detain merchandise "pending" further instructions. 19 C.F.R. §12.42(e). Unlike a UFLPA listing, CBP still has more to do after issuing a WRO.

Nor does preserving the preponderance standard somehow mean that the UFLPA is a weaker enforcement tool than section 307. Congress intended the UFLPA to strengthen section 307 enforcement, and it did. Most consequentially, the Act forgoes entirely the requirement that CBP find that goods were actually made with forced labor, *see* 19 U.S.C. §1307, opting instead for a presumption that goods made in a certain region or by people associated with that region are subject to section 307. *See* UFLPA §2(d)(2)(B). The Act also makes it significantly harder to overcome an embargo, replacing section 307's "satisfactory evidence" burden with "clear and convincing evidence." *Compare* 19 C.F.R. §12.42(g), *with* UFLPA §3(b)(2). And the Act short-circuits section 307's investigation and temporary-withholding steps entirely, jumping straight to the full and final embargo. *Compare* 19 C.F.R. §12.42(a)–(e), *with* UFLPA §3(a)(1).

These additional tools—each grounded in the text of the Act—undoubtedly increase CBP's section 307 enforcement power. But nothing in the UFLPA expresses Congress's intention, explicitly or implicitly, to abandon the preponderance standard required for a final listing and determination under section 307. And it would "frustrat[e] rather than effectuat[e] legislative intent simplistically to assume" that Congress must have wanted to reduce the listing standard,

6

despite all textual and contextual evidence pointing in the other direction. *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). The UFLPA's streamlined procedures, graver consequences, and heightened rebuttal standard all militate in favor of at least preserving the preponderance standard.

## CONCLUSION

The APA, as interpreted by *Darby*, precludes exhaustion here. Even if it didn't, exhaustion would not be appropriate. And setting aside the Government's due-process red herring, nothing in the text, history, or purpose of the UFLPA overcomes the heavy presumption in favor of a preponderance standard for listing decisions. FLETF had no authority to list Ninestar on a lesser showing.

Dated: January 25, 2024

                                                            Respectfully submitted,

                                                            */s/ Gordon D. Todd*

                                                            MICHAEL E. MURPHY
                                                            GORDON D. TODD
                                                            MICHAEL E. BORDEN
                                                            CODY M. AKINS

                                                            SIDLEY AUSTIN LLP
                                                            1501 K Street, N.W.
                                                            Washington, D.C. 20005
                                                            (202) 736-8760
                                                            gtodd@sidley.com

                                                            *Counsel for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the Court's Order regarding this submission, ECF No. 99, because it contains 1,999 words, as determined by the word count feature of the word-processing system used to prepare the brief, excluding the parts exempted by Chambers Procedure 2(B)(1)(c).

*/s/ Gordon D. Todd*
Gordon D. Todd
