UNITED STATES COURT OF INTERNATIONAL TRADE

HONORABLE GARY S. KATZMANN, JUDGE

---

NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.,

     Plaintiffs,

     v.

UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force,

     Defendants.

Court No. 23-00182

---

**SUPPLEMENTAL SUBMISSION**

  Pursuant to the Court's January 18, 2024 order, ECF No. 99, the Government provides this supplemental submission, further discussing why dismissing this matter under the doctrine of exhaustion of administrative remedies, as codified by 28 U.S.C. § 2637(d), is appropriate.

# PLAINTIFFS SHOULD BE REQUIRED TO EXHAUST ALL AVAILABLE ADMINISTRATIVE REMEDIES

Before seeking the same relief from the Court, plaintiffs should be required to seek removal from the Uyghur Forced Labor Prevention Act (UFLPA) Entity List before the Forced Labor Enforcement Task Force (FLETF). This initial administrative review would allow the FLETF an opportunity to consider the evidence that the plaintiffs contend supports their delisting and would create a record for any additional review by this Court.

Section 2637(d) of Title 28 codifies exhaustion requirements for claims brought under section 1581(i), and requires that "[i]n any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Federal Circuit has explained that § 2637(d) "indicates a congressional intent that, absent strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States,* 502 F.3d 1370, 1379 (Fed. Cir. 2007).

In the Federal Register notice advising plaintiffs of their addition to the UFLPA Entity List, the FLETF also identified the procedure for a listed entity to follow to seek removal. A listed entity may direct a removal request to the chair of the FLETF (the Department of Homeland Security). *Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777, 47,778 (Aug. 4, 2022); *Notice Regarding the Uyghur Forced Labor Prevention Act Entity List,* 88 Fed. Reg. 38,080, 38,082 (June 12, 2023). As part of that request, the entity may "provide information that demonstrates that the entity no longer meets or does not meet the criteria described in the applicable clause ((i), (ii), (iv), or (v)) of section 2(d)[(2)](B) of the UFLPA." *Id.* The information provided by the entity will then be referred to the other FLETF member agencies. *Id.* The FLETF chair may seek additional

information from the entity, and the entity may request a meeting with the FLETF to discuss the matter.  *Id.*  Finally, after the FLETF reviews the entity's request, including any arguments or evidence submitted, it will decide the matter by majority vote, and a written decision will be provided to the entity.  *Id.*

This process closely resembles the administrative process under 19 U.S.C § 1307 and 19 C.F.R. § 12.42 with respect to issuance of withhold release orders and, if necessary, findings.  Although, during the preliminary injunction hearing plaintiffs described the WRO process as "temporary," decisions that have remained in place for many years can hardly be described as such.  Rather, they are detention orders that remain in place until revoked or modified.  *See* https://www.cbp.gov/trade/forced-labor/withhold-release-orders-and-findings (identifying a list of current withhold release orders, the oldest of which has been active since 1991).  And the implication of issuance of a WRO would, like here, require a thorough admissibility determination of any such merchandise upon entry.

Requiring plaintiffs to request removal pursuant to the administrative process identified by the FLETF would serve the dual purposes of exhaustion: (1) preserving agencies' administrative authority, and (2) promoting judicial efficiency.  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *see also Carpenter Technology Corp. v United States*, 452 F. Supp. 2d. 1344, 1346 (Ct. Int'l Trade 2006) (describing the dual purposes of exhaustion).

The first of these purposes—preserving agency authority—is "grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer."  *McCarthy*, 503 U.S. at 145.  This preservation of agency authority "appl[ies] with *particular force*" where, as here, "the agency proceedings in question allow the agency to apply

its specialized expertise." *Id.* (emphasis added). The FLETF is an inter-agency task force comprising seven member agencies and six observer agencies. It is tasked, by statute, with "monitor[ing] United States enforcement of the prohibition under section 307 of the Tariff Act of 1930 (19 U.S.C. 1307)." *See* 19 U.S.C. § 4681; Exec. Order 13923, *Establishment of the Forced Labor Enforcement Task Force Under Section 741 of the United States-Mexico-Canada Agreement Implementation Act,* 85 Fed. Reg. 30,587 (May 15, 2020). Its member agencies, with intelligence-gathering, law-enforcement, forced-labor, and foreign-affairs expertise, were identified by Congress as critical to this stated purpose and to the purpose of the enactment of the UFLPA: to "strengthen the prohibition" of section 307 with respect to Uyghur forced labor. UFLPA, Section 1(1).

