**PUBLIC VERSION**

IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Case No. 23-182 |

**PLAINTIFFS' MOTION TO COMPLETE OR
SUPPLEMENT THE ADMINISTRATIVE RECORD**

\* Most of the redactions in this document were made at the request of Defendants.

Plaintiffs Ninestar Corporation and its affiliate entities (collectively, Plaintiffs, or Ninestar) respectfully move this Court to order Defendants to supplement or complete the administrative record with a limited number of documents that are properly part of the "whole" administrative record in this case and that are necessary to permit effective judicial review. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Specifically, the Court should order that the Confidential Administrative Record be amended to include the following categories of documents and materials:

(1) A corrected translation of the [       ]

(2) Certified translations of photos [       ]

(3) [       ], which is publicly available,[1] which elaborates on workforce transfer and poverty alleviation programs in which Ninestar participates, [       ]

(4) Screenshots of publicly available web content created by the labor dispatch agency [       ]

Due to the secret nature of the agency proceedings in this case, Plaintiffs had no opportunity to contribute to, review, or even view the agency record until after initiating this litigation. It is therefore unsurprising that the record as presently constituted is inadequate and contains numerous flaws. When viewed against readily available "background" information, it is clear that the record misrepresents key findings and conveniently omits evidence adverse to government's case. As is relevant here, the record contains no indication that the agency investigated or confirmed [       ] *See Zhejiang Mach. Imp. & Exp. Corp. v. United States*, 471 F. Supp. 3d 1313, 1334 (Ct. Int'l Trade 2020) (finding that the agency improperly rejected "a revised [Mandarin to English] translation of a few words [that] is similar to other instances where courts deemed information corrective"). Nor does the record contain [       ] Further, the record omits the publicly available

---

[1] https://v4.cecdn.yun300.cn/100001_2007095094/2022%20Ninestar%20ESG%20Report.pdf.

[     ] altogether, notwithstanding the fact that [     ] Finally, the record omits any mention of [     ]. Completion or supplementation of the record with the aforementioned materials is therefore warranted to allow this court to adequately review FLETF's listing decision.

## BACKGROUND

Since its inception, this case has been marked by disputes about the Administrative Record. After Ninestar initiated this lawsuit on August 22, 2023, the Government was obligated to file the "whole" administrative record on which FLETF's decision was based by October 3, 2023. *See* 5 U.S.C. § 706; 28 U.S.C. § 2635(d). Instead, on October 3, the Government, without justification, filed a so-called "Public Administrative Record" comprised of a 2-page index and 229 pages of materials, of which 199 were entirely redacted, 9 were partially, albeit mostly, redacted, and 23 were unredacted (including 17 exhibit cover pages). *See* ECF No. 24-1. The Government's unsatisfactory filing forced Ninestar to move to compel production of the Administrative Record. *See* ECF No. 33. On October 24, 2023, the Court amended the governing protective order and ordered the Government to produce both a less redacted Confidential Administrative Record and a privilege log justifying any remaining redactions. ECF No. 39 at 2. The former, which is available only to Ninestar's counsel, includes most, but not all, of the materials underlying FLETF's decision.

Because the Government had failed to justify both its confidentiality designations and its privilege claims, Ninestar moved on December 4, 2023, to unseal and unredact the administrative record. ECF No. 60. The Government again fought to keep the basis for FLETF's decision from Ninestar, but finally agreed (with no explanation for the change of heart) that Ninestar's counsel could share with their clients the portions of the Administrative Record [     ]. *See* ECF No. 85. Counsel immediately sought the Government's confirmation that, in accordance with the Government's concession, it could share the agreed portions with Ninestar. ECF No. 88. The

2

Government opposed, again. *See id.* But after modifying the protective order, the Court granted counsel leave to share the newly available portions of the record with Ninestar. ECF No. 97. Still, Ninestar itself can view only approximately 20% of the Administrative Record, and Ninestar's counsels' access remains restricted. The motion to unseal and unredact the administrative record remains pending.

Upon review of the portions of the administrative record available to counsel, numerous flaws became apparent. Particularly relevant here is what is *missing* from the government's submission. For example, it appears from the [     ] that [     ] Notwithstanding the failure to consider whether this [     ]

The record also appears to omit certain company reports that further undercut the agency's assumption that [     ] Finally, the record includes no mention of [     ].

As a result, Plaintiffs now seek to complete or supplement the administrative record with a limited number materials that are necessary to correct the flaws in the existing record and for this court to conduct meaningful review of the agency's decision.

