# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; and ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*,<br><br>*Defendants*. | Case No. 23-182 |

## PLAINTIFFS' STATUS REPORT

Pursuant to the Court's April 18 Order, ECF No. 146, Plaintiffs submit this status report respecting their intention to file a delisting petition with FLETF.

1

Ninestar remains committed to filing a delisting petition with FLETF. While seeking delisting might seem to be a simple thing, it is not. A petition must, under FLETF's standards, prove beyond a reasonable doubt that no basis for a listing persists. *See* AR221. That itself requires Ninestar to address a number of different subjects. And, because the Government continues to withhold most of the grounds for its initial listing decision, Ninestar must guess at some of the grounds and will have to address prophylactically issues that may well be irrelevant. And, Ninestar must gather this information and submit it to FLETF in a manner consistent with US and Chinese law. This undertaking is challenging and will take time. Accordingly, while Ninestar is diligently working to prepare an effective delisting petition, it is not able, at this time, to commit to filing by any particular date. The Company expects to be in a better position to do so by the end of the month.

To explain the challenges of preparing a delisting petition, some additional context is helpful. First, since it added Ninestar to the UFLPA Entity List nearly a year ago, the Government has consistently sought to prevent Ninestar from learning why it believed Ninestar had violated the UFLPA. At the time of the listing decision, "all that Ninestar knew" was that FLETF believed Ninestar was "working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang"—nothing more than "a near-verbatim recitation of the statutory language." ECF No. 121, Slip Op. 24-24, at 24. Submitting a delisting petition at that point, the Court has recognized, would have been a "necessarily speculative, illogical, and useless task." *Id.* at 25.

Faced with FLETF's refusal to explain its action in any meaningful way, Ninestar had to "litigate a final agency decision in order to gain knowledge of and access to the agency's rationale[, which] wastes judicial resources and delays corrective agency action." *Id.* at 33 n.15. While

Ninestar has learned some additional facts regarding the listing, much of FLETF's rationale remains opaque, and the Government has fought tooth and nail to keep it so.

The Government's recalcitrance started with the Administrative Record, key details of which remain redacted even to Ninestar's counsel, and the vast majority of which Ninestar itself has yet to see. Being unable to share information with our client, or even to ask questions that, if too direct, might inadvertently reveal the contents of the Administrative Record, greatly complicates the process of information-gathering and presenting a delisting petition. For example, we know from the Administrative Record that FLETF's listing was not based on conduct Ninestar undertook itself directly, but rather rests on guilt-by-association with a third party. Specifically, FLETF appears to believe that Ninestar received Uyghur laborers from a "dispatch agency" that worked with the XUAR government, but we still don't know *which* dispatch agency. Ninestar, like many Chinese companies, uses dozens of human-resources firms to staff various parts of its businesses. Because the Government refuses to identify which of those agencies raised FLETF's eyebrows, Ninestar is forced to compile, organize, and present information about its past and current relationships with *all* of those agencies. Moreover, operating in the dark, we must advise our client blindly as to how to structure its business operations going forward to achieve and maintain de-listing. These efforts are extremely tedious—and highly inefficient since FLETF only appears to care about (at most) a few dispatch agencies—but it is nonetheless necessary in light of the limited information the Government has made available.

In recent months, the Government has taken further steps to frustrate Ninestar's ability to efficiently prepare and present a delisting petition. For example, after the Government learned that Ninestar's counsel had obtained additional information through lawful FOIA requests, the Government, without identifying any legal basis, instructed Ninestar's counsel to "destroy" those

documents. Twice. As another example, Ninestar has always believed that it could use information disclosed in the Administrative Record in preparing and filing a confidential delisting petition with FLETF because paragraph 4 of the Protective Order expressly permits the parties to share confidential information with "representatives from the Government agencies that comprise the Forced Labor Enforcement Task Force." ECF No. 98 ¶ 4. After this Court recently stated that Ninestar could not make such use, *see* ECF No. 146 at 2, we explained our view to the government and asked for their views. Two weeks and follow-up emails later, the Government still has not provided its views on that question but rather has raised possibly amending the protective order. Without an amendment, which Ninestar plans to soon seek, Ninestar would have to submit a delisting petition without the benefit of either the FOIA information or the Administrative Record. In other words, precisely what this Court has already dismissed as "speculative, illogical, and useless." Slip Op. 24-24 at 25.

Ninestar appreciates that the Court has already recognized the inefficiency of forcing listed entities to seek corrective agency action based on extremely limited information. *See id.* at 33 n.15. After months of litigation, that inefficiency remains. For example, Ninestar still does not know which employees were alleged to be Uyghurs transferred improperly from the XUAR; the name of the dispatch agency which performed that alleged transfer; when, precisely, the transfer allegedly occurred; and which, if any, of those workers remain employed at Ninestar. Accordingly, to convince FLETF that it no longer satisfies the criteria for listing, Ninestar must, among other things, compile information about its relationships with dozens of dispatch agencies and tens of thousands of employees over the course of several years. Once it completes that task, Ninestar must still ensure it can share the information with U.S. counsel and FLETF in full compliance with Chinese data security laws, which, as the Government has already recognized,

make it "extremely difficult" for United States-based entities to "obtain information from or about Chinese individuals or entities."  ECF No. 82 at 8.

At bottom, while Ninestar is working expeditiously to prepare and submit a delisting petition, those preparations require a significant time investment in light of the limited information Ninestar has regarding the basis for the initial listing decision.  Because the Government's responses to Ninestar's pending motions may narrow the scope of information necessary to present in a delisting petition, Ninestar continues to believe that briefing should resume.

Dated: May 3, 2024

Respectfully submitted,

*/s/ Gordon D. Todd*

MICHAEL E. MURPHY
GORDON D. TODD
MICHAEL E. BORDEN
CODY M. AKINS
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8760
gtodd@sidley.com

*Counsel for Plaintiffs*