Slip Op. 24-76

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD., | |
| Plaintiffs, | |
| v. | Before: Gary S. Katzmann, Judge Court No. 23-00182 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force, | *PUBLIC VERSION* |
| Defendants. | |

## OPINION

[ Plaintiffs' Motion to Unseal and Unredact is granted in part and denied in part. Plaintiffs' counsel and any person to whom Plaintiffs' counsel has disseminated the USTR and State Productions are ordered to immediately destroy all copies of such productions. The administrative record is not

Court No. 23-00182                                                                                          Page 2
**PUBLIC VERSION**

supplemented at this time.  Defendants' request to redact the transcript of the public portion of the preliminary injunction hearing is denied. ]

Dated:  <u>July 10, 2024</u>

<u>Gordon D. Todd</u>, Sidley Austin LLP, of Washington, D.C., argued for Plaintiffs Ninestar Corporation, Zhuhai Ninestar Information Technology Co., Ltd., Zhuhai Pantum Electronics Co., Ltd., Zhuhai Apex Microelectronics Co., Ltd., Geehy Semiconductor Co., Ltd., Zhuhai G&G Digital Technology Co., Ltd., Zhuhai Seine Printing Technology Co., Ltd., and Zhuhai Ninestar Management Co., Ltd.  With him on the briefs were <u>Cody M. Akins</u>, <u>Michael E. Murphy</u>, and <u>Michael E. Borden</u>.

<u>Monica P. Triana</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendants United States of America, Department Of Homeland Security, United States Customs And Border Protection, Forced Labor Enforcement Task Force, Alejandro Mayorkas, in his official capacity as the Secretary of the Department of Homeland Security, Troy A. Miller, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and Robert Silvers, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force .  With her on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Claudia Burke</u>, Deputy Director, <u>Justin R. Miller</u>, Attorney-In-Charge International Trade Field Office, <u>Guy Eddon</u>, Trial Attorney, and <u>Luke Mathers</u>, Trial Attorney.

Katzmann, Judge:  Returning to the continuing litigation in this case involving the Uyghur

Forced Labor Prevention Act ("UFLPA"), Pub. L. No. 117-78, 135 Stat. 1525 (2021), the court

now considers layered questions pertaining to confidential evidence on the agency record, the

informant privilege, and disclosure pursuant to the Freedom of Information Act.  As the court

noted in its prior two opinions, referenced below, Plaintiffs Ninestar Corporation and its corporate

"affiliates (collectively, "Plaintiffs") are Chinese companies that manufacture and sell laser

printers and printer-related products to U.S. companies and consumers.  Defendants the United

States and various federal agencies and officials ("Defendants") determined in June 2023 that

Plaintiffs were working with the government of the Xinjiang Uyghur Autonomous Region

("XUAR") of the People's Republic of China ("China") to recruit, transport, transfer, harbor or

receive forced labor or persecuted ethnic minorities out of the XUAR.  The interagency Forced

Labor Enforcement Task Force ("FLETF") accordingly added Plaintiffs to a list of embargoed

entities (the "Entity List") under the UFLPA.[1, 2]  See Notice Regarding the Uyghur Forced Labor

Prevention Act Entity List, 88 Fed. Reg. 38080, 38082 (DHS June 12, 2023) ("Listing Decision").

Following reports of forced labor and ongoing genocide in the XUAR, Congress passed

and the President signed into law the UFLPA.[3]  Per the text of the statute, the UFLPA is designed

---

[1] The FLETF is composed of seven member agencies.  The six original members are the U.S. Departments of Homeland Security ("DHS"), State, Justice, Labor, and Treasury, and the U.S. Trade Representative.  See Executive Order No. 13923 § 2.  DHS, as the FLETF Chair, may invite representatives from other executive departments or agencies to participate as either members or observers.  See id.  The U.S. Department of Commerce is the seventh member of FLETF as invited by DHS.  See Listing Decision, 88 Fed. Reg. at 38081 n.1.

[2] For the reader's convenience, the court includes below a list of all acronyms used in the opinion:

| | |
|---|---|
| APA: | Administrative Procedure Act |
| APO: | Amended Judicial Protective Order |
| CAR: | Confidential Administrative Record |
| DHS: | Department of Homeland Security |
| EEOC: | U.S. Equal Employment Opportunity Commission |
| FLETF: | Forced Labor Enforcement Task Force |
| FOIA: | Freedom of Information Act |
| LES: | Law Enforcement Sensitive |
| PAR: | Public Administrative Record |
| SOP: | FLETF's Standard Operating Procedures |
| UFLPA: | Uyghur Forced Labor Prevention Act |
| USCIT: | U.S. Court of International Trade |
| USTR: | U.S. Trade Representative |
| XUAR: | Xinjiang Uyghur Autonomous Region |

[3] The State Department has characterized the atrocities in the XUAR as genocide.  See Press Release, A. Blinken, Sec'y of State, The Signing of the Uyghur Forced Labor Prevention Act (Dec. 23, 2021), https://www.state.gov/the-signing-of-the-uyghur-forced-labor-prevention-act/ ("[The President] today signed the [UFLPA], underscoring the United States' commitment to combatting forced labor, including in the context of the ongoing genocide in Xinjiang."); Press Release, M. Pompeo, Sec'y of State, Determination of the Secretary of State on Atrocities in

to "strengthen the prohibition against the importation of goods made with forced labor, including by ensuring that the Government of the People's Republic of China does not undermine the effective enforcement of section 307 of the Tariff Act of 1930." Pub. L. 177-78, § 1(1), 135 Stat. at 1525.  Section 307 of the Tariff Act, as amended, moreover, prohibits the importation of merchandise created wholly or in part by forced labor.  See Tariff Act of 1930, Pub. L. 71-361, § 307, 46 Stat. 590, 689–90 (as amended at 19 U.S.C. § 1307) ("Section 307").  The FLETF's addition of Ninestar to the Entity List of the UFLPA presumptively prohibits, under section 307, the importation into the United States of any goods produced by Ninestar.  See UFLPA § 3(a), 135 Stat. at 1529.  The FLETF also provided a procedure for listed entities to request removal.  See Listing Decision, 88 Fed. Reg. at 38082.

Plaintiffs filed suit before the U.S. Court of International Trade ("USCIT") challenging the Listing Decision as arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  See Compl., Aug. 22, 2023, ECF No. 8.  In its first opinion dated November 30, 2023, the court held that Plaintiffs were likely to establish the USCIT's subject matter jurisdiction under 28 U.S.C. § 1581(i).  See Ninestar Corp. v. United States ("Ninestar I"), 47 CIT __, 666 F. Supp. 3d 1351 (2024), ECF No. 58.  In its second opinion dated February 27, 2024, the court denied Plaintiffs' Motion for Preliminary Injunction, which requested a stay of the Listing Decision.  See Ninestar Corp. v. United States ("Ninestar II"), 48 CIT __, 687 F. Supp. 3d 1308 (2024), ECF No. 121 (public version).  The embargo against

Xinjiang (Jan. 19, 2021), https://2017-2021.state.gov/determination-of-the-secretary-of-state-on-atrocities-in-xinjiang/ (concluding that the atrocities in the XUAR constituted "genocide against the predominantly Muslim Uyghurs and other ethnic and religious minority groups in Xinjiang" and that "this genocide is ongoing").

Court No. 23-00182                                                                  Page 5
***PUBLIC VERSION***

Plaintiffs remains in force.

Now before the court are three distinct but interrelated procedural questions about the Confidential Administrative Record ("CAR"), the Fourth Amended Judicial Protective Order ("APO"),[4] and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[5] This omnibus opinion resolves all three outstanding issues. Additionally, much of this litigation in the last few months has proceeded entirely under seal. This opinion brings those developments, as well as important questions concerning agency coordination in the context of a newly enacted statute, to public light.

First, in their Motion to Unseal and Unredact the CAR, Dec. 4, 2023, ECF No. 60, Plaintiffs request that (i) the court unseal the CAR for public docketing, and (ii) the court review, and unredact, Defendants' assertions of informant privilege in the CAR. As that motion was pending before the court, one member agency of the FLETF produced documents containing privileged information in response to a FOIA request filed by Plaintiffs' counsel. Another member agency produced more documents that contained the same privileged information about three months later. Plaintiffs contend that these FOIA productions resulted in partial waiver of the informant privilege in the CAR here. Defendants maintain that waiver should not result and further request that the court order the return and destruction of all copies of the FOIA productions.

---

[4] The procedural history of this litigation includes multiple iterations of the CAR and the APO. As discussed later in the opinion, see infra Background section I, the operative versions are the Fourth CAR, Jan. 19, 2024, ECF No. 100-2, and the Fourth APO, June 27, 2024, ECF No. 161. All references to the CAR and APO in this opinion, unless specified otherwise, refer to the operative versions.

[5] FOIA requires federal agencies to disclose their records upon request by private citizens, subject to nine exemptions that can be asserted by the agency producing responsive documents. See generally infra Discussion section I.C.2.

Plaintiffs' Motion to Unseal and Unredact the CAR is granted in part and denied in part. As to the Motion to Unseal, one portion of the CAR is unsealed for public docketing. As to the Motion to Unredact, certain formerly redacted portions of the CAR are now unredacted to Plaintiffs' counsel. Those newly unredacted portions otherwise remain confidential to Plaintiffs themselves and the general public. As part of that holding, the court reasons that Defendants' FOIA productions were inadvertent but nonetheless resulted in a partial waiver of the informant privilege. That waiver is carefully limited and subject to the APO's strictures. In addition, the court exercises its inherent authority to order Plaintiffs' counsel and any person to whom Plaintiffs' counsel has disseminated the FOIA productions to destroy all copies of such productions. That order serves a compelling end of preserving the integrity of the APO, is reasonably tailored, and is without prejudice to any future litigation arising out of FOIA, 5 U.S.C. § 552. See infra Discussion part I.

Second, the FOIA productions and the court's in camera review have given rise to ancillary questions concerning the CAR's completeness. The court declines to supplement the CAR at this stage of the litigation, without prejudice to other issues of completeness that may ripen at a later time. See infra Discussion part II.

Third and finally, Defendants petition the court to redact a statement made by Plaintiffs' counsel at a prior public hearing from the public transcript. Defendants argue that the statement tended to reveal sealed information in the CAR. The court denies the request and clarifies the standard for violating the APO's terms on confidentiality. See infra Discussion part III.

## BACKGROUND

The court presumes familiarity with the legal background and the facts of this case. See

Ninestar II, 687 F. Supp. 3d at 1315–21.  What follows here are the facts and procedural history

that are necessary to resolve Plaintiffs' Motion to Unseal and Unredact and other ripe issues

relating to the agency record.

### I.    *Motion to Unseal and Unredact*

On August 22, 2023, Plaintiffs filed the initial Complaint initiating this action before the

USCIT.  See Compl.  Plaintiffs stated that they were "unaware of any facts relating to their

respective businesses or otherwise supporting such an allegation," and that "[w]ithout learning the

bases upon which Defendants added Plaintiffs to the UFLPA Entity List, Plaintiffs [were] unable

meaningfully to seek removal from the list or otherwise challenge this final agency action."  See

id. ¶ 45.  The initial Complaint pleaded one cause of action for arbitrary and capricious agency

action violating the APA, 5 U.S.C. § 706(2)(A), for failure to provide "any explanation[] for

adding Plaintiffs to the UFLPA Entity List."  Compl. ¶ 62.  Plaintiffs further asserted that they

were not "able to seek relief under the APA challenging the action as contrary to the evidence in

the administrative record, as Plaintiffs know neither the bases for the charge, nor the contents of

the record."  Id. ¶ 46.  "After filing," they continued, "Plaintiffs will seek the record and, when

appropriate, seek additional relief."  Id.

On August 28, 2023, the parties also filed a stipulated protective order.  See Mot. for

Protective Order, Aug. 28, 2023, ECF No. 14.  The court issued the first protective order on August

31, 2023.  See Order, Aug. 31, 2023, ECF No. 18.

### A.    *Filing of the CAR and APO*

In USCIT cases involving an agency record that fall within the jurisdiction of 28 U.S.C.

§ 1581(i), the agency must file the record within forty days after the date of service of the summons

and complaint.  See 28 U.S.C. § 2635(d)(1).  Defendants timely filed public and confidential

versions of the administrative record on October 3, 2023.  See Pub. Admin. R., Oct. 3, 2023, ECF

No. 24-1 ("PAR"); First CAR, Oct. 3, 2023, ECF No. 25-1.  That version of the CAR was almost

entirely redacted under the label of "Confidential/[Law Enforcement Sensitive]."  See ECF No.

25-1.  Plaintiffs moved to compel production of a fuller record, see Mot. to Compel Production of

the Admin. R., Oct. 17, 2023, ECF No. 33, and Defendants the next day moved to amend the

protective order, see Mot. to Am. the Protective Order, Oct. 18, 2023, ECF No. 34.  The court held

a status conference and later ordered (i) that an amended version of the protective order be deemed

as filed, (ii) that Defendants produce an updated CAR, (iii) that Plaintiffs' motion to compel was

dismissed as moot, and (iv) that Defendants file a privilege log of all information withheld in the

updated CAR.  See Status Conference, Oct. 24, 2023, ECF No. 38; Order, Oct. 24, 2023, ECF No.