Congress directed the FLETF to create a "strategy for supporting enforcement of section 307 of the Tariff Act of 1930 (19 U.S.C. 1307) to prevent the importation into the United States of goods mined, produced, or manufactured wholly or in part with forced labor in the People's Republic of China." *See* UFLPA, Section 2(c). This enforcement strategy includes an evaluation of the ongoing human rights abuses against Uyghurs in the Xinjiang region and requires that the FLETF create – and update – the list of entities that satisfy the statutory criteria described in Section 2(d)(2)(B), among other things. The FLETF members' expertise makes the task force uniquely situated to critically evaluate evidence supporting these statutory criteria against the backdrop of the circumstances in Xinjiang and China when they develop the UFLPA Entity List, and if a listing decision is challenged, to consider evidence submitted by an entity seeking removal. Thus, based both on the authority Congress bestowed on the FLETF and the specialized expertise of its member agencies, requiring plaintiffs to avail themselves of the

delisting procedure before coming to Court will preserve the FLETF's primary responsibility for enforcing the UFLPA.

The second purpose served by exhaustion—promoting judicial efficiency—will also be advanced by requiring the plaintiffs to seek removal before the FLETF. Such a process will permit judicial review of a record created *after* plaintiffs have submitted any arguments or evidence to the FLETF. *See McCarthy*, 503 U.S. at 145. The delisting process would afford plaintiffs the opportunity to explain to the FLETF, through evidence and argument that would become part of an administrative record, why they do not meet the statutory listing criteria. The FLETF then would have the opportunity to ask any questions in response to plaintiffs' arguments. This is particularly important where, as here, the context is "complex" or involves "technical factual" issues. *Id.* ("[E]xhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context.") In *Carpenter*, 452 F. Supp. 2d at 1346, for example, this court dismissed the action under section 2637(d), noting, as here, that the issue was "complex" and "fact-specific" and that "[f]or the court to apply [the applicable] standard properly, plaintiff had to raise the issue to allow [the agency] to compile an administrative record adequate for judicial review." *Id.* Here, judicial review would benefit from the identified facts or arguments being considered by the FLETF's member agencies, which were selected by Congress for their relevant expertise, particularly given the complex and egregious nature of the human rights abuses of Uyghurs taking place both in the Xinjiang region and in other regions of China.

Notably, the Court's role in a review under the APA is not to weigh evidence, particularly evidence that was not before the administrative agency, but to determine whether the FLETF's decision was "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). The FLETF, however,

has not yet had the opportunity to consider the arguments (or the new evidence) that plaintiffs ask this Court consider. Instead, plaintiffs are prematurely seeking the same remedy—delisting—from the Court that they should have first sought from the FLETF. Am. Compl. Prayer for Relief ¶ (5) (requesting that the court vacate the listing decision). Plaintiffs' counsel admitted at the preliminary injunction hearing that plaintiffs had evidence that they could have submitted to the FLETF in support of a removal request, but chose not to make such a request. In short, had plaintiffs availed themselves of the delisting process, the FLETF would have been afforded the opportunity, initially, to determine whether plaintiffs were entitled to the relief plaintiffs now seek before this Court, and "the record would have been more fully developed" for the Court's review with respect to the arguments and evidence that plaintiffs only now raise. *Carpenter*, 452 F. Supp. 2d at 1346-47 (requiring exhaustion under § 2637(d) where plaintiffs failed to raise an argument first before the Department of Commerce).