## ARGUMENT

Judicial review of agency action under the APA requires review of the "whole record." *Overton Park*, 401 U.S. at 419–20 (applying 5 U.S.C. § 706). This court has acknowledged that "the whole administrative record … consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1355 (Ct. Int'l Trade 2020) (quoting *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)). A complete record is "broader than those documents cited by and relied upon by the agency, but also includes 'all materials that *might* have influenced the agency's decision.'" *Id.* (quoting *Amfac Resorts L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)) (emphasis added). Moreover, "a

3

document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." *Giorgio Foods, Inc. v. United States*, 755 F. Supp. 2d 1342, 1346 (Ct. Int'l Trade 2011) (quotation omitted). These rules governing completeness are necessary given that a more limited view "might allow a party to withhold evidence unfavorable to its case." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984); *see also Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir. 1993) ("An agency may not unilaterally determine what constitutes the Administrative Record." (citation omitted)). A party alleging that the record is incomplete must "provide the Court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included." *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (Ct. Int'l Trade 1999).

Courts also allow for supplementation of the administrative record. *Id*. at 1157. Unlike a request to complete the record, supplementation requires that the moving party show "unusual circumstances" that warrant the record's expansion. *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010). This court has recognized the three "unusual" circumstances enumerated by the D.C. Circuit, finding that supplementation is allowed: "(1) if the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,' (2) if background information was needed 'to determine whether the agency considered all the relevant factors,' or (3) if the 'agency failed to explain administrative action so as to frustrate judicial review[.]'" *S. Cross Seafoods, LLC v. United States*, 658 F. Supp. 3d 1336, 1340 (Ct. Int'l Trade 2023) (quoting *City of Dania Beach*, 628 F.3d at 590). The Federal Circuit has recognized similar factors when assessing whether supplementation is appropriate. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380–81 (Fed. Cir. 2009). In addition, this court has found that supplementation is "allowed to permit an explanation or clarification of technical terms in the record," *Ammex*, 62

F. Supp. 2d at 1157 (citations omitted), and "when a party makes a 'strong showing of bad faith or improper behavior' by agency decisionmakers," *id*. (quotation omitted).[2]

Plaintiffs submit that the standards for both completing and supplementing the record are met here and support the inclusion of [     ] the [     ], and the postings from the [     ] in the administrative record.

### A. The Court Should Order Defendants to Include the Corrected Translation of [     ] as Part of the Administrative Record.

The record should be amended to include Plaintiffs' corrected translation of [     ] FLETF placed great weight on what it believed was a [     ] In doing so, FLETF rejected without explanation that the [     ] FLETF was wrong. Two independent professional translators agree that [     ] *See* Ex. A at 1, 5 (emphasis added). And, unlike FLETF, these translators actually *explain* why they reached that conclusion. One translator notes that [     ] Certification of Bruce Lin, Ex. A at 1; *see also* Certification of Patrick Cheng, *id*. at 5 [     ]. Moreover, had the

---

[2] This court has stated that, in contrast to completion, "supplementing the record *requires* the further burden of showing bad faith by the agency." *Invenergy*, 476 F. Supp. 3d at 1354–55 (emphasis added) (comparing *Overton Park*, 401 U.S. at 419–20 with *Ammex*, 62 F. Supp. 2d at 1156–57); *see also Ammex*, 62 F. Supp. 2d at 1170 (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). Plaintiffs agree that bad faith is one factor that supports supplementing the record, but respectfully note that bad faith is not required in *all* cases.

Cases relied upon by this court from the D.C. Circuit, like *James Madison*, discuss bad faith as merely *one possible* "unusual circumstance" that "require[es] the district court to expand the record," amidst the range of factors. *See Ludwig*, 82 F.3d at 1095. Further, imposing a bad faith requirement on all cases would contradict the *City of Dania Beach* factors, which allow for supplementation if the agency "deliberately or *negligently* excluded documents." *S. Cross Seafoods*, 658 F. Supp. 3d at 1340 (emphasis added) (quoting *City of Dania Beach*, 628 F.3d at 590); *see Daniel v. Smoot*, 287 F. Supp. 3d 74, 80 (D.D.C. 2018) ("Bad faith is more than mere negligence"). One cannot reconcile cases like *Kent County v. EPA*, 963 F.2d. 391 (D.C. Cir. 1992), which ordered an agency to supplement the record because it was "negligent in failing to discover [internal] documents," with the position that a bad faith is a requirement rather than merely a factor. *Id*. at 395–96.

Nevertheless, as explained further below, the standard for supplementation is met here even if a showing of bad faith on the part of the agency is required.

5

Government attempted to translate the [     ] it would have learned that the [     ].  This corrected translation therefore undermines a central element of FLETF's basis for adding Ninestar to the UFPLA Entity List.