39; First APO, Oct. 24, 2023, ECF No. 40.

     Defendants filed the Second CAR pursuant to that First APO.  See Second CAR, Oct. 24,

2023, ECF No. 41.  Most of the information in the Second CAR that was formerly redacted as

"Confidential/[Law Enforcement Sensitive]" in the First CAR was accessible to Plaintiffs' counsel

but not Plaintiffs themselves.  Certain other portions of that record remained redacted and therefore

inaccessible to Ninestar's counsel and the court.  As ordered by the court, Defendants filed a

privilege log asserting "Law Enforcement Privilege/Informant Privilege" as to all redacted

information in the record.  See Priv. Redaction Log at 1–2, Oct. 26, 2023, ECF No. 43.[6]  The next

---

[6] Defendants note in that filing that "[a]dministrative records do not include privileged materials"
and "therefore privilege logs are not typically required."  See id. at 1 n.1.  "Courts have allowed
discovery, however, in situations where," like here, "'those challenging agency action have

day, pursuant to 28 U.S.C. § 2635(d)(2)[7] and USCIT Administrative Order No. 21-01, the court

ordered Defendants to file paper copies of the fully unredacted Second CAR and to move to treat

such submissions as highly sensitive documents.[8]  <u>See</u> Order, Oct. 27, 2023, ECF No. 44.

Defendants so moved, <u>see</u> Mot. to Treat Subm. as Highly Sensitive Doc., Oct. 30, 2023, ECF No.

45, and the court granted that motion, <u>see</u> Order, Oct. 30, 2023, ECF No. 49.  Paper copies of the

fully unredacted administrative record are now stored securely with the court for <u>in camera</u> review.

### B.    *Procedural History*

On December 4, 2023, Plaintiffs filed the instant Motion to Unseal and Unredact the

Administrative Record.  <u>See</u> Mot. to Unseal & Unredact Admin. R., Dec. 4, 2023, ECF No. 60

("Pls.' Br.").  The court held a status conference on the following day to discuss the next steps in

the litigation, <u>see</u> Status Conference, Dec. 5, 2023, ECF No. 63, after which Plaintiffs moved to

amend the initial Complaint to add three new causes of action, <u>see</u> Mot. for Leave to File Am.

Compl., Dec. 6, 2023, ECF No. 64.  The court granted the motion the next day, and the Amended

---

contended the record was incomplete.'"  <u>Tafas v. Dudas</u>, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008)
(quoting <u>Pub. Power Council v. Johnson</u>, 674 F.2d 791, 794 (9th Cir. 1982)).

[7] "The agency shall identify and transmit under seal to the clerk of the court any document, comment, or other information that was obtained on a confidential basis and that is required to be transmitted to the clerk under paragraph (1) of this subsection. . . . The confidential or <u>privileged</u> status of such material shall be preserved in the civil action, but the court may examine such material in camera and may make such material available under such terms and conditions as the court may order." <u>Id.</u> § 2635(d)(2) (emphasis added).

[8] Per USCIT Administrative Order 21-01, highly sensitive documents "are limited to documents containing information that has such a high level of sensitivity as to present a clear and compelling need to avoid filing on the existing CM/ECF system, such as certain privileged information or information the release of which could pose a danger of physical harm to any person."  Admin. Order 21-01, at 1.  Due to their sensitive nature, such documents "must be filed in paper format" and "may not be uploaded to CM/ECF."  <u>Id.</u> at 2.

Complaint was deemed filed.  See Order, Dec. 6, 2023, ECF No. 68; see also Am. Compl., Dec.

6, 2023, ECF No. 69.  Count Two of the Amended Complaint alleges arbitrary and capricious

agency action as unsupported by substantial evidence; Count Three alleges agency action in excess

of statutory authority for FLETF's use of a burden of proof that is below preponderance of the

evidence; and Count Four alleges agency action in excess of statutory authority for having applied

the UFLPA's provisions retroactively.  See Am. Compl. ¶¶ 69–79.

      Defendants filed their response to Plaintiffs' Motion to Unseal and Unredact on January 8,

2024.  See Defs.' Resp. in Opp. to Mot. to Unseal & Unredact, Jan. 8, 2024, ECF No. 85 ("Defs.'

Resp.").   In their response, Defendants agreed to the disclosure of certain portions of the

confidential record to not only Plaintiffs' counsel but also Plaintiffs themselves.  See id. at 3.  On

January 9, 2024, Plaintiffs filed a motion seeking immediate leave for such disclosure.  See Mot.

for Leave to Disclose Non-Conf. Info., Jan. 9, 2024, ECF No. 88.  The court denied the motion as

premature and requested a proposal for modifying the First APO.  See Paperless Order, Jan. 10,

2024, ECF No. 90.  Plaintiffs also formally replied to Defendants' response brief on January 15,

2024.  See Pls.' Reply in Supp. of Mot. to Unseal & Unredact, Jan. 15, 2024, ECF No. 92 ("Pls.'

Reply").

      The parties each filed proposed modifications to the First APO.  See Pls.' Resp. to Order,

Jan. 16, 2024, ECF No. 94; Defs.' Resp. to Order, Jan. 16, 2024, ECF No. 95.  Defendants also

filed the Third CAR, Jan. 16, 2024, ECF No. 96.  The Third CAR redesignated particular portions

of the Second CAR under a new label of "Ninestar Confidential Information," which referred to a

new designation of confidentiality under the proposed new APO that would remain sealed from

public view but become accessible to Plaintiffs' corporate directors and officers.  The court

adopted Defendants' modifications, which included the "Ninestar Confidential Information"

designation and in turn allowed Plaintiffs' counsel to share certain sealed information with their

clients. <u>See</u> Order, Jan. 16, 2024, ECF No. 97.  The Second APO was deemed filed on the same

day. <u>See</u> Second APO, Jan. 16, 2024, ECF No. 98.

On January 18, 2024, the court held a hearing on Plaintiffs' Motion to Unseal and Unredact

that was closed in its entirety. <u>See</u> Hearing, Jan. 18, 2024, ECF No. 99.[9]  Defendants filed the

Fourth CAR, which corrected a few clerical errors in the Third CAR, the next day. <u>See</u> ECF No.

100-2.  The Fourth CAR, hereinafter referred to as simply the CAR, is the currently operative

version of the administrative record.[10]

## II.    *Request to Redact the Transcript of the Preliminary Injunction Hearing*

On March 4, 2024, Defendants filed a request to redact a portion of the transcript of the

public portion of the hearing on the Motion for Preliminary Injunction and Motion to Unseal and

Unredact occurring on January 18, 2024. <u>See</u> Defs.' Request to Redact, Mar. 4, 2024, ECF No.

122.  The request was filed pursuant to USCIT Administrative Order No. 08-01, which sets out a

procedure for redacting "sensitive information."  Defendants sought to redact the following

statement by Plaintiffs' counsel at the public hearing:

---

[9] The Motion to Unseal and Unredact was argued in the second half of that hearing.  The first half
of the hearing, which was open in part and closed in part, concerned Plaintiffs' Motion for
Preliminary Injunction.  As has been noted, the court denied the Motion for Preliminary Injunction
in a previous opinion. <u>See</u> <u>Ninestar II</u>, 687 F. Supp. 3d at 1345.

[10] The court also requested that the parties file letters recounting all authorities cited at the hearing
and invited the parties to make post-hearing submissions.  All parties made such filings on January
25, 2024. <u>See</u> Pls.' Post-Hearing Subm., Jan. 25, 2024, ECF No. 104; Pls.' Post-Hearing Letter,
Jan. 25, 2024, ECF No. 103; Defs.' Post-Hearing Subm., Jan. 25, 2024, ECF No. 106; Defs.' Post-
Hearing Subm., Jan. 25, 2024, ECF No. 107.

> There is no Ninestar document that says that Ninestar hires Uygh[u]r laborers in
> Xinjiang and transports them to Ninestar facilities and works with the government
> to do so.  There is no PRC document and no media document to substantiate that.

Proposed Transcript, Mar. 4, 2024, ECF No. 122-1.  Plaintiffs filed a brief opposing Defendants'

request on March 5, 2024.  See Pls.' Opp'n to Defs.' Request, Mar. 5, 2024, ECF No. 123.

### III.    FOIA Productions and Later Proceedings

On August 6, 2023, Plaintiffs' counsel submitted requests pursuant to FOIA, 5 U.S.C.

§ 552, to the U.S. Trade Representative ("USTR") and U.S. Department of State ("State

Department"), among other agencies.  ECF No. 131, at 4 n.1.  Plaintiffs' counsel's requests sought

agency records "regarding the decision of the Forced Labor Enforcement Task Force to add

Ninestar Corporation and eight Zhuhai-based entities to the Uyghur Forced Labor Prevention Act

Entity List."  See Email at 1, Mar. 20, 2024, ECF No. 124-3.  Those FOIA requests were submitted

nearly two weeks before filing the complaint initiating this litigation.  See Compl., Aug. 22, 2023,

ECF No. 8.

### A.    Production by the U.S. Trade Representative

On March 14, 2024, counsel for Defendants became aware of a production of documents

by USTR to Plaintiffs' counsel in response to a request filed by Plaintiffs' counsel pursuant to

FOIA.  See Email at 1, Mar. 20, 2024, ECF No. 124-4.  That FOIA production ("USTR

Production") occurred on January 24, 2024.  See id.

Defendants stated that the USTR Production contained documents that, "at minimum,

inadvertently disclosed information that would tend to identify the confidential informant in this

case," id., thereby potentially undermining the informant privilege that Defendants asserted over

the redacted portions of the CAR.  They further represented that "[i]mmediately after learning of

this inadvertent disclosure, counsel for the Government conferred with the FLETF member agencies, including USTR, to ascertain the extent of the disclosure and whether any additional disclosures were made to Ninestar's counsel, by any agency, that could impact this case." Id.[11]

On March 18, 2024, USTR emailed Plaintiffs' counsel stating that it had "inadvertently disclosed information that could reasonably be expected to disclose the identity of a confidential source," citing to 5 U.S.C. § 552(b)(7)(D), and requesting that Plaintiffs' counsel disregard references to an identifying word on various pages of the USTR production. See Email at 1, Mar. 20, 2024, ECF No. 124-2. One day later, the USTR FOIA Office emailed Plaintiffs' counsel and "instruct[ed]" them, as well as "any person to whom you have disseminated the FOIA production, to immediately destroy all copies of such production." ECF No. 124-3, at 1.

Defendants' counsel notified the court of the January 24, 2024 production via email on March 19, 2024. See ECF No. 124-2, at 1. Plaintiffs' counsel did not notify the court or Defendants of the USTR Production before that date. On the day after Defendants' email, Plaintiffs filed their Confidential Motion for Leave to File a Supplemental Brief in Support of Their Motion to Unseal and Unredact the Administrative Record, Mar. 20, 2024, ECF No. 124. Plaintiffs argued that the USTR Production resulted in waiver of the redactions in the CAR, and that the USTR's instruction to destroy the documents was without authority and could not be enforced by this court. See id. The court ordered the parties to continue briefing the waiver and clawback issues, deemed Plaintiffs' Supplemental Brief to be filed, ordered the delivery of the USTR Production pursuant to USCIT Administrative Order 21-01, scheduled a status conference

---

[11] USTR is not a named defendant in the Complaint but is a member agency of the FLETF. See supra note 1.

for the following week, and stayed all briefing regarding Plaintiffs' Motion for Judgment on the

Agency Record, Jan. 31, 2024, ECF No. 109, and Motion to Complete or Supplement the

Administrative Record, Jan. 31, 2024, ECF No. 108.  <u>See</u> Order at 2, Mar. 20, 2024, ECF No. 125.

The court noted that it "may, at a later date, issue a public order discussing the USTR Documents."

<u>Id.</u> at 2 n.2.

      Defendants responded to Plaintiffs' Supplemental Brief, <u>see</u> Defs.' Suppl. Resp., Mar. 25,

2024, ECF No. 128, to which Plaintiffs replied, <u>see</u> Pls.' Suppl. Reply, Mar. 29, 2024, ECF No.

131.  Defendants also filed a notice, which included a letter dated March 27, 2024 from Ninestar's

Chairman to the FLETF.  <u>See</u> Defs.' Notice re: Status Conference, Mar. 29, 2024, ECF No. 132.

The court then held a status conference on April 1, 2024.  <u>See</u> Conf. Status Conference, Apr. 2,

2024, ECF No. 134.  That same day, Plaintiffs also filed the email, sent from USTR to Plaintiffs'

counsel on January 24, 2024, that constituted USTR's final response to Plaintiffs' counsel's FOIA

request.  <u>See</u> Email from M. Ricker, Apr. 1, 2024, ECF No. 133.