Plaintiffs primarily respond that *Darby v. Cisneros*, 509 U.S. 137 (1993), precludes exhaustion here, but plaintiffs' reliance on that case is misplaced. *Darby* merely held that section 10(c) of the APA, standing alone, does not permit judges to create exhaustion requirements—they must come from a separate "statute or agency rule." *Id.* at 146. *Darby* did not interpret section 2637(d)'s exhaustion rule, which was enacted in the Customs Court Act of 1980, Pub. L. 96-417, 94 Stat. 1727, 1736, long after the APA, or hold that section 10(c) of the APA irreconcilably conflicts with section 2637(d). Rather, *Darby* explained that "whether courts are free to impose an exhaustion requirement as a matter of judicial discretion depends, at least in part, on whether Congress has provided otherwise, for of paramount importance to any exhaustion inquiry is congressional intent." *Id.* at 144–45 (cleaned up) (quoting *McCarthy*, 503 U.S. at 144). Here, section 2637(d) evinces Congress's intent that plaintiffs in "any"

6

section 1581(i) action should first "exhaust their administrative remedies before the pertinent administrative agencies." *Corus Staal BV*, 502 F.3d at 1379. Nor is there anything strange about applying a claims-processing rule specific to this Court, such as section 2637(d), rather than more generally applicable principles, like *Darby*'s. As an example, the statute of limitations for APA claims in this Court is limited to two years and is treated as a claims-processing rule, 28 U.S.C. § 2636(i), *see Ford Motor Co. v. United States*, 811 F.3d 1371, 1378 (Fed. Cir. 2016) (holding that section 2636(i) is a non-jurisdictional claims-processing rule), while APA claims in other courts are subject to a six-year statute of limitations, 28 U.S.C. § 2401(a).

Plaintiffs' only remaining response, advanced at oral argument, is their unsupported conjecture that the delisting process would be futile or interminable. But an administrative remedy is not futile simply because a plaintiff is unlikely to succeed. *See Nat'l Sci. & Tech. Network, Inc. v. FCC*, 397 F.3d 1013, 1014 (D.C. Cir. 2005). Moreover, if the very evidence that plaintiffs improperly seek to introduce through their motion to supplement the administrative record, *see* ECF No. 101, is sufficient to hold the FLETF's listing decision arbitrary and capricious, as plaintiffs claim, then surely this evidence has the potential to convince the FLETF to delist plaintiffs. In any event, the FLETF should be afforded the opportunity in the first instance to receive and evaluate that evidence.

And as for plaintiffs' claims of administrative delay, plaintiffs point to no evidence—nor does any exist—that the FLETF's review would result in unnecessary delay. To date, a number of listed entities have properly availed themselves of this administrative remedy and are currently at various stages of the process. While multi-year delays could "cast doubt on the appropriateness of requiring exhaustion" of a particular administrative remedy, even in those circumstances courts have required exhaustion but placed time limitations on the agency's

action. *Washington v. Barr*, 925 F.3d 109, 120 (2d Cir. 2019) (giving the agency six months to complete its process). Plaintiffs cannot avoid their obligation to exhaust administrative remedies by merely asserting that delisting might result in some delay.

For these reasons, the Court should dismiss this action for failure to exhaust administrative remedies.

        Respectfully submitted,

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General
        Civil Division

        PATRICIA M. McCARTHY
        Director

        CLAUDIA BURKE
        Deputy Director

        /s/ Justin R. Miller
By:    JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Monica P. Triana
        MONICA P. TRIANA
        Senior Trial Counsel

        /s/ Guy Eddon
        GUY EDDON
        LUKE MATHERS
        Trial Attorneys
        Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza – Room 346
        New York, New York 10278
        Tel. (212) 264-9240 or 9230
        *Attorneys for Defendants*

Dated: January 25, 2024

**CERTIFICATE OF COMPLIANCE**

    I, Monica P. Triana, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's supplemental submission, dated January 25, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation in the Court's January 18, 2024 Order, ECF No. 99, and contains 1,973 words.

    /s/ Monica P. Triana
    MONICA P. TRIANA