Completion or supplementation of the record with this corrected translation and accompanying certifications is therefore warranted.  The [     ] itself was evidently directly "considered by agency decision-makers," *Invenergy*, 476 F. Supp. 3d at 1355, and the revised translation does not constitute wholly "new evidence or theories not presented to the deciding agency." *Axiom*, 564 F.3d at 1381 (citation omitted).  Indeed, the corrected translation is required to "determine whether the agency considered all the relevant factors" in its decision-making, *S. Cross Seafoods,* 658 F. Supp. 3d at 1340 (quoting *City of Dania Beach*, 628 F.3d at 590), namely, whether the agency's translation could be incorrect.  As this court noted in *Zhejiang*, "translation ... between languages as dissimilar as Mandarin and English, is a complex analytical task," and "revised translation[s]" are "similar to other submissions courts have accepted as corrective information."  471 F. Supp. 3d at 1334 (citation omitted).  At a minimum, the omission of any professionally certified translation in the record as presently constituted amounts to "negligence" on the part of the agency.  *S. Cross Seafoods*, 658 F. Supp. 3d at 1340.

Supplementation of the record is particularly appropriate here given that, time and again, FLETF has "failed to explain" its actions in a manner that has ultimately "frustrate[d] judicial review."  *Id*. (quoting *City of Dania Beach*, 628 F.3d at 59).  The unusual proceedings that have given rise to this limited record, influenced by one confidential informant, and conveniently omitting evidence—including, as discussed below, [     ] and publicly available cooperate documents—that contradicts the agency may support a finding that the agency has acted in bad faith.  *See, e.g.*, *Maritime Mgmt., Inc. v. United States*, 242 F.3d 1326, 1330, 1333–35 (11th Cir.

2001) (finding bad faith where agency "purposefully withheld negative documents" from the administrative record). Further supporting a finding of bad faith is the fact that the agency engaged in no attempt to secure a neutral, third-party professional translation of [     ] presently in the record.

The irregularity of the record is compounded by the fact that Plaintiffs were denied the opportunity to participate in, or even be given advance notice of, agency decision-making up until the listing, and have been routinely denied the opportunity to review the record ever since. This court should therefore order Defendants to amend the administrative record to include the corrected translation in order to permit effective review of the listing decision.

### B.     The Court Should Order Defendants to Include Certified Translations of [     ] as Part of the Administrative Record.

In addition to the corrected translations of the [     ] this court should also order Defendants to include Plaintiffs' certified translations of [     ]. *See* Ex. B. One such translation, *id*. at 1–6, [     ]. [     ] *id*. 7–20, are of [     ].[3] Taken together, [     ]. It would be especially odd for Ninestar to use only [     ]

Completion or supplementation of the record with the certified translation of [     ] is warranted for similar reasons outlined above with respect to the corrected translation of [     ]. These photographs contain "evidence contrary to the agency's position," and they were reasonably before the agency, either "directly or indirectly," in its decision-making process. *Invenergy*, 476 F. Supp. 3d at 1355 (quotation omitted). They are background information necessary to determine whether the agency considered all the relevant factors in the listing decision. In an investigation

---

[3] Counsel did not show their clients [     ] to obtain [     ], or [     ]. Rather, in full compliance with the governing protective order, counsel asked Ninestar for photos [     ]. We initially asked translators to translate just the characters from [     ]. We then procured and submitted these various photos to translate all of the text present [     ].

7

that includes the translation of a complex foreign language to English, one would surely endeavor to assess all contextual clues regarding meaning, [      ], adverse to the government's position, are nowhere to be found.  At a minimum, this constitutes negligence on the part of the agency, but, taken together with other omissions, counsels a finding of bad faith supporting supplementation.  As above, these certified translations are necessary so as to not frustrate effective judicial review.

      C.      **The Court Should Order Defendants to Include the [      ] as Part of the Administrative Record.**

The administrative record should also be amended to include [      ] which was omitted from Defendant's submission.  In the record as currently constituted, the government claims that [      ]  But the government's assumption that any mention of "poverty alleviation" [      ] necessarily means that Plaintiffs are employing forced labor from Xinjiang is incorrect.  This assumption is refuted by other publicly available documents the government chooses to ignore, including the [      ].