      At the April 1, 2024 status conference, Plaintiffs' counsel also represented to the court that

Plaintiffs will file an administrative petition to the FLETF requesting Plaintiffs' delisting from the

Entity List.  <u>See</u> ECF No. 134.  The following day, the court ordered Plaintiffs to file a status report

concerning their delisting request within ten days.  <u>See</u> Order at 2, Apr. 2, 2024, ECF No. 136.

Without intimating a view by the court, the court also inquired about whether such a delisting

request could result in a stay or resolution of the immediate litigation.  <u>See</u> <u>id.</u>  Plaintiffs' status

report indicated that Plaintiffs were "working on that petition expeditiously but [could not] at [that]

time commit to filing by a particular date."  Pls.' Status Report at 2, Apr. 12, 2024, ECF No. 143.

Court No. 23-00182                                                                              Page 15
**PUBLIC VERSION**

   B.  *Missing Document in the Unredacted CAR*

  In its April 2, 2024 procedural order, the court also identified references to a missing document in the unredacted CAR (the "Footnote Document") and stated that "it appear[ed] that the CAR requires the addition of a document for judicial review of the 'whole record.'"  Order at 2, ECF No. 136 (quoting 5 U.S.C. § 706).  Those references were discoverable only by the court's in camera review; Plaintiffs' counsel could not have accessed information that was redacted pursuant to the informant privilege as then asserted.  See id.  The court ordered Defendants to deliver the Footnote Document to the court pursuant to USCIT Administrative Order 21-01 so that the court could, after in camera review, determine whether the Footnote Document was part of the FLETF's administrative record.  See id. at 2–3.[12]  Defendants did so.  See Defs.' Mot. to Treat Subm. as Highly Sensitive Doc., Apr. 4, 2024, ECF No. 139.

  Defendants separately argued that the Footnote Document should not form part of the

---

[12] In particular, the court stated:

  [[

  ]]

Conf. Order at 2–3, Apr. 2, 2024, ECF No. 135 (footnote omitted).

CAR.  See Defs.' Resp. to Ct.'s Order, Apr. 4, 2024, ECF No. 138.  The court reviewed the

Footnote Document in camera.  In a subsequent order, the court stated that, "[i]ntimating no view

at this time," it "will resolve whether the [Footnote] Document is part of the CAR and, if so,

whether such privileges are validly asserted upon its resolution of Plaintiffs' Motion to Unseal and

Unredact."  Order at 2, Apr. 4, 2024, ECF No. 140.

### C.      Production by the U.S. Department of State

On April 19, 2024, the State Department produced nine pages of partially redacted

documents to Plaintiffs' counsel pursuant to the same FOIA request that Plaintiffs' counsel had

submitted to USTR (the "State Production").  See Letter from J. Rosenbaum at 1, Apr. 23, 2024,

ECF No. 147-2.  Plaintiffs' counsel notified the court and Defendants' counsel of the State

Production via its notice filed on April 23.  See Pls.' Notice re: Additional FOIA Production, Apr.

23, 2024, ECF No. 147.[13]

The court ordered that Defendants respond to Plaintiffs' notice, see Paperless Order, Apr.

23, 2024, ECF No. 148, and Defendants did so, see Defs.' Resp. to Pls.' Notice, Apr. 25, 2024,

ECF No. 149.  Per that filing, the State Department learned of the State Production on April 23,

2024.  See id. at 4.  Among other arguments, Defendants argued that the State Production was "a

by-product" of the USTR Production and, "like that prior disclosure, was inadvertent."  Id. at 2.

On the same day of Defendants' response brief, the State Department sent an email to Plaintiffs'

counsel "instruct[ing]" them, "and any person to whom [they] have disseminated the FOIA

production, to immediately destroy all copies of such production."  Decl. of S.C. Weetman Ex. 6,

---

[13] Like the USTR, the State Department is not a named defendant in the Complaint but is a member
agency of the FLETF.  See supra note 1.

Court No. 23-00182                                                                                Page 17
**PUBLIC VERSION**

Apr. 25, 2024, ECF No. 149-1.  The court ordered further briefing concerning the State Production,

see Paperless Order, Apr. 26, 2024, ECF No. 150; Order, May 8, 2024, ECF No. 153, and the

parties filed a reply and sur-reply, see Pls.' Reply re: Pls.' Notice, Apr. 30, 2024, ECF No. 151;

Defs.' Sur-Reply, May 13, 2024, ECF No. 154.

### D.      *Later Filings Regarding the Delisting Petition and APO*

On May 3, 2024, Plaintiffs submitted another status report stating that they were still unable

to specify a timeline by which they would file a delisting petition to the FLETF but would be "in

a better position to do so" by the end of May.  See Pls.' Status Report at 2, May 3, 2024, ECF No.

152.  The court then ordered that briefing on Plaintiffs' Motion for Judgment on the Agency

Record and Motion to Complete or Supplement the Administrative Record remain stayed and that

Plaintiffs file another status report regarding the delisting request by June 3.  See Order, May 8,

2024, ECF No. 153.

On May 17, 2024, the parties jointly moved to amend the Second APO in order to clarify

that sealed information may be used in preparing the delisting petition to the FLETF by July 1,

2024.  See Joint Mot. to Am. the Second APO, May 17, 2024, ECF No. 155.  The court granted

and docketed the Third APO, May 20, 2024, ECF No. 157.  On June 27, 2024, Plaintiffs moved

to amend the Third APO in order to extend the delisting petition deadline to July 22, 2024.  See

Pls.' Mot. to Am. the Third APO, June 27, 2024, ECF No. 159.  The court granted and docketed

the Fourth APO, June 27, 2024, ECF No. 161.  The Fourth APO, hereinafter referred to as simply

the APO, is the currently operative judicial protective order.

### DISCUSSION

Plaintiffs have established the court's subject matter jurisdiction under 28 U.S.C. § 1581(i).

See Ninestar I, 666 F. Supp. 3d at 1363; Ninestar II, 687 F. Supp. 3d at 1322.

This omnibus opinion proceeds in three parts. First, the court grants in part and denies in part Plaintiffs' Motion to Unseal and Unredact. All ancillary issues relating to the USTR and State Productions are resolved. Next, the court evaluates related questions of whether the CAR requires supplementation and concludes that the record, at this juncture, is complete. Finally, the court denies Defendants' request to redact the public transcript and clarifies the applicable standard under the APO.

## I.    *Motion to Unseal and Unredact*

The court addresses Plaintiffs' Motion to Unseal and Unredact in two parts. First, in the Motion to Unseal component, Ninestar requests that the court unseal the entire CAR, excluding any redacted privileged material, and make the record available to the public. See Pls.' Br. at 4–5. Second, in the Motion to Unredact component, Ninestar challenges the Government's assertion of informant privilege in the CAR and asks that the court unredact the CAR where the privilege does not apply. See id. at 14–15.

With important qualifications, both requests are granted in part and denied in part. Defendants shall file a revised administrative record consistent with this opinion. At this stage of the litigation, the court expresses no view as to the quantum or overall weight of any record evidence supporting the FLETF's decision to add Plaintiffs to the UFLPA Entity List. The court's analysis in this opinion is limited to determining the appropriate contents, scope, and informational restrictions of the administrative record.

### A.    *Overview of APO and Privilege*

Before proceeding to the merits of Plaintiffs' motion, the court summarizes the various

tiers of restricted information at play in this case.

The administrative record in this case is composed of "non-privileged documents that were submitted by DHS to the voting Member Agencies of the [FLETF] in support of DHS's recommendation to add [Plaintiffs] to the [UFLPA] Entity List and which reflect the FLETF Member Agencies final vote and decision to add Ninestar to the UFLPA Entity List." ECF No. 100-2, at 2–3. Certain of these documents, or portions thereof, are either (1) sealed pursuant to the APO or (2) redacted pursuant to an evidentiary privilege. The rest of the record is public. Whereas the PAR comprises all public information, the CAR comprises all public information plus all information sealed pursuant to the APO. By contrast, any information redacted pursuant to an evidentiary privilege is not part of the record.

The two types of restricted information in the record warrant further explanation. The first type is sealed information. Sealed information is designated under one of two labels: "Confidential Information" and "Ninestar Confidential Information." The APO defines the two sealing designations as follows:

1. *Confidential Information*. If a document or portion thereof contains "law enforcement sensitive information or other similarly sensitive government information, including information designated as 'for official use only,'" then it is designated as "Confidential Information." APO ¶ 1.[14] Confidential Information is accessible only to the parties'

---

[14] The APO more fully defines "Confidential Information" to mean:

> [I]nformation, data, and documents the disclosure of which to or by the receiving party would, in the good faith belief of the producing party, result in the disclosure of one or more of the following categories of information: (1) proprietary, business, financial, technical, trade secret, or commercially sensitive information; (2)

counsel and certain associated personnel.  See id. ¶¶ 2–4.  The APO prohibits sharing

Confidential Information with anyone else, including any officer, director, shareholder,

or employee of Plaintiffs Ninestar and its corporate affiliates.  See id. ¶ 6.

2. *Ninestar Confidential Information*.  Like Confidential Information, "Ninestar

Confidential Information" also includes "law enforcement sensitive information or

other similarly sensitive government information, including information designated as

'for official use only.'"  See id. ¶¶ 1, 7.  The difference is that the parties have agreed

to make Ninestar Confidential Information accessible not only to the parties' counsel

(and certain associated personnel), but also to "officers or directors" of Plaintiffs

Ninestar and its corporate affiliates.  Id. ¶ 7; see also ECF No. 85.  The APO prohibits

sharing Ninestar Confidential Information with anyone else.  See APO ¶¶ 7, 10.

Additionally, "[t]he burden rests on the Designating Party," which is the Government, "to

demonstrate that the designation is proper."  Id. ¶ 25.  If a document or portion thereof is not sealed

under either of these designations, it is publicly available and forms part of the PAR.

---

information that any party or person is prohibited from releasing publicly pursuant
to contracts, applicable statutes, or applicable regulations, or directives from the
Government concerning classified or other similarly sensitive information; (3) law
enforcement sensitive information or other similarly sensitive government
information, including information designated as "for official use only;" (4) private
information that is otherwise protected from disclosure under applicable law
including, but not limited to, personnel files; and (5) other confidential research,
development, or commercial information as set forth in USCIT Rule 26(c)(1)(G).

Id.  Only the third basis for "Confidential Information" concerning law enforcement sensitive
information is at issue in Plaintiffs' Motion to Unseal and Unredact.  As discussed later in the
opinion, the parties dispute whether particular information on the record qualifies as "law
enforcement sensitive" and, in turn, whether the "Confidential Information" designation is proper.
See infra Discussion section I.A.

The second type of restricted information is privileged information.  In particular, Defendants assert the informant privilege over certain record evidence.  See ECF No. 43.  The informant privilege refers to "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  Roviaro v. United States, 353 U.S. 53, 59 (1957); see also infra Discussion section I.C.1.  Any information in the CAR that lawfully falls within Defendants' asserted privilege is redacted from the view of Plaintiffs, including clients and counsel, as well as the public.  Privileged information may be redacted in documents that are otherwise designated as Confidential Information or Ninestar Confidential Information.  It is the privilege, not the APO designations, that governs whether information should be redacted.  See APO ¶ 13 ("This [APO] is not intended to address or govern claims of privilege or work product that may otherwise be asserted by any of the parties.").

The below table summarizes the four categories of informational restriction in this case and who can access each category:

| Table 1: Categories of Restricted Information | | | |
| --- | --- | --- | --- |
| Category | Privileged? | APO Designation | Who Can Access This Record Evidence? |
| 1. | Privileged | Not applicable | Defendants' counsel |
| 2. | Not privileged | Confidential Information | Plaintiffs' counsel<br>Defendants' counsel |
| 3. | Not privileged | Ninestar Confidential Information | Plaintiffs' directors and officers<br>Plaintiffs' counsel<br>Defendants' counsel |
| 4. | Not privileged | None | General public |

For ease of reference, the court will refer to these enumerated categories throughout the opinion.

> **B.    Motion to Unseal**

Plaintiffs first move to unseal the entire CAR, excluding any privileged information.  That

Court No. 23-00182                                                                    Page 22
*PUBLIC VERSION*

would represent a shift to Category 4 of all information currently in Categories 2 and 3. See supra

Table 1: Categories of Restricted Information. The court denies their request to unseal in large

part and grants it only as to one document detailing the FLETF's standard operating procedures.

See CAR 220–28. Next, Plaintiffs request that any Confidential Information be redesignated as

Ninestar Confidential Information. That would represent a move from Category 2 to Category 3.

See supra Table 1: Categories of Restricted Information. That request is denied.

> *1.*      ***The Sealed Information in Pages 1 Through 219 of the CAR Is***
> ***Law Enforcement Sensitive and Therefore Remains Sealed***

First, Plaintiffs argue that Defendants have not established that the sealed information is

"law enforcement sensitive" ("LES") and, in turn, that the sealed information fails to qualify as

either Confidential Information or Ninestar Confidential Information under the APO. See Pls.'

Br. at 4–14. As explained above, see supra section I.A, the "Confidential Information" and

"Ninestar Confidential Information" designations apply to "[LES] information or other similarly

sensitive government information, including information designated as 'for official use only.'"