The [      ] discusses the Company's "poverty alleviation" efforts and employment of migrant workers from a number of regions *other* than Xinjiang. *See, e.g.*, [      ]. The omission of this adverse evidence from the [      ] further impermissibly skews the record in the government's favor.[4]

Completion or supplementation of the record with the [      ] is therefore warranted.  This publicly available document that contains "evidence contrary to the agency's position" is precisely the kind of information that was reasonably before by the agency, either "directly or indirectly," in its decision-making process. *Invenergy*, 476 F. Supp. 3d at 1355 (quotation omitted).  The

---

[4] Similar information is also available in Ninestar's Annual Reports.  While Plaintiffs are not seeking to include those reports in the record given that they are published only in Mandarin, [      ] Nevertheless, the reports themselves were not included in the administrative record, once again impermissibly excluding evidence adverse to the agency's decision.

government [    ] It is therefore reasonable to conclude that the [    ] "might have influenced the agency's decision," *Invenergy*, 476 F. Supp. 3d at 1355 (quotation omitted), and should be included in the record for the sake of completeness.

Further, the unusual circumstances at play here also support supplementation of the record with the [    ].  The lack of agency explanation for the listing decision permeates all elements of this case, and the lack of opportunity for Plaintiffs to contribute to or view the record has "frustrate[d] judicial review" in manner sufficient to support supplementation of the record with the 2022 ESG report.  *S. Cross Seafoods,* 658 F. Supp. 3d at 1340 (quoting *City of Dania Beach*, 628 F.3d at 590).  [    ] once again evinces that the agency failed to "consider[] all the relevant factors," *id*., namely, that references to "poverty alleviation" in Plaintiffs' corporate document refer to activities other than unlawful labor transfers and regions other than Xinjiang.  Supplementation is also required when an agency "deliberately or negligently excluded documents that may have been adverse to its decision." *Id*.  At a minimum, the agency behaved negligently by excluding a publicly available report—[    ]—from the record.  Finally, and as discussed above, the omission of the report and other evidence adverse to the government's decision arguably constitutes bad faith.

> D. **The Court Should Order Defendants to Include Internet Postings from the [    ] As Part of the Administrative Record.**

The administrative record should also be amended to include internet postings created by the [    ] Had FLETF bothered to [    ] and performed even a cursory internet search, it would have learned that [    ].  In addition to maintaining its own website, the company routinely posts on Chinese social media platforms.  [    ].  *See, e.g.*, Ex. D at 2 (under a post with the title [    ] describing an [    ]).

9

Once again, the agency's failure to investigate or even address contrary evidence that was reasonably in its view during the decision-making process makes completion or supplementation of the record appropriate. Completion is warranted given that [     ]. It is therefore reasonable to assume that the [    ] is the type of material that might have been "considered by agency decision-makers" had they exercised merely a modicum more diligence. *Invenergy*, 476 F. Supp. 3d at 1355 (quotation omitted). Moreover, as part of its investigation FLETF did gather [     ]. The record contains [    ] FLETF cites these records as [     ] despite the fact that [     ]. *Id.* In any event, as FLETF saw fit to search [    ] for negative information regarding Ninestar, it would not have been beyond the pale to use social media to better understand Lan Ling Hui's role and relationship.

Further, the "unusual circumstances" supporting supplementation are at play here, just as they are in each category above. Once again, these documents, necessary "to determine whether the agency considered all the relevant factors," are "adverse to the agency's decision," *S. Cross Seafoods*, 658 F. Supp. 3d at 1340 (quoting *City of Dania Beach*, 628 F.3d at 590)—they dramatically undercut the assumption that [     ] At a minimum, FLETF's failure to even [     ] suggests negligence. *S. Cross Seafoods*, 658 F. Supp.3d at 1340. And as above, the omission of any mention of the [     ] agency in the record arguably constitutes bad faith. Inclusion of these documents in the record is therefore necessary to permit effect judicial review. *Id*.

## CONCLUSION

A complete record that adequately addresses evidence adverse to FLETF's decision is necessary to permit effective judicial review in this case. Plaintiffs therefore respectfully request that the Court order Defendants to complete or supplement the administrative record with the limited number of documents and materials set forth in the attached proposed order.

Dated: January 22, 2024

                                                Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES
## COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Case No. 23-182<br><br>**Proposed Order Granting Plaintiffs' Motion to Correct or Supplement the Administrative Record** |

Plaintiffs' motion to correct or supplement the Administrative Record, ECF No. __, is **GRANTED**. It is hereby:

**ORDERED** that Defendants shall file with this Court no later than 14 days from the date of this Order:

(1) The documents and materials at Exhibit A, containing a corrected translation of [     ]

(2) The documents and materials at Exhibit B, containing translations of photos of [     ]

(3) The document at Exhibit C, namely the Ninestar Corp., [     ]

(4) The documents and materials at Exhibit D, containing screenshots of publicly available [     ].

**SO ORDERED.**

Dated: _____

    New York, New York

_____

Gary S. Katzmann, Judge