APO ¶ 1. Information that is neither LES nor "other similarly sensitive government information,"

then, cannot be designated as either Confidential Information or Ninestar Confidential Information

and must be made public. In Plaintiffs' view, because the sealed information falls in neither

category, the Confidential Information and Ninestar Confidential Information designations should

be removed from the entire CAR.

As to pages 1 to 219 of the CAR, Defendants have met their burden of establishing that the

sealed information is LES. In a declaration, Defendants accurately describe the sealed information

in those pages as constituting "open-source documents, information that a confidential source

provided to CBP and that CBP shared with the FLETF, details of CBP's communications with the

Court No. 23-00182                                                          Page 23
**PUBLIC VERSION**

confidential source, CBP's analysis of information provided by the confidential source and

assessment that Ninestar meets the UFLPA Entity List criteria, and internal FLETF analysis of the

evidence gathered."  See Decl. of C. Brzozowski ¶ 9, Jan. 8, 2024, ECF No. 85-2 ("Brzozowski

Declaration") (footnote omitted).  That declaration goes on:

> If disclosed, the information would reveal the FLETF's sources, methods, and
> significant insights into how it conducts investigations.  It would also reveal the
> FLETF's judgments and decision-making, including the facts and evidence the
> FLETF or its members deem credible and relevant when making UFLPA Entity
> List determinations.  Accordingly, and particularly when taken as a whole,
> disclosure of this information would allow the PRC government and corporations
> that engage in forced labor practices to evade FLETF investigations and undermine
> the FLETF's mission.

Id.  That context establishes that the sealed information is LES or, at the very least, similarly

sensitive government information.

Plaintiffs' rebuttal is unconvincing.  They contend that the sealed information is not LES

because public disclosure would not risk circumvention of the FLETF's efforts.  In particular, "the

law enforcement techniques used by FLETF here—speaking with a confidential informant and

mining public records—are hardly a secret."  Pls.' Br. at 6.  That may be so, but disclosure of

statements made by an informant or public records will reveal the FLETF's deliberative process

and judgment, as Defendants note.  See ECF No. 85-2 ¶ 9.  And while it is well known that

intelligence agencies "routinely rely on public and open-source information," ACLU of Mich. v.

FBI, 734 F.3d 460, 464 n.3 (6th Cir. 2013), Defendants in the same declaration discuss sealed

evidence that strongly suggests that disclosure of this case's open-source record information

Court No. 23-00182                                                                    Page 24
*PUBLIC VERSION*

presents a heightened circumvention risk.  See ECF No. 85-2 ¶ 10.[15]  Because public disclosure of

the sealed material would, if disclosed, lead to circumvention of the FLETF's law enforcement

efforts, all sealed information in pages 1 through 219 is properly designated as LES and, by

extension, either Confidential Information or Ninestar Confidential Information.  See APO ¶ 1.

> **2.    *The Sealed Information in Pages 220 Through 228 of the CAR Is Not Law Enforcement Sensitive and Therefore Is Unsealed***

Defendants have not, however, established why pages 220 through 228 of the CAR are

LES or similarly sensitive government information. Those pages constitute a document outlining

the FLETF's standard operating procedures ("SOP Document"), which describe the step-by-step

logistics of how the FLETF's member agencies add entities to the Entity List and reconsider such

additions.  See CAR 220–28.  Whereas the disclosure of sealed information in pages 1 through

219 would reveal the FLETF's deliberative process as to the merits of adding an entity to the Entity

List, disclosing the SOP Document would reveal only logistical information about how the FLETF

---

[15] In particular, the Brzozowski Declaration explains that [[

                                  ]] and that [[

                   ]].  Id.

Plaintiffs object to this reasoning on two grounds, neither of which is availing.  See Pls.' Reply at
8.  [[

                                                                                          ]].

Court No. 23-00182                                                          Page 25
**PUBLIC VERSION**

member agencies coordinate with one another.  Because a soon-to-be listed entity has no ability to

affect the interagency logistics preceding its addition, disclosing the SOP Document is not likely

to reveal techniques and procedures used by law enforcement that could be used to circumvent the

law.  The SOP Document is therefore not LES.

      The SOP Document does include a watermark stating "for official use only."  <u>See</u> CAR

220–28.  That watermark may qualify the SOP Document "as other similarly sensitive government

information, including information designated as 'for official use only.'"  APO ¶ 1.  But in

discussing the APO, Defendants' counsel stated at the October 24, 2023 status conference that

Defendants did not "intend[] to give [themselves] the capability of . . . broadly identifying

everything as confidential."  Status Conference at 18:08–16, Oct. 24, 2023, ECF No. 38.  Beyond

the fact that the SOP Document was stamped with the watermark, Defendants offer no substantive

reason for why it was stamped either in their filing or in their appended declaration.  <u>See</u> ECF No.

85 (omitting any discussion of pages 220 to 228); ECF No. 85-2 (same).  Defendants have not

independently met their burden to demonstrate that the SOP Document should be sealed.  <u>See</u> APO

¶ 25.  Pages 220 to 228 of the CAR are accordingly unsealed.

      ***3.***    ***The CAR Correctly Apportions Record Evidence Designated as Confidential Information and Record Evidence Designated as Ninestar Confidential Information***

      Plaintiffs also contend that record evidence currently designated as Confidential

Information should be redesignated as Ninestar Confidential Information.  Whereas the prior two

subsections considered redesignating sealed Confidential Information and Ninestar Confidential

Information (Categories 2 and 3) as unsealed information (Category 4), this subsection discusses

whether sealed Confidential Information (Category 2) should be redesignated as sealed Ninestar

Confidential Information (Category 3).  See supra Table 1: Categories of Restricted Information.
The key difference is that Confidential Information is for attorneys' eyes only, whereas Ninestar
Confidential Information may also be accessed by Plaintiffs' directors and officers.  See supra
section I.A.

The court denies Plaintiffs' request to redesignate Confidential Information as Ninestar
Confidential Information.  The court is generally "free to tailor [a] protective order to the
circumstances presented" as it relates to the disclosure of law enforcement sensitive documents.
In re the City of New York, 607 F.3d 923, 949 (2d Cir. 2010); cf. also USCIT R. 26(c)(1).  A
sizable portion of the CAR is already designated as Ninestar Confidential Information.  Plaintiffs'
request, then, more specifically concerns the two discrete types of record evidence that remain
designated as Confidential Information, which are (1) sources over which the Chinese government
exercises control and (2) internal agency documents.  See ECF No. 85, at 3.

Preventing the disclosure of these two types of record evidence to Plaintiffs' directors and
officers is not a trivial concern.  Defendants establish that all Chinese "organizations and citizens
are required to support, assist, and cooperate with national intelligence efforts under the PRC
National Intelligence Law," which was adopted in 2017.  ECF No. 85-2 ¶ 16 (internal quotation
marks omitted).  Disclosure of either open-source sources or internal agency documents to
Plaintiffs' directors and officers would be susceptible to demands by the Chinese government
pursuant to China's 2021 Data Security Law and its 2021 Anti-Foreign Sanctions Law.  Id. ¶ 16.
Release of those materials would hamper the FLETF's investigations into the use of forced labor
by other, non-Ninestar entities.

Plaintiffs' counsel argues that the Confidential Information designations—which, again,

prohibit disclosure to their client—hinder necessary communication between counsel and client.[16]

But there appears to be no authority compelling a level of disclosure to the client greater than what

is provided here. Plaintiffs are foreign companies with insufficient contacts in the United States

to accrue constitutional rights, see People's Mojahedin Org. of Iran v. U.S. Dep't of State, 182

F.3d 17, 22 (D.C. Cir. 1999), and the APA does not appear to demand a particular level of

disclosure to the client as opposed to counsel. "[F]ree to tailor the protective order to the

circumstances presented," City of New York, 607 F.3d at 949, the court concludes that the current

apportionment of Confidential Information and Ninestar Confidential Information in the record—

which reserves (1) sources over which the Chinese government exercises control and (2) internal

agency documents, for attorneys' eyes only—strikes the appropriate balance.

### 4.    *Summary and Order*

The court concludes that Defendants have established the designation of certain record

evidence in pages 1 through 219 of the CAR as Confidential Information and Ninestar Confidential

Information was proper. That record evidence will remain sealed from public view. Moreover,

no changes from Confidential Information to Ninestar Confidential Information will be made.

That said, Defendants have not established that the designation of pages 220 through 228

of the CAR as Ninestar Confidential Information was proper. It is hereby **ORDERED** that pages

---

[16] As an example, Ninestar argues that [[



]] But under this court's review for arbitrary and capricious action
on an agency record, Plaintiffs' counsel's requests for client input are hardly essential when the
client's input would largely constitute evidence from outside the record. Moreover, Plaintiffs'
counsel can, pursuant to the APO's terms, [[

]].

Court No. 23-00182                                                                                               Page 28
**PUBLIC VERSION**

220 through 228 of the CAR be unsealed and form part of the PAR.  The below table summarizes

the information being unsealed.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Table 2: Summary of Unsealed Record Evidence** | | | | | | |
| | **Description of Portion of CAR** | **CAR Pages** | **Prior Category** | **New Category** | **Who Can Now Access These Documents?** | **Description of Change** |
| 1. | FLETF Operating Procedure | 220–28 | 3 (Not Privileged & Ninestar Confidential Information) | 4 (Not Privileged & No APO Designation) | General Public | Unsealed because not LES or similarly sensitive government information.  See infra section I.B.2. |

### C.    Motion to Unredact

Plaintiffs next challenge Defendants' assertion of the informant privilege in the CAR and

request that the purportedly privileged information be unredacted.  To the extent that privileged

material remains after that inquiry, Plaintiffs also argue that the USTR and State Productions,

issued to Plaintiffs in response to their FOIA requests, resulted in partial waiver of the informant

privilege over the CAR.

The court concludes that the informant privilege applies to certain portions of the CAR and

that the USTR and State Productions resulted in a limited waiver of the informant privilege over

other portions of the CAR.  All unredacted information, however, will be designated as

Confidential Information under the APO and accordingly sealed from public view.

### 1.    The Informant Privilege Applies to Certain Portions of the CAR and Does Not Apply to Other Portions

Defendants formally assert the "Law Enforcement Privilege/Informant Privilege" over

certain portions of the CAR.  See Priv. Log at 1–2.  They state that the redacted information

"reveals or has the reasonable tendency to reveal the identity of a confidential informant and third-

party sources that have provided information about the existence of Uyghur labor at plaintiffs'

facilities to U.S. Customs and Border Protection under an assurance of confidentiality."  Id.

Court No. 23-00182                                                                                      Page 29
**PUBLIC VERSION**

Plaintiffs contend that the informant privilege does not apply in this case.  Exercising its

jurisdiction over the issue,[17] the court concludes that the informant privilege is properly invoked

in part and improperly invoked in part.

The informant privilege refers to "the Government's privilege to withhold from disclosure

the identity of persons who furnish information of violations of law to officers charged with

enforcement of that law."  Roviaro, 353 U.S. at 59.  "The purpose of the privilege is the furtherance

and protection of the public interest in effective law enforcement.  The privilege recognizes the

obligation of citizens to communicate their knowledge of the commission of crimes to law-

enforcement officials and, by preserving their anonymity, encourages them to perform that

obligation."  Id.  While Roviaro was a criminal case, the privilege also applies in civil cases.  See,

e.g., In re Perez, 749 F.3d 849, 855–57 (9th Cir. 2014); Westinghouse Elec. Corp. v. City of

Burlington, 351 F.2d 762, 769–70 (D.C. Cir. 1965).  That said, the informant privilege "is not an

instrument by which law enforcement agencies may shield themselves from public scrutiny.

Therefore, courts must vigilantly review an assertion of the privilege and must often conduct an in

camera inspection of the materials in question."  Floyd v. City of New York, 739 F. Supp. 2d 376,

379 (S.D.N.Y. 2010); see also 28 U.S.C. § 2635(d)(2) (authorizing the court to review privileged

---

[17] All parties agree that the APO does not "address or govern claims of privilege or work product
that may otherwise be asserted by any of the parties."  APO ¶ 13.  Instead, the Federal Rules of
Evidence and federal common law supply the rule of decision in privilege disputes in this case.
See Fed. R. Evid. 501, 1101(c); see also 28 U.S.C. § 2641(a).  The USCIT has the power to enforce
the privilege as a federal court that possesses powers coterminous with those of U.S. district courts.
See 28 U.S.C. § 1585 ("The [USCIT] shall possess all the powers in law and equity of, or as
conferred by statute upon, a district court of the United States."); see also Daido Corp. v. United
States, 16 CIT 987, 992, 807 F. Supp. 1571, 1575 (1992) (holding that the USCIT "clearly has
jurisdiction to enforce" the informant privilege in a case arising under 28 U.S.C. § 1581(f)).

material <u>in camera</u> and to "make such material available under such terms and conditions as the court may order").

Determining whether the informant privilege applies requires a two-step inquiry. First, the court must determine whether the withheld information is within the privilege's scope. Specifically, "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." <u>Roviaro</u>, 353 U.S. at 60 (footnote omitted). Second, even if the withheld information falls within the privilege's scope, the privilege must yield to "fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." <u>Id.</u> at 60–61 (footnote omitted). Specifically, the court must weigh "the public interest in protecting the flow of information against the individual's right to prepare his defense." <u>Id.</u> at 62. This balancing test, subject to "no fixed rule," varies depending on the "particular circumstances of each case." <u>Id.</u>; <u>see also</u> <u>McCray v. Illinois</u>, 386 U.S. 300, 311 (1967).

Turning first to scope, the court concludes that the information being asserted as privileged in the CAR, in large part, "tend[s] to reveal the identity of an informer" and is within the informant privilege's scope. <u>Rovario</u>, 353 U.S. at 60. Having reviewed the materials <u>in camera</u>, <u>see</u> 28 U.S.C. § 2635(d)(2); <u>Floyd</u>, 739 F. Supp. 2d at 379, the court broadly sorts the redacted information into three categories: words that describe the informant, statements supplied by the informant, or descriptions of the time and place of statements by the informant. The scope of the informant privilege covers the redacted information as asserted in the first two categories. <u>See</u> <u>Rovario</u>, 353 U.S. at 60 (protecting the disclosure of "an informer's identity" or "the contents of

his communication"). As for the third category, however, the privilege's scope does not extend to all of Defendants' asserted redactions. The dates and locations of an informant's activities may constitute privileged information so long as the dates tend to identify the informant. See United States v. Moon, 802 F.3d 135, 151 (1st Cir. 2015) (affirming district court's extension of informant privilege over "detail about the transactions" of a confidential informant in controlled drug buys, including "dates and locations"). Here, references to the days and months of the informant's activities in China and meetings with the FLETF are covered because they are likely to aid the recall of Plaintiffs' personnel in attempting to identify the informant. See United States v. Wilburn, 581 F.3d 618, 624 (7th Cir. 2009) (affirming informant privilege over "the date of the controlled buy" because the defendant "could search his memory and recall to whom he had sold drugs on that day"). But the record's references to the years—as opposed to days and months—of the informant's activities and meetings are not so revealing. Those references are unredacted.

Turning next to fairness, the court determines that the privilege must yield in part because the informant's communications are essential to a fair determination of Plaintiffs' APA causes of action. The informant privilege tends to yield where informant communications are directly relevant to the "transaction charged" rather than unrelated to the underlying cause of action. Compare Roviaro, 353 U.S. at 64 (concluding that disclosure was appropriate where the informer "was the sole participant, other than the accused, in the transaction charged"), with Moon, 802 F.3d at 151 (upholding privilege where informant had knowledge of defendant's drug trafficking, but drug trafficking was not the crime being charged). That is the case here. The court has already explained that "the redacted information" from the informant "constitutes record evidence of post-enactment violations of the UFLPA at Ninestar's Zhuhai facilities." Ninestar II, 687 F. Supp. 3d

at 1336.  Moreover, that evidence appears central to the FLETF's ultimate conclusion, even though the FLETF also considered other sources such as "PRC government documents, Ninestar's company documents, and media reports."  PAR 4.  Some disclosure of privileged information is therefore warranted.

But Plaintiffs' right to present adequate APA challenges is not unqualified.  Importantly, "danger to the informant's life must be given significant weight in striking the <u>Roviaro</u> balance." <u>United States v. Straughter</u>, 950 F.2d 1223, 1232 (6th Cir. 1991).  Defendants have stated, and Plaintiffs do not appear to dispute, that the disclosure of identifying details beyond counsel could subject informants to harm and retaliation in China.  <u>See</u> ECF No. 85-1 ¶ 11.  That danger may well also extend to the forced laborers themselves.  And while Plaintiffs argue that this danger may be mitigated by the APO's prohibition on sharing information beyond counsel, the APO does not render danger to life entirely irrelevant.  Even the most careful of procedures and best of intentions—of any party—do not guarantee against the inadvertent release of information.  Indeed, an attorneys'-eyes-only designation for such privileged information is insufficient where, as here, "the consequences of accidental disclosure are too severe."  <u>City of New York</u>, 607 F.3d at 936; <u>see also</u> <u>Goodloe v. City of New York</u>, 136 F. Supp. 3d 283, 303 (E.D.N.Y. 2015).  Moreover, the informant privilege must "not yield to permit a mere fishing expedition."  <u>Dole v. Loc. 1942, Int'l Bhd. of Elec. Workers, AFL-CIO</u>, 870 F.2d 368, 373 (7th Cir. 1989) (citations omitted).  While the court does not suggest that Plaintiffs are requesting a fishing expedition, a similar principle nonetheless applies here.  In an APA action that must be limited to the agency record, Plaintiffs' requests to unredact information cannot yield to permit mere extra-record discovery.

The court accordingly concludes that the informant privilege yields for all generalized

information about Uyghur workers in the CAR.[18]  The unredacted statements are not particularized to any one person, which will allow Plaintiffs' counsel to challenge the informant's substantive credibility.  But disclosure of more identifying details, such as times or specific statements that can be traced to one person, would greatly increase the risk of danger to the informant's life and is therefore not warranted here.

Finally, the newly unredacted (i) references to years and (ii) generalized information about Uyghur workers will not be made public.  Even if not privileged, that information is clearly LES for the reasons established by Defendants in the Brzozowski Declaration.  See supra section I.B.1. All unredacted text will be nonetheless sealed under the designation of Confidential Information and, consistent with that designation's attendant prohibitions, will be limited to the parties' attorneys' eyes only.  As to those two subsets of the CAR, this change represents a shift from Category 1 to Category 2.  See supra Table 1: Categories of Restricted Information.[19]

### 2. The FOIA Productions by USTR and State Department Resulted in a Partial Waiver of the Informant Privilege in the CAR

Along a different vein, Plaintiffs argue that the disclosure of information tending to reveal the informant's identity in the USTR and State Productions resulted in waiver of the informant privilege over overlapping information in the CAR.  See ECF No. 124, at 3; ECF No. 147, at 2. Defendants respond that those productions were "obviously inadvertent" and occurred despite

---

[18] In particular, all references to the fact that Uyghur workers [[                                        ]] shall be unredacted.  The court orders the same for general statements about [[

                                        ]].

[19] Additionally, the Confidential Information designation over this newly unredacted information will apply no matter the privilege or APO designation of the surrounding context.

reasonable steps taken by agency personnel and defense counsel to prevent and remedy inadvertent disclosure.  ECF No. 128, at 2; <u>see also</u> <u>id.</u> at 5–11; ECF No. 149, at 2; ECF No. 154, at 2–4.[20] The court agrees in part and disagrees in part.  While it appears that the USTR and State Productions were indeed inadvertent, the State Production in particular did not follow reasonable attempts at preventing inadvertent disclosure.  The court therefore concludes that the informant privilege has been partly waived in the CAR.  The scope of that waiver, however, is carefully limited.  All newly unredacted information will be designated as Confidential Information and therefore sealed from public view.  <u>See infra</u> section I.C.3.  Put differently, the newly unredacted information will be redesignated from Category 1 to Category 2.  <u>See supra</u> Table 1: Categories of Restricted Information.

As an initial matter, when the informant's identity becomes known to the adverse party, the informant privilege can no longer apply.  <u>See</u> <u>Rovario</u>, 353 U.S. at 60 & n.8.  Like other privileges, the informant privilege can be waived by the Government.  <u>See, e.g.</u>, <u>Dole</u>, 870 F.2d at 375–76; <u>Chao v. Westside Drywall, Inc.</u>, 254 F.R.D. 651, 659 (D. Or. 2009).  But while the

---

[20] Defendants also take issue with the fact that Plaintiffs did not notify the court or Defendants of the USTR Production until nearly two months after receipt.  In particular:

> Ninestar [had] possessed information it received through a [FOIA] request, and over which it knew the Government had asserted the informant's privilege. . . . Rather than immediately inform the Government or the Court of this obviously inadvertent disclosure, Ninestar's counsel said nothing for nearly two months, waiting to file a supplemental brief until the day after the Government brought the issue to the Court's attention.

ECF No. 128, at 2 & n.1.  But Defendants make no motion or legal argument that depends on the question of whether Plaintiffs' actions were improper or caused undue delay.  The court therefore does not reach that issue.

voluntary or intentional disclosure of privileged information is sure to result in waiver, the effect of an inadvertent disclosure is less certain. See e.g., Fla. House of Representatives v. U.S. Dep't of Com., 961 F.2d 941, 946 (11th Cir. 1992); Mendenhall v. Barber-Greene Co., 531 F. Supp. 951, 955 & n.9 (N.D. Ill. 1982) (citing, ultimately, Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Per Plaintiffs, the method of waiver here was through FOIA. FOIA requires federal agencies to disclose their records upon request by private citizens, subject to nine exemptions that can be asserted by the agency producing responsive documents. See 5 U.S.C. § 552; see also Knight First Amend. Inst. at Columbia Univ. v. CIA, 11 F.4th 810, 813 (D.C. Cir. 2021). FOIA's "basic purpose" is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). For those reasons, FOIA mandates "broad disclosure." Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007). That said, "FOIA was not intended to function as a private discovery tool" in administrative proceedings or litigation. Robbins, 437 U.S. at 242 (emphasis in original) (holding that FOIA disclosure of prehearing witness statements would interfere with an NLRB hearing); see also Baldrige v. Shapiro, 455 U.S. 345, 360 n.14 (1982).

As mentioned, in January 2024 and April 2024, respectively, USTR and the State Department produced documents responsive to Plaintiffs' counsel's FOIA request to the USTR filed in August 2023. The USTR and State Productions, as initially produced to Plaintiffs' counsel, each refer to the informant—the very same informant at issue in the CAR of this litigation—using

an identifying word ("Identifying Word").[21]  Exemption 7(D) of FOIA allows agencies to exclude

or redact any "records or information compiled for law enforcement purposes, but only to the

extent that the production of such law enforcement records or information . . . could reasonably be

expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D).  While USTR

and the State Department asserted FOIA exemptions as to other parts of the productions that are

not relevant here,[22] neither agency asserted Exemption 7(D) over the Identifying Word or over

other information involving the Identifying Word.

Whether a FOIA production results in waiver is a highly context-specific inquiry.  Most

cases discussing whether waiver occurred after an inadvertent FOIA production arise out of

FOIA's own cause of action,[23] and those cases typically concern whether the producing agency

can reassert a FOIA exemption after the inadvertent disclosure has occurred.  See, e.g., Memphis

Pub. Co. v. FBI, 879 F. Supp. 2d 1, 2 (D.D.C. 2012).  But that is not the procedural posture here.

Plaintiffs' action arises out of the APA, not FOIA.  See Am. Compl. ¶¶ 61–79.  They argue that

---

[21] The Identifying Word refers to [[                                                                    ]].

[22] The agencies asserted FOIA Exemption 5, which excludes certain deliberative agency materials,
and Exemption 6, which excludes personally private information.  See 5 U.S.C. § 552(b)(5)–(6).
Neither of those asserted exemptions are relevant to Defendants' assertion of the informant
privilege in this litigation.

[23] FOIA expressly provides:

> On complaint, the district court of the United States in the district in which the
> complainant resides, or has his principal place of business, or in which the agency
> records are situated, or in the District of Columbia, has jurisdiction to enjoin the
> agency from withholding agency records and to order the production of any agency
> records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).

the Government's failure to assert Exemption 7(D) in the USTR and State Productions, which occurred independent of and outside this litigation, has waived Defendants' assertion of the informant privilege in this APA litigation.

Judicial treatment of similarly postured cases is scattered but suggests that the disclosure of privileged information through a legally independent FOIA production can indeed result in the waiver of privilege in the immediate case before the court.   See, e.g., Ga. ForestWatch v. U.S. Forest Serv., No. 2:19-CV-77-RWS, 2020 WL 13594964, at *4 (N.D. Ga. Apr. 22, 2020) ("[D]isclosure under FOIA waives the deliberative process privilege as to the document's inclusion in the record for judicial review under the APA."); UnitedHealthcare Ins. Co. v. Azar, 316 F. Supp. 3d 339, 349 (D.D.C. 2018) ("[A] document that was privileged as part of the deliberative process can lose its privilege when revealed outside the agency."); Cnty. of San Miguel v. Kempthorne, 587 F. Supp. 2d 64, 75 (D.D.C. 2008) (reasoning that "by producing these documents pursuant to the FOIA request, the Service has waived any privilege and protection from disclosure" in seeking to exclude documents from the administrative record); see also, e.g., Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480, 506–08 (2009) (finding waiver of privilege via FOIA in contract and Fifth Amendment takings actions); Melendez-Colon v. United States, 56 F. Supp. 2d 142, 145 (D.P.R. 1999) (finding same, in Federal Tort Claims Act action).

The reasoning used by courts to find waiver varies.  Two of these decisions suggest that FOIA disclosure is a voluntary action by the Government that must result in waiver, but those cases are largely distinguishable; in neither case did the district court consider whether the Government's FOIA disclosure was inadvertent.  See, e.g., Ga. ForestWatch, 2020 WL 13594964, at *5 & n.6 (declining to consider whether the Government's FOIA disclosure was inadvertent for

lack of argumentation); <u>UnitedHealthcare</u>, 316 F. Supp. 3d at 349 (no inadvertence defense raised

by the Government).  Another case takes the opposite approach, suggesting that FOIA disclosures

are per se inadvertent but may nonetheless result in waiver due to unreasonable precautions and

remedial actions.  <u>See</u> <u>Eden Isle</u>, 89 Fed. Cl. at 507.  But that case, too, is not easily applicable

here because it relies heavily on the framework of inadvertent disclosures governed by Federal

Rule of Evidence 502(b), which applies only to the attorney-client privilege and work product

doctrine.  <u>See</u> <u>id.</u>  Finally, as far the court can identify, there is only one comparable case where a

court has held that waiver did <u>not</u> occur after inadvertent disclosure by the agency via FOIA.  <u>See</u>

<u>Scott v. PPG Indus., Inc.</u>, 142 F.R.D. 291, 294 (N.D. W. Va. 1992).  There, the court was satisfied

that the agency was not careless because the agency had a policy against releasing privileged

documents.  <u>See</u> <u>id.</u>  Amid this scattershot precedent, any decision on waiver is best focused on

the particular facts before the court.

      As a threshold matter, the court concludes that the inclusion of the Identifying Word in the

USTR and State Productions was inadvertent.  Defendants' actions make that clear.  They have

formally asserted and vigorously defended the informant privilege over the CAR since October

26, 2023, when the privilege log was first filed.  <u>See</u> Privilege Redaction Log at 1–2.  The USTR

review process began in October 2023 and was concluded in January 2024 by agency officials who

were "unaware" that disclosed information "was the subject of a claim of informant's privilege

and a pending motion to unredact in this litigation."  M.R. Affidavit ¶ 14, ECF No. 128-1.

Defendants' counsel was not even aware of the USTR Production on January 24, 2024, let alone

its inclusion of the Identifying Word, until March 14.  <u>See</u> ECF No. 124-4, at 1.  Next, the State

review process, which followed a referral from the USTR in January 2024, was finalized in April

2024 by agency officials who, again, "were not aware of [this] litigation at the time of processing."

S.W. Affidavit ¶ 11, ECF No. 149-1.  And once again, Defendants were not aware of the State

Production on April 19 until April 23, when Plaintiffs notified the court and all parties of the

production.  See ECF No. 149, at 4.

Defendants and their counsel simply did not have the intent of voluntarily disclosing the

Identifying Word in this litigation.  Cf. Fla. House of Representatives, 961 F.2d at 946 (finding it

"difficult to characterize the court-ordered disclosure of the data . . . as a voluntary waiver . . . ,

especially considering that the Department attempted to exercise the very privilege it is supposed

to have waived").  The intention of Defendants and their counsel here is different from the intention

of the USTR and State officials responsible for FOIA disclosures.[24]  Plaintiffs largely presume,

without further explanation, that the actions of USTR and the State Department, which are FLETF

member agencies but not named parties in this litigation, may be fairly considered to be voluntary

actions by the FLETF in this litigation.  See, e.g., Ga. ForestWatch, 2020 WL 13594964, at *5 &

n.6 (finding FOIA disclosure voluntary where the disclosing agency was the same one in

litigation); UnitedHealthcare, 316 F. Supp. 3d at 349 (same); cf. also EEOC v. Whiting-Turner

Contracting Co., No. 3:21-CV-00753, 2022 WL 3221825, at *6 & n.4 (M.D. Tenn. Aug. 9, 2022)

(accepting as uncontroverted that FOIA disclosure by agency was inadvertent, even when the

---

[24] When considering the intentions of the USTR and State Department, the production of
documents by those agencies "may have been a mistake of judgment" rather than "an unintended
act."  Spanierman Gallery, Profit Sharing Plan v. Merritt, 2003 WL 22909160, at *3 (S.D.N.Y.
Dec. 9, 2003).  But that inquiry, which is better suited for a FOIA action challenging the USTR
and State Department's productions, is not before the court.  Today's decision is without prejudice
to such potential future FOIA action, which will have to be filed in U.S. district court by Plaintiffs'
counsel.  See infra section I.D.2.

Court No. 23-00182                                                              Page 40
**PUBLIC VERSION**

FOIA request letter mentioned ongoing litigation and enclosed a copy of the complaint).  And more generally, holding that a FOIA disclosure is always voluntary would create an overbroad rule that invariably prioritizes access to information, even if improperly divulged, over other important government interests like the informant privilege.  Cf. Rocky Mountain Wild, Inc. v. U.S. Forest Serv., 56 F.4th 913, 930 (10th Cir. 2022) (reasoning that, in order for FOIA's weighty transparency principles "to control, the agency must have properly divulged the documents").  In creating the FOIA regime, Congress did not "intend[] that the weighty policies underlying discovery privileges could be so easily circumvented."  United States v. Weber Aircraft Corp., 465 U.S. 792, 801 (1984).

But determining that a FOIA disclosure is inadvertent is not the end of the inquiry.  Courts have found waiver where the Government failed to take reasonable steps to prevent inadvertent disclosure.  See Scott, 142 F.R.D. at 294 (concluding that "the EEOC was [not] careless in releasing the document" and finding no waiver of deliberative process privilege); Eden Isle, 89 Fed. Cl. at 507 ("[A]ssuming the disclosure was inadvertent, the court's inquiry is not over.  Work-product protection may still be waived if defendant did not take 'reasonable steps to prevent disclosure' and did not 'promptly' take 'reasonable steps to rectify the error.'" (quoting Fed. R. Evid. 502(b))).  And in somewhat analogous cases arising from FOIA, courts have evaluated other factors surrounding the production where the Government inadvertently disclosed information that it later sought to assert a FOIA exemption over.  See, e.g., Memphis Pub., 879 F. Supp. 2d at 13–14 (emphasizing the "belated and tepid claim of inadvertent disclosure," the lack of "any of the usual conduct that accompanies an inadvertent disclosure," the "high profile nature" of the FOIA requests, the small size of the FOIA productions, the fact that the FOIA production was already

Court No. 23-00182                                                          Page 41
**PUBLIC VERSION**

partly redacted for the informant-protecting exemption, and the agency's repeated production by filing on a public court docket).

Despite being inadvertent, the circumstances leading up to the State Production reflect a failure to take reasonable steps to prevent disclosure of the Identifying Word.  Following the USTR Production, Defendants' counsel represented via email on March 19, 2024, to Plaintiffs and the court that "[i]mmediately after learning of this inadvertent disclosure, counsel for the Government conferred with the FLETF member agencies, including USTR, to ascertain the extent of the disclosure and whether any additional disclosures were made to Ninestar's counsel, by any agency, that could impact this case."  ECF No. 124-4, at 1.  One month after that email, Plaintiffs received the State Production, which included the Identifying Word.  ECF No. 149, at 2.  Waiver may have been a closer call if inadvertent disclosure via FOIA had occurred only once in the USTR Production.  But a second disclosure, as evidenced by the State Production, suggests that the Government failed to take reasonable precautions, leading to waiver.  See Audubon Soc'y of Portland v. Zinke, No. 1:17-CV-00069-CL, 2018 WL 1522691, at *4 (D. Or. Mar. 27, 2018) (reasoning that disclosure of a comment "in three separate iterations of the record and in a FOIA request" in an APA case, despite an immense agency record, did not suggest that reasonable steps were taken to prevent disclosure); Eden Isle, 89 Fed. Cl. at 510 ("Because defendant disclosed the pages to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent."); cf. Memphis Pub. Co., 879 F. Supp. 2d at 13–14 (finding waiver, in part because the agency filed privileged information on a public court docket after having disclosed the same via FOIA).

Defendants frame the facts differently, arguing that the State Production was inadvertent

and followed reasonable efforts to prevent inadvertent disclosure.  Defendants explain that the

State Production is composed entirely of documents that were collected by USTR in response to

Plaintiffs' request to USTR.  See ECF No. 149, at 2–3.  The USTR had referred a subset of its

collected documents to the Statutory Compliance and Research Division of the State Department's

Office of Information Programs Services so that the subset of documents could be assessed for

agency-specific sensitivities.  See id. at 3; ECF No. 149-1 ¶ 11.  Under ordinary agency procedure,

the State Department was responsible for producing those documents after that point.  See ECF

No. 149-1 ¶ 15.  But it was a particular division of the State Department's Office of Information

Programs Services that dealt with referrals from other agencies, not the typical "Case Processing"

team that processed FOIA requests directly addressed to the State Department, that was

responsible for releasing the State Production.  See id. ¶ 11.  And crucially, Defendants' counsel

had informed the latter Case Processing team, but not the former referral team, of this litigation

after the inadvertent USTR Production.  See id. ¶ 11.

Accordingly, Defendants urge that the State Production is best understood as an unintended

"by-product of USTR's prior disclosure of similar information" rather than a second, separately

inadvertent event.  See ECF No. 149, at 2.  But even accepting Defendants' representations as to

their internal process, there appear to have been two gaps in that process.  First, the State

Department's Case Processing team knew about this litigation—presumably made aware by

Defendants' counsel after the USTR Production, see ECF No. 124-4, at 1—but the referrals team

did not.  See ECF No. 149-1 ¶ 12.  And second, the USTR FOIA office, which learned of this

litigation after the USTR Production and which had sent the subset of documents to the State

Department for review, see ECF No. 124-4, at 1; ECF No. 128-1 ¶¶ 14, 18–20; ECF No. 149-1 ¶

10, did not reach out to the State Department to prevent the disclosure downstream.  <u>See also</u> ECF

No. 149-1 ¶ 10 (indicating that the last communication between USTR and the State Department

regarding the responsive FOIA documents was on February 23, 2024).  It follows that reasonable

precautions were not taken to prevent disclosure of the State Production.[25]  Defendants' assertion

of informant privilege over the Identifying Word is therefore waived, subject to the limitations

explained in the next section, <u>see</u> <u>infra</u> section I.C.3.

Finally, it is appropriate to note that in addressing these matters, the court in no way

impugns the integrity or conscientiousness of Defendants' counsel here, nor suggests anything less

than professional conduct, as they deal with issues that have involved a newly enacted statute for

which processes governing diverse agencies are apparently in development.  If anything, perhaps

cases like this one may offer lessons for thinking about paths for institutional coordination,

including the handling of information that implicates sensitive issues of safety and privacy.

### 3.        *Waiver of the Informant Privilege Is Limited to the Identifying Word and Is Otherwise Limited by the APO*

Two outstanding points regarding waiver remain.  First is the question of scope.  Both

parties appear to contend that the court should unredact only those portions of the CAR that

---

[25] Plaintiffs also argue that the USTR Production itself followed a failure by Defendants to take
reasonable precautions.  <u>See</u> ECF No. 131, at 8–11.  The court is not convinced.  While personnel
issues played a role in the USTR's inadvertent disclosure, Defendants have clearly established that
the USTR FOIA office was acting independently without knowledge of the ongoing litigation and
that Defendants themselves were unaware of the USTR's actions.  <u>See</u> ECF No. 128-1 ¶¶ 14–15.
Plaintiffs contend that litigation-specific knowledge is irrelevant to whether disclosure is required.
<u>See</u> ECF No. 131, at 10–11.  But the behavior of these Defendants in this case did not reflect a
"[c]arelessness with privileged material" that would typically serve as an "indication of waiver."
<u>Gray v. Bicknell</u>, 86 F.3d 1472, 1484 (8th Cir. 1996).  The court rests its holding of waiver, then,
only on the circumstances leading up to the State Production.

specifically overlap with the disclosed information that results in waiver.  <u>See</u> ECF No. 128, at 5–6; ECF No. 131, at 5–6.  The court agrees.

The waiver in this case is limited to any redacted information in the CAR that was revealed by the State Production.  The only privileged information in the State Production is the Identifying Word.  Every instance of the Identifying Word, as well as essential context surrounding the use of the Identifying Word in the CAR, is therefore unredacted.  Moreover, because the Identifying Word describes, but does not reveal, the identity of the informant, Defendants' other assertions of informant privilege remain intact.  <u>See</u> <u>Rovario</u>, 353 U.S. at 60 & n.8 (reasoning that the informant privilege can no longer apply when the informant's identity becomes known "to those who would have cause to resent the communication"); <u>cf. also</u> <u>Dole</u>, 870 F.2d at 375 ("In the absence of an express identification, death, or perhaps overwhelming evidence as to the identity of the informant, it cannot be assumed that the privilege has been waived . . . ."); <u>Chao</u>, 254 F.R.D. at 660 (reasoning that the disclosure of information tending to reveal the informant's identity "does not necessarily waive the informant's privilege regarding the . . . statements" of the informant).

Second, Defendants urge the court to consider that the actions of "USTR and the State Department should not be held against the informant, who[] has risked their safety to assist the FLETF and whose outing would discourage future informants from coming forward."  ECF No. 149, at 4.  The court takes very seriously the difficult circumstances that an informant can face in informing law enforcement of potential violations of the UFLPA in China.  To that end, like the other newly unredacted information, the Identifying Word will not be publicly revealed.  Even if not privileged, the Identifying Word is clearly LES for the reasons established by Defendants in the Brzozowski Declaration.  <u>See</u> <u>supra</u> section I.B.1.  All instances of the Identifying Word will

be sealed under the designation of Confidential Information and, consistent with that designation's

attendant prohibitions, will be limited to the parties' attorneys' eyes only.  This change represents

the Identifying Word's shift from Category 1 to Category 2.  See supra Table 1: Categories of

Restricted Information.[26]

#### 4.    *Summary and Order*

The court concludes that the informant privilege applies to certain portions of the CAR but

excludes (i) references to years, which fall outside the privilege's scope, and (ii) generalized

information about Uyghur workers, which is essential to a fair determination of Plaintiffs' APA

causes of action.  Furthermore, the State Production, despite being inadvertent, resulted in a limited

waiver of the informant privilege over the Identifying Word.  These three newly unredacted

portions of the CAR are determined to be LES, designated as Confidential Information, and sealed

from public view.

The below table summarizes the three portions of the record being unredacted:

| | Description of Portion of CAR | CAR Pages | Prior Category | New Category | Who Can Now Access These Documents? | Description of Change |
|---|---|---|---|---|---|---|
| | **Table 3: Summary of Unredacted Record Evidence** | | | | | |
| 1. | References to years of meetings between the FLETF and informant | Passim | 1 (Privileged) | 2 (Not Privileged & Confidential Information) | Pls.' counsel Defs.' counsel | Unredacted because not within scope of informant privilege.  See infra section I.C.1. |
| 2. | Generalized information about Uyghur workers | Passim | 1 (Privileged) | 2 (Not Privileged & Confidential Information) | Pls.' counsel Defs.' counsel | Unredacted because informant privilege must yield, in part, to fairness concerns.  See infra section I.C.1. |
| 3. | Identifying Word | Passim | 1 (Privileged) | 2 (Not Privileged & Confidential Information) | Pls.' counsel Defs.' counsel | Unredacted because of limited waiver.  See infra sections I.C.2–.3. |

---

[26] Additionally, the Confidential Information designation for the Identifying Word will apply regardless of the privilege or APO designation of the surrounding context.

Court No. 23-00182                                                        Page 46
*PUBLIC VERSION*

Also appended to this opinion is a list, filed under seal as Confidential Information, that specifies the language to be unredacted from the record.  See infra Conf. App.

### D.    *Request to Destroy the USTR and State Productions*

Relatedly, Defendants request that the court enforce the instruction contained in two emails—the first from USTR on March 19, 2024, see ECF No. 124-3, at 1, and the second from the State Department on April 25, 2024, see ECF No. 149-1, Ex. 6—that Plaintiffs' counsel and any person to whom Plaintiffs' counsel has disseminated the FOIA productions "immediately destroy all copies" of the FOIA productions.

The court's analysis proceeds in two parts.  It first concludes that it has the authority to grant Defendants' request.  It then concludes that the destruction of the USTR and State Productions is required to preserve the integrity of the instant litigation.

### 1.    *The Inherent Powers of the USCIT Include the Power to Order the Destruction of Documents Inadvertently Produced via FOIA*

Faced with an issue of first impression before the USCIT, the court must first determine whether it has the authority to grant Defendants' request that the court order Plaintiffs' counsel to destroy the USTR and State Productions.  The inquiry begins with FOIA, which supplies a cause of action to aggrieved requesters that may be brought only in a U.S. district court.  5 U.S.C. § 552(a)(4)(B).  That cause of action is limited to petitioning the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  Id.

Plaintiffs suggest that the inquiry ends there because the USCIT "operates within precise and narrow jurisdictional limits and cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant."  Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1051

Court No. 23-00182                                                                    Page 47
**PUBLIC VERSION**

(Fed. Cir. 2012) (internal quotation marks and citation omitted).  Not quite.  The USCIT's subject

matter jurisdiction is indeed narrow and does not include causes of action arising from FOIA.[27]

But a "distinction exists between a court's subject matter jurisdiction and its inherent powers, i.e.,

those incidental powers necessary and proper to an exercise of that jurisdiction."  See Rhone

Poulenc, Inc. v. United States, 880 F.2d 401, 402 (Fed. Cir. 1989).  Two strands of case law

establish the USCIT's inherent powers over Defendants' request here.

    First, the U.S. Court of Appeals for the Federal Circuit has affirmed that the USCIT may

exercise, where appropriate, the same inherent powers as a U.S. district court.  See Heartland By-

Products, Inc. v. United States, 424 F.3d 1244, 1251 (Fed. Cir. 2005); United States v. Hanover

Ins. Co., 82 F.3d 1052, 1054 (Fed. Cir. 1996); Rhone Poulenc, 880 F.2d at 402.  The court has

subject matter jurisdiction over this action under 28 U.S.C. § 1581(i).  See Ninestar I, 666 F. Supp.

3d at 1363.  Emanating from that lawful jurisdictional basis, the USCIT then "possess[es] all the

powers in law and equity of . . . a district court of the United States," including all of its inherent

powers.  28 U.S.C. § 1585.

    Second, all parties agree that FOIA's text does not authorize an order to return or destroy

inadvertently disclosed documents.  But U.S. district courts considering such orders have relied

not on FOIA's text but on the court's inherent powers.  See, e.g., Whiting-Turner, 2022 WL

3221825, at *2; Sierra Club v. EPA, 505 F. Supp. 3d 982, 988–89 (N.D. Cal. 2020); ACLU v. U.S.

Dep't of Def., No. 09-CIV-8071, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012); Hersh &

---

[27] That said, the USCIT "has previously asserted jurisdiction under 28 U.S.C. § 1581(i) to consider claims implicating the affirmative publication provisions of FOIA."  U.S. Ass'n of Importers of Textiles & Apparel v. United States, 29 CIT 323, 325 n.2, 366 F. Supp. 2d 1280, 1282 n.2 (2005) (collecting cases).

Hersh v. U.S. Dep't of Health & Hum. Servs., No. C 06-4234 PJH, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008).   At least one such decision involves the court's exercise of its inherent authority over a non-FOIA cause of action to order the return of a FOIA production.  See Whiting-Turner, 2022 WL 3221825, at *2 (arising from violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991).[28]  These cases also all cohere with the directive that "Congress did not intend to limit the court's exercise of its inherent equitable powers where consistent with the FOIA."  Long v. IRS, 693 F.2d 907, 909 (9th Cir. 1982) (citing Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 19 (1974)).[29]

Putting it all together:  If the USCIT is to "possess all the powers in law and equity of . . . a district court of the United States," 28 U.S.C. § 1585, then the USCIT must have the inherent power to order the return or destruction of documents inadvertently produced via FOIA.  Federal courts may exercise "certain implied powers" that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotation marks omitted) (first quoting United States v. Hudson, 7 Cranch 32, 34 (1812); then quoting Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962)).  And whether the case arises from

---

[28] Plaintiffs distinguish this case by noting that the FOIA request in Whiting-Turner "was filed after the agency initiated federal court litigation."  ECF No. 131, at 13.  The FOIA requests here were submitted two weeks before the complaint's filing.  See ECF No. 124-1, at 2.  But it is unclear why that distinction is material, let alone why it would present a categorical bar to the court's exercise of its inherent powers.

[29] To be sure, the Supreme Court in Renegotiation Board stated that FOIA, "to a definite degree, makes the District Court the enforcement arm of the statute."  415 U.S. at 19.  But the decision also clarified that Congress did not seek "to limit the inherent powers of an equity court," which would include the USCIT.  See 28 U.S.C. § 1585.

the Civil Rights Act in the Middle District of Tennessee, or from FOIA in the Northern District of

California, or from the APA in the USCIT, those powers may extend to the return or destruction

of documents inadvertently produced via FOIA.  See, e.g., Whiting-Turner, 2022 WL 3221825, at

*2; Sierra Club, 505 F. Supp. 3d at 988–89.  It is therefore within the court's power to grant

Defendants' request that Plaintiffs' counsel destroy all copies of the USTR and State Productions.

> **2.      *The Destruction of the USTR and State Productions Is Necessary and Reasonably Tailored to Protect the Integrity of These Proceedings***

Defendants ask the court to exercise its inherent authority to order the destruction of the

USTR and State Productions.  As the court concluded above, the USTR and State Productions

were inadvertent.  See supra section I.C.2.  Defendants have repeatedly affirmed, since December

2023, their position on the privileged and sensitive nature of the now-unredacted information.  See

supra pp. 37–38.  And once notice of disclosure reached Defendants' counsel, they acted quickly

with the appropriate USTR and State Department officials to request destruction of the inadvertent

productions.  See id.

Inadvertence is the start, not end, of the inquiry.  The court's inherent authority is premised

on its need "to control and preserve the integrity of [its] judicial proceedings."  Pub. Citizen Health

Rsch. Grp. v. FDA, 953 F. Supp. 400, 404 (D.D.C. 1996) (internal quotation marks and citation

omitted).  That power must be exercised with "restraint and discretion," Chambers, 501 U.S. at

44; see also Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1378 (Fed. Cir. 2002), and is "not

an appropriate tool to undo all . . . errors" by litigants, Sierra Club, 505 F. Supp. 3d at 991.

Accordingly, Defendants must "offer a compelling rationale for holding that a court should wield

its inherent authority to compel the return or destruction of documents produced under FOIA any

Court No. 23-00182                                                                    Page 50
**PUBLIC VERSION**

time the producing agency could have invoked a statutory exemption but inadvertently failed to

do so." Id.; see also Whiting-Turner, 2022 WL 3221825, at *2. Moreover, the court's order must

"be a reasonable response to the problems and needs that provoke it." Degen v. United States, 517

U.S. 820, 823–24 (1996).[30]

In assessing whether a compelling rationale exists, courts have broadly considered the

impact of denying the agency's request to destroy the FOIA production on the ongoing

proceedings. In Sierra Club, the court reasoned that the FOIA requester's continued possession of

three lobbyists' names and email addresses, which the agency had inadvertently disclosed, would

not result in any "serious and non-speculative harm." 505 F. Supp. 3d at 991. More to the point,

in that FOIA case, it was not clear how denying the request for destruction of inconsequential

information "would undermine the Court's ability to see all questions directly raised under FOIA

in this action . . . through to a just resolution." Id. By contrast, the court in Whiting-Turner, a

Civil Rights Act enforcement action filed by the U.S. Equal Employment Opportunity

Commission ("EEOC"), ordered the return of the EEOC's inadvertent FOIA production where the

production risked meaningfully affecting the integrity of standard civil discovery proceedings. See

2022 WL 3221825, at *4–6. And in ACLU, another FOIA case, the court reasoned that the

inadvertent production, which "implicate[d] national security" and was classified, was issued

pursuant to a court-supervised production process that, by extension, also empowered the court to

order the return of documents. See 2012 WL 13075284, at *5.

---

[30] Additionally, in determining whether an exercise of its inherent authority for destruction of
inadvertent documents is warranted, the court need not reach the question of whether information
in the USTR and State Productions may be validly withheld under Exemption 7(D). See Whiting-
Turner, 2022 WL 3221825, at *6; Sierra Club, 505 F. Supp. 3d at 991.

The issue with denying Defendants' request here is easy to discern.  Hypothetically speaking, viewed in a vacuum, Plaintiffs' counsel could arguably disseminate the FOIA productions as they please.  See Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157, 174 (2004) ("[O]nce there is disclosure, the information belongs to the general public.").  That result would clearly be in conflict with the careful, multi-tiered scheme of informational restriction in this case, particularly considering that the court holds today that, in light of serious non-speculative security and privacy harms, the Identifying Word is to be designated as Confidential Information, sealed from public view, and limited to attorneys' eyes only.  See supra section I.C.3.

Avoiding that unrestricted dissemination preserves the APO's integrity and is therefore a sufficiently compelling rationale for invoking the court's inherent power.  Permitting that unrestricted dissemination would meaningfully undermine the court's central role in the APO's procedures governing confidentiality, see APO ¶¶ 23–25, much like how the inadvertent disclosures in Whiting-Turner risked interfering with standard civil discovery procedures, see 2022 WL 3221825, at *4–6.  That is sufficient to trigger the court's inherent authority "to protect [its] proceedings and judgments in the course of discharging [its] traditional responsibilities." Degen, 517 U.S. at 823.  Moreover, the privacy harms here are not minimal.  Revealing the information in question would risk not only diminishing the FLETF's sources for enforcing the UFLPA moving forward, but also would risk harm and retaliation to an informant for their knowledge of forced labor activity in China.  That constitutes "serious and non-speculative harm" justifying the exercise of incidental powers.  Sierra Club, 505 F. Supp. 3d at 991.  Finally, it bears repeating that FOIA's transparency principles, which Plaintiffs' counsel would otherwise be entitled to, do not apply where, as here, the agency has not "properly divulged the documents."

Rocky Mountain Wild, 56 F.4th at 930.  In that circumstance, an order to destroy the FOIA

productions coheres well with precedent discussing the relationship between FOIA, transparency,

and civil discovery.  See Weber Aircraft Corp., 465 U.S. at 801 (1984) (reasoning that obtaining

via FOIA "material that is normally privileged would create an anomaly in that the FOIA could be

used to supplement civil discovery"); see also Pub. Citizen, 953 F. Supp. at 405 (entering

protective order over inadvertently produced FOIA documents and reasoning that transparency

principles must "be balanced with the court's power to regulate the use of information or

documents, obtained through means other than discovery, in a proceeding before the court").

Having determined that it serves a compelling end, the court next concludes that ordering

the destruction of the USTR and State Productions is "a reasonable response to the problems and

needs that provoke it."  Degen, 517 U.S. at 823–24.  Since Defendants first notified the court of

the USTR Production in March 2024, the USTR and State Productions have caused considerable

procedural confusion about the authorities governing confidentiality in this litigation.  By

removing the existence of duplicate information outside of this case, this order will restore the

APO as that authority.  This order to destroy the FOIA productions is narrow and must also be

understood alongside the parallel decisions (1) to unredact certain portions of the CAR and (2) to

designate the newly unredacted portions of the CAR as Confidential Information under the APO.

The court emphasizes that Plaintiffs' counsel will still be able to use the newly unredacted

information in the CAR in both this litigation and any potential delisting request.  See APO ¶¶ 2–

6, 12.  Finally, it is appropriate to note that in ordering the destruction of the USTR and State

Productions, the court in no way impugns the integrity or conscientiousness of Plaintiffs' counsel

nor suggests anything less than professional conduct.  Plaintiffs' counsel lawfully filed their FOIA

requests in August 2023 and, upon receipt of Defendants' instructions to destroy the productions,

promptly contested those instructions before the court.

### 3.    Order

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' counsel and any person

to whom Plaintiffs' counsel has disseminated the USTR and State Productions immediately

destroy all copies of such productions.  This order is without prejudice to Plaintiffs' counsel filing

suit under 5 U.S.C. § 552(a), once USTR and the State Department produce revised versions of

their prior productions.  Plaintiffs' counsel will be able to litigate the asserted FOIA exemptions

and any waiver issues in U.S. district court, subject to the other requirements of 5 U.S.C. § 552.

### II.    *Completeness of Administrative Record*

The parties' briefing concerning the USTR and State Productions has also led to questions

about whether the CAR is complete.[31]  First, Plaintiffs state that "USTR's production included

numerous documents that were considered by FLETF members in reaching their decision, yet are

not included in the Administrative Record compiled by the Government and submitted to the

Court."  ECF No. 124, at 3.  Second, in response to a query by the court, Defendants object to the

inclusion of the Footnote Document, which was cited three times in the footnotes of an agency

memorandum in the CAR, in the CAR.  See ECF No. 138; see also supra Background section

III.B.  The court declines to supplement the record on either basis.

---

[31] Also currently stayed before the court is Plaintiffs' Motion to Complete or Supplement the
Administrative Record.  See ECF No. 108.  That motion presents several arguments arising out of
alleged deficiencies in the CAR.  The court intimates no view on that motion at this time.  Today's
discussion of the record's completeness is limited to the parties' arguments arising out of the USTR
and State Productions.

Court No. 23-00182                                                                Page 54
***PUBLIC VERSION***

In APA cases, "the court shall review the whole record."  5 U.S.C. § 706.  "The whole

administrative record . . . consists of all documents and materials directly or indirectly considered

by agency decision-makers and includes evidence contrary to the agency's position."  Invenergy

Renewables LLC v. United States, 44 CIT __, __, 476 F. Supp. 3d 1323, 1355 (2020) (quoting

Thompson v. U.S. Dep't of Lab., 885 F.2d 551, 555 (9th Cir. 1989)).  Also layered onto those

general requirements is a USCIT-specific statute defining administrative records in cases arising

under 28 U.S.C. § 1581(i), like this one, to include three categories of information:

> (A) a copy of the contested determination and the findings or report upon which
> such determination was based;

> (B) a copy of any reported hearings or conferences conducted by the agency; and

> (C) any documents, comments, or other papers filed by the public, interested
> parties, or governments with respect to the agency's action.

28 U.S.C. § 2635(d)(1).  "[P]redecisional and deliberative documents," however, "are not part of

the administrative record."  Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) (cleaned up).

That said, when the record as presented is "insufficient to permit meaningful judicial review,"

supplementation may be appropriate.  Euzebio v. McDonough, 989 F.3d 1305, 1322 (Fed. Cir.

2021) (quoting Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009)).

First, Plaintiffs suggest that the USTR Production included documents that were "directly

or indirectly considered by the agency."  ECF No. 124, at 3 (quoting Invenergy, 476 F. Supp. 3d

at 1355).  That argument falls short at the outset.  The public disclosure of agency materials via

FOIA "does not necessarily mandate inclusion in the administrative record."  UnitedHealthcare,

316 F. Supp. 3d at 349 (collecting cases).  "The challenger must still satisfy the requirements to

show why completion (or supplementation) is warranted."  Ga. ForestWatch, 2020 WL 13594964,

at *4.  Plaintiffs do not further develop their argument, so the court does not reach it.  See Z.A.

Sea Foods Priv. Ltd. v. United States, 46 CIT __, __, 606 F. Supp. 3d 1335, 1344 (2022) (collecting

cases that decline to reach issue due to inadequate argument), aff'd, No. 2023-1469, 2024 WL

2873428 (Fed. Cir. June 7, 2024).[32]

Second, although the Footnote Document was cited in the unredacted CAR, the Footnote

Document does not properly constitute part of the CAR.  In response to the court's query about

the Footnote Document, Defendants filed a declaration indicating that the Footnote Document

"was not provided to the FLETF as part of the recommendation package" and that its substance

otherwise "was unrelated to Ninestar and constituted sensitive law enforcement privileged

information" that CBP "did not provide . . . to the FLETF."  E. Choy Decl. ¶¶ 6–7, Apr. 5, 2024,

ECF No. 142.  In particular:

> CBP did not intend to include either the reference to or the [Footnote Document]
> itself in the FLETF Recommendation package.  Specifically, CBP intended to
> remove all references to the documents and sources that would not be directly
> provided to the FLETF as part of the recommendation.  However, CBP neglected
> to remove the footnote from the final Recommendation Package that was
> transmitted to DHS for presentation to the FLETF.

---

[32] The court notes the broader and related question of whether "the internal, pre-decisional
deliberations of USTR or of any other member agency of the FLETF that led such agency to vote
in favor of Ninestar's listing" are excluded from the administrative record.  ECF No. 128, at 10.
Congress delegated the authority to develop a forced labor strategy to the FLETF, not to its
component agencies.  See UFLPA § 2(c), 135 Stat. at 1526.  And because the FLETF operates by
the vote of representatives from seven member agencies, see 19 U.S.C. § 4681(b)(1); Exec. Order
No. 13923 § 2, 85 Fed. Reg. 30587, 30587 (May 20, 2020), communications between the agencies
would appear to be deliberative.  Moreover, any one member agency's internal memoranda would
not necessary be reviewed by the entire FLETF.  Because the documents in the USTR and State
Productions concern both "the internal deliberative processes of the agency [and] the mental
processes of individual agency members," addition to the record appears unwarranted.  Portland
Audubon Soc. v. Endangered Species Comm., 984 F.2d 1534, 1549 (9th Cir. 1993).

Id. ¶ 9.  Defendants accordingly argued that the Footnote Document should not form part of the

CAR.  See ECF No. 137, at 2.  The court agrees.  Because the Footnote Document was not among

"the materials that were before the agency at the time its decision was made," IMS, P.C. v. Alvarez,

129 F.3d 618, 623 (D.C. Cir. 1997), it is not part of the CAR here.

### III.    Request to Redact the Transcript of the Preliminary Injunction Hearing

Finally, Defendants request to redact a portion of the transcript of the public portion of the

preliminary injunction hearing.  See ECF No. 122, at 2.  Defendants seek to redact the following

statement by Plaintiffs' counsel:

> There is no Ninestar document that says that Ninestar hires Uygh[u]r laborers in
> Xinjiang and transports them to Ninestar facilities and works with the government
> to do so.  There is no PRC document and no media document to substantiate that.

ECF No. 122-1, at 17.  The court denies Defendants' request.

First, Plaintiffs argue that Defendants' request was forfeited "because the Government

failed to object to this statement when it was made in open court, with the media present, during

the public portion of the hearing."  ECF No. 123, at 2.  While it is true that "[n]o procedural

principle is more familiar . . . than that a . . . right may be forfeited . . . by the failure to make timely

assertion of the right," Yakus v. United States, 321 U.S. 414, 444 (1944), Defendants' request here

was properly filed pursuant to USCIT Administrative Order 08-01.  That administrative order

expressly allows attorneys to review an initial version of the transcript and, "by motion, request

that . . . information be redacted, and no remote electronic public access to the transcript is to be

allowed until the Court has ruled on any such motion."  USCIT Admin. Order 08-01, at 2–3.

Defendants availed themselves of that procedure, so there was no need to object in person.

Second, the parties disagree over whether Plaintiffs' counsel's statement "tends to reveal"

**PUBLIC VERSION**

the contents of the CAR. <u>See</u> ECF No. 122, at 2; ECF No. 123, at 2–3. It is initially worth emphasizing that Plaintiffs' counsel was engaged in the back-and-forth of oral advocacy. The court interpreted his statements to make arguments, rather than factual representations, as to the state of the record. In any event, the contention that his statement "tends to reveal" the contents of the CAR misstates the standard. The APO requires that "information contained in the Confidential Information portion of the administrative record" be treated as confidential "to the extent such information is not otherwise available in the public portion of the administrative record." APO ¶ 2. Plaintiffs' counsel's statement did not include "information contained in the Confidential Information portion of the administrative record," nor did it clearly reveal any such information by negative implication. It therefore did not run afoul of the APO. Defendants do not otherwise argue that confirming or denying the existence of other sources would itself reveal protected information in the CAR, nor does that appear to be the case here. <u>Cf. Bartko v. DOJ</u>, 62 F. Supp. 3d 134, 141 (D.D.C. 2014) (quoting <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 893 (D.C. Cir. 1995)).

Defendants' request is accordingly denied. That is not, however, an invitation to speak freely about what the CAR does not include. Immediately preceding his statement, Plaintiffs' counsel stated: "I can't say what is [in] the confidential record, but I can say what's not." ECF No. 122-1, at 17. That is not quite right. Any statements that clearly reveal the sealed contents of the CAR, either expressly or by implication, will be deemed violations of the APO. Considering the complexity of this case's informational restrictions, the court urges that the parties tread carefully when making public statements.

Court No. 23-00182 Page 58
*PUBLIC VERSION*

## CONCLUSION

This opinion resolves all outstanding procedural issues in this litigation arising under the APA, 5 U.S.C. § 706, and involving the UFLPA, 135 Stat. 1525. As the court has observed, many of the issues here have involved a newly enacted statute for which processes governing the coordination of various agencies are apparently in development. This case may yield lessons, in the UFLPA context and beyond, for thinking about procedures governing institutional coordination, particularly as it relates to the handling of information that implicates sensitive issues of safety and privacy.

For the foregoing reasons, it is hereby:

**ORDERED** that the "Confidential Information" designation is removed from pages 220 through 228 of the CAR, which are hereby part of the PAR; and it is further

**ORDERED** that the portions of the CAR that are specified in the Confidential Appendix be unredacted and designated as Confidential Information as defined in APO ¶ 1. The Confidential Appendix is attached to the sealed version of this opinion on the USCIT docket; and it is further

**ORDERED** that Plaintiffs' counsel, and any person to whom Plaintiffs' counsel has disseminated the USTR and State Productions, immediately destroy all physical and electronic copies of the USTR and State Productions, without prejudice to Plaintiffs' counsel's rights under 5 U.S.C. § 552; and it is further

**ORDERED** that Defendants shall refile new versions of the PAR and CAR, consistent with this opinion, by 5 p.m. ET on July 12, 2024; and it is further

**ORDERED** that, by 5 p.m. ET on July 19, 2024, the parties submit a joint status report and proposed scheduling order governing any subsequent proceedings in this case. The filing shall

Court No. 23-00182                                                                  Page 59
**PUBLIC VERSION**

discuss Plaintiffs' stayed Motion for Judgment on the Agency Record, ECF No. 109, and stayed

Motion to Complete or Supplement the Administrative Record, ECF No. 108, as well as the timing

of Plaintiffs' delisting request.  If the parties are unable to agree on a joint filing, Plaintiffs and

Defendants may file each file a status report and proposed scheduling order.

       **SO ORDERED.**

                                                            /s/      *Gary S. Katzmann*
                                                            Gary S. Katzmann, Judge

Dated: July 10, 2024
       New York, New York